**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et. al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Hon. Mary Ellen Coster Williams |
| | ) | |
| v. | ) | |
| | ) | No. 07-273 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**JOINT PRELIMINARY STATUS REPORT**

The parties herein submit this Joint Preliminary Status Report pursuant to RCFC Appendix A(III)(4) and (5) and the Court's Order dated September 26, 2007. The parties also hereby inform the Court that Plaintiffs' counsel and counsel for the United States have previously discussed this case pursuant to RCFC Appendix A(II)(3). Where the parties have been unable to reach agreement on a joint statement, separate statements by Plaintiffs and the United States are provided.

**Paragraph 4.a. Jurisdiction**

Plaintiffs allege a violation of the Fifth Amendment arising out of the application of 16 U.S.C.§ 1247(d) (the "Trails Act"), and the Surface Transportation Board's ("STB's") issuance of a Decision and Notice of Interim Trail Use or Abandonment ("NITU") on April 2, 2004. The Court has jurisdiction over this claim pursuant to 28 U.S.C.§ 1491.

**Paragraph 4.b. Consolidation**

**Plaintiffs' Statement:**

On July 6, 2007, Plaintiffs filed Notice of an Indirectly Related Case Pursuant to Rule 40.2(b), identifying *Bird Bay Executive Golf Course, Inc. v. United States,* Case No. 07-426

(Fed. Cl. filed June 27, 2007) (Bush, J.) assigned to Sr. Judge Bruggink for ADR, as a related matter. Plaintiffs in *Bird Bay* are twelve parties that filed a Fifth Amendment claim for compensation related to the identical event involved in this case. To wit: the STB's issuance of its April 2, 2004 NITU pursuant to the Trails Act that the Plaintiff's claim took an interest in their property by imposing an easement for current public-access recreational trail use and an easement for possible future reactivation as a railroad. *Birdbay* involves about twenty large parcels of land physically located along the same railroad corridor that is involved in the instant matter. The *Birdbay* Plaintiffs do not seek to have their case certified as a class action nor do they seek to opt-in to this class action.1

The liability issues involved in this case and in *Birdbay* are expected to be substantively identical. Given these similarities, the parties agree that these cases should be consolidated for determination of the question of liability.

The *Birdbay* Plaintiffs agree to consolidate the *Birdbay* case with this case for briefing and deciding the question of the government's liability provided that this legal issue can be presented on cross motions for summary judgment in the manner discussed in Paragraph 4.c below. However, should resolution of a consolidated motion for summary judgment on the government's liability be delayed until after the class in this case is closed, the *Birdbay* Plaintiffs do not agree to their case being consolidated and would proceed directly to summary judgment on this issue in their case independently. Further, to delay resolution of the *Birdbay* case until after the class in this case has been closed will substantially (and unnecessarily) increase the government's liability for delay damages owed to the *Birdbay* property owners.

1 The Rogers Plaintiffs have filed a motion seeking class certification, which the defendant did not oppose.

Subject to the forgoing, the Plaintiff's propose that this case be consolidated with *Birdbay* on the common legal question of the government's liability in a manner similar to that adopted by the Court in *Glosemeyer v. United States* 93-126L, *Moore v. United States*, 93-134L and *Grantwood Village v. United States*, 98-176L. (*see*, the Court's order consolidating those cases for briefing and decision on cross motions for partial summary judgment attached as Exhibit "A-1" and the Joint Status Report "A-2" and the subsequent published decision *Glosemeyer v. United States* 45 Fed. Cl. 771 (2000).)

Following a decision on the issue of the government's liability presented to the Court in cross motions for summary judgment, the cases were unconsolidated and independently proceeded to the valuation stage. Plaintiffs propose proceeding in a similar manner in this case.

**The United States' Statement:**

Plaintiffs in *Bird Bay* allege a violation of the Fifth Amendment relating from the identical event involved in this case – the STB's issuance of its April 2, 2004 NITU. The properties involved in *Bird Bay* are physically located along the same railroad corridor that is involved in the instant matter. The liability issues involved in the two cases are expected to be substantively identical. Plaintiffs in both cases are represented by the same counsel. Given these similarities, these cases should be consolidated for all issues that can feasibly be decided in common. At a minimum, these cases should be consolidated for liability determinations. *Accord* Pls.' Mot. for Class Cert. at 4 n.4, filed Aug. 21, 2007 (plaintiffs' statement that "*Birdbay* Plaintiff's and the Plaintiff's in this action have common counsel and it is likely that interest of judicial efficiency would be served by consolidating *Birdbay* and this case for briefing and decision on common legal issues").

---

However, this Court has not yet ruled on class certification.

The instant case was filed prior to *Bird Bay*. For that reason, the United States suggests that the Court issue an order consolidating the two cases for purposes of liability determination. See RCFC 40.2(b)(3) (permitting the assigned judge of the earliest-filed case to determine, in coordination with the judge assigned to the indirectly-related case, what action is appropriate).

**Paragraph 4.c. Bifurcation**

The parties agree that this case should be bifurcated into a liability phase and a valuation phase.

**Plaintiffs' Statement:**

The Plaintiff proposes that this case be managed in the same manner as agreed to by the parties and ordered by the court in other Trails Act taking cases. Specifically as follows:

The Plaintiffs believe that the initial issue of whether the National Trails System Act Amendments of 1983, 16 U.S. C. §1247 (d) ("Trails Act") and action of the federal Surface Transportation Board ("STB") pursuant to the Trails Act constituted a taking of the named Plaintiff's property should be determined upon an initial motion for summary judgment heard before closing the class and before determining the damages for any such taking. This same approach of resolving the government's liability as to the named plaintiffs (upon initial cross motions for summary judgment) prior to closing the class was agreed to by the Defendant and property owners and ordered by the Court in similar Trails Act class action takings cases. (see, *Illig v. United States* 98-934L, *Miller v. United States,* 03-2489L and *Moore v. United States*, 93-134L. Joint Stipulation and Order in *Illig* attached as Exhibit "B-1" and "B-2".)

The Plaintiffs further believe that waiting to resolve this question of the government's liability until after closing the class would potentially involve a needless waste of substantial

resources by the government, this Court and the Plaintiffs. Should this Court conclude that – under Florida law and the terms of the relevant conveyance instruments – the railroad acquired fee title to the property upon which the railroad right-of-way was constructed, which railroad right-of-way is now subject to the Trails Act by reason of the STB's April 2004 NITU, there would be no need of notifying potential class members or of considering potential claims of opt-in class members. The Plaintiffs further note that this issue of the government's liability for a taking of the named Plaintiff's property can be determined upon the basis of established Florida law and those instruments recorded with the Sarasota County Recorder of Deed's Office, most of which are included as exhibits to pleadings already filed in this case. As such, only very limited discovery is required to resolve this issue. The Plaintiffs anticipate filing a motion for partial summary judgment on this issue on or before October 19, 2007.

Should it be determined that the government is liable for a taking of the named Plaintiff's property, the case can proceed to valuation of the property interests that have been taken in a manner similar to that adopted by the Court in *Miller* and *Illig*.

**The United States' Position:**

The United States believes that this case should be bifurcated into a liability and valuation phase. Plaintiffs' proposal discussed above, however, is grossly inefficient. Plaintiffs have filed a motion for class certification, and the United States indicated no opposition. That unopposed motion is currently pending before this Court. The United States believes that the Court should resolve Plaintiffs' motion for class certification and close the class prior to the filing of any summary judgment motion.

Plaintiffs have proposed that they file a motion for partial summary judgment before the

Court has had an opportunity to consider the class motion, and well before the proposed class closes. Unless and until the Court certifies this case as a class action, Plaintiffs' counsel of record has not been appointed as class counsel under RCFC 23(f) and cannot yet represent the interests of the class.

In addition, Plaintiffs' proposal would require the filing of summary judgment briefs before any documents have been exchanged and before the United States has had an opportunity to engage in any liability-related discovery. If Plaintiffs' proposed schedule is adopted, the government would have to brief liability issues without having an opportunity to learn who is asserting claims against it or what particular property interests are claimed by potential class members in this case. Plaintiffs' proposed schedule also eliminates any opportunity for the United States to consider whether it is necessary to file summary judgment briefs, or whether some liability-related issues can be resolved by negotiation.

In addition, the schedule proposed by Plaintiffs is inefficient. The property interests, if any, held by the named Plaintiffs may be very different than other potential members of a class, should one be certified. Plaintiffs' proposal will likely require the parties to file multiple summary judgment briefs – the first with respect to the named Plaintiffs and the second with respect to all other class members. Plaintiffs' proposal to resolve the government's liability for only the named Plaintiffs prior to the closing of a class, therefore, would be terribly inefficient.

Plaintiffs' statement that their proposal is the "same approach of resolving the government's liability" is incorrect. In each of the cases cited by Plaintiffs – Illig, Miller, and Moore – plaintiffs' counsel first moved for class certification, class was defined and certified, notice was transmitted, and individuals were provided an opportunity to join into the class before the question of liability was briefed. *See Illig v. United States*, Case No. 1:98-cv-00934-EGB at Docket Nos. 42-60; *see also*

*Miller v. United States,* Case No. 1:03-cv-02489-EGB, at Docket Nos. 11, 20, 21, 25, 27-32, 44 (showing that motion for class certification was filed, the class was defined, potential members were notified, and a book indexing the claims was prepared, prior to motions for summary judgment); *Moore v. United States,* Case No. 1:93-cv-00134-EGB at Docket Nos. 4, 47, 51, 54, 56, 74, 75) (showing that motion for class certification was filed, the class was defined, and potential class members were notified prior to motions for summary judgment). The United States' proposal is in accordance with this past procedure, and is the most efficient course.

**Paragraph 4.d. Deferral of Case**

The parties do not believe this case should be deferred and the parties are not aware of any case pending before this Court which would necessitate the deferral of this action.

**Paragraph 4.e. Remand or Suspension**

The parties are not seeking a remand or suspension.

**Paragraph 4.f. Additional Parties**

The parties do not anticipate joining additional parties but notes that Plaintiffs have moved for class certification and the United States did not oppose that motion.

**Paragraph 4.g. Dispositive Motions and Proposed Schedule**

**Plaintiffs' Statement:**

The Plaintiff's anticipate filing a Rule 56 motion for partial summary judgment on the issue of the government's liability for taking the named plaintiff's property and the issue of what interest the railroad had to use the property subject to the NITU under Florida law and the terms of the relevant conveyance instruments and whether the scope of this easement did or did not include the right to use the property for a recreational public-access trail.

The Plaintiff's anticipate having this motion filed on or before October 19, 2007.

**Defendant's Statement:**

At this time, the United States does not intend to file a motion for judgment on the pleadings. As discussed above, the United States believes the Court should issue a decision on Plaintiffs' unopposed motion for class certification, and – if granted – close the class prior to the initiation of any liability-related briefing. Once these class issues have been resolved, the United States will likely need to engage in liability-related discovery before determining whether it intends to file a motion for summary judgment. It is premature to propose a briefing schedule prior to resolution of these class action-related matters. In addition, as discussed above, the United States suggests that the briefing schedule in this case should be coordinated with briefing in *Bird Bay*.

**Paragraph 4.h. Relevant Issues**

**Plaintiffs' Statement:**

The Plaintiffs believe that the relevant factual and legal issues are stated as follows:

1. Under Florida law and the terms of the relevant conveyance instruments, what was the nature of the interest originally acquired by the railroad company and, correspondingly, the nature of the interest retained by the original grantors, if any?

2. If the railroad obtained only an easement or license to use the Plaintiff's property for operation of a railroad, under the terms of the relevant conveyance instruments and Florida law, has that easement been abandoned by the railroad or otherwise extinguished by operation of Florida law and the terms of the relevant conveyance instruments?

3. Under Florida law and the terms of the relevant conveyance instruments, did the

railroad's right to use property owned by the Plaintiffs include the right to convey the property to a non-railroad for use as a public access recreational trail?

4. Under Florida law, were the plaintiffs the owners of an interest in property subject to the NITU on April 2, 2004, the date on which the STB issued the NITU? (See, *Caldwell v. United States*, 391 F3d 1226 (Fed. Cir., 2004), *Barclay v. United States*, 443 F 3d. 1368 (Fed. Cir. 2006).)

5. Did the STB's issuance of a NITU pursuant to the Trails Act result in the taking of an interest in property owned by Plaintiffs under Florida law? (See, *Preseault v. United States*, 494 U.S. 1 (1990), *Preseault v. United States*, 100 F 3d 1525 (Fed. Cir. 1996).)

6. If the Court determines that there has been a taking of Plaintiffs□ interest in their property, what is the amount of "just compensation" due to each Plaintiff under the Fifth Amendment for the value of the Plaintiffs' property taken, as valued on the date of taking?

7. If the Court determines that there has been a taking of Plaintiff's interest in their property, what is the amount of "just compensation" due each Plaintiff under the Fifth Amendment for the delay between the date the Plaintiff's property was taken and the date the government finally pays compensation for the value of the property that was taken?

8. If the Court determines that there has been a taking of Plaintiff's interest in their property, what amount of "costs, disbursements and expenses, including reasonable attorney, appraisal and engineering fees," are owed the Plaintiffs pursuant to the Uniform Relocation Assistance and Real property Acquisition Policies Act of 1970, 42 U.S.C. §4654 (c)?

**The United States' Position:**

The United States believes that the relevant factual and legal issues are states as follows:

1. Did the STB's issuance of a NITU on April 2, 2004, effect a taking of Plaintiffs'

properties in violation of the Fifth Amendment to the United States Constitution?

2. If the Court determines that the United States is liable for an unconstitutional taking, what amount of compensation are Plaintiffs due?

**Paragraph 4.i. Likelihood of Settlement and Contemplation of ADR**

The parties agree that further exploration of the facts is necessary before they can determine the likelihood of settlement. The parties further agree that they will consider the possible use of alternative dispute resolution procedures after exploration of the underlying facts.

**Paragraph 4.j. Likelihood of Trial**

At this time, the parties do not believe that a trial will be necessary to determine the United States' liability. The parties do not believe an expedited trial schedule is appropriate for this case. If a trial is necessary, the parties jointly request that such trial be held in Florida, at a location in or near Sarasota County.

**Plaintiffs' Additional Statement:**

If the government is found liable, Plaintiffs believe that a trial may be required to determine the value of the property taken.

**The United States' Additional Statement:**

In the even that it is found liable, the United States believes that a trial may be required to determine the proper quantum of just compensation.

**Paragraph 4.k. Electronic Case Management Needs**

The parties are not aware of any special issues regarding electronic case management needs that the Court should be aware of at this time.

**Paragraph 4.l. Other Information**

The parties are not aware of any other information of which the Court should be aware at this time.

**Paragraph 5. Discovery Plan**

**Plaintiffs' Statement:**

The Plaintiff believes that only limited discovery is required to address the legal issues in the initial cross motions for partial summary judgment on the question of what interest the railroad obtained in the property upon which the railroad right-of-way was constructed and whether the named Plaintiffs are the owners of property that is subject to the NITU. The relevant instruments are public records maintained in the Sarasota County Recorder of Deeds office and in the records of the Surface Transportation Board.

The Plaintiff's believe that more extensive discovery should await a decision by this Court on the party's cross motions for summary judgment on the question of the governments' liability to the named Plaintiffs. Should this Court find that the government has taken an interest in the named Plaintiff's property, the Plaintiff's propose that within 15 days of that decision the parties submit to the Court a proposed Joint Status Report proposing timeframes for discovery related to any claims by opt-in class members and property valuation and damages.

**Defendant's Statement:**

The United States believes it is premature to propose a discovery plan prior to resolution of certain class action-related matters. In addition, in order to preserve judicial and attorney resources, the United States feels that any discovery plan in this case should be coordinated with a discovery plan in *Bird Bay*.

This Joint Preliminary Status Report has been jointly prepared by the parties and filed by Plaintiffs at the request of the Defendant.

Respectfully submitted this 9th day of October 2007,

Mark F. (Thor) Hearne, II
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
970-369-1000 (phone)
970-369-1009 (fax)

Counsel for Plaintiffs

RONALD J. TENPAS
Acting Assistant Attorney General

/s/ Mark T. Romley
Mark T. Romley
William Shapiro
United States Department of Justice
Environment and Natural Resources Division
Natural Resources Section
601 D St., NW
Room 3533
Washington, DC 20004
(202) 305-0458 (phone)
(202) 305-0506 (fax)

Counsel for Defendant.

Of counsel:
Evelyn Kitay
Surface Transportation Board
Washington, DC

# In the United States Court of Federal Claims

(Filed: October 19, 1998)

* * * * * * * * * * * * * * * * * * *

MAURICE L. &
DELORES J. GLOSEMEYER,

Plaintiffs,

v. No. 93-126L

THE UNITED STATES,

Defendant.

* * * * * * * * * * * * * * * * * * *

DOROTHY M. MOORE,
HAWTHORNE ENTERPRISES,
INC., ETC.,

Plaintiffs,

v. No. 93-134L

THE UNITED STATES,

Defendant.

* * * * * * * * * * * * * * * * * * *

THE TOWN OF GRANTWOOD
VILLAGE,

Plaintiff,

v. No. 98-176L

THE UNITED STATES,

Defendant.

* * * * * * * * * * * * * * * * * * *

EXHIBIT
A-1

## ORDER

Argument was held on October 16, 1998 on the request of the parties in *The Town of Grantwood Village v. United States* in their Joint Status Report of September 15, 1998, that these actions be consolidate for the limited purposes of hearing argument on common legal issues. Counsel for the Government in the two other captioned cases and for the plaintiffs in those actions do not oppose the request. The court agrees that, pursuant to RCFC 42 (a),[1] limited consolidation is appropriate in an effort to brief and argue common questions of law. The parties in *Glosemeyer* have previously cross-moved for summary judgment and consolidation is not intended to limit the issues currently joined in those motions. Accordingly, the following is ordered:

1. The parties shall attempt to identify those questions common to all three actions. Counsel for the Town of Grantwood Village shall initiate the process by sending a proposed list of these common questions to all parties. Once agreement is reached, a copy of the list of issues will be sent to chambers.

2. On or before November 20, 1998, plaintiffs in *Grantwood* and *Moore* will file motions for partial summary judgment addressed to common legal issues. By that same date plaintiffs in *Glosemeyer* will file supplemental briefing, limited to twenty pages of text, in support of their pending motion for summary judgment. Plaintiffs need only serve the opposing party in their respective case and amicus in *Glosemeyer* with a copy of their motion or supplemental brief.

3) Within the period allowed by the rules, defendant will file cross motions for summary judgment in *Moore* and *Grantwood* By that same date it will file its supplemental response brief in *Glosemeyer*, limited to twenty pages of text, if it is a separate document from the *Grantwood* and *Moore*.

---

[1]RCFC 42 (a) provides:

> . . . .When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all actions consolidated; and it may make such orders concerning the proceedings therein as may tend to avoid unnecessary costs or delay.

The defendant may elect to use a single brief in two or more of these cases, although separate captioning and filing is to be maintained. Plaintiffs will respond and reply within the period allowed by the rules to the cross motions and responses in *Moore* and *Grantwood*. Within that same period of time plaintiffs in *Glosemeyer* will reply to the Government's response to their supplemental briefing.

4) The court believes that reply briefing is unnecessary beyond that specified above. If defendant believes that an additional round of reply briefing is necessary, it may make such a motion.

5) Amicus in *Glosemeyer* will file its supplemental brief, limited to twenty pages of text, within the period of time allowed to defendant to file its cross motion in paragraph 3. It will not file a reply brief.

6) Separate captioning will be maintained in all cases. However, in all three cases, defendant will serve copies of its filings on counsel for all three plaintiffs, as well as on amicus.

7) This order will be filed in all three actions.

ERIC G. BRUGGINK
Judge

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| MAURICE L. & DELORES J. GLOSEMEYER, Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | No. 93-126 L<br>Judge Bruggink |
| DOROTHY M. MOORE, HAWTHORN ENTERPRISE, INC., a Missouri Corp., et. al, Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | No. 93-134 L<br>Judge Bruggink |
| THE TOWN OF GRANTWOOD VILLAGE, Plaintiff, v. THE UNITED STATES OF AMERICA, Defendant. | No. 98-176L<br>Judge Bruggink |



EXHIBIT
tabbies
A-2

## JOINT STATUS REPORT

The parties to the above actions respectfully submit the following status report:

1. Pursuant to the Court's Order of October 19, 1998, counsel for the parties to Grantwood v. United States, 98-134 L, have been working with counsel for the parties in Glosemeyer v. United States, 93-126 L, and Moore v. United States, 93-134 L, to develop a list of issues that present questions of Missouri real estate law that are common to all three cases.

2. Under the Court's Order of October 19, 1998, as modified by the Court's Order of November 13, 1998, the plaintiffs in these three actions are to file their respective Motions for Partial Summary Judgment on or before January 20, 1999, briefing these common issues of Missouri law.

3. As of the date of this filing, the parties, in good faith and with due diligence, have been unable to reach a consensus about the issues to be briefed.

4. Plaintiffs in the three cases believe that the issues fall into two broad categories of "abandonment of easement or license" and "scope of easement or license." Under these categories, the plaintiffs submit the following list of issues to be briefed:

(I) Abandonment

(a) What is the legal standard applicable to abandonment of a railroad easement (or license) under Missouri Law?

(b) Do the actions of the easement or license holder (i.e., non-use of the rails, application for abandonment, railbanking, or conveyance for interim trail use) satisfy the legal standard for abandonment?

(c) Does "railbanking" for possible future use preserve the original easement or license granted by predecessors in title, from extinguishment by abandonment?

(II) Scope

(a) What is the scope of the easement or license held by the railroad under Missouri law?

(b) Is railbanking within that scope, or does it constitute the taking of a new easement for a new purpose?

(c) Is interim trail use within the scope of the original easement or license held by the railroad?

(d) What is the legal effect of interim trail use?

Plaintiffs believe that the above issues could be presented to the Court in a dispositive motion for partial summary judgment with limited discovery.[1] In the case of Grantwood Village, Plaintiffs could establish the factual basis necessary to present the legal issues common to other cases if the Government would admit the authenticity of certain official documents filed in the office of the St. Louis County Recorder of Deeds, a survey describing the physical location of these recorded instruments, documents filed with the Interstate Commerce Commission, correspondence from President Grant maintained as historical record in the University of Illinois archives, and the business records of Missouri Pacific Railroad. Grantwood Village intends to

[1] The Moore plaintiffs, however, believe that more extensive discovery is appropriate concerning abandonment issues in their case. Pursuant to the court's November 13, 1998, order, the Moore plaintiffs are preparing to take this discovery.

file its Request for Admission requesting the Court to acknowledge these documents. Grantwood Village objects to the Government's proposal, *infra* paragraph 5, that this Court "assum[e] that the interest owned by each particular railroad was an easement for railroad purposes." In the case of Grantwood Village, there is no known instrument in the chain of title creating a railroad easement. Rather, as the official records for the St. Louis County make clear, the railroad's sole interest in the property was either an unrecorded license or an unrecorded "easement by estoppel" arising by operation of Missouri law.

5. Defendant proposes that for the limited purposes of the dispositive motions in Moore and Grantwood Village, and the supplemental brief in Glosemeyer, the Court adopt the assumption that the interest owned by each particular railroad was an easement for railroad purposes. The parties would then address the issue of whether the federal ICC/STB orders effected a taking. Thus, the Court would address whether the railroad easements would have been extinguished, but for federal ICC/STB action preempting state law. We would propose the issues be formulated, as follows:

I. Did the ICC/STB Orders Effect a Taking of Plaintiffs' Property?

a) Does railbanking under the Rails-to-Trails Act constitute use for railroad purposes under Missouri law?

b) What is the legal effect of the right-of-way being used in the interim as a trail?

Defendant believes the above issues address the core of the common legal issues, taking due account of the discussion with the Court at the October 16, 1998, status conference.

Moreover, defendant notes the issues proposed by plaintiffs which go beyond those set

forth by the government would entangle the parties in a myriad of factual matters unique to the respective plaintiffs, and for which substantial discovery would be warranted. For example, the question of whether there has been an abandonment of particular sections of a right of way would require considerable factual discovery as well as resolution of factual issues by the court, a difficult task in the context of motions for summary judgment. Also, the license/easement issue raised by Grantwood Village is unique to its case, and its resolution would require significant additional effort beyond the basic approach of addressing the core Missouri state law issues which are common to all three suits -- as was envisioned during the consolidated conference with the Court held in October regarding these matters.

Accordingly, defendant has presented a more focused list of proposed issues, because of our belief that the delay required for the conduct of substantial discovery is inconsistent with the objective of consolidating these matters for an expeditious examination of core common issues of Missouri state law.

6. To the extent it would assist the Court, the parties respectfully submit their availability to participate in a telephonic status conference.

Plaintiffs' counsels for these three matters have reviewed the above, and have authorized defense counsel to sign this joint status report on their behaves.

Thomas L. Halkowski

THOMAS HALKOWSKI
LISA A. HOLDEN
JOEL ARMSTRONG
General Litigation Section
Environment & Natural Resources Division
U.S. Department of Justice
P.O. Box 663
Washington, DC 20044-0663
(202) 305-0474
Attorneys for Defendant

Dated 12/7/98

Of Counsel:

Evelyn Kitay
Surface Transportation Board
Office of General Counsel
Washington, D.C.

Mark F. Hearne, II / by Thomas Halkowski

MARK F. HEARNE, II
THOMAS D. BROWN
Lathrop & Gage, L.C.
1010 Market Street, Suite 1300
St. Louis, MO 63101-2000
(314) 613-2500; (314) 613-2550(f)

Attorneys for Plaintiff in 98-176L

Dated 12/7/98

William J. Travis / by Thomas Halkowski

WILLIAM J. TRAVIS
NORMAN W. PRESSMAN
STEPHEN ROBERT CLARK
Greensfelder, Hemker & Gale
2000 Equitable Building
10 South Broadway
St. Louis, Missouri 63102-1774
(314) 241-9090
Attorneys for Plaintiffs in 93-134L

Dated 12/7/98

William Perry Pendley / by Thomas Halkowski

WILLIAM PERRY PENDLEY
ADAM REEVES
Mountain States Legal Foundation
707 Seventeenth Street, Suite 3030
Denver, Colorado 80202
Attorneys for Plaintiffs in 93-126L

Dated 12/7/98

CERTIFICATE OF SERVICE

The undersigned certifies that on this 7th day of December 1998 a true and correct copy of the foregoing Joint Status Report was mailed via first class mail, postage prepaid to the following:

Mark F. Hearne, II
1010 Market Square
Suite 1300
St. Louis, MO 63101-2000

WILLIAM J. TRAVIS
NORMAN W. PRESSMAN
STEPHEN ROBERT CLARK
Greensfelder, Hemker & Gale
2000 Equitable Building
10 South Broadway
St. Louis, Missouri 63102-1774
(314) 241-9090
Attorneys for Plaintiffs in 93-134L

WILLIAM PERRY PENDLEY
ADAM REEVES
Mountain States Legal Foundation
707 Seventeenth Street, Suite 3030
Denver, Colorado 80202
Attorneys for Plaintiffs in 93-126L

Andrea Ferster
General Counsel,
Rails to Trails Conservancy
1100 17th Street, N.W.
10th Floor
Washington, D.C. 20036
202-974-5142

Jane Bamford

Jane Bamford

FILE

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| SARAH ILLIG, GALE ILLIG, for Themselves and as Representatives of a Class of Similarly Situated Persons | |
| Plaintiffs, | No. 98-934L |
| v. | Judge Bruggink |
| THE UNITED STATES OF AMERICA, | |
| Defendant. | |

**JOINT STIPULATIONS RELATED TO LIABILITY AND JOINT PROPOSAL REGARDING FUTURE PROCEEDINGS**

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment and Defendant's response thereto. Following a review of the issues addressed in the pending motion, the parties have agreed to stipulate to several liability-related matters. Since these stipulations resolve many of the issues presently before the Court, the parties have discussed and are herein proposing a schedule for future proceedings in this case.

A. JOINT STIPULATIONS

1. On December 30, 1992, Plaintiffs Sarah Illig and Gale Illig ("Illigs") held fee simple title to Lots Q and R of a Re-Subdivision of Lots 24 to 33 inclusive of Grantwood Terrace, and Lot Q abuts the railroad right-of-way now known as Grant's Trail.

2. The land owned by the Illigs was originally part of a larger parcel of land that was owned by President Ulysses S. Grant and that was the subject of a letter dated April 6, 1872, in which President Grant authorized his agent to grant Pacific Railroad Company a right-of-way.



EXHIBIT B-1

3. Under Missouri law, the legal effect of President Grant's 1872 letter and the railroad's subsequent use of the property for the operation of a railroad was an easement by estoppel in favor of the Pacific Railroad Company and its successors-in-interest. Grantwood Village v. Missouri Pac. R.R., No. 4:94CV302 TIA, slip op. (E.D. Mo. Sept. 13, 1995), aff'd, 95 F.3d 654 (8th Cir. 1996). This easement by estoppel was limited to use of the property for railroad purposes.

4. On February 7, 1992, the MoPac submitted a Notice of Exemption under 49 C.F.R. § 1152.50 with the Interstate Commerce Commission (now the Surface Transportation Board) seeking authorization to abandon railroad service over the Carondelet Branch.

5. By letters dated January 27, 1992, and February 12, 1992, Gateway Trailnet, Inc.,a Missouri not-for-profit corporation, sought to establish railbanking and interim trail use of the right-of-way under the National Trails System Act, 16 U.S.C. § 1247(d), and 49 C.F.R. § 1152.29.

6. On March 25, 1992, the ICC issued a Notice of Interim Trail Use ("NITU") for the subject right-of-way.

7. In accordance with the NITU, Gateway Trailnet and MoPac entered into a railbanking and interim trail use agreement and, on December 30, 1992, MoPac transferred its interest in the subject right-of-way to Gateway Trailnet by a quitclaim deed.

8. MoPac has removed its rails and ties from the subject right-of-way.

9. Since December 30, 1992, the railroad easement that previously burdened the Illigs' property has been railbanked and made available for interim trail use in accordance with

the National Trails System Act, 16 U.S.C. § 1247(d). Plaintiffs maintain that the railroad easement was abandoned under Missouri state law on or before March 25, 1992. Defendant disagrees that there was an abandonment on or after that date, but the parties agree that the precise timing of any abandonment under state law is not relevant to these liability-related stipulations.

## B. JOINT PROPOSAL REGARDING FUTURE PROCEEDINGS

### 1. Plaintiffs' Pending Motion for Partial Summary Judgment

As a result of the stipulations set forth herein and this Court's prior ruling in Glosemeyer v. United States, 45 Fed. Cl. 771 (2000), the parties agree that Plaintiffs' Motion for Partial Summary Judgment should be granted as to the named plaintiffs, Sarah Illig and Gale Illig. The parties further agree that this grant of summary judgment on the question of liability will be applicable to all class members who are hereafter found–by stipulation or court order–to have held fee title on December 30, 1992, to property which is subject to the railroad easement that has been railbanked and made available for interim trail use under 16 U.S.C. § 1247(d).

### 2. Closure of the Class

In accordance with the Court's Order of December 26, 2000 (and subsequent modifications thereto), Plaintiffs have submitted the required information for each proposed class member, and all objections that could be lodged by Defendant "based upon the face of the Entries of Appearance and attached documents" have been raised and resolved.

Defendant agrees that the documents submitted by Plaintiffs establish that each proposed class member acquired an ownership interest in land abutting the subject right-of-way prior to the December 30, 1992 date of taking. However, Defendant does not agree that such

documentation conclusively establishes that the proposed class members have the same ownership interest in the subject right-of-way as the Illigs. Instead, due to the recent discovery of the ICC Schedule of Lands Owned or Used for Purposes of a Common Carrier for the subject right-of-way (previously submitted as Def's Supp. Ex. 1 in Def's Appendix of Supp. Exhibits, dated July 30, 2001 and hereinafter referred to as the "ICC Documents"), Defendant believes that additional documentation regarding title to certain parcels o property within the subject right-of-way may exist.

Accordingly, the parties request that the Court's final determination regarding class membership and closure of the class be deferred for approximately three months so that Defendant can determine whether it has any further objections related to title based upon the ICC Documents and matters referred to in, or discovered as a result of, the ICC Documents as to those properties that are identified therein as having been transferred to the railroad by an instrument of conveyance. The parties will attempt to resolve all title-related objections, but propose that the Court issue a scheduling order providing that any unresolved objections raised by Defendant will be filed by Defendant on or before January 4, 2002, and that Plaintiffs' responses shall be filed on or before February 15, 2002. If Defendant has no further objections, the parties propose to file a joint status report closing the class on or before January 4, 2002.

3. Damages Proceedings

To avoid any delay in the final resolution of this case, the parties agree that their work on the question of just compensation can proceed simultaneously with the remaining title-related work, although that work cannot be completed prior to closure of the class. For that reason, the parties propose that the Court issue a scheduling order setting the following deadlines for the disclosure of expert reports related to just compensation:

| | |
|---|---|
| Deadline for the Exchange of Expert Reports Related to Just Compensation | March 4, 2002, or 60 days following closure of the class, whichever is later. |
| Deadline for Expert Depositions | April 18, 2002, or 6 weeks following the exchange of expert reports, whichever is later. |

If a trial on the question of just compensation is required for some or all of the class members, the parties anticipate that they will be ready to proceed to trial by June 2002.

To expedite the filing of this joint submission, Plaintiffs' counsel of record has authorized the undersigned counsel of record for Defendant to sign this submission on his behalf.

Dated this 17th day of October, 2001.

Respectfully submitted,

Mark F. Hearne II by Kristine S. Tardiff
MARK F. HEARNE, II
AMY E. MARCHANT
LATHROP & GAGE, L.C.
1010 Market Street, Suite 1300
St. Louis, MO 63101-2020
Tel: (314) 613-2500
Fax: (314) 613-2550

Attorneys for Plaintiffs Sara and Gale Illig and Members of the Class

Kristine S. Tardiff
KRISTINE S. TARDIFF
U.S. Department of Justice
Environment & Natural Resources Div.
General Litigation Section
55 Pleasant Street, Room 352
Concord, NH 03301
Tel: (603) 225-1562 ext. 283
Fax: (603) 225-1577

Attorney for Defendant United States

## CERTIFICATE OF SERVICE

The undersigned certifies that on this 17th day of October, 2001, a true and correct copy of the foregoing **Joint Stipulations Related to Liability and Joint Proposal Regarding Future Proceedings** was sent by facsimile and first class U.S. mail, postage prepaid, to the following counsel of record:

Mark F. Hearne, II
Amy E. Marchant
1010 Market Street
Suite 1300
St. Louis, MO 63101-2000
Fax: (314) 613-2550

Kristine S. Tardiff
KRISTINE S. TARDIFF

TARDIFF

# In the United States Court of Federal Claims

No. 98-934L
(Filed: October 22, 2001)

FILED
OCT 2 2 2001
U.S. COURT OF FEDERAL CLAIMS

******************************
SARAH ILLIG and GALE ILLIG, for themselves, and as representatives of a class of similarly represented persons,

Plaintiffs,

v.

THE UNITED STATES,

Defendant.
******************************

01 OCT 23 AM 11:20
DEPARTMENT OF JUSTICE GENERAL LITIGATION SECTION

ORDER

The court has received the parties "Joint Stipulations Related to Liability and Joint Proposal Regarding Future Proceedings," filed October 18, 2001. In accordance with the joint stipulations and the parties' proposal, the following is ORDERED:

1. Plaintiffs' March 2, 2001 motion for partial summary judgment is granted with respect to named plaintiffs Sarah and Gale Illig. Determination of liability with respect to other individuals will await final determination of membership in the class.

2. Defendant will file any objections it has to inclusion of specific individuals in the class on or before January 4, 2002. Plaintiffs shall file any responses to any objections on or before February 15, 2002. If defendant does not file objections on or before January 4, 2002, the parties will file a joint status report by that same date proposing the closure of the class.

EXHIBIT B-2

90-1-23-09440

3. Pending final resolution of class membership and of liability, the parties may proceed with discovery on the question of just compensation. On or before March 4, 2002, or 60 days after closure of the class, whichever is later, the parties will exchange expert reports related to just compensation. On or before April 18, 2002, or six weeks following the exchange of expert reports (whichever is later), all depositions of experts shall be concluded.

4. Further scheduling will be deferred until resolution of class membership.

ERIC G. BRUGGINK
Judge