**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. and LINDA L. ROGERS, Husband and Wife, | ) | |
| et. al | ) | Hon. Mary Ellen Coster Williams |
| For Themselves and As Representatives of a Class of Similarly Situated Persons, | ) | No. 07-273 L |
| Plaintiffs, | ) | |
| vs. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFFS' PROPOSED ORDER FOR CLASS CERTIFICATION**

Plaintiffs have filed a motion to certify this action as a class action, as well as a memorandum in support thereof. (Doc. No. 12). This class would consist, according to Plaintiffs, of "all those owners of property in Sarasota County, Florida whose property has been taken or damaged as a result of the conversion of the Venice Branch of the Seminole Gulf Railway to a public use trail pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act") and that Notice of Trail Use ("NITU") issued by the Surface Transportation Board ("STB") on April 2, 2004." (Doc. No. 12). Defendant has consented to Plaintiffs' Motion, stating, "Defendant has reviewed plaintiffs' motion and memorandum and, based on prior precedent that has found class certification to be appropriate in "rails-to-trails" takings cases, does not oppose the granting of that motion." (Doc. No. 13).

On October 18, 2007, this Court held a hearing wherein this Court requested the parties to submit a Joint Proposed Order for Class Certification. However, because of the parties' conflicting schedules, the parties were unable to prepare a Joint Proposed Order in a timely fashion. To avoid any unnecessary delay, Plaintiffs filed their Proposed Order for Class Certification.

Even though the parties do not contest class certification, it is nonetheless the duty of this Court to make its own independent review and analysis. This Court notes that Rule 23 of the U.S. Court of Federal Claims, the applicable rule for class actions, is largely patterned after Rule 23 of the Rules of Federal Procedure. Rule 23 of the U.S. Court of Federal Claims, however, is unlike Rule 23 of Federal Procedure in that it only considers class actions with a proposed "opt-in" procedure and

not those with a "opt-out" procedure for notifying class members. As a number of cases, particularly those pertaining to rails-to-trails litigation, have been certified as opt-in class actions, we find class certification in this case to not only be appropriate, but also consistent with Rule 23 of the U.S. Court of Federal Claims. As noted, the Defendant does not contest class certification.

This Courts finds as follows:

## I. BACKGROUND

Plaintiffs seek certification of a class that would include all owners of property in Sarasota County, Florida whose property has been taken or damaged as a result of the conversion of the Venice Branch of the Seminole Gulf Railway to a public-access recreational trail. Plaintiffs assert that they, together with approximately 500 other land owners, are entitled to "just compensation" under the Fifth Amendment for property taken by the United States pursuant to the Trails Act and NITU issued by the STB on April 2, 2004. All of this property abuts or underlies the approximately 12.4 mile long former railroad corridor from Sarasota to Venice, Florida.

## II. APPLICABLE LAW

A Plaintiff seeking class certification under Rule 23 of the U.S. Court of Federal Claims must demonstrate that the action satisfies seven threshold requirements:

> (1) the members must constitute a large but manageable class; (2) there is a question of law common to the whole class; (3) this common legal issue is a predominant one, overriding any separate factual issues affecting individual class members; (4) the claims of the present plaintiffs are typical of the claims of the class; (5) the Government has acted on grounds generally applicable to the whole class; (6) the claims of the class members are so small that it is doubtful that they would be pursued other than through this case; and (7) the current plaintiffs will fairly and adequately protect the interests of the class without conflict of interest.

*See Quinault Allottee Association and Individual Allottees v. United States*, 453 F.2d 1272 (Cl. Ct. 1972).[1] These seven criteria encompass the prerequisites for a maintainable class action under Rule 23(a) and (b) of the Rules of the U.S. Court of Federal Claims ("RCFC"). In addition, a court reviewing certification should ask whether certification "would serve the interests of justice by addressing possible statute of limitations problems or other concerns." *Favreau*, 48 Fed. Ct. at 776-77.

---

1 *See also Favreau, II v. United States*, 48 Fed. Cl. 774, 776-77 (Fed. Cl. 2000). The *Quinault* opinion set out an eighth factor – whether individual suits would create a risk for inconsistent adjudications. Given the Federal Circuit's appellate jurisdiction over Tucker Act and "little Tucker Act" decisions, the eighth factor is not applicable here. *See Christian, II v. United States*, 46 Fed. Cl. 793, 816 (2000) (*citing Berkley v. United States*, 45 Fed. Cl. 224, 234 (1999).

According to RCFC 23(c)(1), "the court must – at any early practicable time – determine by order whether to certify the action as a class action." RCFC 23(c)(1)(A). "An order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g). RCFC 23(c)(1)(B).

In appointing class counsel, the court must consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation and claims of the type asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources counsel will commit to representing the class. RCFC 23(g)(1)(C)(i).

## III. DISCUSSION OF REQUIREMENTS FOR CLASS CERTIFICATION

### A. <u>*Quinault* criteria for certification of a class action.</u>

This Court finds that Plaintiffs have satisfied the seven *Quinault* criteria for certification of a class action.

#### 1. <u>The proposed members constitute a large, but manageable class</u>.

Based on Plaintiffs' initial review of the records of the Sarasota County Tax Assessor and Record of Deeds and work of a title company retained by Plaintiffs' counsel, Plaintiffs' counsel estimates that there are approximately 500 or more individuals or entities who owned fee parcels of property along the Venice Branch of the former railroad right-of-way on the April 2, 2006 NITU date. This proposed class number satisfies the "large" size criterion.

Moreover, the class is "manageable" in that the potential class members are identifiable and reachable. *See Favreau, II*, 48 Fed. Cl. at 777. The entire class is identifiable through a search of the records of the Sarasota County Tax Assessor and Recorder of Deeds that maintains mailing addresses for all property owners. Likewise, the potential class members are reachable by class notification. In prior class certified Trails Act cases, this Court required that notice of the lawsuit shall be sent via first class mail to all fee owners of affected land who held title on the purported date of taking and published in the local community newspaper and other community publications. In this case, Plaintiffs have proposed a method for both forms of notification.

Based on the foregoing, this Court finds that the proposed class members constitute a large, but manageable class.

#### 2. <u>The claims of all potential class members turn on legal issues common to the entire proposed class</u>.

The principal legal issue in this case is whether the conversion of the approximate twelve mile long corridor, once used as a railroad and subsequently conveyed to The Trust for Public Land for use as a public-access recreational trail under the Trails Act, constitutes a taking under the Fifth Amendment. To address this issue, two questions must be answered: (1) did Plaintiffs own the property on the date of the April 2, 2004 NITU; and (2) did application of the Trails Act take the owners' "reversionary" right to use and occupy their property.

These legal issues are common to the entire proposed class, and thus, Plaintiffs have satisfied the second *Quinault* criterion.

3. The common legal questions predominate and override any separate factual issues affecting the individual members.

The proposed class members share common factual issues of title and, where these factual issues are unique, they are not significant. The critical issue common to all potential class members is whether the Seaboard Air Line Railway acquired fee title or only an easement when the right-of-way was initially established in 1910. The subsequent chain of title, including subsequent conveyances, name changes, etc., is irrelevant to this common threshold issue.

The varying damages are also irrelevant to the common issue. Because each parcel of land is unique in size, the extent of damages will vary by class member. However, this issue can be easily remedied in that the damages for each class member can be computed mechanically. This Court notes that counsel for both Plaintiffs and the Government have previously agreed upon property valuation approaches in similar Trails Act taking cases, and will be expected to attempt to do so in this case.

As such, the common legal issues predominate and override any separate factual issues affecting the individual class members.

4. The claims of the named plaintiffs are typical of the claims of the class.

This Court finds the "typicality" criterion to be satisfied. The named Plaintiffs and class members are all bringing claims premised upon a common legal theory of recovery under common principles of Florida real property law and by common application of the federal Trails Act which allegedly caused a taking of their property. Plaintiffs allege that the Trails Act operated by the STB's issuance of a single NITU, which applied equally to all claims. Further, the named Plaintiffs contend that they each own fee title to land along the right-of-way at issue, and as such, they mirror the entire class factually.

5. The Government has acted on grounds applicable to the whole class.

Plaintiffs allege that when the STB issued a NITU pursuant to the Trails Act that allowed the otherwise abandoned railroad right-of-way to be conveyed to a private trail group, the Government took the property of each proposed class member simultaneously and in the same manner. The STB's action in issuing the NITU and converting the railway into a public-access recreational trail has allegedly affected each potential class member in the same way. Accordingly to the Plaintiffs, each class member has been denied the right to enjoy his or her own property and use of the property has been confiscated for benefit of the general public as a public-access recreational trail. As such, this Court finds that Plaintiffs have satisfied this fifth *Quinault* criterion.

6. Some of the class members' claims are fairly small, creating doubt that individual claims would be pursued if certification denied.

Plaintiffs claim that a class action is the only viable way for many putative class members to bring their claims. Because this case involves land encumbered by a railroad easement, some of the properties (especially residential property) are quite small in length. As such, these property owners are unlikely to incur the costs of attorney's fees and other costs of bringing an individual claim. Likewise, it is not feasible for each and every landowner to separately initiate litigation against the U.S. Government. Consequently, a class action is the most efficient method for the class members, especially those with small claims, to pursue litigation. If certification were denied, it is unlikely that these class members would pursue their claims. As such, this Court finds this *Quinault* criterion satisfied.

7. The named Plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest.

This Court finds that the named Plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest. The named Plaintiffs are represented by experienced and skilled counsel who has extensive experience with Rails-to-Trails litigation. As described in more detail below, Plaintiffs' counsel is more than qualified for this litigation and will fairly and adequately protect the interest of the class.

Moreover, none of the named Plaintiffs has a conflict of interest concerning this matter. All damage that could possibly be done to each class member in this case has already occurred; no further damages could happen to one member thereby creating a separate cause of action for that class member. Each named Plaintiff seeks the same objective as the other class members – to recover "just compensation" – the appropriate award for property taken by the U.S. Government. The type of conflict between class members that was present in *Amchem Products, Inc. v. Windsor*, 117 S.Ct. 2231 (1997) is not present in this case.

This Court therefore finds that the named Plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest.

### B. Class certification must serve the interests of justice.

Class certification is the most efficient way to proceed in this case, and as such, serves the interests of justice. According to Plaintiffs' estimates, the number of potential class members could potentially exceed 500 similarly situated fee owners along the Venice Branch of the former railroad right-of-way in Sarasota County, Florida. The judicial efficiency of avoiding a scenario where hundreds of individuals either seek to join a lawsuit or initiate their own separate lawsuits weighs heavily in favor of class certification.

Further, the opt-in procedure used by this Court comports with this Court's limited equitable jurisdiction and is the most efficient way to proceed in the interests of justice.

## IV. DISCUSSION OF REQUIREMENTS FOR APPOINTMENT OF CLASS COUNSEL

### (A) Class Counsel has made considerable efforts to identify and investigate claims in this action.

Class Counsel has retained Commonwealth Title Company, which has completed a review of the land title records of the Sarasota County Recorder of Deeds' Office and the Sarasota County Property Appraiser's Office to identify those individuals or entities that, on April 2, 2004, owned an interest in the property abutting or underlying the 12.43 mile railroad right-of-way which was subject to the NITU issued by the STB on April 2, 2004. Based on this review as well as Counsel's own investigation and multiple meetings with the named Plaintiffs and other property owners, Counsel estimates that there are approximately 500 potential class members in this action.

### (B) Class Counsel has considerable experience in handling class actions, other complex litigation and claims of the type asserted in this action.

The Plaintiff's lead counsel, Mark F. (Thor) Hearne, II, is a member and principle with the law firm Lathrop & Gage L.C.. Mr. Hearne has more than twenty years of experience in real estate, land use regulation, and related federal and state litigation. Mr. Hearne has represented plaintiffs and defendants in state and federal class action litigation. Mr. Hearne is admitted to practice before the U.S. Supreme Court, the Supreme Courts of Michigan and Missouri and the U.S. Courts of Appeals for the Eighth, Seventh, Sixth and Second Circuits and in the Court of Appeals for the Federal Circuit. Mr. Hearne has received an "AV" rating from Martindale-Hubbell and has been selected as a Missouri/Kansas "Superlawyer" for 2005, 2006 and 2007 and was recently named one of Missouri's "Top Lawyers" by the *Missouri Lawyer Weekly*. Mr. Hearne has represented clients in numerous federal civil rights litigation involving constitutional (including Fifth Amendment) claims. Mr. Hearne has testified concerning matters of constitutional and civil rights law before the U.S. Senate Judiciary Committee, U.S. House of Representatives Committee on Administration and various other federal agencies including the U.S. Commission on Civil Rights.

Further, and of particular relevance to this action, Mr. Hearne has extensive experience practicing before this Court representing property owners in Trails Act taking cases. Mr. Hearne has represented (or is currently representing) property owners in eight different Trails Act taking cases. (*Illig v. United States* (Case No. 98-934L), *Miller v. United States* (Case No. 93-134L), *The Town of Grantwood Village v. United States* (Case No. 98-176L), *Ladd v. United States* (Case No. 07-271L), *Birdbay Executive Golf Course v. United States* (Case No. 07-426), *Pankratz v. United States* (Case No. 07-675L), and *Biery v. United States* (Case No. 07-693L*)* Two of these cases, *Miller* and *Illig*, were certified as class actions in the U.S. Court of Federal Claims and each included claims by approximately 100 landowners. *Miller v. United States*, involved a similar class action Trails Act taking case in which the class of approximately 100 property owners were represented by Mr. Hearne. At the conclusion of that almost three year case, Judge Bruggink wrote of Mr. Hearne and his co-counsel, "Counsel, moreover, did an excellent job throughout the litigation." *Miller v. United States*, No. 03-2489L, Order approving class settlement in excess of $8.15 Million and awarding attorney fees and costs. (Docket # 124, November 17, 2006 at 4.)

Mr. Hearne's co-counsel, Lindsay S.C. Brinton (whose admission to this Court is currently pending) is an associate at Lathrop & Gage L.C. Ms. Brinton has experience with rails-to-trails litigation and assisted Mr. Hearne as a law clerk with the litigation of *Illig v. U.S.* and *Miller v. U.S.* In law school, Ms. Brinton served as the Managing Editor of the Missouri Environmental Law and Policy Review, and in her previous capacity as Member, published *Snowmobiling in Voyageur's National Park; The Eight Circuit Gives One Answer Amidst a Blizzard of Controversy* (February 2005). Ms. Brinton received the Cali Award for Excellence in Administrative Law during Fall, 2005 by receiving the highest grade in her class. In addition, Ms. Brinton gained extensive litigation experience while serving as an associate at the law firm of Brown & James, P.C.

**(C) Class Counsel has a great deal of knowledge of the applicable law.**

As previously indicated, Plaintiffs' lead counsel, Mr. Hearne, has represented (or is currently representing) property owners in eight different Trails Act taking cases. These cases all require application of the same federal law, namely, an alleged taking in violation of the Fifth Amendment to the U.S. Constitution and arising out of the application of the Trails Act, 16 U.S.C. § 1247(d). Likewise, these cases each require application of similar underlying state law. Mr. Hearne has handled litigation concerning the federal Trails Act and related state law railroad title and real estate issues since the early 1990's.

**(D) Class Counsel possesses the financial and personnel resources necessary to represent this class.**

Mr. Hearne's law firm, Lathrop & Gage L.C., is a large regional law firm that possesses the requisite financial and personnel resources necessary to represent Plaintiffs and this class. Lathrop & Gage L.C. is a firm with approximately 250 attorneys, many with extensive real estate experience,

especially experience with the unique issues of real estate law related to railroad land title. Lathrop & Gage maintains an office in Washington, D.C. just blocks from the U.S. Court of Claims and routinely handles cases in both the U.S. Court of Claims and The Court of Appeals for the Federal Circuit. Lathrop & Gage has numerous personnel including other legal counsel, paralegals, and administrative staff available to represent this class in a cost-effective and efficient manner.

## V. CONCLUSION

After careful consideration of this matter, the Court is satisfied that the requirements for class certification under RCFC 23 and those promulgated by this Court in *Quinault* have been met. Coupled with the lack of opposition to the certification of the class by the United States, the Court, therefore, finds that class certification is appropriate in this matter. Named Plaintiffs have adequately met their burden and their motion for class certification is hereby **GRANTED**.

## VI. ORDER

**IT IS HEREBY ORDERED** that this action may be prosecuted by Plaintiffs Stephen J. and Linda L. Rogers, husband and wife, for themselves and all others similarly situated property owners that choose to opt-in as a class member pursuant to the procedure adopted by this Court.

The Court certifies that the appropriate Class is defined as all those owners of property in Sarasota County, Florida whose property has been taken or damaged as a result of the conversion of the Venice Branch of the Seminole Gulf Railway to a public-access recreational trail pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act") and the Notice of Trail Use ("NITU") issued by the Surface Transportation Board ("STB") on April 2, 2004." Based upon representation of Class Counsel and research by the title company retained by Class Counsel, this class includes potentially as many as 500 property owners.

The class claims "just compensation" for the value of the property taken pursuant to the Fifth Amendment to the U.S. Constitution, including claims for delay damages between the date of taking and the date the class members are paid, and for attorneys fees, costs, and expenses of this action pursuant to Subchapter III of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§4651-4655. This Court has jurisdiction of this claim pursuant to the Tucker Act, 28 U.S.C. § 1491(a).

The decisive issue in this matter is "did the STB's issuance of a NITU on April 2, 2004 pursuant to the Trails Act, effect a taking of Plaintiffs' state law 'reversionary' property interest."

Defendant may contend that the class members did not own an interest in property subject to the April 2, 2004 NITU and/or that the STB's issuance of a NITU pursuant to the Trails Act did not result in a taking of any property owned by Plaintiffs.

The Court designates Plaintiffs Stephen J. and Linda L. Rogers to be the representatives of the class. The Court further designates Mark F. ("Thor") Hearne, II, counsel for representative Plaintiffs, as class counsel.

**IT IS FURTHER ORDERED** that the parties shall proceed with the class notification and schedule as previously filed by Plaintiffs, and which states as follows:

(1) Class Counsel has retained Commonwealth Title Company, which has completed a review of the land title records of the Sarasota County Recorder of Deeds' Office and the Sarasota County Property Appraiser's Office to identify those individuals or entities that, on April 2, 2004 owned an interest in the property abutting or underlying the 12.43 mile railroad right-of-way which was subject to the Notice of Interim Trail Use or Abandonment ("NITU") issued by the Surface Transportation Board ("STB") on April 2, 2004. Class Counsel shall prepare a written list ("List of Potential Property Owners") with:

(i) the name of the respective individual or entity,

(ii) the current or last known address of the individual or entity, and

(iii) the "Parcel ID" assigned to the property by the Sarasota County Appraiser's Office if available (and if not available, other identification or description) of the real property owned by the individual or entity.

The List of Potential Class Members shall be provided to Defendant and filed with the Court on or before **November 1, 2007**.

(2) On or before **October 29, 2007**, Class Counsel shall mail the Notice, in the form approved by the Court (Exhibit 2), by First Class Mail, postage paid, together with a blank Entry of Appearance form (Exhibit 1) and return envelope addressed to Class Counsel, to each individual or entity identified on the List of Potential Class Members.

(3) A copy of the Notice shall be published two times in the Sarasota Herald-Tribune newspaper, once during the week of **November 5, 2007**, and a second time during the week of **November 12, 2007**.

(4) The cost of obtaining the List of Potential Class Members and the mailing and publication shall be borne by the Plaintiffs, but shall be considered costs pursuant to Subchapter III of the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§4651-4655.

(5) On or before **November 26, 2007**, Class Counsel shall file with this Court an affidavit certifying that the mailing and publication has been made as provided for herein.

(6) On or before **January 18, 2008**, Class Counsel shall file an "Index," which shall assign a separate claim number to every property for which an Entry of Appearance was filed. The claim numbers should be assigned such that the properties identified in the Entry of Appearance are numerically organized from one end of the railroad corridor to the other.

(7) On or before **January 18, 2008**, Class Counsel shall file a "Claim Book," which shall be organized according to claim number. The Claim Book shall include all information provided in the Entries of Appearance.

If Class Counsel believes an Entry of Appearance does not include all required information, Class Counsel shall so notify the prospective class member and suggest that the class member correct such deficiencies. No additional claims or class members, other than those

identified in the Entry of Appearance Claim Book and index, shall be added after **January 18, 2008**, unless the Court determines that good cause is shown for such addition.

(8) Counsel for the United States shall have until **March 21, 2008**, to challenge the eligibility of any prospective class member by filing an objection to any class member based upon the Entry of Appearance and documents included with the class member's Entry. These objections will be limited to those objections that can be determined upon a review of the Entries of Appearance and attached documents only. Such objections, if any, shall be served on counsel for the class, which shall, in turn, forward the objection to the disputed class member by certified mail, return receipt requested.

(9) After **March 21, 2008**, the Court shall hold a status conference to determine further proceedings.

**IT IS SO ORDERED.**