# Exhibit 2

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et. al. | ) | |
| Plaintiffs, | ) | Hon. Mary Ellen Coster Williams |
| v. | ) | No. 07-273 |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**[PROPOSED] CLASS CERTIFICATION ORDER**

## I. INTRODUCTION

On August 21, 2007, counsel for the Plaintiffs filed a Motion to Certify Class. See Doc. No. 12. Specifically, Plaintiffs requested this Court to:

> certify this action as a class action brought by Plaintiffs as representative parties on behalf of all other land owners holding fee title to property in Sarasota County, Florida whose property has been taken or damaged as a result of the conversion of the Venice Branch of the Seminole Gulf Railway to a public use trail pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act") and the Notice of Interim Trail Use ("NITU") issued by the Surface Transportation Board ("STB") on April 2, 2004.

The United States did not oppose the granting of this motion. Docket No. 13.

"The court must – at any early practicable time – determine by order whether to certify the action as a class action." RCFC 23(c)(1)(A). This Court will only certify a class action where the strictures of RCFC 23 have been met. This Court's rules permit only opt-in class certifications, not opt-out classes. See, e.g., RCFC 23 committee Notes to 2002 Revision. If the Court grants a motion for class certification, it must simultaneously "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)." RCFC

23(c)(1)(B).

As discussed below, the Court grants Plaintiffs' Motion to Certify Class.

## II. ANALYSIS OF RULES 23(A) AND (B)

### A. The Prerequisites of Rule 23(a) are Satisfied

The Court may grant a motion to certify a class only when the prerequisites to a class action have been met:

> **Prerequisites to a Class Action.** One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a). As discussed below, the Court is satisfied as to each of these elements.

First, this Court will grant a motion for class certification only when the potential class "is so numerous that joinder of all members is impracticable." RCFC 23(a)(1). Based on Plaintiffs' representations drawn from an initial review of the records of the Sarasota County Tax Assessor and Record of Deeds and work of a title company, Plaintiffs estimate that there are approximately 500 individuals or entities who owned property abutting or underlying the subject railroad corridor on April 2, 2004. This number of potential class members satisfies the numerosity requirement. See Favreau v. United States, 48 Fed. Cl. 774, 777 (2000) ("In this case, the prospective class of over 500 members meets the [numerosity] requirement.").

Second, class certification is appropriate only when there are questions of law or fact common to the class. See RCFC 23(a)(2). The principal legal issue in this case is whether the STB's issuance of a NITU on April 2, 2004 resulted in an unconstitutional taking under the Fifth Amendment. The primary question of law, therefore, is common to all class members. The Court

recognizes that in order to address this primary legal issue, the parties will have to address several sub-issues, including: (1) What interest did the Seaboard Air Line Railway, the predecessor in interest of the Seminole Gulf Railway, obtain in the early 1900s when it acquired this right-of-way; (2) what was the effect of the STB's issuance of the April 2, 2004 NITU on the railroad's interest; and (3) did the class members own a compensable property interest on April 2, 2004. Resolution of these issues will require attention to the specific facts relevant to any individual class member.

Third, the Court may grant a motion for class certification only if the claims of the representative parties are typical of the claims of the class. See RCFC 23(a)(3). The named Plaintiffs and class members allege identical legal claims. Specifically, the representative parties allege that the STB's issuance of the April 2, 2004 NITU effected a taking of their property in violation of the Fifth Amendment to the United States Constitution. Although there may specific factual differences among class members, the Court is satisfied that the claims of the representative parties are typical of the claims of the class.

Fourth, class certification is permitted only if the Court is satisfied that the representative parties will fairly and adequately protect the interests of the class. See RCFC 23(a)(4). The Court is aware of no facts that might raise a potential conflict of interest between the named Plaintiffs and potential class members. Accordingly, the Court finds that the named Plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest.

**B. The Requirements of Rule 23(b) are Satisfied**

In addition to satisfying the prerequisites set forth in Rule 23(a), Plaintiffs must also show that the requirements of Rule 23(b) have been satisfied:

> **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the United States has acted or failed to act on grounds generally applicable to the class; and (2) the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of the class action.

As discussed below, the Court is satisfied as to each of these elements.

First, the Court finds that the United States acted on grounds generally applicable to the named Plaintiffs. Plaintiffs' claims, like those of the potential class members, relate to the STB's issuance of the April 2, 2004 NITU. The United States' act, therefore, is generally applicable to the proposed class members. See RCFC 23(b)(1).

Second, the Court finds that questions of law and fact common to the members of the class predominate over any questions affecting only individual members and that class action is the superior method of resolving this controversy. The three legal issues presented above in our analysis of RCFC 23(a)(2) will be the predominate questions this court needs to answer in adjudicating this matter on behalf of all class members. It follows that the commonality requirements of RCFC 23(b)(2) is satisfied.

Finally, also pursuant to RCFC 23(b)(2), the court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The superiority requirement is met where "'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Barnes v. United

States, 68 Fed.Cl. 492, 499 (2005) (quoting Fed.R.Civ.P. 23 advisory committee notes (1966 amendment)). Class certification is clearly a superior method of adjudicating the claims of this class because, according to Plaintiffs' estimates, the number of potential class members could exceed 500. A scenario where these hundreds of individuals either seek to join a lawsuit or initiate their own separate lawsuits to remedy their claims would undoubtedly involve the expenditure of more time, effort and expense by the United States and the potential plaintiffs than will be necessary if this matter proceeds as a class action.

What remains, then, is for this court to determine that the class vehicle will promote uniformity of decisions without sacrificing fairness to the potential class members. Id. Treating this matter as a class will promote uniformity of decision because it will obviate the possibility of inconsistent rulings in individually pursued cases. Further, because the class members claims are not adverse to one another, there appears to be very little likelihood that class proceedings in this case will be unfair or cause other undesirable results to the members. For these reasons, the court finds that a class action is the superior method of resolving this case.

## III. ANALYSIS OF RULE 23(C)(B)

In addition to the above findings, an order certifying a class action must define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g). RCFC 23(c)(1)(B).

### A. Definition of the Class

The class shall consist of those individuals

(1) who owned property abutting or underlying the Seminole Gulf Railway between milepost SW 892 and milepost 904.4 on April 2, 2004;
(2) whose property was taken in violation of the Fifth Amendment to the United States

Constitution as a result of the STB's issuance of the April 2, 2004 NITU; and

(3) who affirmatively opt-into this lawsuit in accordance with the procedures outlined in the Court's Scheduling Order, dated _______.

**B. Definition of the Class Claims**

The class claims a violation of the Fifth Amendment of the United States Constitution resulting from the STB's issuance of the April 2, 2004 NITU. The class seeks just compensation under the Tucker Act, 28 U.S.C. § 1491. The class also claims delay damages from the date of alleged taking (April 2, 2004) and the date the compensation is paid. In addition, the class seeks reimbursement for its attorneys' fees, costs, and expenses of this action pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§4651-4655.

**C. Identification of Class Issues**

The principal legal issue in this case is whether the STB's issuance of a NITU on April 2, 2004 resulted in an unconstitutional taking under the Fifth Amendment. In order to address this primary legal issue, the parties will have to address several sub-issues, including:

(1) What interest did the Seaboard Air Line Railway, the predecessor in interest of the Seminole Gulf Railway, obtain in the early 1900s when it acquired this right-of-way;

(2) what was the effect of the STB's issuance of the April 2, 2004 NITU on the railroad's interest; and

(3) did the class members own a compensable property interest on April 2, 2004.

**D. Identification of Potential Defenses**

The United States defenses may include:

(1) the class members did not own a compensable property interest under Florida law on April 2, 2004;

(2) the class members were not the owner of any relevant property on the date of alleged taking, April 2, 2004; and

(3) the STB's issuance of the April 2, 2004 NITU did not result in the taking of any

property owned by a specific class member.

**E. Appointment of Class Counsel**

Under RCFC 23(g), this court is tasked with appointing class counsel when it certifies a class action. See RCFC 23(g)(1)(A). To serve as class counsel, an attorney must be able to fairly and adequately represent the interests of the class. See RCFC 23(g)(1)(B). In appointing class counsel, the court must evaluate 1) the work the potential class counsel has done in identifying or investigating potential claims in the action; 2) the potential class counsel's experience handles class actions and claims of the type asserted; 3) the potential class counsel's knowledge of the applicable law; and 4) the resources the potential class counsel will commit to representing the class. See RCFC 23(g)(1)(C)(i).

The Plaintiff's lead counsel, Mark F. (Thor) Hearne, II, is a member and principle with the law firm Lathrop & Gage L.C.. Mr. Hearne has more than twenty years of experience in real estate, land use regulation, and related federal and state litigation. Of particular relevance to this action, Mr. Hearne has practiced before this Court representing property owners in Trails Act taking cases. Mr. Hearne has represented property owners in eight Trails Act taking cases. See Miller v. United States, No. 03-2489; Illig v. United States, No. 98-934; The Town of Grantwood Village v. United States, No. 98-176. Two of these cases, Miller and Illig, were certified as class actions in this court and each included claims by approximately 100 landowners. Each of these cases required application of the same federal law, namely, the Fifth Amendment and the Trails Act. Additionally, each of these cases required analysis of state real property law, an analysis which will also be necessary in this matter.

Mr. Hearne's co-counsel, Lindsay S.C. Brinton is an associate at Lathrop & Gage L.C. Ms.

Brinton has experience with rails-to-trails litigation and assisted Mr. Hearne as a law clerk with the litigation of *Illig* and *Miller*. In law school, Ms. Brinton served as the Managing Editor of the Missouri Environmental Law and Policy Review, and in her previous capacity as Member, published *Snowmobiling in Voyageur's National Park; The Eight Circuit Gives One Answer Amidst a Blizzard of Controversy* (February 2005). Ms. Brinton received the Cali Award for Excellence in Administrative Law during Fall, 2005 by receiving the highest grade in her class. In addition, Ms. Brinton gained extensive litigation experience while serving as an associate at the law firm of Brown & James, P.C.

Mr. Hearne's law firm, Lathrop & Gage L.C., is a large regional law firm that possesses the requisite financial and personnel resources necessary to represent Plaintiffs and this class. Lathrop & Gage L.C. is a firm with approximately 250 attorneys, many with extensive real estate experience, especially experience with the unique issues of real estate law related to railroad land title. Lathrop & Gage maintains an office in Washington, D.C. just blocks from the U.S. Court of Claims. Plaintiffs' counsel represents that Lathrop & Gage also has sufficient personnel, including legal counsel, paralegals, and administrative staff, available to fairly and adequately represent this class in a cost-effective and efficient manner.

Based on the foregoing, the court finds that the appointment of Mr. Hearne comports with the requirements of RCFC 23(g) and hereby appoints him class counsel in this matter.

## CONCLUSION

**IT IS HEREBY ORDERED,** that the Court certifies the class in this matter as defined supra in Section III.A. Notification, identification and closing of the class shall and the filing of dispositive motions shall proceed in accordance with the schedule set forth in the Scheduling Order entered__________________.

______________________________

Judge Mary Ellen Coster Williams