IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et. al. | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | Hon. Mary Ellen Coster Williams |
| | ) | |
| v. | ) | |
| | ) | No. 07-273 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

COME NOW, Plaintiffs, by and through their undersigned counsel, and pursuant to RCFC 56 (d)(1) file with this Court their Proposed Findings of Uncontroverted Fact in Support of their Motion for Partial Summary Judgment in favor of Plaintiffs and adverse to and against the U.S. Government on the issue of the federal government's liability for taking the Plaintiffs' property by operation of the Trails Act (16 U.S.C. § 1241) without paying "just compensation" as required by the Fifth Amendment to the United States Constitution. For its Proposed Findings of Uncontroverted Fact Plaintiffs state as follows:

**(A) In 1910, eight property owners granted the Seaboard Air Line Railway ("Seaboard") easements for a right-of-way upon which to operate a railroad across their property. These easements expressly limited the right to use the property to the operation of a railroad. It was on the basis of these grants of an easement that the Seaboard constructed the approximately twelve and one-half mile long railroad line between Sarasota, Florida and Venice, Florida.**

1. The majority of the easement was acquired by Seaboard from the Potter family, namely, Potter Palmer, Jr., and Adrian C. Honore, as well as Sarah O. Webber. (*See* Tab A, Tab B, and Tab C).

2. Tab A represents a true and accurate copy of the easement conveyance granted from Potter Palmer, Jr. and Pauline K. Palmer ("the Palmers") to the Seaboard Air Line Railway, signed November 10, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

3. The express purpose of the easement conveyed by the Palmers to the Seaboard was for operation of a railroad, providing that the Palmers,

> hereby remise, release and forever quitclaim unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, **a right-of-way for railroad purposes** over and across the following described parcel of land.

(*See* Tab A, easement granted by the Palmers to the Seaboard) (emphasis added).

4. The easement further provided that if the Seaboard Air Line Railway abandoned the easement, it was to *ipso facto* revert back to the Palmers, their heirs, administrators and assigns, stating that,

> [t]his conveyance is made upon the express condition, however, that if the Seaboard Airline Railway shall not construct upon said land and commence the operation thereon with (sic) one year of the date hereof of a line of railroad, or, **if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns.**

(*See* Tab A, easement granted by the Palmers to the Seaboard) (emphasis added).

5. According to the legal description in the easement from the Palmers to the Seaboard, the easement covers approximately 1.15 acres. (*See* Tab A, easement granted by the Palmers to the Seaboard).

6. Tab B represents a true and accurate copy of the easement conveyance granted from Adrian C. Honore to the Seaboard Air Line Railway, signed November 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

7. The express purpose of the easement conveyed by Adrian C. Honore to the Seaboard was for operation of a railroad, providing that Mr. Honore,

> hereby remise[s], release[s] and forever quitclaim[s] unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, **a right-of-way for railroad purposes** over and across the following described parcel of land.

(*See* Tab B, easement granted by Adrian C. Honore to the Seaboard) (emphasis added).

8. The easement further provided that if the Seaboard Air Line Railway abandoned the easement, it was to *ipso facto* revert back to Adrian C. Honore, his heirs, administrators and assigns, stating that,

> [t]his conveyance is made upon the express condition, however, that if the Seaboard Airline Railway shall not construct upon said land and commence the operation thereon with (sic) one year of the date hereof of a line of railroad, or, **if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns.**

(*See* Tab B, easement granted by Mr. Honore to the Seaboard) (emphasis added).

9. According to the legal description in the easement from Mr. Honore to the Seaboard,

the easement covers approximately 128 acres. (*See* Tab B, easement granted by Adrian C. Honore to the Seaboard).

10. Tab C represents a true and accurate copy of the easement conveyance dated June 21, 1911 and granted by Sarah O. Webber to the Seaboard Air Line Railway and recorded with the Sarasota County Recorder of Deeds Office.

11. The express purpose of the easement conveyed by Sarah O. Webber to the Seaboard was for purposes of a railroad, and in the event it was no longer used for such purposes, it was to revert *ipso facto* to Sarah O. Webber, her executors, administrators, and assigns, stating that,

> [it] is understood and agreed that if the said premises shall hereafter be abandoned by the said party of the second part its successors or assigns for railroad purposes in that event the said premises shall *ipso facto* revert to the part of the first part whereas executors, administrators, and assigns.

(*See* Tab C, easement granted by Ms. Webber to the Seaboard).

12. According to the legal description in the easement from Ms. Webber to the Seaboard, the easement covers approximately 3.1 acres. (*See* Tab C, easement granted by Ms. Palmer to the Seaboard).

13. The remaining portion of the Seaboard Air Line Railway's railroad easement was created by the following conveyances:

a. Easement granted by H.M. Frazee and his wife, Bertie Frazee, to Seaboard Air Line Railway Company, signed September 5, 1910.

b. Easement granted by Clement Phillips and his wife, Lula Phillips, to Seaboard Air Line Railway Company, signed September 5, 1910.

c. Easement granted by Jesse Knight to Seaboard Air Line Railway Company, signed September 3, 1910.

d. Easement granted by Jesse Knight and F.R. Knight to Seaboard Air Line Railway Company, signed September 3, 1910.

e. Easement granted by J.B. Hutchings and Lena Hutchings to Seaboard Air Line Railway Company, signed September 29, 1910.

f. Easement granted by A.E. Blackburn, *Et Ux* to Seaboard Air Line Railway Company, signed September 5, 1910.

14. Tab D represents a true and accurate copy of the easement conveyance granted from H.M. Frazee and his wife, Bertie Frazee, to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

15. Tab E represents a true and accurate copy of the easement conveyance granted from Clement Phillips and his wife, Lula Phillips, to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

16. Tab F represents a true and accurate copy of the easement conveyance granted from Jesse Knight to the Seaboard Air Line Railway, signed September 3, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

17. Tab G represents a true and accurate copy of the easement conveyance granted from Jesse Knight and F.R. Knight to the Seaboard Air Line Railway, signed September 3, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

18. Tab H represents a true and accurate copy of the easement conveyance granted from

J.B. Hutchings and Lena Hutchings to the Seaboard Air Line Railway, signed September 29, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

19. Tab I represents a true and accurate copy of the easement conveyance granted from A.E. Blackburn, Et Ux to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

**(B) The Plaintiffs are the successors in title to the original property owners that granted the rights-of-way to Seaboard. Each of the Plaintiffs held fee title to their property abutting and underlying the former Seaboard right-of-way on April 2, 2004.**

(1) Stephen and Linda Rogers

20. Plaintiffs Stephen and Linda Rogers ("Rogers"), husband and wife, acquired their home in Sarasota County, Florida on July 25, 2003 by that deed recorded in the Sarasota County Recorder of Deeds Office as Instrument Number 2003151152. (A copy of the Warranty Deed by which the Rogers acquired their home is attached as Tab J.)

21. The Rogers' property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab J, Rogers' Warranty Deed).

22. The Rogers were fee owners of this property, identified as Parcel Identification number 0163-16-0005, on the April 2, 2004 NITU date. (*See* Tab J, Rogers' Warranty Deed).

(2) Donald and Judith Duran

23. Plaintiffs Donald and Judith Duran ("Durans"), husband and wife, acquired their home in Sarasota County, Florida on August 1, 2000 by that deed recorded in the Sarasota County Recorder of Deeds Office as File Number 11209.42. (A copy of the Warranty Deed by which the

Rogers acquired their home is attached as Tab K.)

24. The Durans' property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab K, Durans' Warranty Deed).

25. The Durans were fee owners of this property, identified as Parcel Identification number 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, on the April 2, 2004 NITU date. (*See* Tab K, Durans' Warranty Deed).

(3) <u>Denise Rizzo</u>

26. Plaintiff Denise Rizzo acquired her home in Sarasota County, Florida on November 6, 2001 by that deed recorded in the Sarasota County Recorder of Deeds Office on December 5, 2001 as Instrument Number 2001176034. (A copy of the Warranty Deed by which Ms. Rizzo acquired her home is attached as Tab L.)

27. Ms. Rizzo's property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab L, Ms. Rizzo's Warranty Deed).

28. Ms. Rizzo was fee owner of this property, identified as Parcel Identification number 0163-09-0031, on the April 2, 2004 NITU date. (*See* Tab L, Ms. Rizzo's Warranty Deed).

(4) <u>Dwight and Carolyn Austin</u>

29. Plaintiffs Dwight and Carolyn Austin ("Austins"), husband and wife, acquired their home in Sarasota County, Florida on September 30, 2002 by that deed recorded in the Sarasota County Recorder of Deeds Office on October 1, 2002 as Instrument Number 2002161556. (A copy of the Warranty Deed by which the Austins acquired their home is attached as Tab M.)

30. The Austins' property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab M, Austins' Warranty Deed).

31. The Austins were fee owners of this property, identified as Parcel Identification number 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, on the April 2, 2004 NITU date. (*See* Tab M, Austins' Warranty Deed).

(5) Kathy Becker

32. Plaintiff Kathy Becker acquired her home in Sarasota County, Florida on December 12, 2003 by that deed recorded in the Sarasota County Recorder of Deeds Office on December 23, 2003 as Instrument Number 2003255099. (A copy of the Warranty Deed by which Ms. Becker acquired her home is attached as Tab N.)

33. Ms. Becker's property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab N, Ms. Becker's Warranty Deed).

34. Ms. Becker was fee owner of this property, identified as Parcel Identification number 163160006, on the April 2, 2004 NITU date. (*See* Tab N, Ms. Becker's Warranty Deed).

(6) Anne Edwards

35. Plaintiff Anne Edwards was fee owner of the property in Sarasota County, Florida identified as Parcel Identification number 163080021 and described in the attached deed, "Tab O," on April 2, 2004. Anne Edwards subsequently sold that property to James and Patricia Dossett on August 24, 2005. (A copy of the Warranty by which Anne Edwards sold her home is attached as "Tab O.")

36. The property owned by Ann Edwards on April 2, 2004 abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab O).

(7) Edward and Janice Fatica

37. Plaintiffs Edward and Janice Fatica ("Faticas"), husband and wife, acquired their home in Sarasota County, Florida on February 4, 2000 by that deed recorded in the Sarasota County Recorder of Deeds Office on February 15, 2000 as Instrument Number 2000018927. (A copy of the Warranty Deed by which the Faticas acquired their home is attached as Tab P.)

38. The Faticas' property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab P, Faticas' Warranty Deed).

39. The Faticas were fee owners of this property, identified as Parcel Identification number 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, on the April 2, 2004 NITU date. (*See* Tab P, Faticas' Warranty Deed).

(8) Owen and Laura Harney

40. Plaintiffs Owen and Laura Harney ("Harneys"), husband and wife, acquired their home in Sarasota County, Florida on July 9, 1999 by that deed recorded in the Sarasota County Recorder of Deeds Office on July 9, 1999 as Instrument Number 1999094147. (A copy of the Warranty Deed by which the Harneys acquired their home is attached as Tab Q.)

41. The Harneys' property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab Q, Harneys' Warranty Deed).

42. The Harneys were fee owners of this property, identified as Parcel Identification number 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, on the April 2, 2004 NITU date. (*See* Tab Q, Harneys' Warranty Deed).

(9) Jan and Karin Heitmann

43. Plaintiffs Jan and Karin Heitmann ("Heitmanns"), husband and wife, acquired their home in Sarasota County, Florida on January 15, 2002 by that deed recorded in the Sarasota County Recorder of Deeds Office on January 18, 2002 as Instrument Number 2002010330. (A copy of the Warranty Deed by which the Heitmanns acquired their home is attached as Tab R.)

44. The Heitmanns' property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab R, Heitmanns' Warranty Deed).

45. The Heitmanns were fee owners of this property, identified as Parcel Identification number 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, on the April 2, 2004 NITU date. (*See* Tab R, Heitmanns' Warranty Deed).

(10) Kenneth and M. LaOra Miles

46. Plaintiffs Kenneth and M. LaOra Miles ("Miles"), husband and wife, acquired their home in Sarasota County, Florida on October 17, 2003 by that deed recorded in the Sarasota County Recorder of Deeds Office on October 24, 3003 as Instrument Number 2003215613. (A copy of the Warranty Deed by which the Miles acquired their home is attached as Tab S.)

47. The Miles's property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab S, Miles's Warranty Deed).

48. The Miles were fee owners of this property, identified as Parcel Identification number

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, on the April 2, 2004 NITU date. (*See* Tab S, Miles's Warranty Deed).

(11) Mission Estate Homeowners' Association

49. Plaintiff Mission Estate Homeowners' Assocation ("Mission Estate") acquired title to the common property in Mission Valley Homeowners' Association by dedication of the plat and neighborhood restrictions and indentures.

50. Mission Estate's property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation.

51. Mission Estate was fee owner of this property on the April 2, 2004 NITU date.

(12) Sue Wetzel Stitt

52. Plaintiff Sue Wetzel Stitt was fee owner of the property in Sarasota County, Florida identified as Parcel Identification number 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 and described in the attached deed, "Tab U," on April 2, 2004. Sue Wetzel Stitt subsequently conveyed that property to Sue Wetzel Stitt, Trustee of the Sue Wetzel Stitt Revocable Trust on April 9, 2007. (A copy of the Warranty by which Sue Wetzel Stitt conveyed her property is attached as "Tab T.")

53. The property owned by Sue Wetzel Stitt on April 2, 2004 abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab T).

(13) Egbert and Barbara Von Papen

54. Plaintiffs Egbert and Barbara Von Papen ("Von Papens"), husband and wife, acquired their home in Sarasota County, Florida on December 11, 2001 by that deed recorded in the Sarasota

County Recorder of Deeds Office on December 13, 2001 as Instrument Number 2001180901. (A copy of the Warranty Deed by which the Von Papens acquired their home is attached as Tab U.)

55. The Von Papens' property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab U, Von Papens' Warranty Deed).

56. The Miles were fee owners of this property, identified as Parcel Identification number 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, on the April 2, 2004 NITU date. (*See* Tab U, Von Papens' Warranty Deed).

**(C) Seaboard's successor railroad, CSX and Seminole Gulf Railroad, LP, ("SGLP") abandoned the railroad easement in 2004.**

57. "On December 15, 2003, Seminole Gulf Railway, L.P. ("SGLR"), filed with the Surface and Transportation Board ("STB") a petition under 49 U.S.C. 10502 for exemption from the provisions of 49 U.S.C. 10903 to abandon an approximately 12.43-mile portion of its Venice Branch between milepost SW 892 outside the city limits of the City of Sarasota, and milepost 904.4 near the City of Venice, in Sarasota County, FL. (*See* STB Docket No. Ab-400 (Sub-No. 3x), January 2, 2004 decision; a copy of which is attached as Tab V.)

58. The STB noted that this "line does not contain federally granted rights-of-way." (*See* Tab V, STB's January 2, 2004 decision).

59. On February 13, 2004, the STB found that:

> no traffic has moved over the line during 2003 or during the last nine months of 2002. The last delivery to a shipper via the line was on March 14, 2002. During the first three months of 2002, SGLR delivered 20 cars of plywood and lumber to a single customer (Kimal Lumbar) at a team track located on the line, where the freight was transloaded to a truck . . . .only three other customers have received traffic over the line in the last several years, but none have received any cars since May 2001.

(*See* STB Docket No. Ab-400 (Sub-No. 3x), February 13, 2004 decision; a copy of which is attached as Tab W.)

60. The STB later stated that, "there have been no rail movements over the last three miles of the line for over 10 years . . . . [SGLR] contends that there is little likelihood of traffic returning to the line and that there is interest in developing the right-of-way for trail use." (*See* STB Docket No. Ab-400 (Sub-No. 3x), April 2, 2004 decision (Notice of Interim Trail Use or "NITU); a copy of which is attached as Tab X.)

**(D) On April 2, 2004, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") which precluded the Plaintiffs' reversionary rights to their property, converted the abandoned railroad right-of-way into a public-access recreational trail, and imposed an easement for future possible railroad across the Plaintiffs' property.**

61. The STB found that, "SGLR states that it and CSXT have granted The Trust for Public Lands an option to acquire the line for conversers ion to a trail . . . . On January 20, 2004, [Sarasota] County filed a request for interim trail use/rail banking under the [Trails Act]." (*See* Tab X, April 2, 2004 NITU).

62. On April 2, 2004, the STB issued a Notice of Interim Trail Use ("NITU") for the abandoned railroad corridor. (*See* Tab X, April 2, 2004 NITU).

63. The Trust for Public Land agreed to work with Sarasota County to convert the rail line into a public-access recreational trail. (*See* Tab W, STB's February 13, 2004 decision).

64. The STB ordered that,

> [b]ecause the County's request complies with the requirements of 49 CFR 1152.29, and SGLR is willing to enter negotiations, a NITU will be issued as requested. The parties may negotiate an agreement during the 180-day period prescribed below. If an agreement is executed, no further Board action is necessary. If no agreement is

reached within 180 days, SGLR may fully abandon the line.

(*See* Tab X, April 2, 2004 NITU).

65. The Trust for Public Land is a tax-exempt charity. (*See* the website for The Trust for Public Land: http://www.tpl.org/tier2_sa.cfm?folder_id=170; a print-out is attached as Tab Y.)

66. The Trust for Public Land is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad. (*See* Tab Y, a print-out of the website for The Trust for Public Land.)

67. Sarasota County is a municipality. (*See* the website for Sarasota County: http://www.scgov.net; a print-out is attached as Tab Z.)

68. Sarasota County is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad. (*See* Tab Z, a print-out of the website for Sarasota County).

69. On October 14, 2004, the STB granted a ninety day extension to the negotiating period and ruled, "[t]he NITU negotiating period is extended until December 28, 2004." (*See* STB Docket No. AB-400 (Sub-No. 3x), October 14, 2004 decision; a copy of which is attached as Tab AA.)

70. On December 20, 2004, a Quit Claim Deed was executed by CSX Transportation (Inc.) conveying to The Trust for Public Land whatever interest CSX may have held in the abandoned right-of-way. (A copy of this Quit Claim Deed is attached Tab BB.)

71. This Quit Claim Deed referenced "a total of 155.724 acres, more or less, together with all the improvements located thereon . . . ." in Sarasota County, Florida, and was recorded on January 13, 2005 with the Sarasota Recorder of Deeds Office. (*See* Tab BB, Quit Claim Deed).

72. This Quit Claim Deed was expressly executed and entered into by the Trust for Public Land and CSX in reliance upon the STB's issuance of the NITU and the provisions of the Trails Act. (*See* Tab BB, Quit Claim Deed).

73. This Quit Claim Deed expressly provides that the Grantor, CSX Transportation, Inc.,

> does hereby RELEASE, REMISE and forever QUITCLAIM unto [The Trust for Public Land], its successors and assigns, all right, title and interest of [CSX], if any, in and to those certain tracts of parcels of land situate, laying and being in Sarasota, Florida . . . TO HAVE AND TO HOLD the Premises, and all the estate, right, title, lien, interest and claim whatsoever of [CSX] therein, either in law or equity, and all improvements thereon and appurtenances thereto, unto the proper use, benefit and enjoyment of [The Trust for Public Land], [it's] heirs and assigns or successors and assigns, forever. (*See* Tab BB, Quit Claim Deed).

74. The Quit Claim Deed further provides that:

> [b]y Decision and Notice of Interim Trial Use or Abandonment served April 2, 2004 in the Surface Transportation Board ("STB") Docket No. AB-400, Sub.-No.3X, the STB imposed a Notice of Interim Trail Use ("NITU") on the Premises. [The Trust for Public Land] for itself, its successors and assigns, acknowledges that the Premises remain subject to the jurisdiction of the STB for purposes of reactivating rail service. (*See* Tab BB, Quit Claim Deed).

75. Pursuant to the Quit Claim Deed, the SGLR (and CSX) conveyed whatever interest they may have had in the railroad right-of-way to The Trust for Public Land. (*See* Tab BB, Quit Claim Deed).

76. The Trust for Public Land has subsequently sold this property to Sarasota County, Florida for use as a public-access recreational trail. (*See* the website for Sarasota County: http://www.scgov.net/PublicWorks/RailsToTrails/Rails.asp; a print-out of which is attached as Tab CC.)

77. Since April 2004, the approximately 12.43 mile long former SGLR railroad right-of-

way has been transformed into a public-access recreational trail called "The Legacy Trail." (*See* Tab CC, Sarasota County website).

78. The railroad rails and ties have been removed from the former right-of-way and Sarasota County has graded the former roadbed for use as a public-access recreational trail. (*See* Tab CC, Sarasota County website; *see also* photographs of the trail construction posted on the Sarasota County website at: http://www.scgov.net/PublicWorks/RailsToTrails/Photos.asp, collectively attached as Tab DD).

79. Sarasota County states that the Legacy Trail will eventually be comprised of a 14 foot wide asphalt trail, rest-stop shelters, and additional entries into local neighborhoods. (Tab CC, Sarasota County website).

80. According to The Trust for Public Land, the Legacy Trail will be "the centerpiece of [Sarasota] county's planned trailed system and a major bicycle/pedestrian commuter link between Sarasota and Venice." (*See* the website for The Trust for Public Land: http://www.tpl.org/tier3_cd.cfm?content_item_id=19837&folder_id=250, a copy of this website print-out is attached as Tab EE).

Respectfully submitted,

LATHROP & GAGE, L.C.

Lindsay Brinton

Mark F. ("Thor") Hearne, II
Lindsay S.C. Brinton
The Equitable Building
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
Telephone: (314) 613-2500
Facsimile: (314) 613-2550
Thornet@ix.netcom.com

Attorney for Plaintiffs