35126
DO

SERVICE DATE - OCTOBER 14, 2004

SURFACE TRANSPORTATION BOARD

DECISION

STB Docket No. AB-400 (Sub-No. 3X)

SEMINOLE GULF RAILWAY, L.P.–ABANDONMENT EXEMPTION–
IN SARASOTA COUNTY, FL

Decided: October 13, 2004

A decision and notice of interim trail use or abandonment (NITU) served on April 2, 2004, authorized Seminole Gulf Railway, L.P. (SGLR) to abandon a portion of its Venice Branch between milepost SW 892 outside the city limits of the City of Sarasota, FL, and milepost 904.4 near the City of Venice, FL, a distance of approximately 12.43 miles, in Sarasota County, FL.[1] The exemption was subject to public use, trail use, environmental, and standard employee protective conditions. Under the NITU, Sarasota County, FL (the County), was authorized to negotiate an interim trail use/rail banking agreement with SGLR for the right-of-way involved in this proceeding. The negotiating period under the NITU was scheduled to expire on September 29, 2004.

On September 29, 2004, the County filed a request for an extension of the NITU for 3 months. The County states that it is currently in the process of finishing all of the acquisition due diligence requirements and negotiations, and has a closing date set for December 1, 2004. SGLR agrees to a 90-day extension.

Where, as here, the carrier is willing to continue trail use negotiations, the negotiating period may be extended.[2] The County has shown that the additional time is necessary to complete negotiations. An extension of time will promote the establishment of trails and rail banking consistent with the National Trails System Act, 16 U.S.C. 1247(d). Accordingly, the NITU negotiating period will be extended for an additional 90 days from September 29, 2004, until December 28, 2004.

This action will not significantly affect either the quality of the human environment or the conservation of energy resources.

---

[1] The line includes a "wye" and stub at approximately milepost SW 904.2 and side tracks.

[2] See Rail Abandonments—Supplemental Trails Act Procedures, 4 I.C.C.2d 152, 157-58 (1987).

EXHIBIT
AA

It is ordered:

1. The County's request to extend the NITU negotiating period is granted.

2. The NITU negotiating period is extended until December 28, 2004.

3. This decision is effective on the date of service.

By the Board, David M. Konschnik, Director, Office of Proceedings.

Vernon A. Williams
Secretary

137.50

16

RECORD AND RETURN TO:
LANDAMERICA SERVICE CENTER
10751 DEERWOOD PARK BLVD., SUITE 100
JACKSONVILLE, FL 32256

RECORDED IN OFFICIAL RECORDS
INSTRUMENT # 2005008585 16 PGS
2005 JAN 13 02:44 PM
KAREN E. RUSHING
CLERK OF THE CIRCUIT COURT
SARASOTA COUNTY, FLORIDA
CEAGLETO Receipt#570903

Doc Stamp-Deed: 0.70

2005008585

This instrument prepared by
or under the direction of:

Christopher G. Commander
Outside Counsel
Law Department
500 Water Street
Jacksonville, Florida 32202

After recording please return to
Timothy A. Burleigh
TIMOTHY A. BURLEIGH, P.A.
2905 Corinthian Avenue, Suite 6
Jacksonville, Florida 32210

# QUITCLAIM DEED

THIS QUITCLAIM DEED, made this 20th day of December, 2004, between CSX TRANSPORTATION, INC., a Virginia corporation, whose mailing address is 500 Water Street, Jacksonville, Florida 32202, *and whose Tax Identification Number(s) is/are* 54-6000720, hereinafter called "Grantor", and THE TRUST FOR PUBLIC LAND, a nonprofit California corporation whose mailing address is 306 North Monroe Street, Tallahassee, FL 32301, hereinafter called "Grantee", WITNESSETH:

(Wherever used herein, the terms "Grantor" and "Grantee" may be construed in the singular or plural as the context may require or admit, and for purposes of exceptions, reservations and/or covenants, shall include the heirs, legal representatives and assigns of individuals or the successors and assigns of corporations.)

That Grantor, being interested in and desiring to assist the citizens of the City of Sarasota for the benefit of the public in general and for the further sum of TEN DOLLARS AND NO/100 ($10.00), to it in hand paid by Grantee, the receipt of which is hereby acknowledged, does hereby RELEASE, REMISE and forever QUITCLAIM unto Grantee, its successors and assigns, all right, title and interest of Grantor, if any, in and to those certain tracts or parcels of land, situate, lying and being in Sarasota County, Florida and having a tax parcel identification number of ________________, hereinafter collectively designated "the Premises," more particularly described in Exhibit A, attached hereto and incorporated herein, and containing a total of 155.724 acres, more or less, together with all the improvements located thereon, including without limitation the tracks, ties, corridor bed material and other material, culverts and bridges, and all easements and all rights, tenements, hereditaments, members, privileges, licenses and



EXHIBIT
BB

appurtenances thereto, if any, and all rights, title and interests, if any, in and to all public and private ways adjoining or serving same, together with riparian rights and interests in waterbodies and the beds of waterbodies on or adjacent to the Premises.

TO HAVE AND TO HOLD the Premises, and all the estate, right, title, lien, interest and claim whatsoever of Grantor therein, either in law or equity, and all improvements thereon and appurtenances thereto, unto the proper use, benefit and enjoyment of Grantee, Grantee's heirs and assigns or successors and assigns, forever.

By Decision and Notice of Interim Trail Use or Abandonment served April 2, 2004 in the Surface Transportation Board ("STB") Docket No. AB-400, Sub.-No.3X, the STB imposed a Notice of Interim Trail Use ("NITU") on the Premises. Grantee for itself, its successors and assigns, acknowledges that the Premises remain subject to the jurisdiction of the STB for purposes of reactivating rail service. In the event that rail service is reactivated, terms and conditions relating to reimbursement and expenses shall be governed by certain terms and conditions contained in that certain Option Agreement dated August 28, 2003, as amended, by and between Grantor and Grantee, et al, covering the NITU, which terms and conditions shall be deemed to be the interim trail use agreement between Grantor and Grantee for purposes of 16 U.S.C. 1247(d) and all STB orders relating to same pertaining to the Premises.

Said covenant shall run with the title to the Premises conveyed, and bind upon Grantee, Grantee's heirs, legal representatives and assigns, or corporate successors and assigns, and anyone claiming title to or holding Premises through Grantee.

BALANCE OF PAGE INTENTIONALLY OMITTED

INSTRUMENT # 2005098585
15 PGS

INSTRUMENT # 2005008585
16 PGS

IN WITNESS WHEREOF, CSX TRANSPORTATION, INC., pursuant to due corporate authority, has caused its name to be signed hereto by its officers hereunto duly authorized and its corporate seal, duly attested, to be hereunto affixed.

Signed, sealed and delivered in the presence of:

Betty D. Jones

Amy Vaughn

CSX TRANSPORTATION, INC.:

By:
Print Name: Stephen A. Crosby
Print Title: President, CSX Real Property, Inc.

Attest
Secretary
Print Name: Donna W. Melton

(SEAL) CSX TRANSPORTATION, INC.

STATE OF FLORIDA )
) SS.
COUNTY OF DUVAL )

I, Marie Angela Tessier, a Notary Public of the State of Florida and the County of Duval, do certify that, on the date below, before me in said County came Stephen A. Crosby (X) to me known, and/or ( ) proven by satisfactory current evidence to be the person whose name is subscribed to the above instrument, who, being by me first duly sworn, did make oath, acknowledge and say that: (s)he resides in Jacksonville, Duval County, Florida; (s)he is President-CSX Real Property, Inc., signing on behalf of CSX Transportation, Inc., the corporation described in and which executed said instrument; (s)he is fully informed of the contents of the instrument; (s)he knows the seal of said corporation; the seal affixed to said instrument is such seal; it was so affixed by authority of the Board of Directors of said corporation; (s)he signed his/her name thereto for said corporation pursuant to Board authority; and instrument is the free act and deed of said corporation; and the conveyance herein is not part of a transaction, sale, lease, exchange or other transfer or conveyance of all or substantially all of the property and/or assets of the Grantor.

IN WITNESS WHEREOF, I hereunto set my hand and official seal, this 20th day of December, 2004.

My commission expires on:

Marie Angela Tessier
My Commission DD357171
Expires September 22, 2008

(SEAL)
Notary Public
Print Name: Marie Angela Tessier

S:\PDM\PL12\FN13 SARASOTA CO\115-0032\2003-5042-Trust\Deed TPL-Sarasota.doc

INSTRUMENT # 2005008585
15 PGS

# EXHIBIT A

A 100.00 foot wide strip of land lying in Sections 23, 26 and 35, Township 37 South, Range 18 East, and lying in Sections 1, 2, 12, 13, 24 and 25, Township 38 South, Range 18 East, and lying in Sections 30 and 31, Township 38 South, Range 19 East, and Sections 6, 7, 17 and 18, Township 39 South, Range 19 East, all lying and being in Sarasota County, Florida, and being that certain railroad right-of-way shown on RIGHT-OF-WAY AND TRACK MAP, SEABOARD AIRLINE RAILWAY CO., VENICE BRANCH dated December 31, 1927 from Mile Post SW 892 to Mile Post SW 904.425 as shown thereon, and lying 50.00 feet on each side of the following described centerline:

Commence at a Parker-Kalon Concrete Nail and Brass Disk set bearing the inscription "GFY LB021" marking the Northwest corner of Section 23, Township 37 South, Range 18 East, Sarasota County, Florida; thence on the North boundary of said Section 23, South 89°51'29" East, a distance of 1401.74 feet to a point on the centerline of an existing railroad right-of-way formerly known as Seaboard Air Line Railway Co., Venice Branch right-of-way, a 100.00 foot wide right-of-way, said point bearing North 89°51'29" West, a distance of 1278.42 feet from a 2 inch Iron Pipe found under water marking the Northeast corner of the Northwest 1/4 of said Section 23; thence on said centerline South 11°45'41" East, a distance of 766.21 feet to the POINT OF BEGINNING of the centerline of the property herein described, said point being at mile marker 892 of said railroad; thence continue the following eighteen (18) courses on said centerline of railroad right-of-way: (1) South 11°45'41" East, a distance of 1824.85 feet; (2) South 11°47'30" East, a distance of 2596.37 feet to a point on the North boundary of Section 26, Township 37 South, Range 18 East, Sarasota County, Florida, said point bearing North 89°33'41" West, a distance of 238.23 feet from a 2 inch Iron Pipe found under water marking the Northeast corner of the Northwest 1/4 of said Section 26; (3) South 11°47'01" East, a distance of 5532.53 feet to a point on the North boundary of Section 35, Township 37 South, Range 18 East, Sarasota County, Florida, said point bearing South 89°47'35" East, a distance of 917.02 feet from a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021" marking the Northwest corner of the Northeast 1/4 of said Section 35, and bearing North 89°47'35" West, a distance of 1760.35 feet from a found 5/8 inch iron rod with a plastic cap bearing the inscription "LB6754" marking the Northeast corner of said Section 35; (4) South 11°45'36" East, a distance of 5323.62 feet to a point on the North boundary of Section 2, Township 38 South, Range 18 East, Sarasota County, Florida, said point bearing North 89°51'28" East, a distance of 2348.60 feet from a found 5 inch square concrete monument bearing the inscription "Sarasota County" at the Northwest corner of the Northeast 1/4 of said Section 2, and bearing South 89°51'28" West, a distance of 321.63 feet from a found 5/8 inch iron rod with a plastic cap bearing the inscription" LB 6754" marking the Northeast corner of said Section 2; (5) South 11°45'19" East, a distance of 1535.56 feet to a point on the West boundary of Section 1, Township 38 South, Range 18 East, Sarasota County, Florida, said point bearing South 00°20'05" West, a distance of 1504.18 feet from a 5/8 inch iron rod with a plastic cap bearing the inscription" LB 6754" marking the Northwest corner of said Section 1, and bearing North 00°20'05" East, a distance of 3947.70 feet

from a railroad spike found in pavement marking the Southwest corner of said Section 1; (6) South 11°45'19" East, a distance of 4039.11 feet to a point on the North boundary of Section 12, Township 38 South, Range 18 East, Sarasota County, Florida, said point bearing South 89°32'29" East, a distance of 845.99 feet from a railroad spike found in pavement marking the Northwest corner of said Section 12, and North 89°32'29" West, a distance of 1829.99 feet from a 1-1/2 inch iron pipe found under water marking the Northeast corner of the Northwest 1/4 of said Section 12; (7) South 11°46'41" East, a distance of 5236.30 feet to a point on the North boundary of Section 13, Township 38 South, Range 18 East, Sarasota County, Florida, said point bearing South 89°38'15" East, a distance of 1935.03 feet from a found 4" square concrete monument bearing the inscription " PRM 1747" marking the Northwest corner of said Section 13, and bearing North 89°38'15" West, a distance of 693.40 feet from a found 1/2 inch iron rod marking the Northeast corner of the Northwest 1/4 of said Section 13; (8) South 11°47'38" East, a distance of 5414.75 feet to a point on the North boundary of Section 24, Township 38 South, Range 18 East, Sarasota County, Florida, said point bearing South 89°44'10" East, a distance of 3093.22 feet from a found 5 inch square concrete monument bearing the inscription "Sarasota County" marking the Northwest corner of said Section 24, and bearing North 89°44'10" West, a distance of 2200.39 feet from a found 2 inch iron pipe marking the Northeast corner of said Section 24; (9) South 11°47'26" East, a distance of 5423.91 feet to a point on the North boundary of Section 25, Township 38 South, Range 18 East, Sarasota County, Florida, said point bearing South 89°36'18" East, a distance of 4224.41 feet from a found 5/8 inch iron rod marking the Northwest corner of said Section 25; (10) South 11°46'14" East, a distance of 4929.19 feet to a point on the West boundary of Section 30, Township 38 South, Range 19 East, Sarasota County, Florida, said point bearing South 00°36'00" West, a distance of 2165.18 feet from a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021" marking the Northwest corner of the Southwest 1/4 of said Section 30, and bearing North 00°36'00" East, a distance of 488.09 feet from a found 5 inch square concrete monument bearing the inscription "Sarasota County" marking the Southwest corner of said Section 30; (11) South 11°46'14" East, a distance of 498.29 feet to a point on the North boundary of Section 31, Township 38 South, Range 19 East, Sarasota County, Florida, said point bearing North 89°51'45" East, a distance of 106.76 feet from a found 5 inch square concrete monument bearing the inscription "Sarasota County" marking the Northwest corner of said Section 31, and bearing South 89°51'45" West, a distance of 2528.32 feet from a found 5 inch square concrete monument bearing the inscription "Sarasota County" marking the Northeast corner of the Northwest 1/4 of said Section 31; (12) South 11°46'40" East, a distance of 5746.18 feet to a point on the North boundary of Section 6, Township 39 South, Range 19 East, Sarasota County, Florida, said point bearing North 89°55'00" West, a distance of 1224.25 feet from a found Parker-Kalon Concrete Nail and Brass Disk set bearing the inscription "LB 1856" marking the Northeast corner of the Northwest 1/4 of said Section 6; (13) South 11°47'09" East, a distance of 5391.71 feet to a point on the North boundary of Section 7, Township 39 South, Range 19 East, Sarasota County, Florida, said point bearing South 89°26'54" East, a distance of 1218.66 feet from a Parker-Kalon Concrete Nail and Brass Disk bearing the inscription " LB 021 " set as a witness corner 1300.00 feet Easterly of the Northwest corner of said Section 7, and bearing North 89°26'54" West, a distance of 110.93 feet from a



INSTRUMENT # 2005088585
16 PGS

found 1/2 inch iron rod marking the Northeast corner of the Northwest 1/4 of said Section 7; (14) South 11°46'14" East, a distance of 3082.14 feet to a point of curvature; (15) Southerly 1048.54 feet along the arc of a curve to the left, said curve being concave Easterly, having a radius of 2864.79 feet, a central angle of 20°58'15", and a chord bearing and distance of South 22°15'22" East, 1042.70 feet to a point of tangency; (16) South 32°44'29" East, a distance of 1611.73 feet to a point on the North boundary of Section 18, Township 39 South, Range 19 East, Sarasota County, Florida, said point bearing South 89°44'39" East, a distance of 4511.01 feet from a found 12 inch round concrete monument with a Florida Department of Natural Resources brass disk marking the Northwest corner of said Section 18, and bearing North 89°44'39" West, a distance of 823.71 feet from a railroad spike found in asphalt pavement marking the Northeast corner of said Section 18; (17) South 32°44'29" East, a distance of 1495.62 feet to a point on the West boundary of Section 17, Township 39 South, Range 19 East, Sarasota County, Florida, said point bearing South 00°40'33" West, a distance of 1254.41 feet from a railroad spike found in asphalt pavement marking the Northwest corner of said Section 17, and bearing North 00°40'33" East, a distance of 4077.27 feet from a found 5 inch square concrete monument bearing the inscription "Sarasota County" marking the Southwest corner of said Section 17; (18) South 32°44'29" East, a distance of 4891.21 feet to the POINT OF TERMINATION, said point being on the South boundary of said Section 17, said point bearing South 89°12'25" East, a distance of 22.52 feet from a 5/8 inch iron rod found in asphalt pavement marking the Southwest corner of the Southeast 1/4 of said Section 17, and bearing North 89°12'25" West, a distance of 2649.30 feet from a Parker-Kalon concrete nail and brass disk found in asphalt pavement marking the Southeast corner of said Section 17, and the boundaries of the land described herein shall be lengthened or shortened to terminate on the South boundary of said Section 17.

AND

(Remainder portion of Wye Tracks lying Easterly of Seaboard Air Line Railway Co., Venice Branch right-of-way, a 100.00 foot wide right-of-way)

A parcel of land lying in Section 17, Township 39 South, Range 19 East, Sarasota County, Florida, being more particularly described as follows:

Commence at the Southwest corner of the Southeast 1/4 of Section 17, Township 39 South, Range 19 East, Sarasota County, Florida, thence on the South boundary of the Southeast 1/4 of said Section 17, South 89°12'25" East, a distance of 22.52 feet to a point on the centerline of an existing railroad right-of-way formerly known as Seaboard Air Line Railway Co., Venice Branch right-of-way, a 100.00 foot wide right-of-way; thence on said centerline, North 32°44'29" West, a distance of 353.50 feet; thence departing said centerline, North 57°15'31" East, a distance of 50.00 feet to the POINT OF BEGINNING, said point being on the Easterly right-of-way line of said existing railroad right-of-way and being marked by a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021"; thence on said Easterly right-of-way line, North 32°44'29" West, a distance of 401.37 feet to a point on a non-tangent curve, said point being on the



INSTRUMENT # 2005008585
16 PGS

Southeasterly boundary of that certain parcel of land described in Official Records Book 1371, Page 231 of the Public Records of Sarasota County, Florida, said point being marked by a found railroad spike ; thence the following three (3) courses on the boundaries of said certain parcel: (1) Northerly 766.10 feet along the arc of a curve to the right, said curve being concave Easterly, having a radius of 940.00 feet, a central angle of 46°41'46", and a chord bearing and distance of North 15°50'32" East, 745.08 feet to a point on the Westerly right-of-way line of State Road 45-A, also known as U.S. Highway 41 Venice Bypass as shown on State of Florida State Road Department Right-of-way Map, Section 17180-2501, last revised 3-4-64, said point being marked by a found 3 inch by 3 inch square concrete monument; (2) on said Westerly right-of-way line, North 36°11'59" West, a distance of 12.59 feet to a point on a non-tangent curve, said point being marked with a 5/8" Iron Rod found with a plastic cap bearing the inscription "PLS 2670": (3) Westerly 764.70 feet along the arc of a curve to the right, said curve being concave Northerly, having a radius of 940.00 feet, a central angle of 46°36'39", and a chord bearing and distance of North 81°20'55" West, 743.79 feet to a point on the Easterly right-of-way line of said 100.00 foot wide railroad right-of-way, said point being marked by a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021"; thence on said Easterly right-of-way line, North 32°44'29" West, a distance of 401.36 feet to a point on a non-tangent curve, said point being on the Northeasterly right-of-way line of said Wye Spur Track, said point being marked by a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021"; thence the following nine (9) courses on the right-of-way lines of said Wye Spur Track; (1) Southeasterly 1030.82 feet along the arc of a curve to the left, said curve being concave Northeasterly, having a radius of 850.00 feet, a central angle of 69°29'03", and a chord bearing and distance of South 67°29'05" East, 968.80 feet to a point on Westerly right-of-way line of said State Road 45-A, said point being marked by a 5/8 inch iron rod found with a plastic cap bearing the inscription "LS 4661"; (2) departing said Westerly right-of-way line and across said State Road 45-A, Easterly 112.91 feet along the arc of a curve to the left, said curve being concave Northerly, having a radius of 850.00 feet, a central angle of 07°36'40", and a chord bearing and distance of North 73°49'25" East, 112.83 feet to a point on the Easterly right-of-way line of said State Road 45-A, said point being marked by a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021"; (3) departing said Easterly right-of-way line, Northeasterly 189.92 feet along the arc of a curve to the left, said curve being concave Northwesterly, having a radius of 850.00 feet, a central angle of 12°48'06", and a chord bearing and distance of North 63°37'02" East, 189.52 feet to a point being marked by a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021"; (4) North 57°15'58" East, a distance of 1011.10 feet to the Northeast corner of said Wye Spur Track, said point being marked by a found 4 inch by 4 inch square concrete monument; (5) South 32°43'57" East, a distance of 99.78 feet to the Southeast corner of said Wye Spur Track, said point being marked by a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021"; (6) South 57°16'07" West, a distance of 1011.06 feet to a point of curvature, said point being marked by a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021"; (7) Southwesterly 181.32 feet along the arc of a curve to the left, said curve being concave Southeasterly, having a radius of 850.00 feet, a central angle of 12°13'19", and a chord bearing and distance of South 51°09'28" West, 180.97 feet to a point on the Easterly



INSTRUMENT # 2005008585
16 PGS

right-of-way line of said State Road 45-A, said point being marked by a 1/2 inch iron rod set with a plastic cap bearing the inscription "GFY LB021"; (8) departing said Easterly right-of-way line and across said State Road 45-A, Southwesterly 109.52 feet along the arc of a curve to the left, said curve being concave Southeasterly, having a radius of 850.00 feet, a central angle of 07°22'56", and a chord bearing and distance of South 40°14'25" West, 109.44 feet to a point on the Westerly right-of-way line of said State Road 45-A, said point being marked by a 5/8 inch iron rod with a plastic cap bearing the inscription "PLS3975"; (9) departing said Westerly right-of-way line, Southerly 1042.84 feet along the arc of a curve to the left, said curve being concave Easterly, having a radius of 850.00 feet, a central angle of 70°17'39", and a chord bearing and distance of South 02°27'11" West, 978.66 feet to the POINT OF BEGINNING.
The above described parcel contains 6.682 acres more or less, or 291,075 square feet more or less.

LESS AND EXCEPT

That part of that certain parcel of land described in Official Records Instrument Number 2002036256 as recorded in the Public Records of Sarasota County, Florida, lying within the 100.00 foot wide right-of-way formerly known as Seaboard Air Line Railway Co., Venice Branch right-of-way; said certain parcel being therein described as follows:

Begin at the most easterly corner of Lot 11, Center Road Industrial Park Subdivision, recorded in Plat Book 27, Pages 47 and 47-"A", Public Records of Sarasota County, Florida; Thence N. 32 degrees 53'35"W (Plat - N 32 degrees 53'04" W) along the Easterly line of Lots 11 and 10 of said subdivision, 415.03' to the Northwesterly corner of lands described in that certain deed dated 29 December 1982, between Seaboard Coastline Railroad Company and John W. Shoemaker and Charles E. Stoftlemyer; Thence N 57 degrees 05'42" E along the Northerly line of said lands, 120.35' to the Westerly boundary of those certain lands described in Official Records Book 1135, Page 872, of the Public Records of Sarasota County, Florida; Thence N 32 degrees 57'37" W (Deed - N 32 degrees 52'56" W, 26.03'), 25.98' to the P.C. of a curve, concave to the Northeast and having a radius of 513.82' (Deed - 518.64'): Thence Northwesterly along the arc of said curve 156.14' (Chord - N 24 degrees 15'17" W, 155.54') to a point on the Northerly line of said lands described in O.R. Book 1135, Page 872; Thence N. 57 degrees 06'21" E, along said Northerly line, 101.39' to the most Northerly corner of those certain lands described in said O.R. 1135, Page 872, said point lying 25' from the centerline of Seaboard Coastline Railroad Track; Thence S 32 degrees 53'20" East along the Easterly line of those certain lands described in said O.R. Book 1135, Page 872, a distance of 783.36' to a point lying on the North R/W of Center Road (R/W width varies); Thence S 74 degrees 39'20" W, along said R/W, 47.63'; thence S 82 degrees 20'39" W, along said R/W, 76.05'; thence N 89 degrees 23'15" W along said R/W and also along a line 24' North of and parallel to the South line of Section 17, Township 39 South, Range 19 East, a distance of 156.88'; Thence N 32 degrees 53'35" W along the Southeasterly extension of Lot 11 of said subdivision, 55.17' to the Point of Beginning.

INSTRUMENT # 2005008585
18 PGS

Being and lying in Section 17, Township 39 South, Range 19 East, Sarasota County, Florida

ALSO LESS AND EXCEPT

That part of those certain parcels of land described as Parcel 1 (100-A), and Parcel 2 (100-B) in Official Records Instrument Number 1999068337 as recorded in the Public Records of Sarasota County, Florida, lying within the 100.00 foot wide right-of-way formerly known as Seaboard Air Line Railway Co., Venice Branch right-of-way, said certain parcels being therein described as follows:

Parcel 1 (100-A)
That part of the East half (1/2) of Section 7, Township 39 South, Range 19 East, Sarasota County, Florida, being more particularly described as follows:

Commence at the intersection of the centerline of the Main Track of the Seminole Gulf Railway Right-of-way as show on Valuation Map Station 3916+50 to Station 3957+66 dated December 31, 1927 now known as the CSX Transportation, Inc. and the centerline of Venice Avenue Right-of-way (120.00 foot wide Right-of-way); thence run South 89°23'38" East along the centerline of Venice Avenue for a distance of 4.606 meters (15.11 feet) to the POINT OF BEGINNING, also being a point on a circular curve concave to the Northeast, the chord for which bears North 12°47'09" West, thence run Northwesterly along the arc of said curve, having a radius of 868.617 meters (2849.79 feet), through a central angle of 02°01'32", for an arc distance of 30.706 meter (100.74 feet) to the Point of Tangency; thence run North 11°46'23" West along a line that is 15.00 feet East of and parallel with the centerline of said tract for a distance of 357.120 meters (1171.65 feet); thence run South 51°48'48" East for a distance of 4.081 meters (13.39 feet); thence run South 11°48'13" East for a distance of 8.388 meters (27.52 feet); thence run South 15°24'08" East for a distance of 24.597 meters (80.70 feet); thence run South 18°33'12" East for a distance of 15.213 meters (49.91 feet); thence run South 20°06'51" East for a distance of 14.755 meters (48.41 feet); thence run South 22°27'05" East for a distance of 14.911 meters (48.92 feet); thence run South 25°33'22" East for a distance of 14.758 meters (48.42 feet); thence run South 30°17'25" East for a distance of 5.852 meters (19.20 feet); thence run South 59°42'34" West for a distance of 2.469 meters (8.10 feet); thence run South 32°05'24" East for a distance of 32.010 meters (105.02 feet); thence run South 53°00'39" West for a distance of 1.280 meters (4.20 feet); thence run South 36°59'21" East for a distance of 7.065 meters (23.18 feet); thence run South 39°18'22" East for a distance of 5.270 meters (17.29 feet); thence run South 36°58'53" East for a distance of 15.840 meters (51.97 feet); thence run South 30°11'54" East for a distance of 15.487 meters (50.81 feet); thence run South 24°54'25" East for a distance of 9.025 meters (29.61 feet); thence run South 65°05'36" West for a distance of 0.610 meter (2.00 feet); thence run South 24°54'24" East for a distance of 6.358 meters (20.86 feet); thence run South 21°49'31" East for a distance of 15.356 meters (50.38 feet); thence run South 17°52'36" East for a distance of 6.248 meters (20.50 feet); thence run South 18°33'38" East for a distance of 11.433 meters (37.51 feet); thence run South 13°10'42" East for a distance of 13.079



INSTRUMENT # 2005008585
16 PGS

meters (42.91 feet); thence run South 12°02'54" East for a distance of 9.559 meters (31.36 feet); thence run South 11°53'44" East for a distance of 10.220 meters (33.53 feet); thence run South 11°40'33" East for a distance of 16.673 meters (54.70 feet); thence run South 11°43'10" East for a distance of 25.146 meters (82.50 feet); thence run South 78°13'37" West for a distance of 0.143 meter (0.47 feet); thence run South 11°47'40" East for a distance of 85.469 meters (280.41 feet); thence run North 89°23'38" West for a distance of 38.905 meters (127.64 feet) to a point on circular curve concave to the Northwest, the chord for which bears South 13°59'07" East, thence run Southeasterly along the arc of said curve, having a radius of 857.950 meters (2814.79 feet), through a central angle of 02°31'27", for an arc distance of 37.798 metes (124.01 feet) to a point on said curve; thence run North 89°23'38" West for a distance of 11.086 meters (36.37 feet) to a point on a circular curve concave to the Northeast, the chord for which bears North 14°25'23" West, thence run Northwesterly along the arc of said curve, having a radius of 868.617 meters (2849.79 feet), through a central angle of 01°14'57", for an arc distance of 18.937 meters (62.13 feet) to the POINT OF BEGINNING.

Containing 12,754.111 square meters (137,282.7 square feet), more or less.

Parcel 2 (100-B)

Commence at the intersection of the centerline of the Main Track of the Seminole Gulf Railway Right-of-way as show on Valuation Map Station 3916+50 to Station 3957+66 dated December 31, 1927 now known as the CSX Transportation, Inc. and the centerline of Venice Avenue Right-of-way (120.00 foot wide Right-of-way); thence run North 89°23'38" West along the centerline of Venice Avenue for a distance of 4.834 meters (15.86 feet) to the POINT OF BEGINNING, also being a point on a circular curve concave to the Northeast, the chord for which bears South 14°15'46" East, thence run Southeasterly along the arc of said curve, having a radius of 877.762 meters (2879.79 feet), through a central angle of 01°14'07", for an arc distance of 18.922 meters (62.08 feet) to a point on said curve; thence run North 89°23'38" West for a distance of 11.064 meters (36.30 feet) to a point on a circular curve concave to the Northeast, the chord for which bears North 13°28'26" West, thence run Northwesterly along the arc of said curve, having a radius of 888.430 meters (2914.79 feet), through a central angle of 02°25'55", for an arc distance of 37.713 meters (123.73 feet), to a point on said curve; thence run South 89°23'38" East for a distance of 10.945 meters (35.91 feet) to a point on a circular curve concave to the Northeast, the chord for which bears South 13°01'52" East, thence run Southeasterly along the arc of said curve, having a radius of 877.762 meters (2879.79 feet), through a central angle of 01°13'42", for an arc distance of 18.818 meters (61.74 feet) to a point on said curve, also being the POINT OF BEGINNING;

Containing 402.469 square meters (4,332.1 square feet), more or less.

ALSO LESS AND EXCEPT

INSTRUMENT # 2005088585
16 PGS

That part of that certain parcel of land described in Official Records Book 2033, Page 2643 of the Public Records of Sarasota County, Florida lying within the 100.00 foot wide right-of-way formerly known as Seaboard Air Line Railway Co., Venice Branch, said parcel being therein described as follows:

A parcel of land situate in Section 7, Twp. 39-S, Rge. 19 East, Sarasota County, Florida, and being more particularly bounded and described as follows: Commence at the intersection of the center at Hatchett Creek with the center of the main track of Seaboard Coast Line; thence South along the center of said main track 57.20'; thence East 25.00' for a P.O.B.; said point being the approximate Mean High Water Line of said Hatchett Creek; thence southeasterly and southerly meandering along the said Mean High Water Line of Hatchett Creek 575.00' more or less to a point, said point being East 250.00' from said center of the main track; thence South along a line parallel with and 250.00' Easterly of said main track 512.50'; thence West 75.04' to a point, said point being East 8.00' from the center of Spur Track 3# of said Seaboard Coast Line; thence along the following courses being 8.00' Easterly of the center of said Spur Track #5: N 0°05'03" E 82.50'; N 0°07'40" E 54.70'; N 0°05'31" W 33.53'; N 0°14'41" W 31.36'; N 1°22'29" W 42.91'; N 6°45'25" W 37.51'; N 6°04'23" W 20.50'; N 10°01'18" W 50.38' and N 13°06'11" W 20.86'; thence N 76°53'49" E 2.00' to a point on a building wall; thence along the following courses being 1.0' easterly of said Spur Track #5: N 13°06'12" W 29.61'; N 18°23'41" W 50.81'; N 25°10'40" W 51.97'; N 27°30'09" W 17.29' and N 25°11'08" W 23.18'; thence N 64°48'52" E 4.20' to a point on the westerly side of a block retaining wall; thence continue along said block wall N 20°17'11" W 105.02'; thence N 71°30'47" E 8.10'; thence along the following courses being 25.00 feet northeasterly of said Spur Track #5: N 18°29'12" W 19.20'; N 13°45'09" W 48.42'; N 10°38'52" W 48.92'; N 8°18'38" W 48.41'; N 6°44'59" W 49.91'; N 3°35'55" W 80.70' and North 27.52' to the P.O.B.

INSTRUMENT # 2005008585
16 PGS

INSTRUMENT # 2005008585
16 PGS

BEING more particularly shown on plat of survey dated March 26, 2004, last revised December, 2004 prepared by L. Scott Brown, Registered Land Surveyor and Mapper No. 5271, George F. Young, Inc., 8621 Martin Luther King Boulevard, Tampa, FL, incorporated herein by reference.

BEING a portion of the property acquired by predecessors of Grantor, by the following instruments, recorded among the Public Land Records of Sarasota County, Florida:

| GRANTOR | GRANTEE | DEED DATE | DEED BOOK /PAGE |
|---|---|---|---|
| Adrian Honore | Seaboard Air Line Railway Company | 11/15/1910 | 26/127 |
| Adrian Honore | Seaboard Air Line Railway Company | 11/15/1910 | 26/127 |
| Sarah O. Webber | Seaboard Air Line Railway Company | 6/21/1901 | 76/32 |
| J. B. Hutchings, Et Ux | Seaboard Air Line Railway Company | 9/29/1910 | 23/7 |
| Adrian Honore | Seaboard Air Line Railway Company | 11/15/1910 | 26/127 |
| Adrian Honore | Seaboard Air Line Railway Company | 11/15/1910 | 26/127 |
| A. E. Blackburn, Et Ux | Seaboard Air Line Railway Company | 9/5/1910 | 19/54 |
| Adrian Honore | Seaboard Air Line Railway Company | 11/15/1910 | 26/127 |
| Clement Phillips, Et Ux | Seaboard Air Line Railway Company | 9/5/1910 | 19/557 |
| Potter Palmer, Jr., Et Ux | Seaboard Air Line Railway Company | 11/10/1910 | 20/119 |
| Clement Phillips, Et Ux | Seaboard Air Line Railway Company | 9/5/1910 | 19/557 |
| H. M. Frazer, Et Ux | Seaboard Air Line Railway Company | 9/5/1910 | 19/558 |
| Sarasota Venice Co. | Seaboard Air Line Railway Company | / / | |
| Jesse Knight | Seaboard Air Line Railway Company | 9/3/1910 | 19/570 |
| Jesse Knight, Et Al | Seaboard Air Line Railway Company | 9/3/1910 | 19/571 |
| B. L. E. Realty Corporation | Seaboard Air Line Railway Company | 4/4/1927 | 83/451 |
| B. L. E. Realty Corporation | Seaboard Air Line Railway Company | 4/4/1927 | 83/451 |
| Honore' Palmer And Potter Palmer, As Trustees | Seaboard Air Line Railway Company | 1/5/1940 | 162/14 |
| Saraven Corporation | Seaboard Air Line Railway Company | 6/19/1963 | 430/47 |
| West Coast Inland Navigation Dist. | Seaboard Coast Line Railroad Co | 3/21/1975 | 1105/552 |

On July 1, 1967 the Atlantic Coast Line Railroad Company merged with the Seaboard Air Line Railroad Company to form the Seaboard Coast Line Railroad Company. On December 29, 1982 the Louisville and Nashville Railroad Company merged into Seaboard Coast Line Railroad Company, and the name of the surviving corporation changed to Seaboard System Railroad, Inc. On July 1, 1986, Seaboard System Railroad, Inc. changed its name to CSX Transportation, Inc.

By proclamation of the President of the United States, dated December 26, 1917, the Federal Government took possession and assumed control of the railroad of the Seaboard Air Line Railway Company from and after twelve o'clock, December 28, 1917. On August 1, 1946, pursuant to a plan of reorganization, all the properties of Seaboard Air Line Railway Company were transferred to Seaboard Air Line Railroad Company. On July 1, 1967 the Atlantic Coast Line Railroad Company merged with the Seaboard Air Line Railroad Company to form the Seaboard Coast Line Railroad

Company. On December 29, 1982 the Louisville and Nashville Railroad Company merged into Seaboard Coast Line Railroad Company, and the name of the surviving corporation changed to Seaboard System Railroad, Inc. On July 1, 1986, Seaboard System Railroad, Inc. changed its name to CSX Transportation, Inc.

INSTRUMENT # 2005008585
16 PGS

INSTRUMENT # 2005998585
18 PGS

CSX TRANSPORTATION, INC

CERTIFICATE RE EXECUTION OF DOCUMENTS

I, DONNA W. MELTON, Corporate Secretary of CSX TRANSPORTATION, INC., do hereby certify that (a) the attached excerpt marked Exhibit "A" from the minutes of the action of the Board of Directors of this corporation dated January 2, 1992 (the "Resolution"), governing instructions with respect to the execution of deeds, leases, contracts, agreements and other documents pertaining to real estate to which this corporation may be or become a party, and (b) the attached Designation from the President and Chief Executive Officer of this corporation dated January 26th, 2004 (the "Designation") marked Exhibit "B" from the business records of this corporation, are true and correct and in force as of this date.

I do hereby further certify that Stephen A. Crosby is the duly appointed President of CSX Real Property, Inc., and pursuant to the Designation referenced above is now authorized to execute any and all deeds, leases, contracts, agreements and other documents pertaining to real estate in accordance with the Resolution and such Designation.

Donna W. Melton
Corporate Secretary of
CSX TRANSPORTATION, INC.

Jacksonville, FL

INSTRUMENT # 2005008595
16 PGS

Exhibit "A"

CSX TRANSPORTATION, INC.

Excerpt from minutes of director's action without meeting as of January 2, 1992

INSTRUCTIONS GOVERNING THE ACQUISITION, DISPOSITION, OR ENCUMBRANCE OF PROPERTY OR RIGHTS THEREIN, CAPITAL EXPENDITURES, CONTRACTUAL OBLIGATIONS, THE ISSUANCE OF SECURITIES, AND THE EXECUTION OF DEEDS, LEASES, CONTRACTS, AGREEMENTS, AND OTHER DOCUMENTS TO WHICH THIS CORPORATION MAY BE A PARTY

RESOLVED, that, effective January 1, 1992, the following instructions will apply to the acquisition, disposition, or encumbrance of property or rights therein, the authorization for capital expenditures, contractual obligations, the issuance of securities, and the execution and custody of deeds, leases, contracts, agreements, and other documents to which this corporation or any duly authorized agent of this corporation may be a party:

* * * * * *

(8) Unless prepared without deviation on standard forms previously approved by the legal department of this corporation, all deeds, leases, contracts, agreements, instruments to sell securities, notes, guarantees, consents, releases, reports, and other documents to which this corporation may be a party shall be submitted to such legal department for approval in advance of their execution, and such documents, except as otherwise provided herein, may be executed by the President and Chief Executive Officer, any Executive Vice-President, any Senior Vice-President or any duly elected Vice-President of the corporation, or any other person who has been so authorized by resolution of the Board of Directors or in writing by the President and Chief Executive Officer, but only after they shall have had all required approvals; and further that such letters of designation shall be filed with the Vice-President and Corporate Secretary of the corporation.

* * * * * *

Exhibit "B"

INSTRUMENT # 2005008585
16 PGS

# CSX Transportation, Inc.

## DESIGNATION

WHEREAS, under Section 8 of the Resolution of CSX Transportation, Inc. ("CSXT"), approved on or about January 2, 1992, governing the execution of real estate related deeds, leases, contracts, agreements, and other documents to which CSXT may be or become a party, the President and Chief Executive Officer of CSXT may designate persons to execute such documents on behalf of CSXT;

WHEREAS, the undersigned is the President and Chief Executive Officer of the corporation;

WHEREAS, CSXT and CSX Real Property, Inc. ("RPI") are parties to an agreement entitled, "Property Management Agreement and Limited Power of Attorney," effective March 1, 1990, and to certain extension agreements thereto (collectively, the "Management Agreement"), under which RPI provides CSXT with management, acquisition, analysis, valuation, marketing, sales and development services with respect to CSXT's real property; and

WHEREAS, CSXT desires to give the President of RPI the authority to sign certain real estate documents on behalf of CSXT in order to ensure efficient and effective contracting and closing processes stemming from RPI's services under the Management Agreement.

NOW, THEREFORE, I hereby designate Stephen A. Crosby, President – CSX Real Property, Inc., under Section 8 of the Resolution and empower him to execute, on behalf of CSXT, deeds, leases, contracts, agreements, and other documents pertaining to real estate falling within the Management Agreement, provided that nothing herein shall (a) alter or eliminate the need to solicit and receive the appropriate level of corporate approval as set forth in the Resolution or the Management Agreement; (b) restrict my exercise of authority, or my right to designate additional persons to exercise such authority, under the Resolution; or (c) modify the grants of authority contained in the Management Agreement.

This Designation shall be effective immediately and shall continue until revoked by the undersigned, or my successor.

By: *Michael J. Ward*
Name: Michael J. Ward
Title: President and Chief Executive Officer
CSX Transportation, Inc.

Dated this 21st day of January, 2004.