# In the United States Court of Federal Claims

**No. 07-273L**
**(Filed November 21, 2007)**

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

| | |
|---|---|
| **STEPHEN J. and LINDA L. ROGERS, et al.,** | * |
| **Plaintiffs,** | * |
| **v.** | * |
| **THE UNITED STATES,** | * |
| **Defendant.** | * |

* * * * * * * * * * * * * * * * * * * * * * * * * * * * *

---

**ORDER GRANTING PLAINTIFFS' MOTION TO CERTIFY CLASS ACTION**

---

On August 21, 2007, Plaintiffs filed a motion to certify this as a class action pursuant to Rule 23 of the Rules of the United States Court of Federal Claims (RCFC). Plaintiffs requested this Court to:

> certify this action as a class action brought by Plaintiffs as representative parties on behalf of all other land owners holding fee title to property in Sarasota County, Florida whose property has been taken or damaged as a result of the conversion of the Venice Branch of the Seminole Gulf Railway to a public use trail pursuant to the National Trails System Act, 16 U.S.C. § 1547(d) ("Trails Act") and the Notice of Interim Trail Use ("NITU") issued by the Surface Transportation Board ("STB") on April 2, 2004.

Pl.'s Mot. at 1. Defendant did not oppose Plaintiff's motion. On November 8, 2007, the parties filed a joint motion with the court clarifying the definition of the class and submitting a proposed class certification order, a class notice, scheduling order, and entry of appearance.

This Court will only certify a class action where the prerequisites of RCFC 23 have been met. This Court's rules permit only opt-in class certifications, not opt-out classes. See, e.g., RCFC 23 Committee Notes to 2002 Revision.

**The Prerequisites of Rule 23(a) are Satisfied Here**

The Court may grant a motion to certify a class only when the prerequisites to a class action have been met:

> **Prerequisites to a Class Action.** One or more members of a class may sue as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims of the representative parties are typical of the claims of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a). As discussed below, each of these elements has been met here.

First, this Court will grant a motion for class certification only when the potential class "is so numerous that joinder of all members is impracticable." RCFC 23(a)(1 ). Based on Plaintiffs' representations drawn from an initial review of the records of the Sarasota County Tax Assessor and Record of Deeds and the work of a title company, Plaintiffs estimate that there are approximately 500 individuals or entities who owned property abutting or underlying the subject railroad corridor on April 2, 2004. This number of potential class members satisfies the numerosity requirement. See Favreau v. United States, 48 Fed. Cl. 774, 777 (2000) ("In this case, the prospective class of over 500 members meets the [numerosity] requirement.").

Second, class certification is appropriate only when there are questions of law or fact common to the class. See RCFC 23(a)(2). The principal legal issue in this case is whether the STB's issuance of a NITU on April 2, 2004, resulted in an unconstitutional taking under the Fifth Amendment. The primary question of law, therefore, is common to all class members. The Court recognizes that in order to address this primary legal issue, the parties will have to address several sub-issues, including: (1) What interest did the Seaboard Air Line Railway, the predecessor in interest of the Seminole Gulf Railway, obtain in the early 1900s when it acquired this right-of-way; (2) what was the effect of the STB's issuance of the April 2, 2004 NITU on the railroad's interest; and (3) did the class members own a compensable property interest on April 2, 2004. Resolution of the first two issues are common to the class, while resolution of the third issue will require development of facts specific to each individual class member.

Third, the Court may grant a motion for class certification only if the claims of the representative parties are typical of the claims of the class. See RCFC 23(a)(3). The named Plaintiffs and class members allege identical legal claims. Specifically, the representative parties allege that the STB's issuance of the April 2, 2004 NITU effected a taking of their property in violation of the Fifth Amendment to the United States Constitution. Although there may be specific factual differences among class members, the Court is satisfied that the claims of the representative parties are typical of the claims of the class.

Fourth, class certification is permitted only if the Court is satisfied that the representative parties will fairly and adequately protect the interests of the class. See RCFC 23(a)(4). The Court is aware of no facts that might raise a potential conflict of interest between the named Plaintiffs and potential class members. Accordingly, the Court finds that the named Plaintiffs will fairly and adequately protect the interests of the class without a conflict of interest.

**The Requirements of Rule 23(b) are Satisfied Here**

In addition to satisfying the prerequisites set forth in Rule 23(a), Plaintiffs must also show that the requirements of Rule 23(b) have been satisfied:

> **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition: (1) the United States has acted or failed to act on grounds generally applicable to the class; and (2) the court finds that the questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by members of the class; and (C) the difficulties likely to be encountered in the management of a class action.

As discussed below, each of these elements has been met here.

First, the Court finds that the United States acted on grounds generally applicable to the named Plaintiffs. Plaintiffs' claims, like those of the potential class members, relate to the STB's issuance of the April 2, 2004 NITU. The United States' act, therefore, is generally applicable to the proposed class members.

Second, the Court finds that questions of law and fact common to the members of the class predominate over any questions affecting only individual members and that a class action will be a superior method of resolving this controversy. The three legal issues presented above will be the predominant questions this court needs to answer in adjudicating this matter on behalf of all class members. It follows that the commonality requirement of RCFC 23(b)(2) is satisfied.

Finally, also pursuant to RCFC 23(b)(2), the court must find that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The superiority requirement is met where "'a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" Barnes v. United States, 68 Fed. Cl. 492, 499

(2005) (quoting Fed. R. Civ. P. 23 Advisory Committee Notes (1966 amendment)). Class certification is clearly a superior method of adjudicating the claims of this class because, according to Plaintiffs' estimates, the number of potential class members could exceed 500. A scenario where these hundreds of individuals either seek to join a lawsuit or initiate their own separate lawsuits to remedy their claims would undoubtedly involve the expenditure of more time, effort, and expense by the United States and the potential plaintiffs than will be necessary if this matter proceeds as a class action.

What remains, then, is for this court to determine that the class vehicle will promote uniformity of decisions without sacrificing fairness to the potential class members. Id. Treating this matter as a class will promote uniformity of decision because it will obviate the possibility of inconsistent rulings in individually pursued cases. Further, because the class members' claims are not adverse to one another, there appears to be little likelihood that class proceedings in this case will be unfair or cause other undesirable results to the members. For these reasons, the court finds that a class action is the superior method of resolving this case. Certification of this action as an opt-in class under RCFC 23 is appropriate.

In accordance with RCFC 23(c)(1)(B), if the Court grants class certification it must "define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)."

**Definition of the Class**

As agreed by the parties, the class shall consist of those individuals:

(1) who owned property abutting or underlying the Seminole Gulf Railway between milepost SW 892 and milepost 904.4 on April 2, 2004;

(2) whose property was allegedly taken in violation of the Fifth Amendment to the United States Constitution as a result of the Surface Transportation Board's (STB) issuance of the April 2, 2004 Decision and Notice of Interim Trail Use or Abandonment ( the NITU); and

(3) who affirmatively opt into this lawsuit in accordance with the procedures outlined in the Court's Scheduling Order, issued this date.

**Definition of the Class Claims**

The class claims a violation of the Fifth Amendment of the United States Constitution resulting from the STB's issuance of the April 2, 2004 NITU. This Court has jurisdiction over claims for "just compensation" founded upon the Takings Clause of the Fifth Amendment under the Tucker Act, 28 U.S.C. § 1491. Moden v. United States, 404 F.3d 1335, 1341 (Fed. Cir. 2005). The class also claims delay damages from the date of the alleged takings (April 2, 2004) until the date the compensation is paid. In addition, the class seeks reimbursement for its attorneys' fees, costs,

and expenses of this action pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4651-4655.

**Identification of Class Issues**

The principal legal issue in this case is whether the STB's issuance of the NITU on April 2, 2004, resulted in an unconstitutional taking under the Fifth Amendment. In order to address this primary legal issue, the parties will have to address several sub-issues, including:

(1) What interest did the Seaboard Air Line Railway, the predecessor in interest of the Seminole Gulf Railway, obtain in the early 1900s when it acquired this right-of-way?

(2) What was the effect of the STB's issuance of the April 2, 2004 NITU on the railroad's interest?

(3) Did the class members own a compensable property interest under Florida law on April 2, 2004?

**Identification of Potential Defenses**

The United States' defenses may include:

(1) the class members did not own a compensable property interest under Florida law on April 2, 2004;

(2) the class members were not the owners of any relevant property on the date of the alleged taking, April 2, 2004; and

(3) the STB's issuance of the April 2, 2004 NITU did not result in the taking of any property owned by a specific class member.

**Appointment of Counsel**

Under RCFC 23(g), this Court is required to appoint class counsel when it certifies a class action. See RCFC 23(g)(1)(A). To serve as class counsel, an attorney must be able to fairly and adequately represent the interests of the class. RCFC 23(g)(1)(B). In appointing class counsel, the Court must evaluate 1) the work the potential class counsel has done in identifying or investigating potential claims in the action, 2) the potential class counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in the action, 3) the potential class counsel's knowledge of the applicable law, and 4) the resources the potential class counsel will commit to representing the class. RCFC 23(g)(1)(C)(i).

In this instance, Plaintiffs' lead counsel, Mark F. "Thor" Hearne, is a member and principal of the law firm of Lathrop & Gage L.C. Mr. Hearne has more than 20 years of experience in real estate, land use regulation, and related federal and state litigation. Moreover, Mr. Hearne has practiced before this Court representing property owners in a number of other Trails Act takings cases. See Miller v. United States, No. 1:03-cv-02849; Illig v. United States, No. 1:98-cv-00934; Town of Grantwood Village v. United States, No. 1:98-cv-00176. Two of these cases, Miller and Illig, were certified as class actions in this Court. Both of these cases, like this matter, concerned takings claims and the Trails Act. See Illig v. United States, 67 Fed. Cl. 47, 48-49 (2005); Miller v. United States, 67 Fed. Cl. 542, 543 (2005). Mr. Hearne's co-counsel, Lindsay S.C. Brinton, an associate at Lathrop & Gage L.C., has experience with rails-to-trails litigation and assisted Mr. Hearne as a law clerk with the litigation of Illig and Miller.

Lathrop & Gage L.C. is a large regional law firm with approximately 250 attorneys, and maintains an office in Washington D.C. Plaintiffs' counsel has informed the Court that Lathrop & Gage possesses the requisite financial and personnel resources necessary to represent the Plaintiffs in this class, and the Court has no reason to question this representation. Accordingly, the Court finds that Mr. Hearne, Ms. Brinton and Lathrop & Gage satisfy the requirements to serve as class counsel under RCFC 23(g).

## Conclusion

Plaintiffs' Motion for Class Certification is **GRANTED**. Identification, notification, and closing of the class shall proceed in accordance with Rule 23(c)(1)(C)(2)(B) and with the schedule set forth in the Court's Scheduling Order issued this date.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**