**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et. al. | ) | |
| Plaintiffs, | ) | Hon. Mary Ellen Coster Williams |
| v. | ) | No. 07-273 L |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DECLARATION OF MARK T. ROMLEY IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF PURSUANT TO RCFC 56(f)**

I, Mark T. Romley, counsel for Defendant, the United States of America, hereby declare as follows pursuant to 28 U.S.C. § 1746:

1. Defendant seeks to conduct full historical title searches of the properties owned by the named Plaintiffs prior to responding to Plaintiffs' Motion for Partial Summary Judgment ("Plaintiffs' motion") (Doc. No. 23).

2. Defendant seeks to conduct a full historical title search of the chain of title from the Seaboard Air Line Railroad ("Seaboard") (to which the original grants at issue in this case were made) to the Seminole Gulf Railway (which Plaintiffs allege abandoned the railroad right-of-way on April 2, 2004).

3. Defendant seeks the historical documents that would be associated with the title transactions described in paragraphs 1 and 2 in order to assemble a complete picture of the circumstances surrounding the title issues in this case.



DEFENDANT'S EXHIBIT 1

PENGAD-Bayonne, N. J.

4. Defendant has two bases for expecting that the discovery it seeks will "engender a genuine issue of material fact."

5. Defendant's first basis for expecting that discovery will engender a genuine issue of material fact concerns the original deeds granting the railroad right-of-way at issue in this case to the Seaboard Airline Railway ("Seaboard") in 1910. In their Proposed Findings of Uncontroverted Fact ("PFUF"), Plaintiffs state that "eight property owners granted the Seaboard Air Line Railway ("Seaboard") easements for a right-of-way upon which to operate a railroad across their property. These easements expressly limited the right to use the property to the operation of a railroad." A review of the nine deeds given by the eight original grantors, which are attached to the PFUF as Tabs A-I, reveals variations among the deeds.

6. In their PFUF, Plaintiffs accurately quote three of the original right-of-way deeds (the Potter, Honore and Webber deeds are discussed and attached to the PFUF as Tabs A-C respectively) ("Palmer, Honore and Webber"). The operative language of these deeds granted to the railroad "a right-of-way for railroad purposes." The conveyance was made "upon the express condition . . . that if the Seaboard Airline Railway . . . shall abandon said line for railroad purposes then the above described pieced and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his [or her] heirs, administrators and assigns." PFUF, Tabs A-C.

7. In their PFUF, Plaintiffs give the name of the grantor for the remaining six deeds (the Frazee, Phillips, Knight I, Knight II, Hutchings and Blackburn deeds are

attached to the PFUF as Tabs D-I respectively) ("deeds D-I") and state that the interests conveyed in those deeds "expressly limited the right to use the property to the operation of a railroad." PFUF at 2.

8. Deeds D-I neither limited the grants made therein to railroad purposes nor made any provision for a possibility of reverter, as was found in the Palmer, Honore and Webber deeds. See, e.g., PFUF, Tab D (granting to Seaboard "all . . . right, title and interest of any nature whatsoever in and to the following property . . . TOGETHER WITH all and singular the tenements, heriditaments and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of the said parties of the first part;" PFUF, Tab I (granting to Seaboard "all . . . right, title and interest of any nature whatsoever in and to the following property . . . TOGETHER WITH all and singular the tenements, heriditaments and appurtenances thereunto belonging or appertaining, and every right, title or interest, legal or equitable, of the said parties of the first part.").

9. Under Florida law, the differences between these two categories of deeds are significant.

10. The Palmer, Honore and Webber deeds appear to have conveyed a fee simple determinable or a fee simple subject to a condition subsequent to Seaboard, see Richardson v. Holdman, 33 So.2d 641, 643 (Fla. 1948) (holding that a right-of-way grant to a railroad that stated "should the [grantee] cease to use the foregoing land for railroad purposes, then and in that event the title to said property shall

revert and vest in the [grantor] and his heirs and assigns" conveyed a fee simple determinable).

11. Deeds D-I appear to have conveyed fee simple absolute to Seaboard. See Atlantic Coast Line Rail Co. v. Duval County, 154 So. 331, 332 (Fla. 1934) ( "[a] railroad right of way in this state is not a mere easement or user for railroad purposes. Like other property it is acquired by purchase or condemnation and vests a fee in the company acquiring it which cannot be divested except as the law provides.").

12. The difference between these two categories of deeds is likely to create an issue of material fact because the analysis of the interests held by the named Plaintiffs individually likely will be affected by whether their ownership succeeds from the Palmer, Honore and Webber lines of deeds, in which case a possibility of reverter might exist, or from the lines that succeed from deeds D-I, in which case all interest in the right-of way appears to have been given to Seaboard in 1910.

13. For these reasons Defendant desires time to conduct discovery in the form of title searches on the properties of each named Plaintiff from the date of the alleged taking back to original 1910 granting deeds to determine from which line of deeds each individual Plaintiff's property interest succeeded.

14. For these reasons Defendant also needs time to conduct discovery in order to acquire documents associated with the transactions described in paragraphs 10 and 11.

15. Defendant's second expected basis for establishing a genuine issue of material fact arises from the Florida Marketable Record Title Act, Fla. Stat. § 712.01 et seq. (West 2000) ("MRTA").

16. The MRTA is a "comprehensive act that contains elements of a curative act, a statue of limitations, and a recording act." Fla. Jur.2d Deeds § 104 (2005) (citing Blanton v. City of Pinellas Park, 887 So.2d 1224 (Fla. 2004)). The purpose of the MRTA is, in part, to clearly define marketability by extinguishing old interests of record not specifically claimed or reserved. See H&F Land, Inc. v. Panama City-Bay County Airport and Indus. Dist., 736 So.2d 1167 (Fla. 1999) ("receded from" on other grounds in Blanton, 887 So2d at 1224). To this end, section 712.02 of the MRTA provides that "[a]ny person . . . vested with any estate in land of record for 30 years or more, shall have a marketable record title . . . free and clear of all claims." Subject to the matters stated in section 712.03 of the MRTA, "such marketable record title shall be free and clear of all estates, interests, claims, or charges whatsoever, the existence of which depends on any act, title transaction, event or omission that occurred prior to the effective date of the root of title." Blanton, 887 So.2d at 1228. Due to this expansive language and the requirement that the act be "liberally construed," Fla. Stat. § 712.10, the MRTA has had powerful consequences.

17. For example, the MRTA has been used to validate the chain of title ensuing from a forged or "wild" deed. See Holland v. Hattaway, 438 So.2d 456 (Fla. App.

1983) ("Therefore, MRTA can even confer marketability to a chain of title arising out of a forged or wild deed."); Marshall v. Hollywood, Inc., 236 So.2d 114 (Fla. 1970) (holding against estate of deceased stockholder, under MRTA, where estate was seeking to recover property from a corporation that acquired an interest adverse to the estate by forged deed).

18. The MRTA has also been used to strip subdivision's of their use restrictions when they were not re-recorded in the manner specified within the act. Berger v. Riverwind Parking, LLP, 842 So.2d 918 (Fla. App. 2003) ("Clearly MRTA extinguishes all limitations imposed by the initial recorded restrictions as to all lots . . . because they are over 30 years old and predate the root of title.").

19. In light of the possible application of the MRTA and the differences among the granting deeds, Defendant believes that an investigations of the chain of title from Seaboard to CSX and the chains of title from the original grantees to the named Plaintiffs are likely to yield facts which will aid Defendant in defending against Plaintiffs' motion.

20. It is clear that the facts Defendant seeks to find exist and are discoverable, provided the Court grants time for the undertaking. All of the deeds Defendant seeks should be located in the records of Sarasota County, Florida or Manatee County, Florida. Additionally, the historical documentary evidence Defendant seeks should be located with either of two third parties, the Trust for Public Land or the Sarasota County government. Defendant believes that these historical

documents exist because it previously has spoken to each of these third parties in unsuccessful attempts to acquire such documents. With time for discovery, Defendant can obtain these items to assist it in responding to Plaintiffs' motion.

21. There has not been any formal discovery in this case other than the obligatory disclosures made pursuant to RCFC 26.

22. There has not been a discovery schedule entered in this case.

23. Prior to the filing of Plaintiffs' motion, Defendant began the process of engaging LECG, a firm that does title related work on a contractual basis, to do the title searches that are necessary for Defendant to defend against Plaintiffs' motion. This contract has been consummated, but work was not begun because Defendant believes it is premature to begin title inspections prior to identifying all of the potential class members in this case. See JPSR ¶ 5. Following this Court's order of November 21, 2007, LECG stands ready to do the title work Defendant requires for its response to Plaintiff's motion.

24. Defendant has been in contact with the Trust for Public Land ("TPL") and officials in Sarasota County in attempts to acquire historical documentary evidence pertaining to the right-of-way at issue here and its use as a recreational trail. Thus far neither effort has been successful. At this time, Defendant anticipates that it may need to issue formal subpoeanas to obtain the relevant documents.

25. If allowed time for discovery, Defendant will be able to overcome the hurdles which have, until now, prevented it from discovering the facts it needs to respond to Plaintiffs' motion.

26. The overarching reason Defendant has not transmitted any formal discovery to obtain relevant information is that this case was relatively recently filed and no order setting a discovery schedule had been entered prior to the filing of Plaintiffs' motion.

27. The parties agree that at least limited discovery is needed to resolve the liability issues in this case, see JPSR at ¶ 5 (Doc. No. 18), but, other than the obligatory RCFC 26 disclosures, none has yet been had.

28. Defendant's efforts to discover the necessary facts were slowed by hopes that its informal discovery efforts with third parties would be more fruitful.

29. Defendant was not in possession of all of the 1910 granting deeds until Plaintiffs filed their motion November 2. Accordingly, the questions raised by the differences among those deeds have only recently become apparent to Defendant and there has not been sufficient time to do discovery consistent with such questions.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on December 2, 2007.

M T Romley

Mark T. Romley