**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| BIRD BAY EXECUTIVE GOLF COURSE, INC., | ) |
| NATHAN AND DEBORAH CHILDERS, Husband and Wife, | ) |
| MCCANN HOLDINGS, LTD., | ) |
| PALMER RANCH HOLDINGS, LTD., | ) |
| MISSION VALLEY GOLF AND COUNTRY CLUB, INC.. | ) No. 07-426L |
| DENNIS T. AND MARY ANN MARLIN REVOCABLE TRUSTS dated July 15, 2000 | ) Hon. Mary Ellen Coster Williams |
| | ) ADR Judge: Eric G. Bruggink |
| A. MERLE CLARK GLUECK TRUST dated February 26, 1996 | ) |
| JMC – REAL ESTATE HOLDINGS, LLC | ) |
| Plaintiffs, | ) |
| vs. | ) |
| THE UNITED STATES OF AMERICA, | ) |
| Defendant. | ) |

**DEFENDANT'S RESPONSES TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Defendant responds to Plaintiffs' Proposed Findings of Uncontroverted Fact, Bird Bay Docket No. 20, as follows:

## Defendant's General Statements

1. Plaintiffs' pending motion only relates to the United States' potential liability as to the eight named Plaintiffs' takings claims. Accordingly, Defendant's responses are limited to matters relevant to the named plaintiffs.

2. Additionally, because only three of the deeds granting Seaboard Air Line Railway ("Seaboard") an interest in the rail corridor at issue in this matter (the "subject corridor") are implicated by Plaintiffs' allegations, Defendant's responses are limited to matters relevant to those deeds. See Def.'s Ex. 2 (Straup Decl.) at ¶¶ 10-11. To the extent Plaintiffs proposed findings of fact relate to portions of the rail corridor that were not granted by the relevant deeds, they are irrelevant and immaterial to Plaintiffs' pending motion for summary judgment and Defendant hereby disputes such proposed findings of fact on that basis.

**(A) In 1910, eight property owners granted the Seaboard Air Line Railway ("Seaboard") easements for a right-of-way upon which to operate a railroad across their property. These easements expressly limited the right to use the property to the operation of a railroad. It was on the basis of these grants of an easement that the Seaboard constructed the approximately twelve and one-half mile long railroad line between Sarasota, Florida and Venice, Florida.**

Defendant's Response to Proposed Fact in Heading A: Defendant disputes the proposed finding of facts in the first, second and third sentences of heading A because they make the legal conclusion that the 1910 conveyances granted easements. Such legal conclusions are not appropriate proposed findings of fact under Rule 56(h) of the Rules of the Court of Federal Claims ("RCFC"). Defendant does not dispute that Adrian C. Honore granted Seaboard an interest in portions of a rail corridor between Sarasota,

Florida and Venice, Florida. See Defendant's Exhibit D. Defendant does not dispute that Seaboard constructed a railroad corridor on portions of land that were granted to it in the Honore deed.

1. The majority of the easement was acquired by Seaboard from the Potter family, namely, Potter Palmer, Jr., and Adrian C. Honore, as well as Sarah O. Webber. (*See* Tab A, Tab B, and Tab C).

Defendant's Response to Proposed Fact 1: Defendant objects to this proposed finding of fact because the Potter Palmer, Jr. and Sarah O. Webber conveyances are irrelevant to the matter currently before the Court. See General Statement 2. Defendant further disputes this finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that Adrian C. Honore granted Seaboard an interest in portions of a rail corridor between Sarasota, Florida and Venice, Florida. See Defendant's Exhibit D.

2. Tab A represents a true and accurate copy of the easement conveyance granted from Potter Palmer, Jr. and Pauline K. Palmer ("the Palmers") to the Seaboard Air Line Railway, signed November 10, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 2: Defendant disputes this proposed finding of fact because the Potter Palmer, Jr. conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court.

See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

3. The express purpose of the easement conveyed by the Palmers to the Seaboard was for operation of a railroad, providing that the Palmers,

> hereby remise, release and forever quitclaim unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, **a right-of-way for railroad purposes** over and across the following described parcel of land.

(*See* Tab A, easement granted by the Palmers to the Seaboard) (emphasis added).

Defendant's Response to Proposed Fact 3: Defendant disputes this proposed finding of fact because the Potter Palmer, Jr. conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that this proposed finding of fact accurately quotes the deed attached as Tab A, but again disputes the legal conclusion that the deed attached at Tab A granted an easement to Seaboard. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

4. The easement further provided that if the Seaboard Air Line Railway abandoned the easement, it was to *ipso facto* revert back to the Palmers, their heirs, administrators and assigns, stating that,

> [t]his conveyance is made upon the express condition, however, that if the Seaboard Airline Railway shall not construct upon said land and commence the operation thereon with (sic) one year of the date hereof of a line of railroad, or, **if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns.**

(*See* Tab A, easement granted by the Palmers to the Seaboard) (emphasis added).

Defendant's Response to Proposed Fact 4: Defendant disputes this proposed finding of fact because the Potter Palmer, Jr. conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that this proposed finding of fact accurately quotes the deed attached as Tab A, but again disputes the legal conclusion that the deed attached at Tab A granted an easement to Seaboard. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

5. According to the legal description in the easement from the Palmers to the Seaboard, the easement covers approximately 1.15 acres. (*See* Tab A, easement granted by the Palmers to the Seaboard).

Defendant's Response to Proposed Fact 5: Defendant disputes this proposed finding of fact because the Potter Palmer, Jr. conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). The acreage granted, or not, by the Palmer deed is irrelevant to the matter before the Court.

6. Tab B represents a true and accurate copy of the easement conveyance granted from Adrian C. Honore to the Seaboard Air Line Railway, signed November 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 6: Defendant disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that the document located at Tab B is an accurate copy of the referenced conveyance document. Defendant does dispute the characterization of the conveyance document located at Tab B as an easement.

7. The express purpose of the easement conveyed by Adrian C. Honore to the Seaboard was for operation of a railroad, providing that Mr. Honore,

> hereby remise[s], release[s] and forever quitclaim[s] unto the SEABOARD AIR LINE RAILWAY, a corporation of the State of Virginia and other States, **a right-of-way for railroad purposes** over and across the following described parcel of land.

(*See* Tab B, easement granted by Adrian C. Honore to the Seaboard) (emphasis added).

Defendant's Response to Proposed Fact 7: Defendant disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard in the conveyance attached as Tab B was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that this proposed finding of fact accurately quotes the deed attached as Tab B, but again disputes the legal conclusion that the deed attached at Tab B granted an easement to Seaboard.

8. The easement further provided that if the Seaboard Air Line Railway abandoned the easement, it was to *ipso facto* revert back to Adrian C. Honore, his heirs, administrators and assigns, stating that,

> [t]his conveyance is made upon the express condition, however, that if the Seaboard Airline Railway shall not construct upon said land and commence the operation thereon with (sic) one year of the date hereof of a line of railroad, or, **if at any time thereafter the said Seaboard Air Line Railway shall abandon said line for railroad purposes then the above**

**described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns.**

(*See* Tab B, easement granted by Mr. Honore to the Seaboard) (emphasis added).

Defendant's Response to Proposed Fact 8: Defendant disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard in the conveyance attached as Tab B was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that this proposed finding of fact accurately quotes the deed attached as Tab B, but again disputes the legal conclusion that the deed attached at Tab B granted an easement to Seaboard.

9. According to the legal description in the easement from Mr. Honore to the Seaboard, the easement covers approximately 128 acres. (*See* Tab B, easement granted by Adrian C. Honore to the Seaboard).

Defendant's Response to Proposed Fact 9: Defendant disputes this proposed finding of fact because the acreage of land granted in the conveyance attached at Tab B is irrelevant and, therefore, not a material fact at issue in the matter currently before the Court. Defendant does not dispute that the conveyance attached at Tab B conveyed a railroad right-of-way over land that abuts the present day location of property owned by each of the named plaintiffs in this action, with the exception of Bird Bay Executive Golf Course, Inc.. See Straup Decl. at ¶ . Defendant further disputes this proposed finding of fact

because it makes the legal conclusion that the interest conveyed to Seaboard in the conveyance attached at Tab B was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

10. Tab C represents a true and accurate copy of the easement conveyance dated June 21, 1911 and granted by Sarah O. Webber to the Seaboard Air Line Railway and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 10: Defendant disputes this proposed finding of fact because the Sarah O. Webber conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

11. The express purpose of the easement conveyed by Sarah O. Webber to the Seaboard was for purposes of a railroad, and in the event it was no longer used for such purposes, it was to revert *ipso facto* to Sarah O. Webber, her executors, administrators, and assigns, stating that,

> [it] is understood and agreed that if the said premises shall hereafter be abandoned by the said party of the second part its successors or assigns for railroad purposes in that event the said premises shall *ipso facto* revert to the part of the first part whereas executors, administrators, and assigns.

(*See* Tab C, easement granted by Ms. Webber to the Seaboard).

Defendant's Response to Proposed Fact 11: Defendant disputes this proposed finding of fact because the Sarah O. Webber conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that this proposed finding of fact accurately quotes the deed attached as Tab C, but again disputes the legal conclusion that the deed attached at Tab C granted an easement to Seaboard. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

12. According to the legal description in the easement from Ms. Webber to the Seaboard, the easement covers approximately 3.1 acres. (*See* Tab C, easement granted by Ms. Palmer to the Seaboard).

Defendant's Response to Proposed Fact 12: Defendant disputes this proposed finding of fact because the Sarah O. Webber conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that this proposed finding of fact accurately quotes the deed attached as Tab C, but again disputes the legal conclusion that the deed

attached at Tab C granted an easement to Seaboard. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

13. The remaining portion of the Seaboard Air Line Railway's railroad easement was created by the following conveyances:

a. Easement granted by H.M. Frazee and his wife, Bertie Frazee, to Seaboard Air Line Railway Company, signed September 5, 1910.

b. Easement granted by Clement Phillips and his wife, Lula Phillips, to Seaboard Air Line Railway Company, signed September 5, 1910.

c. Easement granted by Jesse Knight to Seaboard Air Line Railway Company, signed September 3, 1910.

d. Easement granted by Jesse Knight and F.R. Knight to Seaboard Air Line Railway Company, signed September 3, 1910.

e. Easement granted by J.B. Hutchings and Lena Hutchings to Seaboard Air Line Railway Company, signed September 29, 1910.

f. Easement granted by A.E. Blackburn, *Et Ux* to Seaboard Air Line Railway Company, signed September 5, 1910.

<u>Defendant's Response to Proposed Fact 13:</u> Defendant disputes this proposed finding of fact because each of the listed conveyances is irrelevant and, therefore, these proposed findings do not present a material fact at issue in the matter currently before the Court. <u>See</u> General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard in the listed

conveyances was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

14. Tab D represents a true and accurate copy of the easement conveyance granted from H.M. Frazee and his wife, Bertie Frazee, to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 14: Defendant disputes this proposed finding of fact because the Frazee conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

15. Tab E represents a true and accurate copy of the easement conveyance granted from Clement Phillips and his wife, Lula Phillips, to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 15: Defendant disputes this proposed finding of fact because the Phillips conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it

makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

16. Tab F represents a true and accurate copy of the easement conveyance granted from Jesse Knight to the Seaboard Air Line Railway, signed September 3, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 16: Defendant disputes this proposed finding of fact because the Jesse Knight conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

17. Tab G represents a true and accurate copy of the easement conveyance granted from Jesse Knight and F.R. Knight to the Seaboard Air Line Railway, signed September 3, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 17: Defendant disputes this proposed finding of fact because the Jesse and F.R. Knight conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an

easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

18. Tab H represents a true and accurate copy of the easement conveyance granted from J.B. Hutchings and Lena Hutchings to the Seaboard Air Line Railway, signed September 29, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 18: Defendant disputes this proposed finding of fact because the Hutchings conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

19. Tab I represents a true and accurate copy of the easement conveyance granted from A.E. Blackburn, Et Ux to the Seaboard Air Line Railway, signed September 5, 1910 and recorded with the Sarasota County Recorder of Deeds Office.

Defendant's Response to Proposed Fact 19: Defendant disputes this proposed finding of fact because the Blackburn conveyance is irrelevant and, therefore, this proposed finding does not present a material fact at issue in the matter currently before the Court. See General Statement 2. Defendant further disputes this proposed finding of fact because it makes the legal conclusion that the interest conveyed to Seaboard was an easement. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

**(B) The Plaintiffs are the successors in title to the original property owners that granted the rights-of-way to Seaboard. Each of the Plaintiffs held fee title to their property abutting and underlying the former Seaboard right-of-way on April 2, 2004.**

Defendant's Response to Proposed Fact in Heading B: Defendant disputes this proposed finding. With respect to the First Sentence of Heading B, the question of whether the named Plaintiffs are "successors" in title to any of the "original property owners" is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant disputes the second sentence of Heading B because Defendant disputes that Plaintiffs own fee title in the railroad corridor. Moreover, the question of whether Plaintiffs hold any interest in the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that on April 2, 2004, the named Plaintiffs owned property that abuts the railroad corridor; however, Defendant disputes that the named Plaintiffs hold any reversionary interest in the railroad corridor itself.

(1) Nathan and Deborah Childers

20. Plaintiffs Nathan and Deborah Childers ("Childers"), husband and wife, acquired their home in Sarasota County, Florida on July 31, 2003 by that deed recorded on August 5, 2003, Instrument Number 2003156561. (A copy of the Warranty Deed by which the Childers acquired their home is attached as Tab J.)

Defendant's Response to Proposed Fact 20: Defendant does not dispute that the Childers acquired the property identified in the deed attached at Tab J on August 5, 2003.

21. The Childers' property abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab J, Childers' Warranty Deed).

Defendant's Response to Proposed Fact 21: Defendant does not dispute that the Childers' property abuts the railroad corridor. Defendant disputes that the Childers' property underlies the railroad corridor because Plaintiffs have not submitted any evidence to demonstrate ownership of the land underlying the corridor. Moreover, the question of whether the Childers own the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiffs' legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiffs' legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

22. The Childers were fee owners of this property, identified as Parcel Identification number 0139-12-0001, on the April 2, 2004 NITU date. (*See* Tab J, Childers' Warranty Deed).

Defendant's Response to Proposed Fact 22: Defendant does not dispute that on April 2, 2004, the Childers owned the property identified in the deed attached at Tab J. Defendant disputes this proposed finding to the extent it implies that Plaintiffs own any interest in the railroad corridor because Plaintiffs have not offered evidence of such ownership. Moreover, the question of whether Plaintiffs own the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h).

(2) Bird Bay Golf Course

23. On January 27, 1983, John T. Robertson acquired fee title to property in Sarasota County, Florida that abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation., by warranty deed recorded at Book 1562, page 0183 of the Sarasota County Recorder of Deeds office. (A copy of this deed is attached as Tab K.)

Defendant's Response to Proposed Fact 23: Defendant disputes that John T. Robertson acquired any interest in the subject corridor because the portion of the corridor adjacent to the property he purchased on January 27, 1983 was granted, in fee simple, to Seaboard and its successors in interest by B.L.E. Realty Corp. and Venice-Nokomis Holding Corp.. See Straup. Decl. at Tabs H-I. Defendant also disputes Plaintiff's legal conclusion that

the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that the Mr. Robertson's property abutted the subject corridor or that he acquired such property on January 27, 1983.

24. On January 23, 1992 John T. Robertson conveyed this property to Bird Bay Executive Golf Club, Inc by that deed recorded at book 2363, page 2038 of the Sarasota County Recorder of Deeds Office. (A copy of this deed is attached as Tab L.)

<u>Defendant's Response to Proposed Fact 24:</u> Defendant does not dispute that Bird Bay acquired the property identified in the deed attached at Tab L on January 23, 1992.

25. Bird Bay's property includes fee title to property that abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab L, Bird Bay's warranty deed).

<u>Defendant's Response to Proposed Fact 25:</u> Defendant does not dispute that the Bird Bay's property abuts the railroad corridor. Defendant disputes that Bird Bay's property underlies the railroad corridor because the portion of the corridor adjacent to the property it purchased on January 23, 1992 was granted, in fee simple, to Seaboard and its

successors in interest by B.L.E. Realty Corp. and Venice-Nokomis Holding Corp.. See Straup. Decl. at Tabs H-I. Additionally, Plaintiff has not submitted any evidence to demonstrate ownership of the land underlying the corridor. Moreover, the question of whether Bird Bay owns the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

26. On the April 2, 2004 NITU date, Bird Bay was fee owner of this property with Parcel Identification Number 0406-07-0001. (*See* Tab L, Bird Bay's warranty deed).

Defendant's Response to Proposed Fact 26: Defendant does not dispute that on April 2, 2004, Bird Bay owned the property identified in the deed attached at Tab L. Defendant disputes this proposed finding to the extent it implies that Plaintiff owns any interest in the railroad corridor the portion of the corridor adjacent to the property it purchased on January 23, 1992 was granted, in fee simple, to Seaboard and its successors in interest by B.L.E. Realty Corp. and Venice-Nokomis Holding Corp.. See Straup. Decl. at Tabs H-I. Additionally, Plaintiff has not submitted any evidence to demonstrate ownership of the land underlying the corridor. Moreover, the question of whether Plaintiff owns the land

underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h).

(3) Palmer Ranch Holdings, Ltd.

27. On December 31, 1996 Palmer Ranch Development, Ltd., acquired fee title to all that property located in Sarasota County, Florida described in the Warranty Deed recorded at Book 2925, Page 1233 and Warranty Deed dated August 21, 1997 recorded at Book 3010, Page 1828 of the Sarasota County Recorder of Deeds Office. (A copy of these deeds are attached as Tab M-1 and M-2).

Defendant's Response to Proposed Fact 27: Defendant does not dispute that Palmer Ranch Development, Ltd. acquired the property identified in the deeds attached at Tabs M-1 and M-2 on August 21, 1997.

28. The property acquired by Palmer Ranch Development, Ltd under these deeds includes fee title to property that abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation. (*See* Tab M-1 and M-2, Palmer Ranch Development, Ltd.'s warranty deeds).

Defendant's Response to Proposed Fact 28: Defendant does not dispute that the Palmer Ranch Development, Ltd.'s property abuts the railroad corridor. Defendant disputes that Palmer Ranch Development, Ltd.'s property underlies the railroad corridor because Plaintiff has not submitted any evidence to demonstrate ownership of the land underlying the corridor. Moreover, the question of whether Palmer Ranch Development, Ltd. owns

the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

29. On March 29, 2000 Palmer Ranch Development, Ltd. changed its name to Palmer Ranch Holdings, Ltd. A copy of the certification of the name change is attached as Tab N and was recorded on December 29, 2000 in the Sarasota County Recorder of deeds office as Instrument Number 2000164732.

Defendant's Response to Proposed Fact 29: Defendant does not dispute that Palmer Ranch Development, Ltd. changed its name to Palmer Ranch Holdings, Ltd..

30. On the April 2, 2004 NITU date, Palmer Ranch Holdings, Ltd. held fee title to that property in Sarasota County, Florida with Parcel Identification Numbers 0138-01-0001, 0115-09-0001, 0115-01-0001, 0098-06-0001, 0098-02-0001, 0100-02-0015, 0098-04-0006, 0098-04-0005 and 0098-04-0008.

Defendant's Response to Proposed Fact 30: Defendant does not dispute that on April 2, 2004, Palmer Ranch Holdings, Ltd. owned the property identified by Parcel Identification

Number in Proposed Finding of Fact 30. Defendant disputes this proposed finding to the extent it implies that Plaintiff owns any interest in the railroad corridor because Plaintiff has not offered evidence of such ownership. Moreover, the question of whether Plaintiff owns the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h).

(4) McCann Holdings, Ltd

31. On November 13, 2000, Palmer Ranch, Ltd. conveyed to McCann Holdings, Ltd ("McCann") fee title to that property in Sarasota County, Florida described in the two deeds recorded as Instrument Numbers 2000143948 and 2000149647 in the Sarasota Record of Deeds Office. (Copies of these Warranty Deeds are attached as Tab O).

Defendant's Response to Proposed Fact 31: Defendant does not dispute that the Palmer Ranch, Ltd. acquired the property identified in the deed attached at Tab O on November 13, 2000.

32. The property acquired by McCann under these deeds includes title to property that abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act and NITU) for an interim public access trail and possible future railroad reactivation. (*See* Tab O, McCann Holdings, Ltd.'s warranty deeds).

Defendant's Response to Proposed Fact 32: Defendant does not dispute that McCann's property abuts the railroad corridor. Defendant disputes that McCann's property underlies the railroad corridor because Plaintiff has not submitted any evidence to

demonstrate ownership of the land underlying the corridor. Moreover, the question of whether McCann owns the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

33. On the April 2, 2004 NITU date, McCann held fee title to that property in Sarasota County, Florida with Parcel Identification Numbers 0153-16-0001 and 0140-01-0002. (*See* Tab O, McCann Holdings, Ltd.'s warranty deeds).

<u>Defendant's Response to Proposed Fact 33:</u> Defendant does not dispute that on April 2, 2004, McCann owned the property identified by Parcel Identification Number in Proposed Finding of Fact 33. Defendant disputes this proposed finding to the extent it implies that Plaintiff owns any interest in the railroad corridor because Plaintiff has not offered evidence of such ownership. Moreover, the question of whether Plaintiff owns the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h).

(5) Mission Valley Golf and Country Club, Inc.

34. On May 9, 1969 Mission Valley Golf and Country Club, Inc. ("Mission Valley") acquired fee title to property in Sarasota County, Florida that abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation, by those two warranty deeds recorded at Book 855, Page 841 and Book 844, Page 709 of the Sarasota County Recorder of Deeds Office. (A copy of these deeds are attached as Tabs P-1 and P-2).

Defendant's Response to Proposed Fact 34: Defendant does not dispute that Mission Valley's property abuts the subject corridor. Defendant disputes that Mission Valley's property underlies the railroad corridor because Plaintiff has not submitted any evidence to demonstrate ownership of the land underlying the corridor. Moreover, the question of whether Mission Valley owns the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

35. On the April 2, 2004 NITU date, Mission Valley held fee title to the property in Sarasota County, Florida with Parcel Identification Number 0162-07-0003. (*See* Tabs P-1 and P-2, Mission Valley's warranty deeds).

Defendant's Response to Proposed Fact 35: Defendant does not dispute that on April 2, 2004, Mission Valley owned the property identified by Parcel Identification Number in Proposed Finding of Fact 35. Defendant disputes this proposed finding to the extent it implies that Plaintiff owns any interest in the railroad corridor because Plaintiff has not offered evidence of such ownership. Moreover, the question of whether Plaintiff owns the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h).

(6) Dennis T. Marlin and Mary Ann Marlin Trusts

36. Dennis and Mary Ann Marlin ("the Marlins") acquired fee title to property in Sarasota County, Florida that abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation, by that deed dated September 29, 1989 and recorded in Book 2160, Page 1631 of the Sarasota County Recorder of Deeds Office. (A copy of this deed is attached as Tab Q.)

Defendant's Response to Proposed Fact 36: Defendant does not dispute that the Marlins acquired the property identified in the deed attached at Tab Q on September 29, 1989. Defendant does not dispute that the Marlins' property abuts the subject corridor. Defendant disputes that the Marlins' property underlies the railroad corridor because Plaintiff has not submitted any evidence to demonstrate ownership of the land underlying

the corridor. Moreover, the question of whether the Marlins own the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiffs' legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiffs' legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

37. The Marlins subsequently established a Grantor Trust ("Marlin Trust") and by that deed recorded December 31, 1998, Instrument Number 1998174346, Dennis and Mary Ann Marlin conveyed title to their property from themselves as husband and wife to the Marlin Trust. (A copy of the deed is attached as Tab R).

<u>Defendant's Response to Proposed Fact 37:</u> Defendant does not dispute that the Marlins established the Marlin Trust on December 31, 1998 or that the Marlins conveyed the property described at Tab R into that trust.

38. On July 15, 2000, Dennis and Mary Ann Marlin established separate revocable trusts, to which they conveyed an undivided one-half interest in the property to each of these separate revocable trusts. A copy of the deed effecting this conveyance was

recorded on July 24, 2000 in the Sarasota County Recorder of Deeds Office as Instrument Number 2000092981 and is attached as Tab S.

Defendant's Response to Proposed Fact 38: Defendant does not dispute that the Marlins established revocable trust on July 15, 2000 or that the Marlins conveyed the property described at Tab S into those trusts.

39. On the April 2, 2004 NITU date, the Dennis T. Marlin and the Mary Ann Marlin Revocable Trusts each held fee title to an undivided one-half interest in property which has Parcel Identification Number 0141-16-0007 (*See* Tab S, the Dennis T. Marlin and the Mary Ann Marlin Revocable Trusts' warranty deed).

Defendant's Response to Proposed Fact 39: Defendant does not dispute that on April 2, 2004, the Marlin Trusts owned the property identified in the deed attached at Tab S. Defendant disputes this proposed finding to the extent it implies that Plaintiffs own any interest in the railroad corridor because Plaintiffs have not offered evidence of such ownership. Moreover, the question of whether Plaintiffs own the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h).

(7) A. Merle Clark Glueck Trust

40. Albert Glueck and his wife, Merle Glueck, acquired fee title to property in Sarasota County, Florida that abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation, by that deed dated November

3, 1967 and recorded in Book 696, Page 247 of the Sarasota County Recorder of Deeds Office. (A copy of the deed is attached as Tab T).

Defendant's Response to Proposed Fact 40: Defendant does not dispute that the Gluecks acquired the property identified in the deed attached at Tab T on November 3, 1967. Defendant does not dispute that the Gluecks' property abuts the subject corridor. Defendant disputes that the Marlins' property underlies the railroad corridor because Plaintiff has not submitted any evidence to demonstrate ownership of the land underlying the corridor. Moreover, the question of whether the Gluecks own the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiffs' legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiffs' legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

41. Albert Glueck's widow, Merle Clark Glueck, established the Glueck Trust and thereafter conveyed title to this property by that deed dated March 11, 1993 and recorded March 12, 1993, in Book 2487, Page 760 of the Sarasota County Recorder's Office. (A copy of this deed is attached as Tab U).

Defendant's Response to Proposed Fact 41: Defendant does not dispute that Merle Clark Glueck established the Glueck Trust or that she transferred the property described in the deed attached at Tab U into that trust.

42. On the April 2, 2004 NITU date, the Glueck Trust was fee owner of this property with Parcel Identification Number 0135-09-0001. (*See* Tab U, Glueck Trust's warranty deed).

Defendant's Response to Proposed Fact 42: Defendant does not dispute that on April 2, 2004, the Glueck Trust owned the property identified in the deed attached at Tab U. Defendant disputes this proposed finding to the extent it implies that Plaintiffs own any interest in the railroad corridor because Plaintiffs have not offered evidence of such ownership. Moreover, the question of whether Plaintiffs own the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h).

(8) JMC – Real Estate Holdings, LLC

43. JMC – Real Estate Holding, LLC ("JMC") acquired fee title to property in Sarasota County, Florida that abuts and underlies the abandoned SGLR right-of-way that is now subject to the easement (created by operation of the Trails Act) for an interim public access trail and possible future railroad reactivation, by Trustee's deed dated December 31, 1999 and recorded in the Sarasota County Recorders Office on March 3, 2000 as Instrument Number 1000027230. (A copy of the deed is attached as Tab V).

Defendant's Response to Proposed Fact 43: Defendant does not dispute that JMC's property abuts the subject corridor. Defendant disputes that JMC's property underlies the railroad corridor because Plaintiff has not submitted any evidence to demonstrate ownership of the land underlying the corridor. Moreover, the question of whether JMC owns the land underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiff's legal conclusion that new easements for possible future railroad reactivation and interim trail use have been created. The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h).

44. On the April 2, 2004 NITU date, JMC was fee owner of that property described in the deed referenced in the preceding paragraph with Parcel Identification Number 0164-03-0001. (*See* Tab V, JMC Real Estate Holding, LLC's warranty deed).

Defendant's Response to Proposed Fact 44: Defendant does not dispute that on April 2, 2004, JMC owned the property identified by Parcel Identification Number in Proposed Finding of Fact 44. Defendant disputes this proposed finding to the extent it implies that Plaintiff owns any interest in the railroad corridor because Plaintiff has not offered evidence of such ownership. Moreover, the question of whether Plaintiff owns the land

underlying the railroad corridor is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h).

**(C) Seaboard's successor railroad, CSX and Seminole Gulf Railroad, LP, ("SGLP") abandoned the railroad easement in 2004.**

Defendant's Response to Proposed Fact in Heading C: Defendant does not dispute that CSX and SGLP are successors to Seaboard. Defendant disputes this proposed finding because neither CSX nor SGLP "abandoned" the railroad corridor in 2004. Additionally, Defendant disputes Plaintiffs' legal conclusion that the railroad corridor was "abandoned." The conclusion that the railroad corridor was abandoned is a conclusion of law. Such conclusions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant also disputes Plaintiffs' legal conclusion the CSX and SGLP held only an easement in the railroad corridor. The question of the type of interest held by the railroads is a question of law. Such legal questions are not appropriate proposed findings of fact under RCFC 56(h).

45. "On December 15, 2003, Seminole Gulf Railway, L.P. ("SGLR"), filed with the Surface and Transportation Board ("STB") a petition under 49 U.S.C. 10502 for exemption from the provisions of 49 U.S.C. 10903 to abandon an approximately 12.43-mile portion of its Venice Branch between milepost SW 892 outside the city limits of the City of Sarasota, and milepost 904.4 near the City of Venice, in Sarasota County, FL. (*See* STB Docket No. Ab-400 (Sub-No. 3x), January 2, 2004 decision; a copy of which is attached as Tab W.)

Defendant's Response to Proposed Fact 45: Defendant does not dispute that the STB document attached at Tab W includes the language quoted in this proposed finding of fact. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

46. The STB noted that this "line does not contain federally granted rights-of-way." (*See* Tab W, STB's January 2, 2004 decision).

Defendant's Response to Proposed Fact 46: Defendant does not dispute that the STB document attached at Tab W includes the language quoted in this proposed finding of fact. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

47. On February 13, 2004, the STB found that:

> no traffic has moved over the line during 2003 or during the last nine months of 2002. The last delivery to a shipper via the line was on March 14, 2002. During the first three months of 2002, SGLR delivered 20 cars of plywood and lumber to a single customer (Kimal Lumbar) at a team track located on the line, where the freight was transloaded to a truck . . . .only three other customers have received traffic over the line in the last several years, but none have received any cars since May 2001.

(*See* STB Docket No. Ab-400 (Sub-No. 3x), February 13, 2004 decision; a copy of which is attached as Tab X.)

Defendant's Response to Proposed Fact 47: Defendant does not dispute that the STB document attached at Tab X includes the language quoted in this proposed finding of fact. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

48. The STB later stated that, "there have been no rail movements over the last three miles of the line for over 10 years . . . . [SGLR] contends that there is little likelihood of traffic returning to the line and that there is interest in developing the right-of-way for trail use." (*See* STB Docket No. Ab-400 (Sub-No. 3x), April 2, 2004 decision (Notice of Interim Trail Use or "NITU); a copy of which is attached as Tab Y.)

Defendant's Response to Proposed Fact 48: Defendant does not dispute that the STB document attached at Tab Y includes the language quoted in this proposed finding of fact. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

**(D) On April 2, 2004, the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use or Abandonment ("NITU") which precluded the Plaintiffs' reversionary rights to their property, converted the abandoned railroad right-of-way into a public-access recreational trail, and imposed an easement for future possible railroad across the Plaintiffs' property.**

Defendant's Response to Proposed Fact in Heading D: Defendant disputes this proposed finding because Defendant disputes that Plaintiffs hold any property rights in the subject railroad corridor, because Defendant disputes that the NITU "precluded the Plaintiffs'

reversionary rights to their property," and disputes that "an easement for future possible railroad across the Plaintiffs' property" has been imposed. The question of whether the NITU precluded any interest potentially held by Plaintiffs is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). The question of whether Plaintiffs held any such reversionary rights is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). The question of whether the railroad corridor was "abandoned" is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). The conclusion that new easements have been created is a conclusion of law. Such legal conclusions are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that on April 2, 2004, the STB issued a NITU.

49. The STB found that, "SGLR states that it and CSXT have granted The Trust for Public Lands an option to acquire the line for conversers ion to a trail . . . . On January 20, 2004, [Sarasota] County filed a request for interim trail use/rail banking under the [Trails Act]." (*See* Tab Y, April 2, 2004 NITU).

Defendant's Response to Proposed Fact 49: Defendant does not dispute that the STB document attached at Tab Y includes the language quoted in this proposed finding of fact. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

50. On April 2, 2004, the STB issued a Notice of Interim Trail Use ("NITU") for the abandoned railroad corridor. (*See* Tab Y, April 2, 2004 NITU).

Defendant's Response to Proposed Fact 50: Defendant disputes this proposed finding of fact. The question of whether the railroad corridor was "abandoned" is a question of law. Such questions of law are not appropriate proposed findings of fact under RCFC 56(h). Defendant does not dispute that the STB issued a NITU on April 2, 2004.

51. The Trust for Public Land agreed to work with Sarasota County to convert the rail line into a public-access recreational trail. (*See* Tab X, STB's February 13, 2004 decision).

Defendant's Response to Proposed Fact 51: Defendant does not dispute that Exhibit X states "The Trust for Public Land will be working with Sarasota County to convert the rail line into a trail." However, the meaning of the quoted language must be determined taking into account the language of the entire document.

52. The STB ordered that,

> [b]ecause the County's request complies with the requirements of 49 CFR 1152.29, and SGLR is willing to enter negotiations, a NITU will be issued as requested. The parties may negotiate an agreement during the 180-day period prescribed below. If an agreement is executed, no further Board action is necessary. If no agreement is reached within 180 days, SGLR may fully abandon the line.

(*See* Tab Y, April 2, 2004 NITU).

Defendant's Response to Proposed Fact 52: Defendant does not dispute that the STB document attached at Tab X includes the language quoted in this proposed finding of

fact. However, the meaning of the quoted language must be determined taking into account the language of the entire document. Defendant disputes that the STB "ordered" anything. The STB's role in the NITU process is ministerial.

53. The Trust for Public Land is a tax-exempt charity. (*See* the website for The Trust for Public Land: http://www.tpl.org/tier2_sa.cfm?folder_id=170; a print-out is attached as Tab Z.)

Defendant's Response to Proposed Fact 53: This proposed finding of fact is irrelevant, but Defendant does not dispute that the Trust for Public Land is a tax-exempt charity.

54. The Trust for Public Land is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad. (*See* Tab Z, a print-out of the website for The Trust for Public Land.)

Defendant's Response to Proposed Fact 54: This proposed finding of fact is irrelevant, but Defendant does not believe that the Trust for Public Land is a railroad authorized to operate a railroad.

55. Sarasota County is a municipality. (*See* the website for Sarasota County: http://www.scgov.net; a print-out is attached as Tab AA.)

Defendant's Response to Proposed Fact 55: This proposed finding of fact is irrelevant, but Defendant does not dispute that Sarasota County is a municipality.

56. Sarasota County is not a railroad and is not authorized by any state or by the federal Surface Transportation Board to operate a railroad. (*See* Tab AA, a print-out of the website for Sarasota County).

Defendant's Response to Proposed Fact 56: This proposed finding of fact is irrelevant, but Defendant does not believe that Sarasota County is a railroad authorized to operate a railroad.

57. On October 14, 2004, the STB granted a ninety day extension to the negotiating period and ruled, "[t]he NITU negotiating period is extended until December 28, 2004." (*See* STB Docket No. AB-400 (Sub-No. 3x), October 14, 2004 decision; a copy of which is attached as Tab BB.)

Defendant's Response to Proposed Fact 57: Defendant does not dispute that the STB document attached at Tab BB includes the language quoted in this proposed finding of fact. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

58. On December 20, 2004, a Quit Claim Deed was executed by CSX Transportation (Inc.) conveying to The Trust for Public Land whatever interest CSX may have held in the abandoned right-of-way. (A copy of this Quit Claim Deed is attached Tab CC.)

Defendant's Response to Proposed Fact 58: Defendant does not dispute that CSX conveyed to the Trust for Public Land all of its interest in the land described in the Quit Claim Deed attached as Exhibit CC. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

59. This Quit Claim Deed referenced "a total of 155.724 acres, more or less, together with all the improvements located thereon . . . ." in Sarasota County, Florida, and was recorded on January 13, 2005 with the Sarasota Recorder of Deeds Office. (*See* Tab CC, Quit Claim Deed).

Defendant's Response to Proposed Fact 59: Defendant does not dispute that the Quit Claim Deed attached as Exhibit CC contains the quoted language. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

60. This Quit Claim Deed was expressly executed and entered into by the Trust for Public Land and CSX in reliance upon the STB's issuance of the NITU and the provisions of the Trails Act. (*See* Tab CC, Quit Claim Deed).

Defendant's Response to Proposed Fact 60: Defendant disputes this proposed fact. It is impossible for the parties to know what CSX and the Trust for Public Land "reli[ed] upon" in entering into the agreement reflected in the Quit Claim Deed.

61. This Quit Claim Deed expressly provides that the Grantor, CSX Transportation, Inc.,

> does hereby RELEASE, REMISE and forever QUITCLAIM unto [The Trust for Public Land], its successors and assigns, all right, title and interest of [CSX], if any, in and to those certain tracts of parcels of land situate, laying and being in Sarasota, Florida . . . TO HAVE AND TO HOLD the Premises, and all the estate, right, title, lien, interest and claim whatsoever of [CSX] therein, either in law or equity, and all improvements thereon and appurtenances thereto, unto the proper use, benefit and enjoyment of [The Trust for Public Land], [it's] heirs and assigns or successors and assigns, forever. (*See* Tab CC, Quit Claim Deed).

<u>Defendant's Response to Proposed Fact 61:</u> Defendant does not dispute that the Quit Claim Deed attached as Exhibit CC contains the quoted language. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

62. The Quit Claim Deed further provides that:

> [b]y Decision and Notice of Interim Trial Use or Abandonment served April 2, 2004 in the Surface Transportation Board ("STB") Docket No. AB-400, Sub.-No.3X, the STB imposed a Notice of Interim Trail Use ("NITU") on the Premises. [The Trust for Public Land] for itself, its successors and assigns, acknowledges that the Premises remain subject to the jurisdiction of the STB for purposes of reactivating rail service. (*See* Tab CC, Quit Claim Deed).

Defendant's Response to Proposed Fact 62: Defendant does not dispute that the Quit Claim Deed attached as Exhibit CC contains the quoted language. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

63. Pursuant to the Quit Claim Deed, the SGLR (and CSX) conveyed whatever interest they may have had in the railroad right-of-way to The Trust for Public Land. (*See* Tab CC, Quit Claim Deed).

Defendant's Response to Proposed Fact 63: Defendant does not dispute that CSX conveyed to the Trust for Public Land all of its interest in the land described in the Quit Claim Deed attached as Exhibit CC. However, the meaning of the Quit Claim Deed must be determined taking into account the language of the entire document.

64. The Trust for Public Land has subsequently sold this property to Sarasota County, Florida for use as a public-access recreational trail. (*See* the website for Sarasota County: http://www.scgov.net/PublicWorks/RailsToTrails/Rails.asp; a print-out of which is attached as Tab DD.)

Defendant's Response to Proposed Fact 64: Defendant does not dispute that the Trust for Public Land transferred property to Sarasota County. Defendant does dispute that the transfer was solely for the use as a public-access recreational trail because the property was also to be used for railbanking purposes.

65. Since April 2004, the approximately 12.43 mile long former SGLR railroad right-of-way has been transformed into a public-access recreational trail called "The Legacy Trail." (*See* Tab DD, Sarasota County website).

Defendant's Response to Proposed Fact 65: Defendant does not dispute that the Trust for Public Land transferred property to Sarasota County. Defendant disputes that the transfer was solely for the use as a public-access recreational trail because the property was also to be used for railbanking purposes.

66. The railroad rails and ties have been removed from the former right-of-way and Sarasota County has graded the former roadbed for use as a public-access recreational trail. (*See* Tab DD, Sarasota County website; *see also* photographs of the trail construction posted on the Sarasota County website at: http://www.scgov.net/PublicWorks/RailsToTrails/Photos.asp, collectively attached as Tab EE).

Defendant's Response to Proposed Fact 66: Defendant does not dispute that Tab DD, which is incomplete, states "Completed in 2006, the initial phase included clearing a 14- . . . path, removing the rails and ties and placing a shell base." However, the meaning of the quoted language must be determined taking into account the language of the entire document. Defendant also disputes that the subject corridor is a former roadbed because the corridor is subject to reconstruction and reactivation. See Defendant's Exhibit F. Defendant further disputes this proposed finding to the extent Plaintiffs assert that the

subject corridor is only being used as a recreational trail. The subject corridor is also being used for railbanking.

67. Sarasota County states that the Legacy Trail will eventually be comprised of a 14 foot wide asphalt trail, rest-stop shelters, and additional entries into local neighborhoods. (Tab DD, Sarasota County website).

Defendant's Response to Proposed Fact 67: Defendant does not dispute that the Legacy Trail will have a 14 foot wide trail, rest stop shelters and entries during its period of interim trail use.

68. According to The Trust for Public Land, the Legacy Trail will be "the centerpiece of [Sarasota] county's planned trailed system and a major bicycle/pedestrian commuter link between Sarasota and Venice." (*See* the website for The Trust for Public Land: http://www.tpl.org/tier3_cd.cfm?content_item_id=19837&folder_id=250, a copy of this website print-out is attached as Tab FF).

Defendant's Response to Proposed Fact 68: Defendant does not dispute that the document attached at Tab FF includes the language quoted in this proposed finding of fact. However, the meaning of the quoted language must be determined taking into account the language of the entire document.

Respectfully submitted this 6th Day of June, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

s/ Mark T. Romley
Mark T. Romley
William Shapiro
Trial Attorneys
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0458
Fax: (202) 305-0506

Counsel for the Defendant.