**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | ) | Hon. Mary Ellen Coster Williams<br>No. 07-273 L |
| BIRD BAY EXECUTIVE GOLF COURSE, INC., et al., Plaintiffs, v. UNITED STATES OF AMERICA, Defendant. | ) | Hon. Mary Ellen Coster Williams<br>No. 07-426 L |

**DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**
**-AND-**
**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et al., | ) | |
| | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-273 L |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| BIRD BAY EXECUTIVE GOLF COURSE, INC., et al., | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-426 L |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT**

Defendant, United States of America, hereby respectfully moves for partial summary judgment pursuant to Rule 56 of the Court of Federal Claims. Plaintiffs allege that they possess ownership interest in a railroad corridor located in Sarasota County Florida. Plaintiffs' claims are premised on the allegation that they are the fee simple owners of lands that are subject to a railroad easement. Plaintiffs allege that this easement was abandoned or extinguished by operation of Florida state law, and that the decision of the Surface Transportation Board permitting the "railbanking" of the subject rights-of-way for future rail use and interim trail use

pursuant to the National Trails System Act, 16 U.S.C. § 1247(d), constitutes a taking of their property interests in the right-of-way.

As explained in Defendant's accompanying memorandum, Florida law makes clear that Plaintiffs incorrectly claim they were the fee owners of the land underlying the railroad corridor, incorrectly conclude that the railroad corridor has been abandoned and incorrectly conclude that the Trails Act has imposed new easements on the property in which they claim to have an ownership interest. Furthermore, Plaintiffs have not presented sufficient evidence of ownership of a compensable property interest. For these reasons, Plaintiffs motion must be denied.

The United States also cross moves for summary judgment in its favor. As discussed in the accompanying memorandum, the railroad acquired a fee simple determinable interest in the subject corridor adjacent to all but one of the Plaintiffs' properties, not an easement as Plaintiffs argue. According to the plain language of the railroad deed, the railroad acquired the land itself, with the condition that if the railroad abandoned the land for railroad purposes, the land would revert to the original grantor. This triggering event has not occurred.

Defendant also demonstrates that, pursuant to Florida law, a fee simple determinable interest encompasses the current use of the railroad corridor (railbanking and trail use). Hence, the current uses are within the scope of the railroad's property interest and Plaintiffs' claims must fail.

Additionally, the railroad has not abandoned the subject corridor. Rather than abandoning its interest, the railroad chose to preserve the corridor for future rail service. Hence, Plaintiffs' property interest – at most, a future interest (a possibility of reverter) – was unaffected by the STB's issuance of the NITU, and a taking did not occur.

Finally, the railroad acquired a fee simple absolute over the portion of the subject

corridor adjacent to the property allegedly owned by Plaintiff Bird Bay Executive Golf Course, Inc. Therefore, Plaintiff Bird Bay has no property interest in the subject corridor, and its claim must be dismissed.

Accordingly, for the reasons set forth in Defendant's accompanying memorandum, Defendant respectfully moves that summary judgment should be granted in its favor, and Plaintiffs' motion for partial summary judgment should be denied.

Respectfully submitted this 6th Day of June, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

s/ Mark T. Romley
Mark T. Romley
William Shapiro
Trial Attorneys
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0458
Fax: (202) 305-0506

Counsel for the Defendant.

Of Counsel:
Evelyn Kitay
Surface Transportation Board
Washington, DC

# TABLE OF CONTENTS

Introduction and Summary of Argument . . . . . 1

I. PROCEDURAL BACKGROUND . . . . . 3

II. STATUTORY BACKGROUND: THE TRAILS ACT . . . . . 4

III. FACTUAL BACKGROUND . . . . . 8

A. History of the Subject Corridor and Proceedings Before the STB . . . . . 8
B. Plaintiffs' Properties . . . . . 10

IV. STANDARD OF REVIEW . . . . . 12

V. ARGUMENT . . . . . 13

A. Plaintiffs Failed to Meet their Burden of Proving That They Own the Property They Allege to Have Been Taken . . . . . 13

1. Plaintiffs Bear the Burden of Proof . . . . . 13
2. The Rogers Plaintiffs Have Not Established that They Own the Property Underlying the Subject Corridor . . . . . 14
3. The Bird Bay Plaintiffs Have Not Established that They Own the Property Underlying the Subject Corridor . . . . . 16

B. Florida Law Determines the Nature and Scope of the Relevant Property Interests . . . . . 17

1. Florida Law Defines the Nature and Scope of the Relevant Property Interests . . . . . 17
2. Principles of Construing Grants to Railroads Under Florida Law . . . . . 20

C. Seaboard Acquired a Fee Simple Determinable Interest in the Portions of the Subject Corridor Abutting the Property Owned by the Named Rogers Plaintiffs 21

1. The Honore Deed Unambiguously Conveys a Fee Simple Determinable Interest . . . . . 21
2. The Court Should Reject Plaintiffs' Arguments that the Honore Deed Conveyed an Easement . . . . . 23

D. Railbanking and Interim Trial Use Are Within the Scope of the Railroad's Interest in the Subject Corridor . . . . . 24

1. Railbanking is Within the Scope of the Railroad's Interest . . . . . 24

2. Interim Trail Use is Within the Scope of the Railroad's Interest . . . . . . 25

E. Alternatively, The STB's Issuance of the NITU Did Not Impact Plaintiffs' Future Interests in the Subject Corridor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

1. Plaintiffs' Future Interests to the Subject Corridor Vest Only Upon the Railroad's Abandonment of its Interest in the Subject Corridor . . . . . . 27

2. The Railroad Did Not Abandon its Interest in the Subject Corridor, and the STB's Issuance of the NITU Did Not Effect an Abandonment of the Railroad's Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

a. Plaintiffs Cannot Demonstrate Clear Affirmative Intent to Abandon the Corridor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

b. Plaintiffs Cannot Demonstrate Any Railroad Action Supporting a Finding of Abandonment . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

F. The United States is Entitled to Summary Judgment With Respect to Plaintiff Bird Bay's Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

## TABLE OF AUTHORITIES

**FEDERAL CASES**

Air Pegasus of D.C., Inc. v. United States,
424 F.3d 1206 (Fed. Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Amaliksen v. United States,
55 Fed. Cl. 167 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Avenal v. United States,
100 F.3d 933 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Birt v. STB,
90 F.3d 580 (D.C. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7

Caldwell v. United States,
57 Fed. Cl. 193 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Chevy Chase Land Co. v. United States,
37 Fed. Cl. 545 (1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 25

Chicago and N.W. Transp. Co. v. Kalo Brick & Tile Co.,
450 U.S. 311 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cienega Gardens v. United States,
331 F.3d 1319 (Fed. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Citizens Against Rails-To-Trails v. STB,
267 F.3d 1144 (D.C. Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 24

Colorado v. United States,
271 U.S. 153 (1926) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Glosemeyer v. United States,
45 Fed. Cl. 771 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Goos v. ICC,
911 F.2d 1283 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Grantwood Village v. Missouri Pac. R.R. Co.,
95 F.3d 654 (8th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Hayfield N. R.R. Co., Inc. v. Chicago & N.W. Transp. Co.,
467 U.S. 622 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

King County v. Rasmussen,
299 F.3d 1077 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Moore v. United States,
58 Fed. Cl. 134 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Nat'l Ass'n of Reversionary Property Owners v. STB,
158 F.3d 135 (D.C. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6, 8

Nat'l Wildlife Fed'n v. ICC,
850 F.2d 694 (D.C. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 24

Neb. Trails Council v. STB,
120 F.3d 901 (8th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Oak Forest v. United States,
23 Cl. Ct. 90 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Preseault v. ICC,
494 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 24, 25

Preseault v. United States,
100 F.3d 1525 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 19, 33, 34

RLTD Ry. v. STB,
166 F.3d 808 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 6, 25

Ruckelshaus v. Monsanto Co.,
467 U.S. 986 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

Tabb Lakes v. United States,
26 Cl. Ct. 1334 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

Toews v. United States,
376 F.3d 1371 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Walcek v. United States,
303 F.3d 1349, 1354 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

**STATE CASES**

Atlantic Coast Line Rail Co. v. Duval County,
154 So. 331 (Fla. 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Barney v. Burlington N.R.R.,
490 N.W.2d 726 (S.D. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Cannco Contractors, Inc. v. Livingston,
669 S.W.2d 457 (Ark. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Chevy Chase Land Co. v. United States,
733 A.2d 1055 (Md. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 30

Cohen v. Pan American Aluminum Corp.,
362 So.2d 59 (Fla. App. 1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Dade County v. City of North Miami Beach,
69 So.2d 780 (Fla. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 32

Florida Power Corp. v. M.S. McNeely,
125 So.2d 311 (Fla. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 34

FPC v. Lynn,
594 So.2d 789 (Fla. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Johnston v. TPE Hotels,
719 So.2d 22 (Fla. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Liebowitz v. City of Miami Beach,
592 So.2d 1213 (Fla. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 30, 32, 33

Loveland v. CSX Transp., Inc.,
620 So.2d 1120 (Fla. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Richardson v. Holman,
33 So.2d 641 (Fla. 1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21, 22

Robb v. Atlantic Coast Line Rail Co.,
117 So.2d 534 (Fla. App. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 22, 23

Sears, Roebuck and Co. v. Franchise Finance Corp. of America,
711 So.2d 1189 (Fla. App. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

Washington Wildlife Pres., Inc. v. Minnesota,
329 N.W.2d 543 (Minn. 1983) . . . . . . . . . . 18

**FEDERAL ADMINISTRATIVE DECISION**

Georgia Great Southern Division, South Carolina Central Railroad, Abandonment and Discontuance Exemption, 2003 WL 21132515, at *4 (STB May 16, 2003) . . . . . . . . . . 10

**FEDERAL STATUTES**

16 U.S.C. § 1247(d) . . . . . . . . . . 2, 3, 6, 25, 32

41 Stat. 477-78 . . . . . . . . . . 4

49 U.S.C. 10906 . . . . . . . . . . 9, 10

49 U.S.C. § 10904 . . . . . . . . . . 30

49 U.S.C. § 10906 (1982 ed.) . . . . . . . . . . 5

**FEDERAL LEGISLATIVE MATERIAL**

H.R. Rep. No. 98-28 . . . . . . . . . . 5

H.R. Rep. 28, 98th Cong., 1st Sess., 1983 WL 25294 (1983) . . . . . . . . . . 25

**STATE STATUTES**

Fl. Stat. § 260.012(5) (1999) . . . . . . . . . . 26

Fla. Stat. § 260.012(1) (1999) . . . . . . . . . . 26

Fla. Stat. § 260.012(2) (1999) . . . . . . . . . . 26

Fla. Stat. § 260.015 (1999) . . . . . . . . . . 26, 27

Fla. Stat. §§ 260.011-018 (2008) . . . . . . . . . . 26

**FEDERAL RULES**

RCFC 56 . . . . . . . . . . 12

RCFC 56(f) . . . . . . . . . . 3, 4

**FEDERAL REGULATIONS**

49 C.F.R. § 1152.29 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 32

49 C.F.R. § 1152.29(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

49 C.F.R. § 1152.29(a)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

49 C.F.R. § 1152.29(c)-(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

49 C.F.R. § 1152.29(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 30

49 C.F.R. § 1152.50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

**SECONDARY SOURCE**

Fla. Jur. 2d Railroads . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

**TABLE OF EXHIBITS**

| Exhibit Number | Exhibit Description | Bates Range |
|---|---|---|
| Exhibit 1 | Lands Owned or Used for Purposes of A Common Carrier, dated June 13, 1918. | 0001-0005 |
| Exhibit 2 | Declaration of Cindi A.R. Straup, dated June 2, 2008. | 0006-0027 |
| Exhibit 3 | Quitclaim Deed from CSX Transportation, Inc. to The Trust for Public Land, dated December 20, 2004. | 0028-0043 |
| Exhibit 4 | Decision and Notice of Interim Trail Use or Abandonment, STB Docket No. AB-400 (Sub-No. 3X), service date April 2, 2004. | 0044-0049 |
| Exhibit 5 | Petition of Seminole Gulf Railway, L.P. for Exemption of Abandonment in Sarasota County, Florida (STB Docket No. AB-400 (Sub-No. 3X)), dated December 12, 2003. | 0050-0061 |
| Exhibit 6 | Purchase and Sale Agreement Between The Trust for Public Land and Sarasota County, dated September 28, 2004. | 0062-0083 |
| Exhibit 7 | Deed from Adrian C. Honore to Seaboard Air Line Railway, dated November 5, 1910. | 0084-0086 |
| Exhibit 8 | Deed from B.L.E. Realty Corporation to Seaboard Air Line Railway Company, dated April 4, 1927. | 0087-0088 |
| Exhibit 9 | Deed from Venice-Nokomis Holding Corporation to Seaboard Air Line Seaboard Air Line Railway Company, dated November 10, 1941. | 0089-0091 |

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et al., | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| Plaintiffs, | ) | |
| | ) | No. 07-273 L |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| BIRD BAY EXECUTIVE GOLF COURSE, INC., et al., | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| Plaintiffs, | ) | |
| | ) | No. 07-426 L |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT AND OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**

## INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs in these cases, Rogers v. United States, No. 07-273L, and Bird Bay Executive Golf Course, Inc. v. United States, No. 07-426L ("Bird Bay"), which have been consolidated for the determination of liability, bring substantively identical takings claims against the United States. Plaintiffs allege that they possess fee simple title to certain property underlying a railroad corridor located in Sarasota County, Florida. See Rogers Am. Compl. at 2 (Docket No.

6); Bird Bay Am. Compl. at 2 (Docket No. 8). Plaintiffs contend that an easement that burdened the land they claim to own in fee was abandoned or extinguished by operation of Florida law when the Surface Transportation Board ("STB") issued a Notice of Interim Trail Use ("NITU") on April 2, 2004, which permitted the "railbanking" of the subject railroad corridor for future rail use and interim trail use over the property pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act"). See Rogers Am. Compl. at 2-3 (Docket No. 6); Bird Bay Am. Compl. at 2 (Docket No. 8). Plaintiffs argue that the STB's issuance of the NITU effected a taking of their interests in the railroad corridor. Plaintiffs seek partial summary judgment on the issues of liability.

The United States herein opposes Plaintiffs' motions for summary judgment. As discussed in Section V.A, Plaintiffs' motion for summary judgment must be denied because they have failed to produce evidence proving that they have a property interest in the subject corridor. Further, as discussed in Section V.C.2, Plaintiffs' motion must be denied because they incorrectly identify the property interest they claim to possess. Moreover, Plaintiffs' arguments should be given limited weight to the extent they are based in any law other than the law of Florida.

The United States also cross moves for summary judgment in its favor. As discussed in Section V.C, the railroad acquired a fee simple determinable interest in the subject corridor adjacent to all but one of the Plaintiffs' properties. Plaintiffs' argument misapprehends the intent of the relevant railroad deed. According to the plain language of the railroad deed, the railroad acquired the land itself, with the condition that if the railroad "abandon[ed] said land for railroad purposes," the land would revert to the original grantor. Def.'s Ex 7 at 0086.

Alternatively, Plaintiffs' arguments fail because, pursuant to Florida law, a fee simple determinable interest encompasses the current use of the railroad corridor (railbanking and trail use). See discussion infra § V.D. Hence, the current uses are within the scope of the railroad's property interest and Plaintiffs' claims must fail.

Additionally, as discussed in Section V.E., the railroad has not abandoned the subject corridor. Rather than abandoning its interest, the railroad chose to preserve the corridor for future rail service. See discussion infra § V.E.2. Hence, Plaintiffs' property interest – at most, a future interest (a possibility of reverter) – was unaffected by the STB's issuance of the NITU, and a taking did not occur.

Finally, as discussed in Section V.F, the railroad acquired a fee simple absolute over the portion of the subject corridor adjacent to the property allegedly owned by Plaintiff Bird Bay Executive Golf Course, Inc. ("Plaintiff Bird Bay"). Therefore, Plaintiff Bird Bay has no property interest in the subject corridor, and its claim must be dismissed.

For these reasons, Plaintiffs' motions for partial summary judgment should be denied, and Defendant's cross-motion should be granted.

## I. PROCEDURAL BACKGROUND

This matter began in earnest when, on June 26, 2007, the Plaintiffs in Rogers v. United States filed an amended complaint identifying thirteen property owners that alleged a taking of property without just compensation in violation of the Fifth Amendment. See Rogers Am. Compl. (Docket No. 6). The Rogers Plaintiffs also stated that they intended to prosecute the matter as a class action. See id. at ¶ 70. The eight Bird Bay Plaintiffs filed an amended complaint on August 31, 2007, alleging claims that are substantively identical to the claims

brought in Rogers, for owners of property abutting the same railroad corridor at issue in Rogers. See Bird Bay Am. Compl. (Docket No. 8).

On November 2, 2007 and November 13, 2007, Plaintiffs filed motions for partial summary judgment, and memoranda in support, in Rogers and Bird Bay, respectively. (Rogers Docket No. 23; Bird Bay Docket No. 19). On December 13, 2007, the Court consolidated Rogers and Bird Bay for a determination of liability, and granted Defendant's motion for relief pursuant to RCFC 56(f). (Docket No. 37; Docket No. 38). Pursuant to the Court's consolidation order, Defendant herein responds to both the Rogers and Bird Bay motions. Because Plaintiffs' memoranda are substantively identical, and to simplify Defendant's response, citations to Plaintiffs' memorandum are to the memorandum filed in Rogers.[1/]

## II. STATUTORY BACKGROUND: THE TRAILS ACT

Stemming from the Interstate Commerce Act of 1887, as amended and revised, and the Transportation Act of 1920, 41 Stat. 477-78, and subsequent statutes, the STB has exclusive and plenary authority over the construction, operation and abandonment of virtually all of the nation's rail lines. Chicago & N.W. Transp. Co. v. Kalo Brick & Tile Co., 450 U.S. 311 (1981); see also RLTD Ry. v. STB, 166 F.3d 808, 810 (6th Cir. 1999) (general discussion of the history of railroad regulation). Consequently, a railroad cannot be relieved of its legal obligation to offer service on a particular rail line without first obtaining the express consent of the STB. See Colorado v. United States, 271 U.S. 153, 165 (1926); Nat'l Ass'n of Reversionary Property

[1/] Defendant's Motion and supporting memoranda address the named Plaintiffs in Rogers and Bird Bay. With the exception of the discussion on Plaintiffs' failure to present evidence sufficient to demonstrate an ownership interest in the subject corridor, see Sec. V.A.1-2., the terms "named Plaintiffs" or "Plaintiffs" refer to the entire group of twenty one plaintiffs named in Rogers and Bird Bay.

Owners ("NARPO") v. STB, 158 F.3d 135, 137 (D.C. Cir. 1998).

The termination of active rail service by a railroad generally occurs under one of two mechanisms. First, a railroad can apply for permission to discontinue service. This authority allows the railroad to decide "to cease operating a line for an indefinite period while preserving the rail corridor for possible reactivation of service in the future." Preseault v. ICC, 494 U.S. 1, 6 n.3 (1990); see also NARPO, 158 F.3d at 137 n.1 ("A line that is no longer in use, but has not been officially abandoned, may be reactivated later and is termed 'discontinued.'"). Second, a railroad may seek permission to terminate its service over a corridor through an abandonment proceeding. If authority to abandon is granted by the STB, and the railroad "consummates" the abandonment, the rail line is removed from the national transportation system and the STB's jurisdiction generally comes to an end. Hayfield N. R.R. Co., Inc. v. Chicago & N.W. Transp. Co., 467 U.S. 622, 633 (1984); Preseault, 494 U.S. at 6 n.3; Birt v. STB, 90 F.3d 580, 585 (D.C. Cir. 1996).

In 1976, Congress passed legislation to address concerns about the loss of railroad rights-of-way nationwide. See Preseault, 494 U.S. at 5-6. The provisions of the 1976 legislation authorized the STB to delay disposition of lines subject to abandonment for a period of time in order to allow the sale of the line for public purposes and recreational use. 49 U.S.C. § 10906 (1982 ed.). However, Congress subsequently found that these provisions "ha[d] not been successful in establishing a process through which railroad rights-of-way which are not immediately necessary for active service can be utilized for trail purposes." H.R. Rep. No. 98-28, p. 8 (1983) (quoted in Preseault, 494 U.S. at 6). Accordingly, in 1983, Congress acted once again, this time passing the Trails Act and providing railroads seeking to either abandon or

discontinue their use of a rail line with a third option: railbanking.[2] See RLTD Ry., 166 F.3d at 811 ("Railbanking is an alternative to abandonment."); Grantwood Village v. Missouri Pac. R.R. Co., 95 F.3d 654, 659 (8th Cir. 1996) ("Congress determined that interim trail use was to be treated like discontinuance rather than as an abandonment."), cert. denied, 519 U.S. 1149 (1997); Caldwell v. United States, 57 Fed. Cl. 193, 194 (2003) (under the railbanking process, "[t]he right-of-way is 'banked' until such future time as railroad service is restored"), aff'd, 391 F.3d 1226 (Fed. Cir. 2004), cert. denied, 546 U.S. 826 (2005).

The railbanking provision of the Trails Act states that,

> Consistent with the purposes of [the Railroad Revitalization and Regulatory Reform Act of 1976], and in furtherance of the national policy to preserve established railroad rights-of-way for future reactivation of rail service, to protect rail transportation corridors, and to encourage energy efficient transportation use, in the case of interim use of any established railroad rights-of-way pursuant to donation, transfer, lease, sale, or otherwise in a manner consistent with this chapter, if such interim use is subject to restoration or reconstruction for railroad purposes, such interim use shall not be treated, for the purposes of any law or rule of law, as an abandonment of the use of such rights-of-way for railroad purposes.

16 U.S.C. § 1247(d); see also 49 C.F.R. § 1152.29 (implementing regulations). In order for a railroad corridor or right-of-way to be railbanked, the railroad must first engage in the STB's regulatory abandonment process. Caldwell, 57 Fed. Cl. at 195; see also 49 C.F.R. § 1152.29; 49 C.F.R. § 1152.50. Once an abandonment application or request for an exemption is filed, a party interested in acquiring or using the right-of-way for railbanking and interim trail use may then

---

[2] The term railbanking refers to "the preservation of [a] railroad corridor for future rail use." Neb. Trails Council v. STB, 120 F.3d 901, 903 n.1 (8th Cir. 1997). The federal regulatory process for railbanking a railroad right-of-way that might otherwise be abandoned has been described in some detail in numerous cases, including: Preseault, 494 U.S. at 4-9; Chevy Chase Land Co. v. United States, 37 Fed. Cl. 545, 553-54 (1997), aff'd, 230 F.3d 1375 (Fed. Cir. 1999), cert. denied, 531 U.S. 957 (2000); and NARPO, 158 F.3d at 137-39.

request the issuance of a certificate of interim trail use or "CITU" (in abandonment application proceedings) or a notice of interim trail use or "NITU" (in abandonment exemption proceedings). 49 C.F.R. § 1152.29(c)-(d). The STB's regulations require a qualified party interested in "acquiring or using" a right-of-way proposed to be abandoned for railbanking and interim trail use to file a request or petition that includes, *inter alia*, a statement of willingness to assume responsibility for the right-of-way, and an acknowledgment that interim trail use of the right-of-way is subject to the "possible future reconstruction and reactivation of the right-of-way for rail service" (railbanking). 49 C.F.R. § 1152.29(a)(1)–(3). If the railroad indicates that it is willing to negotiate a Trails Act agreement, the issuance of the NITU is required.[3/] CART v. STB, 267 F.3d at 1150-53.

The NITU operates to preserve the STB's jurisdiction, thereby preempting the application of applicable law that would otherwise apply in the event that the railroad were fully authorized to abandon its rail line. Caldwell v. United States, 391 F.3d 1226, 1229-30 (Fed. Cir. 2004), cert. denied, 546 U.S. 826 (2005). If a railbanking and trail use agreement is reached, the NITU automatically authorizes the interim trail use and the trail sponsor may then assume management of the right-of-way, subject only to the right of a railroad to reassert control of the property for restoration of rail service. Goos v. ICC, 911 F.2d 1283, 1295 (8th Cir. 1990); Birt, 90 F.3d at 583; Caldwell, 57 Fed. Cl. at 195. If a railbanking and trail use agreement is not reached, the railroad may, in accordance with any requirements ordered in the STB's decision, exercise its authority to abandon the rail line by filing a notice of consummation. 49 C.F.R. §§

---

[3/] The STB has long described its role in issuing a NITU as "ministerial," in that the STB is required by statute to issue the NITU if the statutory requirements are met. Citizens Against Rails-To-Trails ("CART") v. STB, 267 F.3d 1144, 1151-53 (D.C. Cir. 2001).

1152.29(d)(1), (e)(2); NARPO, 158 F.3d at 139 & n.7. In general, railroads have one year from the date of a decision permitting abandonment to exercise the authority to abandon.[4] 49 C.F.R. § 1152.29(e)(2). While the abandonment authority is generally authorized in the same document that authorized the negotiation period under the Trails Act (the NITU), the abandonment authority does not stem from the Trails Act.

## III. FACTUAL BACKGROUND

### A. History of the Subject Corridor and Proceedings Before the STB

The subject corridor extends 12.43 miles, from approximately milepost SW 892 to SW 904.2 in Sarasota County, Florida. Seaboard Air Line Railway ("Seaboard") acquired the subject corridor in a number of conveyances between 1910 and 1941. See Def.'s Ex. 1 at 0001-0005 (Lands Owned or Used for Purposes of a Common Carrier); Def.'s Ex. 2 at D 0011 (Declaration of Cindi A.R. Straup (hereinafter "Straup Decl.")); Def.'s Ex. 3 at 0039 (Quitclaim Deed from CSX Transportation to The Trust for Public Land). Defendant's Exhibit 1 includes a listing of the original conveyances to Seaboard, together with certain other information related to those conveyances (such as the names of the landowners, the date of conveyance, amount of consideration paid, and the place where the deed was recorded).

By April 2004, CSX Transportation ("CSX") owned the real property underlying the

---

[4] If after one year, the railroad has not consummated abandonment "the authority to abandon will automatically expire. In that event, a new proceeding would have to be instituted if the railroad wants to abandon the line." 49 C.F.R. § 1152.29(e)(2). However, "[f]or good cause shown, a railroad may file a request for an extension of time to file a notice [of consummation of abandonment] so long as it does so sufficiently in advance of the expiration of the deadline for notifying the Board of consummation to allow for timely processing." Id.

subject corridor. See STB Decision and NITU at 0044 (service date April 2, 2004) (attached as Exhibit 4). At that time, CSX had leased the corridor to Seminole Gulf Railway, L.P. ("SGLR"), and SGLR was the owner of the physical assets on the subject corridor. See id. On December 15, 2003, SGLR filed a Petition for Exemption of Abandonment, seeking "an exemption" to allow it to "abandon 12.43 miles of railroad located in Sarasota County, Florida." Def.'s Ex. 5 at 0052 (Petition of Seminole Gulf Railway, L.P. for Exemption of Abandonment in Sarasota County, Florida (STB Docket No. AB-400 (Sub-No. 3X))). SGLR, rather than CSX, filed the request for exemption because, as the lessee of the trackage on the corridor, it held a common carrier obligation to maintain service on the line. See Def.'s Ex. 4 at 0044. In the context of SGLR's Petition for Exemption of Abandonment, the word "abandonment" has a very specific meaning. In that context, a railroad like SGLR does not necessarily aim to physically abandon the corridor for which the petition is filed. Rather, the request for abandonment merely seeks permission from the STB to cease providing service over the corridor for which the petition is filed. See 49 U.S.C. 10906.

On January 20, 2004, Sarasota County filed a request for a NITU permitting interim trail use/rail banking under the Trails Act. Def.'s Ex. 4 at 0044. During this process, Sarasota County began looking to the Trust for Public Land ("TPL") for assistance and guidance through the STB process. On September 28, 2004, TPL and Sarasota County reached a Purchase and Sale Agreement that bound TPL to seek a purchase of the subject corridor and then sell the corridor to Sarasota County. Def's Ex. 6 at 0063 (Purchase and Sale Agreement Between The Trust for Public Land and Sarasota County). The Purchase and Sale Agreement became the "interim trail use agreement" that ensured that the corridor "remain[ed] subject to the jurisdiction

of the STB for purposes of reactivating rail service." Id. at 0070.

On April 2, 2004, the STB issued the NITU at the request of Sarasota County, which allowed the County and SGLR to negotiate an agreement for railbanking and interim trail use pursuant to the Trails Act. See Def.'s Ex. 4 at 0046. On December 20, 2004, CSX and the TPL reached an agreement. See Def.'s Ex. 3 at 0028. Under the agreement, CSX quitclaimed its interest in the subject corridor to TPL. See id. This agreement expressly acknowledged that despite the transfer, the corridor remained "subject to the jurisdiction of the STB for purposes of reactivating rail service." Id. at 0029. Pursuant to the Purchase and Sale Agreement between Sarasota County and TPL, this land was later conveyed to TPL. See Def.'s Ex. 6 at 0062. After acquisition of the corridor, Sarasota County constructed a public recreational trail on the subject corridor, and is legally responsible for the corridor until such time as rail service is reintroduced. Id. Any request to reactivate service takes priority over interim trail use. See Georgia Great Southern Division, South Carolina Central Railroad, Abandonment and Discontuance Exemption, 2003 WL 21132515 at *4 (STB May 16, 2003) (vacating a NITU and noting that "[t]rail sponsors cannot avoid the statutory predicate that an interim trail use arrangement is subject to being cut off at any time for restored rail service . . . .").

**B. Plaintiffs' Properties**

As discussed above, Seaboard acquired the subject corridor through several different instruments. In order to make a liability determination with respect to any Plaintiff's property, it is necessary to connect each property to an original granting deed. Plaintiffs' motion presents only allegations, with no evidentiary proof, that they are the successors in interest to the landowners who deeded an interest to Seaboard. Plaintiffs do not satisfy their burden of proof

with respect to their claims and, on this basis alone, their motion should be denied at this time.

Although Plaintiffs bear the burden of proof to show ownership, the United States has investigated Plaintiffs' claims and determined which railroad interest corresponds to each property. See Straup Declaration at ¶¶ 10-11 (0008-0009). With one exception, each of the named Plaintiffs abuts a portion of the subject corridor that was granted to Seaboard by Adrian C. Honore pursuant to a written deed executed on November 5, 1910 (hereinafter the "Honore Deed")(attached as Exhibit 7). See Straup Decl. at ¶ 10(a)-(f) (0008). Pursuant to the Honore Deed, Honore "remise[d], release[d] and forever quit claim[ed] unto the SEABOARD AIR LINE RAILWAY . . . a right of way for railroad purposes." Def.'s Ex. 7 at 0084. The conveyance was made on "the express condition . . . [that] if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the . . . [conveyed] pieces and parcels of land shall ipso facto revert to and again become the property of [Adrian C. Honore] his heirs, administrators and assigns." Id. at 0086 (emphasis in original). As discussed below, the Honore Deed conveyed a fee simple determinable interest to Seaboard. See discussion infra § V.C.

The property owned by Plaintiff Bird Bay is the only property at issue in the cross-motions that does not abut a section of the corridor granted in the Honore Deed. With respect to that property, the relevant railroad instrument was a written deed granted to Seaboard by B.L.E. Realty Corporation in 1927, see Def.'s Ex. 8 (the "BLE Deed"), and to Seaboard by Venice-Nokomis Holding Corporation in 1941, see Def.'s Ex. 9 (the "Venice Deed"). See Straup Decl. at ¶ 11 (0009). The BLE Deed and Venice Deed grant identical parcels of property to Seaboard. Compare Def.'s Ex. 8 at 0087-0088 (BLE Deed) with Def.'s Ex. 9 at 0089-0090 (Venice Deed). Both deeds provide for the grant of a fee simple interest to Seaboard without any reservation of

interest to the original grantors. As discussed below, the BLE Deed and the Venice Deed conveyed a fee simple absolute interest to Seaboard. See infra § V.F.

## IV. STANDARD OF REVIEW

Summary judgment is "properly regarded not as a disfavored procedural shortcut but, rather, as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action. . . .'" Tabb Lakes v. United States, 26 Cl. Ct. 1334, 1344 (1992), aff'd, 10 F.3d 796 (Fed. Cir. 1993) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)). A party is entitled to summary judgment under RCFC 56 "when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law." Avenal v. United States, 100 F.3d 933, 936 (Fed. Cir. 1996). Both parties' summary judgment motions – which ask the Court to determine whether government actions constitute a taking – present "a question of law based on factual underpinnings." Walcek v. United States, 303 F.3d 1349, 1354 (Fed. Cir. 2002) (citing Wyatt v. United States, 271 F.3d 1090, 1096 (Fed. Cir. 2001), cert. denied, 122 S. Ct. 1960 (2002)).

The law is well settled that a claimant, like any plaintiff in a taking action, must "demonstrate ownership of a compensable property interest at the time of the asserted taking." Oak Forest v. United States, 23 Cl. Ct. 90, 94 (1991). In the context of this case, a claimant is entitled to just compensation only when he has demonstrated that he owned a compensable property interest in property abutting the former railroad corridor on the date of taking. See, e.g., Glosemeyer v. United States, 45 Fed. Cl. 771, 775, 781 (2000) (assuming that the claimants were the underlying fee owners and concluding that "but for the application of the [Trails Act], the plaintiffs would have been seised in their lands without any restrictions. . .").

## V. ARGUMENT

### A. Plaintiffs Failed to Meet their Burden of Proving That They Own the Property They Allege to Have Been Taken

#### 1. Plaintiffs Bear the Burden of Proof

In order to establish a taking, Plaintiffs bear the burden of establishing that they owned the property alleged to have been taken from them on the date of that taking. See Cienega Gardens v. United States, 331 F.3d 1319, 1328 (Fed. Cir. 2003) ("For any Fifth Amendment takings claim, the complaining party must show it owned a distinct property interest at the time it was allegedly taken"); Amaliksen v. United States, 55 Fed. Cl. 167, 171 (2003) ("Establishing title to the property allegedly taken is essential to asserting a taking"). This is a threshold issue in all takings claims, and a court does not reach the question of whether a taking occurred "without first identifying a cognizable property interest." Air Pegasus of D.C., Inc. v. United States, 424 F.3d 1206, 1213 (Fed. Cir. 2005).

In the context of Fifth Amendment takings claims involving the Trails Act, it is well established that if the railroad "obtained fee simple title to the land over which it was to operate . . . the [abutting landowners] today would have no right or interest in those parcels and could have no claim related to those parcels for a taking." Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996). See also King County v. Rasmussen, 299 F.3d 1077, 1088-89 (9th Cir. 2002) (affirming dismissal of rail-trail takings claims where railroad held fee simple title to the right-of-way), cert. denied, 538 U.S. 1057 (2003); Nat'l Wildlife Fed'n v. ICC, 850 F.2d 694, 703 (D.C. Cir. 1988) (rights-of-way held by the railroad in fee simple interests "are not affected by the takings clause aspect of this case"). Similarly, if a landowner is unable to prove that he has an ownership interest in the land underlying the subject right-of-way, the court should

dismiss his claim. See Moore v. United States, 58 Fed. Cl. 134, 138-39 (2003) (granting summary judgment in favor of defendant as to certain plaintiffs who failed to establish that their properties abutted the subject right-of-way and thus "could not claim ownership to the lands affected by the Trails Act"); Amaliksen, 55 Fed. Cl. at 175 (granting summary judgment in favor of defendant where plaintiffs were unable to establish title to the right-of-way abutting their properties).

**2. The Rogers Plaintiffs Have Not Established that They Own the Property Underlying the Subject Corridor.**

The named Plaintiffs in Rogers each claim that "their property includes fee title to property that abuts and underlies the abandoned SGLR right-of-way . . . on April 2, 2004 [the date of the] . . . NITU." See, e.g., Pls.' Mem. at 19 (discussing the property allegedly owned by Stephen and Linda Rogers). Each of the Rogers plaintiffs failed to meet the burden of proving possession of an interest in the property "underlying" the subject corridor, or ownership of the subject corridor by virtue of owning an abutting parcel. This failure of proof on a threshold element of the Plaintiffs' claims requires denial of Plaintiffs' motion for summary judgment.

To illustrate the insufficiency of Plaintiffs' proof on this point, an examination of the deed granting Plaintiffs Stephen and Linda Rogers an interest in property abutting the subject corridor is instructive. The deed produced by the Rogers granted them "Lot 67 MISSION ESTATES, UNIT ONE, according to the Plat thereof recorded in Plat Book 39, Page 6, of the Public Records of Sarasota County, Florida. See Rogers Pls.' Proposed Facts, Tab J. This parcel is conveyed "[s]ubject to restrictions, reservations and easements of record . . . ." Id. However, the deed does not identify any such easements or restrictions. The legal description in this deed does not expressly encompass the lands within the corridor, mention the subject

corridor of suggest that eh property boundaries extend to the railroad corridor. Additionally, Plaintiffs did not submit any other deeds in the Rogers' chain-of-title, rendering it impossible to determine from the evidence before the Court whether the Rogers own an interest in any portion of the subject corridor abutting their property. It is Plaintiffs' burden to establish their ownership of the lands underlying the right-of-way and they have not met their burden in connection with their motion for summary judgment.

The deeds presented by each of the other named plaintiffs in Rogers to demonstrate ownership are similar to the deed presented by the Rogers. Each deed grants only a "Lot" and references "Plat Book 39" at Page 6 or Page 46. See Rogers Pls.' Proposed Facts, Tabs K-U. Furthermore, each deed contains language identical, or substantially similar, to the "[s]ubject to restrictions, reservations and easements of record . . . ." language found in the Rogers' deed. Like the Rogers' grant, these deeds do not identify the restrictions, reservations or easements that might be applicable and the deeds do not show that the property underlies or abuts any portion of the subject corridor. Because the legal description in these deeds do not expressly encompass the lands within the corridor, and because Plaintiffs have not submitted any other deeds in their respective chains-of-title, it is impossible to determine from the evidence before the Court whether any of the Rogers Plaintiffs own an interest in any portion of the subject corridor abutting their property. It is Plaintiffs' burden to establish their ownership of the lands underlying the right-of-way and for failing to meet it, their motion for summary judgment should be denied.

### 3. The Bird Bay Plaintiffs Have Not Established that They Own the Property Underlying the Subject Corridor.

The deeds granting Plaintiffs' property in Bird Bay are more specific than those

presented by the Rogers Plaintiffs, but still fall short of demonstrating that each Plaintiff owned an interest in the subject corridor.[5] In fact, each of the deeds for each of the Bird Bay Plaintiffs only grant land to one edge of the subject corridor. See Bird Bay Pls.' Proposed Facts, Tab J (granting Nathan and Deborah Childers land "to the Westerly right-of-way line of the Seaboard Coast Line Railroad"); Tab M-2 (granting Palmer Ranch Holdings, Ltd. land "to [the] intersection with the westerly line of the Seminole Gulf Railway . . ."); Tab O (granting McCann Holdings, Ltd. land "lying Easterly of the Seaboard Coast Line Railroad); Tab P-1 (granting Mission Valley Golf and Country Club land "to a point on the easterly right of way of Seaboard Air Line Railroad . . ."); Tab P-2 (granting Mission Valley Golf and Country Club land "to a point on the easterly right of way of Seaboard Air Line Railroad . . ."); Tab S (granting to the Dennis T. Marlin Revocable Trust land "to the West right-of-way line of the Sal [sic] Railroad . . ."); Tab U (granting the A. Merle Clark Glueck Trust land "west of Railroad . . ."); Tab V (granting JMC - Real Estate Holdings, LLC land "to an intersection with the Westerly Right-of-Way line of the Seaboard Coast Line Railroad; thence . . . along said Westerly Right-of-Way line . . ."). As with the descriptions found in the Rogers Plaintiffs' deeds, none of the descriptions contained in the instruments by which the Bird Bay Plaintiffs' acquired their property embrace the subject corridor. Accordingly, because the Bird Bay Plaintiffs have not submitted any other deeds in their respective chains-of-title, it is impossible to determine from the evidence before the Court whether any of the Bird Bay Plaintiffs own an interest in any portion of the subject corridor abutting their property. It is Plaintiffs' burden to establish their ownership of the lands

[5] As discussed infra Sec. V.F, Plaintiff Bird Bay's property abuts a portion of the subject corridor that Seaboard acquired in fee simple absolute. Accordingly, Bird Bay never acquired any property interest in the corridor.

underlying the right-of-way and for failing to meet it, their motion for summary judgment should be denied.

### B. Florida Law Determines the Nature and Scope of the Relevant Property Interests

#### 1. Florida Law Defines the Nature and Scope of the Relevant Property Interests

If this Court were to hold that Plaintiffs' have met their burden of establishing an ownership interest in the subject corridor, the determination of whether the United States is liable turns on whether the operation of the Trails Act interfered with those interests in a manner that rises to the level of a "taking" under the Fifth Amendment. As Plaintiffs acknowledge, the nature and scope of the property interests allegedly taken in this case is a question of Florida state law. See Pls.' Mem. at 46. Although Plaintiffs acknowledge that Florida law controls these issues, Plaintiffs' liability arguments lean heavily on decisions from the Federal Circuit and the Court of Federal Claims involving the law of other states.

A number of courts have considered the question of whether railbanking and/or interim trail use fall within the scope of a railroad easement created under state law. In some of those cases, the courts have found that railbanking and interim trail use fall within the scope of a railroad easement. For example, in Chevy Chase Land Company v. United States, the Court of Appeals of Maryland, answering questions of state law certified to it by the Federal Circuit, held:

> We believe it indisputable that use of the right-of-way as a trail is consistent with its essential nature relating to the "pass[ing] over land of another" and is a reasonable use of a general right of way. Accordingly, the scope of the right-of-way in the instant case encompasses use as a hiker/biker trail.

Chevy Chase Land Co. v. United States, 733 A.2d 1055, 1076 (Md. 1999), answering questions certified by 158 F.3d 576 (Fed. Cir. 1998). Applying the state court's ruling on the questions of

state law, the Federal Circuit affirmed the trial court's holding that railbanking and interim trail use of the railroad easement at issue in Chevy Chase did not constitute a taking of the servient estate holder's property interests. Chevy Chase, 230 F.3d 1375 (Table), 1999 WL 1289099 (Fed. Cir. Dec. 17, 1999), cert. denied, 531 U.S. 957 (2000). Courts applying the law of other states have reached the same conclusion. See e.g., Washington Wildlife Pres., Inc. v. Minnesota, 329 N.W.2d 543, 547 (Minn. 1983) (Under Minnesota law, "[r]ecreational trail use of the land is compatible and consistent with its prior use as a rail line, and imposes no greater burden on the servient estates"), cert. denied, 463 U.S. 1209 (1983); Barney v. Burlington N.R.R., 490 N.W.2d 726, 733 (S.D. 1992) (holding under South Dakota law that use of a railroad right-of-way for hikers, bikers, skiers and snowmobilers are "public highway" uses that are "compatible and consistent with its prior use as a public railway. No greater burden has been placed upon the servient estate"), cert. denied, 507 U.S. 914 (1993); Rieger v. Penn Central Corp., No. 85-CA-11, 1985 WL 7919 (Ct. App. Greene County, Ohio, May 21, 1985) (finding that under Ohio law a railroad easement had not been extinguished and could be transferred to the state for trail use "because the proposed use is similar to that originally contemplated and 'because the general purpose to which the easement was and is applied, are the same; to wit, . . . a public way to facilitate the transportation of persons and property. Means and appliances are different, but the objects are similar . . . .").

In other cases, such as those relied upon by Plaintiffs, the courts have concluded that railbanking and/or trail use exceeds the scope of a railroad's easement and that the authorization of those uses under the Trails Act constitutes a taking. Significantly, however, these decisions do not purport to rule on liability in all cases. Instead, the decisions in the cases relied upon by

Plaintiffs turned on an interpretation of specific conveyance instruments under the law of the state in question. As the Federal Circuit emphasized in Preseault v. United States, which involved Vermont state law, "[w]e do not hold that every exercise of authority by the Government under the Rails-to-Trails Act necessarily will result in a compensable taking." Preseault, 100 F.3d at 1552. In particular, the Preseault court expressly acknowledged that even when a railroad acquires only an easement, "if the terms of the easement when first granted are broad enough under then-existing state law to encompass trail use, the servient estate holder would not be in a position to complain about the use of the easement for a permitted purpose." Id. Similarly, in Toews v. United States, 376 F.3d 1371 (Fed. Cir. 2004), the Federal Circuit concluded that interim trail use exceeded the scope of easements conveyed to a railroad by the deeds at issue as a matter of California state law.

It is undisputed that the determination of whether railbanking and interim trail use fall within the scope of the interest conveyed to Seaboard in the Honore Deed turns on Florida state law rather than the law of any other state. Accordingly, while the Federal Circuit's decisions in cases such as Chevy Chase, Preseault and Toews and the Court of Federal Claims' decisions cited by Plaintiffs provide useful guidance on the appropriate analytical framework in these cases, the decisions in those cases turned on the interpretation of different conveyance instruments under the law of other states. Accordingly, those decisions do not control the outcome in this case.

### 2. Principles of Construing Grants to Railroads Under Florida Law

The Florida Supreme Court has long held that "[a] railroad right of way in [Florida] is not a mere easement or user for railroad purposes. Like other property it is acquired by purchase or

condemnation and vests a fee in the company acquiring it which cannot be divested except as the law provides." Atlantic Coast Line Rail Co. v. Duval County, 154 So. 331, 332 (Fla. 1934); Florida Power Corp. v. M.S. McNeely, 125 So.2d 311, 316 (Fla. 1961) ("Ordinarily, a railroad right of way in Florida is not a mere easement or user for railroad purposes but is a fee vested in the railroad."). Accordingly, in the absence of circumstances suggesting the contrary, the grant of a right-of-way to a railroad company vests that company with fee simple ownership. See Atlantic Coast Line, 154 So. at 332; Florida Power Corp., 125 So.2d at 316.

Neither the use of the term "right of way" nor language of purpose in a conveying document transforms a fee interest into an easement. In Robb v. Atlantic Coast Line Rail Co., 117 So.2d 534 (Fla. App. 1960), for example, the Florida Court of Appeals considered a warranty deed that conveyed to the Atlantic Coast Line Railroad ("Atlantic Coast") certain land for "right of way purposes." In holding that the deed granted a fee simple interest to Atlantic Coast, rather than a limited fee or an easement, the court held that the "right of way purposes" language was "merely declaratory of the use contemplated of the land" and did not limit the estate conveyed to the railroad. Id. at 537. The court concluded that language limiting fee simple interests is "not favored in law. . . [and] will be construed strictly and . . . most strongly . . . against the grantor." Id.

A fee grant to a railroad can be qualified in the same manner as any other fee interest. See, e.g., Richardson v. Holman, 33 So.2d 641 (Fla. 1948) (discussing the grant of a railroad right-of-way in fee simple determinable); Loveland v. CSX Transp., Inc., 620 So.2d 1120 (Fla. App. 1993) (discussing the grant of a railroad right-of-way in fee simple determinable or fee simple subject to a condition subsequent). A fee simple determinable is a fee simple estate that

automatically terminates and reverts to the original grantor (or her heirs or assigns) upon the occurrence or non-occurrence of a specified action. See Richardson, 33 So.2d at 641-42 (fee simple determinable interest created where deed was "made subject to and upon the express condition that should the [grantee] cease to use the foregoing land for railroad purposes, then and in that event the title to said property shall revert to and vest in the [grantor] and his heirs and assigns").

### C. Seaboard Acquired a Fee Simple Determinable Interest in the Portions of the Subject Corridor Abutting the Property Owned by the Named Rogers Plaintiffs

#### 1. The Honore Deed Unambiguously Conveys a Fee Simple Determinable Interest

All of the Plaintiffs, with the exception of Plaintiff Bird Bay, abut a portion of the subject corridor that was granted to Seaboard by the Honore Deed. Straup Decl. at ¶ 10(a)-(f) (0008). Pursuant to the Honore Deed, Honore "remise[d], release[d] and forever quit claim[ed] unto the SEABOARD AIR LINE RAILWAY . . . a right of way for railroad purposes." Def.'s Ex. 7 at 0084. The conveyance was made on "the express condition . . . [that] if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the . . . [conveyed] pieces and parcels of land shall ipso facto revert to and again become the property of [Adrian C. Honore] his heirs, administrators and assigns." Def.'s Ex. 7 at 0086 (emphasis in original). Florida law is clear that the Honore Deed conveyed a fee simple determinable interest to Seaboard.

The Honore Deed is substantively identical to the deed at issue in Richardson, which the

Florida Supreme Court determined conveyed a fee simple determinable interest.[6] Both the Honore Deed and the deed at issue in Richardson granted a right-of-way for railroad purposes. See Richardson, 33 So.2d at 641-642; Def.'s Ex. 7. Inclusion of the term "right of way" in the deed is of little consequence, however, given Florida's courts holding that the term "right of way purposes" may be "merely declaratory of the use contemplated of the land" and not a limitation on the estate conveyed. See Atlantic Coast Line Rail Co., 117 So.2d at 537.

In addition, both the Honore Deed and the deed at issue in Richardson provide for immediate reversion of the right-of-way if the triggering event – the failure of the grantee to utilize the right-of-way for railroad purposes – occurs. Compare Richardson, 33 So.2d at 641-42 ("should the [grantee] cease to use the foregoing land for railroad purposes, then and in that event the title to said property shall revert and vest in the [grantor] and his heirs and assigns.") with Def.'s Ex. 7 at 0086 ("This conveyance is made upon the express condition . . . [that] if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the . . . [conveyed] pieces and parcels of land shall ipso facto revert to and again become the property of [Adrian C. Honore] his heirs, administrators and assigns.")(emphasis in original). The similarity in the two instruments shows that the Florida Supreme Court would determine that the Honore Deed, like the deed construed in Richardson, conveyed a fee simple determinable to Seaboard and not an easement.

[6] It is important to note that the deed at issue in Richardson, like the Honore Deed, was executed in 1910. 33 So.2d at 641. This is significant because a deed should be construed according to the legal background in place at the time of its execution. See Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001 (1984). Accordingly, Richardson is an appropriate roadmap, drawn by the Supreme Court of Florida, for construing the terms of conveyances, like the Honore Deed, executed in 1910.

**2. The Court Should Reject Plaintiffs' Arguments that the Honore Deed Conveyed an Easement**

Plaintiffs argue that the Honore Deed granted Seaboard only an easement, which was limited to active railroad purposes only. Pls.' Mem. at 11. Plaintiffs' argument misapprehends Florida law and the Honore Deed itself. Plaintiffs focus on the term "right of way" in the Honore Deed, a phrase of little consequence under Florida law. Although Plaintiffs offer no discussion of the principle in their briefs, Florida courts do not treat the phrase "right of way" as a definitive marker of an easement interest. Atlantic Coast Line Rail Co., 117 So.2d at 536-37. Plaintiffs' attempt to equate the descriptive phrase "right of way" with "easement" finds no support in the relevant case law and their arguments to that effect should be rejected.

The deed at issue in Cohen v. Pan American Aluminum Corp., 362 So.2d 59 (Fla. App. 1978), provides a useful contrast to the Honore Deed, and further demonstrates Plaintiffs' error. The deed at issue in Cohen granted the railroad "an exclusive perpetual easement over the lands hereinafter described, for the sole use of the Grantee for the purposes herein set forth, to wit, to use said land for a railway right-of-way to serve Grantee's property. . . ." Id. at 60 (emphasis added). The Cohen deed also provided that the grant would "expire and become null and void whenever the [railroad] fails to use the property for a railway right-of-way for any one hundred twenty (120) consecutive days." Id. The Cohen court found that this unambiguous language created a limited easement that would terminate or expire if the railroad failed to use the easement for 120 days.

The Honore Deed is manifestly different from the deed at issue in Cohen. Unlike the Cohen deed, the Honore Deed never uses the word "easement," in the granting clause or elsewhere. Moreover, unlike the Cohen deed, the Honore Deed does not say it will "expire and

become null and void," which is language associated with an easement. Rather, the Honore Deed (like the deed at issue in Richardson) includes a reversionary clause, a concept related to future reversionary interests that has no bearing in relation to easement interests. Sears, Roebuck and Co. v. Franchise Finance Corp. of America, 711 So.2d 1189, 1192 (Fla. App. 1998) (citing Thompson on Real Property Sec. 440, p. 714 (1980)).

### D. Railbanking and Interim Trial Use Are Within the Scope of the Railroad's Interest in the Subject Corridor

The activities allowed pursuant to the NITU are within the scope of the railroad's property interest. The NITU permits two distinct present uses of the subject corridor: (1) railbanking, and (2) interim trail use. See Preseault, 494 U.S. at 10, 17-18; see also CART v. STB, 267 F.3d at 1153 (D.C. Cir. 2001) ("Congress' stated purposes in enacting the Trails Act were twofold: to preserve rail corridors for future railroad use and to permit public recreational use of trails"); Nat'l Wildlife Fed'n, 850 F.2d at 707 (declining to find that railbanking is a fiction, noting that "Congress specifically identified rail banking as a goal in the test of § 8(d)" of the Trails Act). Both railbanking and interim trail use are within the scope of the uses permitted under the Honore Deed.

#### 1. Railbanking is Within the Scope of the Railroad's Interest

Railbanking is a permissible railroad use, plainly within the scope of the railroad's property interest. The term "railbanking" refers to the "preservation of railroad corridor for future rail use." Neb. Trails Council, 120 F.3d at 903 n.1; Chevy Chase Land Co. v. United States, 37 Fed. Cl. 545, 584 (1997) (railbanking is "preserving the rail corridor for future railroad use"). The railbanking mechanism furthers "the national policy to preserve established railroad rights-of-way for future reactivation of rail service" and protects rail transportation corridors. 16

U.S.C. § 1247(d). Railbanking thus provides railroads with an alternative to abandonment of their rights-of-way and the loss of the corridor as part of the national transportation system. Preseault, 494 U.S. at 5 n.3; RLTD Ry, 166 F.3d at 811. The Court should conclude, therefore, that railbanking is a railroad purpose, within the scope of the uses permitted by the Honore Deed.

**2. Interim Trail Use is Within the Scope of the Railroad's Interest**

In addition, interim trail use is within the scope of the railroad's interest in the subject corridor. First, interim trail use furthers and serves the original purpose of the railroad's interest by allowing the railroad to preserve the corridor for future rail service. The Trails Act authorizes interim trial use so that the trail sponsor can assume management responsibility, tax and cost obligations, and legal liability for the corridor during the duration of the railbanking period. Relieving the railroads of such responsibilities and costs during the railbanking period encourages railroad companies to preserve their railroad corridors so that those corridors are available for future rail use. See H.R. Rep. 28, 98th Cong., 1st Sess., 1983 WL 25294 (1983) (stating that the Trails Act "will protect railroad interests by providing that the right-of-way can be maintained for future railroad use even though service is discontinued and tracks removed, and by protecting railroad interests from liability or responsibility in the interim period.").

Additionally, interim trail use is within the scope of the railroad's interest because interim trail use is a permissible public use of the corridor under Florida law. Florida has long-recognized that interim public trails serve a valuable public purpose. When the STB issued the NITU in this case, for example, the Florida legislature had already declared "the public policy of this state . . . to provide the means and procedures for establishing and expanding a statewide system of green ways and trails for recreational and conservation purposes. . . ." Fla. Stat. §

260.012(1) (1999); Fla. Stat. § 260.012(2) (1999) (stating the Florida Legislature's intent to "encourage the multiple use of public rights-of-way and use to the fullest extent existing and future scenic roads, highways, park roads, parkways, green ways, trails, and national recreational trails").[7] Moreover, the State has declared the "planning, development, operation, and maintenance of the Florida Green ways and Trails System" to be a "public purpose," and authorized the expenditure of public funds to facilitate that purpose. See Fl. Stat. § 260.012(5) (1999); see also Fla. Stat. § 260.015 (1999) (authorizing the Florida Department of Environmental Protection to acquire land to expand the Greenways and Trails Program). This recognition of the public purpose that animates trail use in Florida militates against a finding that trail use is not a railroad purpose under Florida law.

Plaintiffs will likely argue that the Florida Court of Appeals' discussion in Loveland supports Plaintiffs' position. In Loveland, the railroad sold and leased to third parties portions of the rail corridor adjacent to plaintiff's property. See id. Plaintiff sued, claiming, inter alia, that the railroad's transfers of its interest in the corridor to third parties for private non-railroad purposes (mill purposes, coal storage and a private shipping business) triggered the landowner's possibility of reverter. The court agreed, concluding that when railroad "property is sold, it can no longer be used for railroad purposes unless it is conveyed to someone who will use the land for railroad purposes." Id. at 1122 (emphasis added).

In fact, Loveland supports Defendant's position, not Plaintiffs' position. Although the court recognized that private, non-public uses of a railroad corridor were not "railroad purposes,"

[7] Florida's current legislative provisions are similar. See Florida Greenways and Trails Act, Fla. Stat. §§ 260.011-018 (2008).

the court expressly stated that, under Florida law, a "'railroad purpose' is one which is primarily for the benefit of the public, and not a private individual." Id. (quoting Cannco Contractors, Inc. v. Livingston, 669 S.W.2d 457, 460 (Ark. 1984)). See also Fla. Jur. 2d Railroads § 32 ("a railroad right of way is private property dedicated to a public use."). The current uses of the railroad corridor are both public purposes, not private uses. Moreover, unlike the situation in Loveland, the railroad corridor here is preserved for future rail service, meaning that Plaintiffs' reversionary interests are not impacted by the STB's issuance of the NITU.

### E. Alternatively, The STB's Issuance of the NITU Did Not Impact Plaintiffs' Future Interests in the Subject Corridor

#### 1. Plaintiffs' Future Interests to the Subject Corridor Vest Only Upon the Railroad's Abandonment of its Interest in the Subject Corridor

Since the Honore Deed conveyed a fee simple determinable interest to Seaboard, Plaintiffs, as successor-in-interest to the original landowners, had, at most, an inchoate future interest (a possibility of reverter). Under the unambiguous language of the Honore Deed, Plaintiffs' possibility of reverter is triggered only if the railroad "shall abandon said land for railroad purposes. . . ." Exhibit 4. The railroad has never abandoned its land for railroad purposes. In fact, the railroad expressly decided not to abandon its property interest. Rather, it decided to preserve the property for future rail service by "railbanking" the corridor pursuant to the Trails Act. Therefore, Plaintiffs' inchoate future interest was never triggered, and the STB's issuance of the NITU did not effect a taking of Plaintiffs' properties.

#### 2. The Railroad Did Not Abandon its Interest in the Subject Corridor, and the STB's Issuance of the NITU Did Not Effect an Abandonment of the Railroad's Interest

Plaintiffs argue that the railroad abandoned the subject corridor under Florida law, and

that, but for the Trails Act, the land underlying the corridor would have reverted to Plaintiffs. See Pls.' Mem. at 28-29. Contrary to Plaintiffs' assertions, undisputed facts show that the railroad did not abandon the subject corridor. The subject corridor is still being used for a railroad purpose and has not been abandoned. Accordingly, the application of the Trails Act did not impact Plaintiffs' inchoate interest in the subject corridor.[8]

In Florida, "abandonment is a question of intent and he who asserts it, has the burden of proving it." Dade County v. City of North Miami Beach, 69 So.2d 780, 783 (Fla. 1954). In the context of an easement, for example, the party asserting abandonment must "demonstrate that there was a 'clear affirmative intent to abandon'" the easement. Liebowitz v. City of Miami Beach, 592 So.2d 1213, 1214 (Fla. App. 1992) (citing Woodlawn Park Cemetery Co. v. City of Miami, 104 So.2d 851, 853 (Fla. App. 1958)). Mere non-use of an easement is not sufficient to demonstrate an intent to abandon, but it can be evidence of such intent. Dade County, 69 So.2d at 783. Conversely, continuous use of an easement prevents its extinguishment. Johnston v. TPE Hotels, 719 So.2d 22, 26 (Fla. App. 1998) ("the easement was used continuously so no basis appears in this record to conclude the owner of the dominant tenement intended to abandon the easement . . .").

Further, the removal of structures from an easement is not sufficient, standing alone, to demonstrate an intent to abandon where the easement is still used for its contemplated purpose. Liebowitz, 592 So.2d at 1214 (holding that removing the concrete from a sidewalk was

[8] If the Court determines that the railroad acquired a mere easement pursuant to the Honore Deed, Plaintiffs' argument fails for a similar reason. The easement would be considered extinguished under state law only if the railroad abandoned that interest. As discussed below, the railroad did not abandon its property interest.

insufficient to demonstrate abandonment of an easement for "street and sidewalk purposes."). In sum, in order to demonstrate that the corridor has been abandoned under Florida law, Plaintiffs must show a clear intent by the railroad to abandon and actions evidencing such intent to abandon.

**a. Plaintiffs Cannot Demonstrate Clear Affirmative Intent to Abandon the Corridor**

Plaintiffs allege that the railroad's participation in the STB's regulatory process demonstrates an intent to abandon the subject corridor. Pls.' Mem. at 25. Plaintiffs are incorrect. Plaintiffs point to SGLR's filing of a petition for exemption with the STB as evidence of SGLR's intent to abandon the subject corridor. Pls.' Mem. at 25. SGLR's filing of the petition does not demonstrate an intent to abandon the physical rail corridor. When a railroad files a Petition for Exemption with the STB, it merely intends to receive authorization to cease active rail service over the rail lines, not to permanently abandon its property interest in the property underlying the rail corridor. See Def.'s Ex. 5. This point is especially pertinent here, since SGLR, who filed the petition because it owned the common carrier obligation, did not even own the underlying corridor; SGLR merely conducted train operations on the corridor pursuant to a lease from CSX. Def.'s Ex. 4 at 0000. SGLR could not have taken any steps to abandon the corridor because it did not even own the corridor.

The filing of a Petition for Abandonment is a regulatory act, not evidence of an intent to abandon. Only after the railroad files a petition and the STB approves the exemption may the railroad proceed to consummate the abandonment of the rail line. See 49 C.F.R. § 1152.29(e)(2) (requiring a railroad to file a "notice of consummation" if it chooses to abandon the corridor). Abandonment authority issued by the STB is permissive, but lines authorized for abandonment

can be acquired for future rail service, under the offer of financial assistance provisions under 49 U.S.C. § 10904. Where there is no offer of financial assistance, the Trails Act offers the possibility of future rail use by railbanking. Thus, the filing of a petition for exemption does not require the railroad to abandon the rail line; it merely affords the railroad the option of doing so. Accordingly, because an outcome other than abandonment is possible, the filing of a petition for exemption does not evidence a "clear affirmative intent to abandon" the corridor. Liebowitz, 592 So.2d at 1214.

Plaintiffs' error is due to their confusion of Florida's law of abandonment of property interests with the regulatory process established by the STB under the Trails Act. The filing of a request for exemption is an administrative prerequisite to obtaining a NITU that authorizes the railroad and a qualified trail sponsor to negotiate a railbanking agreement that will preserve the right-of-way for future rail use. Chevy Chase Land Co., 733 A.2d at 1080. Here, SGLR and CSX chose not to exercise their abandonment authority. Instead, the railroads agreed to the issuance of a NITU and subsequently entered into railbanking and interim trail use agreements with qualified trail sponsors. See Def.'s Ex. 4 at 0044-0045. As a result, the railroads do not have a "clear affirmative intent" to abandon, but rather have acted to preserve the right-of-way. In addition, under the terms of the NITU, the railroads have a right to re-enter the subject rights-of-way for the purposes of restoring rail service. Def.'s Ex. 4 at 0046. The NITU expressly provides that "[i]nterim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations of the right-of-way." See Def.'s Ex. 4 at 0029. See also 49 C.F.R. § 1152.29(a)(3). Retaining the possibility to reacquire the corridor cannot be squared with a "clear affirmative intent" to abandon the subject corridor.

The conveyance of title for the rail corridor from CSX to TPL and the Purchase and Sale Agreement between TPL and Sarasota County support the United States' position. Those conveyance documents alert all parties to the fact that the railroad retains the right of re-entry over the corridor. CSX conveyed title to the subject corridor to TPL by quitclaim deed. Def.'s Ex. 3 at 0028. However, the deed explicitly states that the "[p]remises remain subject to the jurisdiction of the STB for purposes of reactivating rail service." Def.'s Ex. 3 at 0029. Additionally, the Purchase and Sale Agreement between TPL and Sarasota County enured that the corridor "remains subject to the jurisdiction of the STB for purposes of reactivating rail service." Def.'s Ex. 6 at 0070. Thus, the totality of the railroads' actions in the regulatory process actually demonstrate an intent to keep the subject corridor available for future railroad use, and to retain the right to re-enter the rights-of-way for the purpose of restoring rail service. Under Florida law such actions do not establish the railroads' "clear affirmative intent" to abandon the corridor.

**b. Plaintiffs Cannot Demonstrate Any Railroad Action Supporting a Finding of Abandonment**

Plaintiffs also fail to show that the railroads took any action in furtherance of an intent to abandon the subject corridor. Indeed, the railroads' actions have been consistent with their intent to preserve the corridor for future rail use. Plaintiffs make much of the fact that the railroad ceased active service on the corridor and removed the rails and ties. <u>See</u> Pls.' Mem. at 25-28. However, under Florida law, mere nonuse of land condemned for public purposes is not enough to constitute abandonment. <u>See, e.g.</u>, <u>FPC v. Lynn</u>, 594 So.2d 789 (Fla. App. 1992)(holding that non-use of power lines did not cause abandonment of easement); <u>Dade County</u>, 69 So.2d at 783 (holding that failure to develop granted land into a park for seventeen

years was not sufficient to find an abandonment).

Defendant does not dispute that the rails and ties have been removed from the subject corridor; such action, however, is not inconsistent with the railroad's efforts to preserve the corridor for potential active rail service in the future through the railbanking process. See 16 U.S.C. § 1247(d); 49 C.F.R. § 1152.29. Indeed, the NITU issued by the STB states that SGLR should "leave intact all of the right-of-way, including bridges, trestles, culverts, and tunnels (but not track, ties and signal equipment) . . . to enable any State or local government agency or any other interested person to negotiate the acquisition of the line for public purposes." Def.'s Ex. 4 at 0047-0048 (emphasis added). In other words, removing the tracks and ties is part of the railbanking process and is aimed at preserving the corridor for future use, not abandoning it.

Florida law is clear that removal of rails and ties from a right-of-way does not constitute abandonment. In Liebowitz, for example, the Florida Court of Appeals held that an easement granted to the city for "street and sidewalk purposes" was not abandoned even though the concrete sidewalk had been removed forty years prior to the lawsuit. 592 So.2d at 1214. In rejecting the plaintiffs' main contention that "by removing and never reconstructing the sidewalk [the City] ha[d] abandoned the easement" the court noted that although the sidewalk had no cement sidewalk, the public still used it for walking and, therefore, the city could not be said to intend abandonment. Id. The railroad's actions here are similar because, as the NITU fully contemplates, the removal of the rails and ties does not render operation of a railroad impossible because the underlying rights-of-way are kept intact, thus preserving the opportunity to reactivate rail service, which is within the contemplation of the original grant.

In sum, Plaintiffs fail to establish the railroads' "clear affirmative intent" to abandon the

corridor, and Plaintiffs fail to show any actions taken by the railroads in furtherance of such an intent. The railroads intended to preserve the rights-of-way for future rail service, and have taken affirmative steps to further that intent. As a result of the Trails Act, the railroad retains a right to re-enter the subject corridor for the purpose of restoring rail service in the future. Accordingly, the actions of the railroads in this case do not support a finding that, but for the application of the Trails Act, the subject rights-of-way would be deemed abandoned under Florida law.

**F. The United States is Entitled to Summary Judgment With Respect to Plaintiff Bird Bay's Claim**

It is well-established that if the railroad "obtained fee simple title to the land over which it was to operate . . . the [abutting landowners] today would have no right or interest in those parcels and could have no claim related to those parcels for a taking." Preseault, 100 F.3d at 1533. Plaintiff Bird Bay's property is adjacent to a portion of the subject corridor that Venice-Nokomis Holding Corporation ("Venice-Nokomis") conveyed to Seaboard in 1941. See Straup Decl. at ¶ 11 (0009). The Venice Deed unambiguously conveyed a fee simple absolute interest to Seaboard; accordingly, the Court should reject Plaintiff Bird Bay's claim.

The Venice Deed states that Venice-Nokomis "granted, bargained, sold and conveyed . . . real estate situated in Sarasota County, Florida, described as follows: to wit . . . a strip of land 100 feet wide [described with particularity]." Def.'s Ex. 9 at 0089. The Venice Deed neither conditions nor limits Seaboard's ability to use the granted property in any manner, and the deed does not contain any language of reversion. Id. at 0089-0090. Rather, the Venice Deed's habendum clause states that Seaboard would own the property "together with the rights, members and appurtenances thereunto belonging or appertaining, unto the [railroad], its

successors and assigns in fee simple, forever." Id. at 0090 (emphasis added). There is no indication that the parties intended to convey anything less than a full fee simple absolute interest. Plaintiffs fail to identify, much less discuss, the Venice Deed. Plaintiffs' erroneous belief that some other railroad instrument might be relevant to this claim means that the United States' argument is unopposed. Therefore, the Court should conclude that the unambiguous Venice Deed conveyed a fee simple absolute to Seaboard. Florida Power Corporation v. M.S. McNeely, 125 So.2d at 316 ("[A] railroad right of way in Florida is not a mere easement or user for railroad purposes but is a fee vested in the railroad.").

Since the railroad had a fee simple absolute in portion of the railroad corridor adjacent to Plaintiff Bird Bay's property, Plaintiff Bird Bay lacks a compensable property interest in the subject property. See Preseault, 100 F.3d at 1533 (holding that where the railroad "obtained fee simple title to the land over which it was to operate . . . the [abutting landowners] today would have no right or interest in those parcels and could have no claim related to those parcels for a taking."). Accordingly, the Court should grant summary judgment in favor of the United States on Plaintiff Bird Bay's claim.

## CONCLUSION

For the reasons just discussed, Defendant respectfully requests that the Court deny Plaintiffs' motions for partial summary judgment and grant Defendant's cross-motion for summary judgment.

Respectfully submitted this 6th Day of June, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

s/ Mark T. Romley
Mark T. Romley
William Shapiro
Trial Attorneys
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0458
Fax: (202) 305-0506

Counsel for the Defendant.

Of Counsel:
Evelyn Kitay
Surface Transportation Board
Washington, DC