# Exhibit 4

34355
EB

SERVICE DATE - LATE RELEASE APRIL 2, 2004

SURFACE TRANSPORTATION BOARD

DECISION AND NOTICE OF INTERIM TRAIL USE OR ABANDONMENT

STB Docket No. AB-400 (Sub-No. 3X)

SEMINOLE GULF RAILWAY, L.P.–ABANDONMENT EXEMPTION–
IN SARASOTA COUNTY, FL

Decided: April 1, 2004

By petition filed on December 15, 2003, Seminole Gulf Railway, L.P. (SGLR) seeks an exemption under 49 U.S.C. 10502 from the prior approval requirements of 49 U.S.C. 10903 to abandon a portion of its Venice Branch between milepost SW 892 outside the city limits of the City of Sarasota, FL, and milepost 904.4 near the City of Venice, FL, a distance of approximately 12.43 miles, in Sarasota County, FL (the line). The line includes a "wye" and stub at approximately milepost SW 904.2 and side tracks. Notice of the filing was served and published in the Federal Register on January 2, 2004 (69 FR 123). A request for issuance of a notice of interim trail use (NITU) and imposition of a public use condition was filed by Sarasota County, FL (the County).[1] The exemption will be granted, subject to environmental, public use, trail use, and standard employee protective conditions.

BACKGROUND

SGLR purchased the assets comprising the line from CSX Transportation, Inc. (CSXT) in 1987 and currently leases the underlying property from CSXT. SGLR acquired a common carrier obligation when it purchased the line.

According to SGLR, there has been no traffic on the line since March 14, 2002, and there have been no rail movements over the last three miles of the line for over 10 years. During 2002, SGLR delivered 20 cars of plywood and lumber to Kimal Lumber (Kimal) at a team track located on the line. These commodities were then transloaded to trucks. According to petitioner, Kimal now receives cars from SGLR at a team track location on a different line segment for transload to trucks. Three other customers previously received service on the line but none since May 2001. Sheckler Produce received one carload in 2001 and now receives service at another SGLR team track on a different line. Ferrelgas of Sarasota received its last car at the end of 2000. King Plastic Corporation received 21

[1] The County states that its comment should be treated as a petition for reconsideration or protest. It also asserts that it takes no position on the merits of the abandonment. Accordingly, the County's comment will simply be considered a request for a NITU and public use condition.

D 0044

1292

cars through May 2001 at the team track on the line. However, it opened a new plant at a different location and now receives deliveries from SGLR at Fort Ogden on a different line segment. Moreover, SGLR asserts that the four shippers have been served with copies of this petition, and none has responded. Petitioner contends that there is little likelihood of traffic returning to the line and that there is interest in developing the right-of-way for trail use. Finally, SGLR states that it and CSXT have granted The Trust for Public Lands an option to acquire the line for conversion to a trail.

## DISCUSSION AND CONCLUSIONS

Under 49 U.S.C. 10903, a rail line may not be abandoned without the Board's prior approval. Under 49 U.S.C. 10502, however, the Board must exempt a transaction or service from regulation when it finds that: (1) continued regulation is not necessary to carry out the rail transportation policy of 49 U.S.C. 10101; and (2) either (a) the transaction or service is of limited scope, or (b) regulation is not necessary to protect shippers from the abuse of market power.

Detailed scrutiny under 49 U.S.C. 10903 is not necessary to carry out the rail transportation policy. By minimizing the administrative expense of the application process, an exemption will reduce regulatory barriers to exit [49 U.S.C. 10101(7)]. An exemption will also foster sound economic conditions and encourage efficient management by relieving SGLR of the expense of maintaining a line no longer generating traffic and revenue and by allowing SGLR to apply its assets more productively elsewhere on its system [49 U.S.C. 10101(5) and (9)]. Other aspects of the rail transportation policy will not be adversely affected.

Regulation of the proposed transaction is not necessary to protect shippers from the abuse of market power because all shippers apparently continue to receive similar rail service on other SGLR lines and there are no prospects of new shippers requiring service on the line. Nevertheless, to ensure that the shippers are informed of the Board's action, SGLR will be required to serve a copy of this decision on the shippers within 5 days of the service date and certify to the Board that it has done so. In light of the market power finding, the Board need not determine whether the proposed abandonment is of limited scope.

Under 49 U.S.C. 10502(g), the Board may not use its exemption authority to relieve a carrier of its statutory obligation to protect the interests of its employees. Accordingly, as a condition to granting this exemption, the Board will impose the employee protective conditions set forth in Oregon Short Line R. Co.–Abandonment–Goshen, 360 I.C.C. 91 (1979).

SGLR has submitted an environmental report with its petition and has notified the appropriate Federal, state, and local agencies of the opportunity to submit information concerning the environmental

impacts of the proposed abandonment. See 49 CFR 1105.11. The Board's Section of Environmental Analysis (SEA) has examined the environmental report, verified the data it contains, and analyzed the probable effects of the proposed action on the quality of the human environment. SEA served an environmental assessment (EA) on February 13, 2004, and requested comments by March 15, 2004.

In the EA, SEA notes that the National Geodetic Survey (NGS) has identified 17 geodetic station markers that may be affected by the proposed abandonment. Accordingly, SEA recommends that SGLR provide NGS with at least 90 days' notice prior to initiation of any salvage operations so that plans can be made for the relocation of the geodetic station markers.

No comments to the EA were filed. Therefore, the condition recommended by SEA in the EA will be imposed. The proposed abandonment, as conditioned, will not significantly affect either the quality of the human environment or the conservation of energy resources.

On January 20, 2004, the County filed a request for interim trail use/rail banking under the National Trails System Act, 16 U.S.C. 1247(d) (Trails Act). The County submitted a statement of willingness to assume financial responsibility for the management of, for any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for payment of any and all taxes that may be levied or assessed against, the right-of-way. The County acknowledged that the use of the right-of-way for trail purposes is subject to the user's continuing to meet its responsibilities and is subject to possible future reconstruction and reactivation for rail service, as required at 49 CFR 1152.29. SGLR has indicated that it is willing to negotiate for interim trail use. Because the County's request complies with the requirements of 49 CFR 1152.29, and SGLR is willing to enter into negotiations, a NITU will be issued as requested. The parties may negotiate an agreement during the 180-day period prescribed below. If an agreement is executed, no further Board action is necessary. If no agreement is reached within 180 days, SGLR may fully abandon the line, subject to the conditions imposed below. See 49 CFR 1152.29(d)(1). Use of the right-of-way for trail purposes is subject to restoration for railroad purposes.

SEA has indicated in its EA that the right-of-way may be suitable for other public use following abandonment. As noted above, the County has also requested that a 180-day public use condition be imposed, precluding SGLR from: (1) disposing of the corridor, other than the tracks, ties, and signal equipment, except for public use on reasonable terms; and (2) removing or destroying potential trail-related structures such as bridges, trestles, culverts, and tunnels. The County submits that this corridor would make an excellent recreational trail and conversion of the property to trail use is in accordance with local plans, and the structures are valuable for recreational trails. The County states that the 180-

day period is needed to assemble or review title and environmental information and to begin negotiations with SGLR.

Persons who file under the Trails Act may also file for public use under 49 U.S.C. 10905. See Rail Abandonments–Use of Rights-of Way as Trails, 2 I.C.C.2d 591, 609 (1986) (Trails). When the need for both conditions is established, it is the Board's policy to impose them concurrently, subject to the execution of a trail use agreement. The County has met the public use criteria prescribed at 49 CFR 1152.28(a)(2) by specifying: (1) the condition sought; (2) the public importance of the condition; (3) the period of time for which the condition would be effective; and (4) justification for the period of time requested. Accordingly, a 180-day public use condition will be imposed, commencing from the effective date of this decision and notice, to enable any State or local government or other interested person to negotiate the acquisition of the line for public use. If a trail use agreement is reached on a portion of the right-of-way, SGLR must keep the remaining right-of-way intact for the remainder of the 180-day period to permit public use negotiations. Also, a public use condition is not imposed for the benefit of any one potential purchaser. Rather, it provides an opportunity for any interested person to acquire the right-of-way that has been found suitable for public purposes, including trail use. Therefore, with respect to the public use condition, SGLR is not required to deal exclusively with the County, but may engage in negotiations with other interested persons.

The parties should note that operation of the trail use and public use procedures could be delayed, or even foreclosed, by the financial assistance process under 49 U.S.C. 10904. As stated in Trails, 2 I.C.C.2d at 608, offers of financial assistance (OFA) to acquire rail lines for continued rail service or to subsidize rail operations take priority over interim trail use/rail banking and public use. Accordingly, if an OFA is timely filed under 49 CFR 1152.27(c)(1), the effective date of this decision and notice will be postponed beyond the effective date indicated here. See 49 CFR 1152.27(e)(2). In addition, the effective date may be further postponed at later stages in the OFA process. See 49 CFR 1152.27(f). Finally, if the line is sold under the OFA procedures, the petition for abandonment exemption will be dismissed and trail use and public use precluded. Alternatively, if a sale under the OFA procedures does not occur, the trail use and public use processes may proceed.

It is ordered:

1. Under 49 U.S.C. 10502, the Board exempts from the prior approval requirements of 49 U.S.C. 10903 the abandonment of the above-described line, subject to the employee protective conditions in Oregon Short Line R. Co.–Abandonment–Goshen, 360 I.C.C. 91 (1979), and the conditions that SGLR shall: (1) provide NGS with at least 90 days' notice prior to initiation of any salvage operations so that plans can be made for the relocation of the geodetic station markers; (2) leave intact all of the right-of-way, including bridges, trestles, culverts, and tunnels (but not track,



D 0047

ties, and signal equipment) for a period of 180 days from the effective date of this decision and notice, to enable any State or local government agency or any other interested person to negotiate the acquisition of the line for public use; and (3) comply with the interim trail use/rail banking procedures set forth below.

2. SGLR is directed to serve a copy of this decision and notice on all shippers within 5 days after the service date of this decision and notice and certify to the Board that it has done so.

3. If an interim trail use/rail banking agreement is reached, it must require the trail user to assume, for the term of the agreement, full responsibility for the management of, any legal liability arising out of the transfer or use of (unless the user is immune from liability, in which case it need only indemnify the railroad against any potential liability), and for the payment of any and all taxes that may be levied or assessed against, the right-of-way.

4. Interim trail use/rail banking is subject to the future restoration of rail service and to the user's continuing to meet the financial obligations for the right-of-way.

5. If interim trail use is implemented and subsequently the user intends to terminate trail use, it must send the Board a copy of this decision and notice and request that it be vacated on a specified date.

6. If an agreement for interim trail use/rail banking is reached by the 180th day after service of this decision and notice, interim trail use may be implemented. If no agreement is reached by that time, SGLR may fully abandon the line, provided the conditions imposed above are met.

7. An OFA under 49 CFR 1152.27(c)(1) to allow rail service to continue must be received by the railroad and the Board by April 12, 2004, subject to time extensions authorized under 49 CFR 1152.27(c)(1)(i)(C). The offeror must comply with 49 U.S.C. 10904 and 49 CFR 1152.27(c)(1). Each OFA must be accompanied by the filing fee, which currently is set at $1,100. See 49 CFR 1002.2(f)(25).

8. OFAs and related correspondence to the Board must refer to this proceeding. The following notation must be typed in bold face on the lower left-hand corner of the envelope: "**Office of Proceedings, AB-OFA.**"

9. Provided no OFA has been received, this exemption will be effective on May 2, 2004. Petitions to stay must be filed by April 19, 2004, and petitions to reopen must be filed by April 27, 2004.

10. Pursuant to the provisions of 49 CFR 1152.29(e)(2), SGLR shall file a notice of consummation with the Board to signify that it has exercised the authority granted and fully abandoned the line. If consummation has not been effected by SGLR's filing of a notice of consummation by April 2, 2005, and there are no legal or regulatory barriers to consummation, the authority to abandon will automatically expire. If a legal or regulatory barrier to consummation exists at the end of the 1-year period, the notice of consummation must be filed not later than 60 days after satisfaction, expiration or removal of the legal or regulatory barrier.

By the Board, Chairman Nober.

Vernon A. Williams
Secretary