**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et al., | ) | |
| | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-273 L |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

| | | |
|---|---|---|
| BIRD BAY EXECUTIVE GOLF COURSE, INC., et al., | ) | |
| | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 07-426 L |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

# PLAINTIFFS' RESPONSE TO DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT

MARK F. (THOR) HEARNE, II
LINDSAY S.C. BRINTON
MEGHAN S. LARGENT
Lathrop & Gage, LC
10 South Broadway, Suite 1300
St. Louis, MO 63102-1708
314.613.2500 (Phone)
314.613-2550 (fax)
Thornet@ix.netcom.com
ATTORNEYS FOR PLAINTIFFS

PROFESSOR DALE A. WHITMAN
University of Missouri
School of Law
203 Hulston Hall
Columbia, Missouri 65211
573-884-0946
Whitmand@missouri.edu
OF COUNSEL FOR PLAINTIFFS

# TABLE OF CONTENTS

I. Introduction .......... 1

II. We agree on fourteen essential points. .......... 2

III. We disagree on four points which we present to this Court for resolution .......... 7

1. While the government and the Plaintiffs agree that the Plaintiffs own the land abutting the former Seaboard Air Line Railway, the parties disagree whether the Plaintiffs have established their ownership of the land underlying the right of way. .......... 7

2. While the government and the Plaintiffs agree that the right of way abutting all the Plaintiffs' (except for Bird Bay) land was established by the instrument from Adrian Honore in 1910, the parties disagree whether Adrian Honore conveyed a "fee simple determinable" estate in the land subject to a possibility of reverter when it is no longer used for a railroad or an easement to use the land for a railroad right of way. The parties further disagree whether the easement was terminated (or the possibility of reverter triggered) when the Seminole Gulf Railway abandoned the right of way. .......... 8

3. The parties disagree whether Seaboard acquired a fee estate or an easement in the land upon which the right of way abutting the Bird Bay property is located. .......... 9

4. The Parties disagree whether the Seaboard's right to use the land for operation of a railroad (whether an easement or a fee simple determinable interest) allowed a non-railroad to use the land as a public-access recreational trail and indefinitely "railbank" this land under the federal Trails Act. .......... 10

IV. PART ONE - POINT ONE: The Plaintiffs That Own The Land *Abutting* The Former Seaboard Air Line Railway Right Of Way Also Own The Land *Underlying* The Right Of Way .......... 12

1. The government agrees that all but one of the Plaintiffs hold title to the land abutting the right of way, but argues that the Plaintiffs have not established title to the land under the right of way because the deed by which they acquired title references the edge of the right of way as the property boundary. .......... 12

2. It is a well-established principle of real estate law that a conveyance describing land, whether described by metes and bounds or by Plat and Book, as abutting a railroad is presumed to carry fee title to the center of the adjoining railroad. .......... 13

3. Florida has expressly adopted the presumption that a deed describing land with a railroad right of way as a boundary carries title to the centerline of the adjoining railroad right of way. .......... 14

4. The government itself has acknowledged the presumption that title extends to the centerline in other Trails Act taking cases. .......... 16

5. All the Plaintiffs have satisfied the presumption that they hold title to the land abutting AND underlying the right of way and the government has not rebutted this presumption. ........ 16

V. PART ONE – POINT TWO: The Seaboard Air Line Railway Obtained Only An Easement To Use The Land Upon Which The Railroad Was Located And Did Not Obtain A Fee Estate In The Land Itself. ........ 18

1. As a general matter of Florida law, a conveyance to a railroad for a "right of way" grants the railroad only an easement to use the land and does not convey a fee estate in the land itself. ........ 18

2. Any voluntary conveyance to Seaboard must be read in the context of Seaboard's ability to acquire the right of way by eminent domain. ........ 22

3. The interest a railroad acquires in a "strip of land" used for tracks and ties is not held to be a fee estate and this situation is distinguished from cases involving parcels of land acquired by a railroad for construction of permanent structures such as a depot or station. ........ 24

4. The terms and circumstances of the conveyance instruments demonstrate the grantor's clear intent to convey only an easement. ........ 25

a) Adrian C. Honore's Conveyance: ........ 28

5. The government's reliance on "Magic Words" to interpret Adrian Honore's grant of an easement as a conveyance of a fee simple determinable estate is an approach expressly rejected by Florida courts. ........ 29

6. The government's resort to *Richardson v. Holman* as a basis upon which to recast the Honore Deed as a conveyance of "Fee Simple Determinable" instead of the granting of an Easement is woefully misplaced. ........ 31

a) The Bird Bay Instruments ........ 33

VI. PART TWO: Neither Public-Access Recreational Trail Use Nor "Railbanking" Are a "Railroad Purpose" Under Florida Law Nor Are They Within The Uses Permitted By The Railroad's Interest Obtained From Adrian Honore. ........ 36

1. The government argues that "railbanking" and interim trail use are within the scope of the railroad's interest in the land. ........ 36

2. The uses of the right of way authorized by the Trails Act – railbanking and interim trail use – are NOT permissible uses of the right of way under Florida law. ........ 38

3. The government's "'railbanking' is a railroad purpose" argument has been repeatedly rejected by every court to consider the argument. ........ 40

1. As a matter of plain English, "railbanking" and recreational trail use are not a "railroad purpose." ........ 44

a) The definition of "Railway" and "Railroad" ........ 45

b) The definition of a "recreational trail" ........ 45

c) The definition of "railbanking" ..... 46

d) Conclusion: "railbanking" and recreational trail use have nothing to do with the operation of a railroad and are not a "railroad purpose" as either a matter of Florida law or the terms of Adrian Honore's easement. ..... 47

2. The 1983 Amendments to the Trails Act provided for railbanking and recreational trail use of abandoned railroad rights of way precisely because such uses were NOT a "railroad purpose" under existing state law. ..... 48

B. It is Not Necessary to Establish that the Railroad has Abandoned the Right of Way. But, to the Extent that Abandonment is Considered, it is Absolute and Unequivocal that the Former Seaboard Air Line Railway Right of Way has been Abandoned for Any Railroad Use as a Matter of Fact and as a Matter of Law. ..... 53

1. It is not necessary to establish that a railroad right of way was abandoned in order for landowners to bring a claim for the Trails Act taking their reversionary interest in their land. ..... 53

2. To the extent that a showing of abandonment is necessary, the Seaboard Air Line Railway has been absolutely and unequivocally abandoned as a matter of fact. ..... 54

3. To the extent that a showing of abandonment is necessary, the Seaboard Air Line Railway has been absolutely and unequivocally abandoned as a matter of law. ..... 55

VII. CONCLUSION ..... 60

APPENDIX A: Other state court decisions holding similar instruments as conveying only an easement and not a fee estate in the land ..... i

## TABLE OF AUTHORITIES

### Cases

*AKERS V. CANAS*, 601 So.2d 305 (Fla. App. 1992) ........ 27

*AMERICAN REAL ESTATE HOLDINGS LIMITED PARTNERSHIP V. TWIN CITIES INVESTORS, INC.*, 740 So.2d 562 (Fla. App, 1999) ........ 27

*ATICHSON, TOPEKA & SANTA FE RY. CO. V. HUMBERG*, 9 Kan. App. 2d 205, 675 P.2d 375 (Kan., 1984) ........ 24

*ATLANTIC COAST LINE R. CO. V. DUVAL COUNTY*, 114 Fla. 254, 154 So. 331 (Fla. 1934) ........ 40, 59

*BANKS V. OGDEN*, 69 U.S. 57 (1864) ........ 14

*BECKER V. SURFACE TRANSPORTATION BOARD*, 132 F. 3d 0 (D.C. Cir, 1997) ........ 49

*BOYLES V. MISSOURI FRIENDS OF THE WABASH TRACE NATURE TRAIL, INC.*, 981 S. W. 2d 644 (Mo App, W.D., 1998) ........ 45

*BROOKS V. WEST MIAMI*, 41 So.2d 556 (Fla., 1949) ........ 15

*BROWN V. PENN CENTRAL CORP.*, 510 N.E.2d 641 (Ind.1987) ........ 19, 27, iii

*BROWN V. WEARE*, 348 Mo. 135 S.W. 2d 649 (1941) ........ i

*BROWN V. YOUNG*, 69 Iowa, 625, 29 N.W. Rep., 941 ........ 21

*BUHL ET. AL V. U.S. SPRINT COMMUNICATIONS CO.*, 840 S.W. 2d 904 (1992, Tenn) ........ ii

*CANNCO CONTRACTORS, INC V. LIVINGSTON*, 669 S.W.2d 457 (Ark. 1984) ........ 57, 58

*CHATHAM V. BRAINERD*, 11 Conn. 60-85 ........ 14

*CHEVY CHASE LAND CO. V. UNITED STATES*, 733 A.2d 1055 (Md., 1999) ........ 41

*Chevy Chase Land v. United States,* 230 F.3d 1375 (Fed. Cir., 2000) ..................................... 41

*Citizens Against Rails-to-Trails v. Surface Transportation Board*,
267 F. 3d 1144 (D.C. Cir, 2001) ........................................................................... 49, 51

*Cohen v. Pan American Aluminum Corp.*, 363 So. 2d 59 (Fla. App., 1978)............................. 27

*Coon v. Sonoma Magnesite Co.*, 183 Cal. 597 189 P. 271 (1920) ............................................. ii

*Cooper v. Selig*, 48 Cal. App. 228, 191 P. 983 ................................................................... ii

*Davis v. MCI*, 606 So. 2d 734 (1992) ................................................................... 19, 22

*Dean v. MOD Properties, Ltd*, 528 So. 2d 432 (Fl. App, 1988) ............................. 20, 22, 26, 30

*Easton v. Easton*, 548 So.2d 691 (Fl. 1989)................................................................... 25

*Emerald Equities, Inc. v. Hutton*, 357 So.2d 1071 (Fla. App. 1978)...................................... 15

*Florida Southern Ry. Co. v. Brown*, 23 Fla. 104, 1 So. 512 (Fla., 1887)............................. 8, 14

*Fritsch v. I.C.C.*, 59 F. 3d 248, (D.C. Cir., 1995)........................................................... 49

*Glosemeyer v. United States*, 45 Fed. Cl. 771 (2000) ................................................ 40, 43, 45

*Golden v. Hayes*, 277 So.2d 816 (Fla. App. 1973)............................................................ 34

*Grantwood Village v. Mo Pac*, 95 F. 3d 654 (8th Cir, 1996)....................................... 43, 49, 51

*Guaranty Trust Co. of New York v. Seaboard Air Line Railway*,
53 F. Supp 672 (E.D. Va. 1943) ........................................................................... 34

*Harvest Queen Mill & Elevator v. Sanders*, 189 Kan. 536, 370 P.2d 419 (Kan. 1962)....... 24, i

*Harvey v. Missouri Pac. R. Co.*, 111 Kan. 371, 207 P. 761 (Kan., 1922)................................. 24

*HASH V. UNITED STATES*, 403 F. 3d 1308 (Fed. Cir., 2005) ........ 49

*HASTINGS V. WHITNEY*, 132 U.S. 357 (1889) ........ 42

*HAYNES V. CITY OF LAKELAND*, 451 So.2d 505 (Fla. App. 1984) ........ 27, 30

*HENRY V. COLUMBUS DEPOT CO.*, 135 Ohio St. 311, 20 N.E.2d 921 (1939) ........ 19

*HIGHLAND REALTY CO. V. CITY OF SAN RAFAEL*, 46 CAL.2D 669, 298 P2D 15 (1956) ........ 19, 29, ii

*HILL V. WESTERN VERMONT RAILROAD*, 32 Vt. 68 (1859) ........ 23

*HILLSBOROUGH COUNTY V. KORTUM*, 585 So.2d 1029 (Fla. App. 1991) ........ 27

*ILLIG V. UNITED STATES*, 58 Fed. Cl. 619 (2003) ........ 16

*JACKSONVILLE, T. & K. W. RY. CO. V. LOCKWOOD*, 33 Fla. 573, 15 So. 327 ........ 15

*JOHNSON V. OCEAN SHORE R.R.*, 16 Cal.App.3d 429, 94 Cal.Rptr. 68 (1971) ........ 19

*JONES V. VAN BOCHOVE*, 103 Mich. 98, 61 N.W. 342 (1894) ........ iv

*JOST V. SURFACE TRANSP BD.*, 194 F. 3d 79 (D.C. Cir, 1999) ........ 49

*JOY V. ST. LOUIS*, 138 U.S. 1 (1891) ........ 20

*KOTICK V. DURRANT*, 143 Fla. 386, 196 So 802 (1940) ........ 27

*L&G REALTY & CONSTRUCTION CO. V. INDIANAPOLIS*, 127 Ind. App. 35, 139 N.E.2d 580 (1957) ........ iii

*LAHR V. RAILROAD CO.*, 104 N. Y. 268, 10 N. E. 528 ........ 15

*LAMBERT V. BERKLEY SOUTH CONDOMINIUM ASS'N*, 680 So.2d 588 (Fla App. 1996) ........ 27

*LAWSON V. STATE*, 107 Wash.2d 444, 730 P.2d 1308 (Wash., 1986) ........ 39, 40, 42, 56

*Leo Sheep Co. v. United States*, 440 U.S. 668 (1979) .......... 42

*Loveland v. CSX Transp., Inc.*, 622 So.2d 1120 (Fla. App., 1993) .......... passim

*Michigan DNR v. Carmody-Lahti Real Estate, Inc.*,

*472 Mich. 359, 699 N.W. 2d 272 (Mich., 2005)* .......... 28, 40, iii

*Miller v. St. Louis, Southwestern Railway Company*,

239 Kan. 198, 718 P.2d 610 (Kan., 1986) .......... 24

*Moakley v. Los Angeles Pacific Ry. Co.*, 139 Cal App 421, 34 P2d 218 (1934) .......... ii

*National Association of Reversionary Property Owners v. Surface Transportation*

*Board*, 158 F. 3d 135 (D.C. Cir, 1998) .......... 49

*National Wildlife Foundation v. ICC*, 850 F.2d 694 (1988) .......... passim

*Neider v. Shaw 138 Idaho 503,* 65 P.3d 525 (Idaho, 2003) .......... 27, iii

*Ocean Shore Railroad v. Doelger*, 127 Cal. App. 2d 392, 274 P.2d 23 (1954) .......... ii

*Paine, et al. v. Consumers' Forwarding & Storage Co, et al.*, 71 F. 626 (6th Cir. 1895). 14, 19

*Peck v. Denniston*, 121 Mass. 17 .......... 14

*Penn. Cent. Corp. v. U.S.R.R. Vest Corp.*, 955 F. 2d 1158. (1992, 7th Cir, Ind.) .......... 19

*People, by and Through Department of Public Works v. Thompson*,

43 Cal 2d 13, 271 P 2d 507 (1954) .......... ii

*Pollnow v. State*, 88 Wis. 2d 350, 276 N.W.2d 738 (Wisc., 1979) .......... 40

*Preseault v. United States*, 100 F.3d 1525 (Fed. Cir.1996) .......... passim

*Preseault v. United States*, 494 U.S. 1 (1990) .......... passim

*PROTZMAN V. INDIANAPOLIS & CINCINNATI R.R. CO.*, 9 Ind. 467, 68 Am. Dec. 650 ...................... 15

*RAWLS V. TALLAHASSEE HOTEL CO.*, 43 Fla. 288, 31 South 237 ................................................... 15

*REIGER V. PENN CENTRAL CORP.*,

No. 85-CA-11, slip op. (Ct. App. Greene County, Ohio, May 21, 1985)................................ 41

*RICHARD S. BRUNT TRUST V. PLANTZ,* Ind. App. 458 N.E.2d 251 (1983) ...................................... iii

*RICHARDSON V HOLMAN*, 160 Fla. 65, 33 So.2d 641 (Fla., 1948) .................................... 30, 31, 32

*RLTD V. SURFACE TRANSPORTATION BOARD*, 166 F. 3d 808 (6th Cir, 1999).................................. 49

*ROBB V. ATLANTIC COAST LINE RAIL CO.*, 117 So.2d 534 (Fla. App. 1960)................................... 24

*ROSS, INC. V. LEGLER*, 245 Ind. 655, 199 N.E.2d 346 (1964) ...................................................... 19

*SALTZMAN V. AHERN*, 306 So.2d 537 (Fla. App., 1975) ............................................................... 27

*SAN RAFAEL RANCH CO. V. RALPH ROGERS CO.*, 154 Cal. 76, 96 P. 1092 (1908)............................ ii

*SCHUERMANN ENTERPRISES, INC. V. ST. LOUIS COUNTY*, 436 S.W. 2d 666 (Mo. 1969) ................... ii

*SEABOARD AIR LINES RAILWAY CO. V. DORSEY*, 111 Fla 22, 149 So. 759 (Fla., 1933) .................... 30

*SEABOARD V. SOUTHERN INVESTMENT*, 53 Fla. 832, 44 So. 351 (Fla. 1907) .............................. 8, 14

*SEARS, ROEBUCK & CO. V. FRANCHISE FINANCE CORP.*, 711 So.2d 1189 (Fla. App. 1998)............ 25

*SERVANDO BUILDING CO. V. ZIMMERMAN*, 91 So.2d 289 (Fla., en banc., 1956) ........................ 8, 15

*SHADOW WEST APARTMENTS, INC. V. STATE DEP'T OF TRANSP.*, 498 So.2d 589 (Fla. App, 1986) ................................................................................................................................ 27

*SHERMAN V. PETROLEUM EXPLORATION*, 280 Ky. 105, 132 S.W.2d 768 (1939) ................ 19, 27, iii

*SILVER SPRINGS, O & G.R. CO. V. VAN NESS*, 45 Fla. 559, 34 So. 884 (Fla. 1903) ........................ 21



STLDOCS 220451v1

*SMITH V. HORN*, 70 Fla. 484, 70 So. 435 (Fla., 1915)........................................................ 8

*SMITH V. SEABOARD AIR LINE RAILROAD COMPANY*, 215 F.2d 365 (1954) ..................................... 15

*TAMALPAIS LAND & WATER CO. V. NORTHWESTERN PAC. R. CO.*,

73 Cal. App 2d 917, 167 P2d 825 (1946) ....................................................................... iii

*TOEWS V. UNITED STATES*, 376 F.3d 1371 (Fed. Cir. 2004).................................................. passim

*TOEWS V. UNITED STATES*, 53 Fed. Cl. 58 (2002) .................................................................. 10

*U.S. V. ARREDONDO*, 31 U.S. 691 (1832)........................................................................... 27

*U.S.B. Acquisition Co. v. Stamm*, 660 So. 2d1075 (Fla. App., 1995).......................................... 27

*UNITED STATES V. 16.33 ACRES OF LAND*, 342 So.2d 476 (Fla., 1977) ...................................... 8, 15

*VAN NESS V. CITY OF WASHINGTON*, 29 U.S. 232 (1830) ............................................................. 27

*VAN NESS V. ROYAL PHOSPHATE CO.*, 60 Fla. 284, 53 So. 381 (Fla. 1910).................. 20, 21, 24, 29

*WALTERS V. MCCALL*, 450 So.2d 1139 (1984) ......................................................... 26, 27

*WASHINGTON WILDLIFE PRES., INC. V. MINNESOTA*, 329 N.W. 2d 543 (Minn., 1983) .................... 41

*WESTMAN V. KIELL*, 183 Mich. App. 489, 455 N.W.2d 45 (1990)................................................ iv

## Other Authorities

"Deed to Railroad Company As Conveying Fee or Easement", 6 A.L.R. 3d 973 ....................... iv

11 U.S.C.§ 101............................................................................................................. 45

16. U.S.C. §1247........................................................................................................ 46

20 Fla. Jur 2d *Easements* §§ 6, 13, 14, 18 (1980)............................................................ 26

49 U.S.C. §10906 (1982) .......... 50

Carroll, Lewis, "*THROUGH THE LOOKING GLASS*" .......... 47

D. Robert White, Esq. *THE OFFICIAL LAWYER'S HANDBOOK*. Simon & Schuster, Inc. (1983), p. 185-86 .......... 48

Florida Statutes Annotated, §260.012 .......... 46

Florida Statutes Annotated, §316.003 .......... 45

H.R. Rep. No. 28, 98th Cong., 1st Sess. 8-9 (1983) .......... 51

Jon W. Bruce and James W. Ely, Jr., *THE LAW OF EASEMENTS AND LICENSES IN LAND* §1.06[1] (rev. ed. 1995) .......... 20

Steve Goodman *THE CITY OF NEW ORLEANS* 1970 .......... 51

THE NEW SHORTER OXFORD ENGLISH DICTIONARY (1993) .......... 45

*Thompson on Real Property*, Perm Ed., Vol. 2, pp. 11-12, s 461 and p. 14, s 462 and 132 A.L.R. 142-187 .......... iii

*U.S. CODE CONG. & ADMIN. NEWS* 1983 .......... 51

U.S. House of Representatives, Judiciary Committee, Subcommittee on Commercial and Administrative Law, "Litigation and Its Effect on the Rails-to-Trails Program," June 20, 2002 .......... 52

WILLIAM B. STOEBUCK AND DALE A. WHITMAN, THE LAW OF PROPERTY (THIRD EDITION) (West Group, 2000) .......... 25

## I. Introduction

The present matter involves two separate cases in which Sarasota County, Florida landowners claim that the federal government, through operation of the Trails Act,[1] took their "reversionary"[2] interest in land and burdened their land with two new easements, one for a public-access recreational trail and a second perpetual easement for possible future railroad use in the indefinite future. While the federal government has the ability to take private property in this manner, the Fifth Amendment requires that the landowners from whom the property is taken receive "just compensation."

The *ROGERS* case involves claims brought by thirteen landowners. The *BIRD BAY* case involves claims by eight landowners. The Plaintiffs in both cases have filed a claim for "just compensation" under the Tucker Act,[3] and subsequently, a motion for partial summary judgment under RCFC 56. The government filed a cross-motion for summary judgment and both parties have filed proposed findings of uncontroverted fact.[4] This is the Plaintiffs' memorandum responding to the government's cross-motion for summary judgment.

As we show below, on the agreed facts, the Fifth Amendment obligates the federal government to pay "just compensation" for taking each of the named *ROGERS* and *BIRD BAY*

---

[1] Pub.L. 98-11, 97 Stat. 48, to the National Trails System Act, Pub.L. 90-543, 82 Stat. 919 (certified, as amended, at 16 U.S.C. §1241 *et seq.* (Supp. II 1996).

[2] The term "reversionary" is used in the generic sense as used by the Federal Circuit in *TOEWS V. UNITED STATES*, 376 F.3d 1371 (Fed. Cir. 2004) and is not meant to imply that the railroad held a fee simple determinable (or conditional) interest in the land. It simply refers to Plaintiffs' right to use and possess their land free of any easement.

[3] 28 U.S.C. §1491(2).

[4] In *ROGERS*, the Plaintiffs' proposed Findings of Uncontroverted Fact ("PFUF") are Docket No. 24. In *BIRD BAY*, the Plaintiffs' PFUF are Docket No. 20. The government's PFUF are Docket No. 57 in Rogers. The Plaintiffs have filed Supplemental Proposed Findings of Uncontroverted Fact in response to government's cross-motion for summary judgment, pursuant to RCFC 56(h).

landowners' property. Accordingly, the Plaintiffs' motion for partial summary judgment should be granted and the government's cross-motion should be denied.

## II. We agree on fourteen essential points.

We commence from a point of common accord. The following facts are drawn from the government's pleadings.

(1) The railroad right of way is a 12.43-mile-long railroad line between Sarasota and Venice, Florida originally established by the Seaboard Air Line Railway in 1910 by a series of private conveyances.[5]

(2) That portion of the railroad right of way abutting all but one[6] of the twenty-one named Plaintiffs' land was established by a single instrument from Adrian C. Honore to the Seaboard Air Line Railway in 1910. This instrument provided that

> ADRIAN C. HONORE ** does hereby remise, release and forever quit claim unto the SEABOARD AIR LINE RAILWAY CORPORATION *** a right of way for rail road purposes over and across the following described land *** [the property is described as "strip[s] of land one hundred (100) feet wide, being fifty (50) feet on each side of the center line of the Seaboard Air Line RAilway [sic] as located across the lands owned by the grantor herein"] *** To Have and to hold the said premises unto the said Seaboard Air Line Railway, its successors and assign and to its or their own proper use, benefit and behalf forever for railroad purposes. *** This conveyance is made upon the express condition, however that if the Seaboard Air Line Railway shall not construct upon said land and commence the operation thereon within one year of the date hereof of a line of railroad, or, if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the above described pieces and parcels of land shall

---

[5] Govt's Cross-Motion, 8.

[6] The parties agree that the railroad right of way abutting the land owned by Plaintiff Bird Bay Executive Golf Course was not conveyed by the Honore conveyance in 1910. The government disputes that the right of way abuts Plaintiff Mission Estates Homeowners' Association because the Plaintiffs have not proved ownership of this land. However, in Plaintiffs' PFUF in response to the government's Cross-Motion for Summary Judgment, Plaintiffs have provided the Indenture and Plat by which Plaintiff Mission Estates acquired its property. (Indenture recorded by the Sarasota County Recorder of Deed's office as Instrument No. 2000035024 on March 21, 2000, is attached as Tab 2 and the Plat for Mission Estates is attached as Tab 3).

*ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns.[7]

(3) For one named Plaintiff, Bird Bay Executive Golf Course, LLC ("Bird Bay"), the portion of the right of way abutting its land was acknowledged in two instruments describing "identical parcels of property," one from B.L.E. Realty Corporation to the Seaboard in 1927 and a second from Venice-Nokomis Holding Corporation to the Seaboard in 1941.[8]

(4) The CSX and Seminole Gulf Railway L.P. ("Seminole Gulf") are the successor railroads to the Seaboard Air Line Railway.[9]

(5) On December 15, 2003, Seminole Gulf filed a notice of abandonment with the STB stating "[Seminole Gulf] has now decided to abandon a portion of its Venice Branch between milepost SW 892 outside the city limits of the City of Sarasota and milepost 904.4 near the City of Venice, Florida, a total of 12.43 miles."[10] Seminole Gulf noted, and the STB accepted the fact, that "there has been no traffic on the line since March 14, 2002, and there have been no rail movements over the last three miles of the line for over 10 years…There is little likelihood of traffic returning to the line and there is interest in developing the right-of-way for

---

[7] Govt's Cross-Motion, Exhibit 7. A copy of the Honore instrument is also attached to the Plaintiffs' Proposed Findings of Uncontroverted Fact in Response to the Government's Cross-Motion for Summary Judgment as Tab 1.

[8] "The property owned by Plaintiff Bird Bay is the only property at issue in the cross-motions that does not abut a section of the corridor granted in the Honore Deed. With respect to that property, the relevant railroad instrument was a written deed granted to Seaboard by B.L.E. Realty Corporation in 1927…and to Seaboard by Venice-Nokomis Holding Corporation in 1941." Govt's Cross-Motion, 11. A copy of the B.L.E. and the Venice-Nokomis instruments are attached respectively as Exhibits "A-1" and "A-2".

[9] *BIRD BAY*, Govt's Responses to Plaintiffs' PFUF, Heading C, 31. *ROGERS*, Govt's Responses to Plaintiffs' PFUF, Heading C, 33.

[10] Seminole Gulf Abandonment Petition filed with STB, December 15, 2003, Docket No. AB-400 (Sub-No. 3X) 2, attached in its entirety to Govt's Cross-Motion as Exhibit 5. (Hereafter, "Abandonment Petition"). "The [Seminole Gulf] acquired the full common carrier obligation when it purchased the rail line, and has the full authority to abandon the line." *Id* at 2

trail use."[11] "The last delivery to a shipper via the line was on March 14, 2002" when…"[Seminole Gulf] delivered 20 cars of plywood and lumber to a single customer (Kimal Lumbar)…where the freight was transloaded to a truck."[12] "All of the former shippers have moved elsewhere or use other arrangements for their traffic; all of the shippers which receive traffic from the one public delivery track on the Subject Line are still receiving cars in rail service from [Seminole Gulf] at locations on its other lines. Because of residential and recreational development of the land along the right-of-way there are few, if any, parcels available for industrial development for new rail shippers…It is clear that the lack of traffic, and the development of the area around the Subject Line that there is little likelihood of there ever being a future demand for local rail service over the Subject Line…there are no shippers remaining on the Subject Line, and no prospects of future shippers."[13]

(6) The Trust for Public Land, a "nonprofit California corporation," desired to convert the railroad right of way to public recreational trail use pursuant to the Trails Act.[14] "The Trust for Public Land work[ed] with Sarasota County to convert the line into a trail."[15] And, "on January 20, 2004, [Sarasota] filed a request for interim trail use/rail banking under the [Trails Act]."[16]

---

[11] STB Notice of Interim Trail Use or Abandonment, April 2, 2004, STB Docket No. AB-400 (Sub-No. 3x) 1 – 2, attached in its entirety to Govt's Cross-Motion as Exhibit 4 (Hereafter, "NITU"). See also, Abandonment Petition, 3.

[12] STB, Environmental Assessment, February 13, 2004, STB Docket No. AB-400 (Sub-No. 3X) 2. Exhibit W to Docket No. 234 in *ROGERS*. (Hereafter, "STB Environmental Assessment").

[13] Abandonment Petition, 4-6.

[14] NITU, 2.

[15] See, STB Environmental Assessment.

[16] NITU, 3.

(7) On April 2, 2004, the STB issued a Notice of Interim Trail Use ("NITU") pursuant to the Trails Act.[17] This NITU authorized the Seminole Gulf Railroad to abandon railroad service over this railroad line and authorized the conversion of this railroad right of way to interim recreational trail use.

(8) On April 2, 2004, each of the twenty-one named *ROGERS* and *BIRD BAY* Plaintiffs owned the fee simple title to an estate in the land abutting the right of way.[18]

(9) "The [April 2, 2004] NITU operates to preserve the STB's jurisdiction, thereby preempting the application of applicable law that would otherwise apply in the event that the railroad were fully authorized to abandon its rail line."[19]

(10) The CSX transferred by a Quit Claim Deed dated December 20, 2004 any interest it had in the railroad corridor to The Trust for Public Land. This transfer was made expressly pursuant to the Trails Act. This Quit Claim deed provided that CSX

---

[17] "The STB issued a NITU on April 2, 2004." *ROGERS*, Govt's Responses to Plaintiffs' PFUF, paragraph 62.

[18] Each of the named Plaintiffs has established their ownership of their respective property by a copy of the deed recorded with the Sarasota County Recorder of Deeds Office by which they obtained title before April 2, 2004 and copies of tax records from the Sarasota County Assessor's Office establishing that they are the record owner of the property (and paid taxes) for 2004 and subsequent years. The government has admitted that each of the named Plaintiff's own the land abutting the right of way. "On April 2, 2004, the [*BIRD BAY*] named Plaintiffs owned property that abuts the railroad corridor." *BIRD BAY*, Govt's Responses to Plaintiffs' PFUF, Heading B, p. 15. "On April 2, 2004, the named Plaintiffs [in *ROGERS*] owned property that abuts the railroad corridor." *ROGERS*, Govt's Responses to Plaintiffs' PFUF, Heading B, 14.

The government disputes only of Mission Estates Homeowners' Association ownership of the land abutting the right of way. "The government disputes the proposed finding of fact because Plaintiff has not submitted any evidence to prove this proposed finding." Govt's Response to Plaintiffs' PFUF ¶51. The Plaintiffs in their PFUF referenced Mission Estates' plat and indenture, but again, reference the plat and indenture by which Mission Estates acquired title to their land. A copy of the Mission Estates Indenture is attached as Tab 2 to the Plaintiffs' PFUF in Response to the Government's Cross-Motion and a copy of Mission Estates plat is attached as Tab 3.

[19] Govt's Cross-Motion, 7.

> does hereby RELEASE, REMISE and forever QUIT CLAIM unto [The Trust For Public Land], its successors and assigns, all right, title and interest of [CSX], if any, in and to [the right of way described on Exhibit A to the Quitclaim Deed] TO HAVE AND TO HOLD the premises, and all the estate, right, title, lien, interest and claim whatsoever of [CSX] therein, either in law or equity, and all improvements thereon and appurtenances thereto, unto the proper use, benefit and enjoyment of [The Trust for Public Land], [its] heirs and assigns or successors and assigns, forever.

The Quit Claim Deed noted that it was "subject to the jurisdiction of the STB" pursuant to a 'Decision and Notice of Interim Tail Use or Abandonment served April 2, 2004 in the Surface Transportation Board ("STB") Docket No. AB-400, Sub-No.3X'" [20]

(11) On September 28, 2004, The Trust for Public Land entered into an agreement with Sarasota County by which The Trust for Public Land agreed to transfer whatever interest it acquired in the right of way to Sarasota County.[21] The agreement provided, "Purchaser acknowledges that certain portions of the Property may be subject to reversionary interests of adjacent property owners and that such interests shall not be treated as title objections under this Agreement."[22]

(12) Neither the Trust for Public Land nor Sarasota County is a railroad nor is either authorized to operate a railroad.[23]

(13) The rails, tracks, and ties have been removed from the former Seaboard Air Line Railway right of way.[24]

---

[20] *Id.*, Exhibit 3.
[21] *Id.*, Exhibit 6.
[22] Govt's Cross-Motion, 5, Paragraph 6(d), Exhibit 6.
[23] *BIRD BAY*, Govt's Responses to Plaintiffs' PFUF, paragraphs 54-56. *ROGERS*, Govt's Responses to Plaintiffs' PFUF, paragraphs 66-68.
[24] "[T]he railroad has ceased active service on the corridor and removed the rails and ties." Govt's Cross-Motion, 31.

(14) Sarasota County has constructed a public-access recreational trail called the Legacy Trail across the land formerly occupied by the Seaboard Air Line Railway right of way. "The Legacy Trail will have a 14 foot wide trail, rest stop shelters and entries."[25]

## III. We disagree on four points which we present to this Court for resolution.

From these points of common agreement the parties' motions for summary judgment present this Court with four points of disagreement for this Court to resolve.

### 1. While the government and the Plaintiffs agree that the Plaintiffs own the land abutting the former Seaboard Air Line Railway, the parties disagree whether the Plaintiffs have established their ownership of the land underlying the right of way.

The government claims that the Plaintiffs have not "met the burden of proving possession of an interest in the property 'underlying' the subject corridor, or ownership of the subject corridor by virtue of owning an abutting parcel."[26] The government contends "the legal descriptions in [the Plaintiffs' deeds do] not expressly encompass the lands within the corridor, mention the subject corridor of [sic] suggest that eh [sic] property boundaries extend to the railroad corridor."[27]

Each of the Plaintiffs has established ownership of their property by deeds recorded in the Sarasota County Recorder's Office. The government has acknowledged the accuracy and authenticity of these documents which the government also acknowledges establish that each Plaintiff owned the land abutting the former Seaboard right of way.[28] The Plaintiffs show that the long-established principle of real estate law (recognized by the Florida Supreme Court since

---

[25] *ROGERS*, Govt's Responses to Plaintiffs' PFUF, paragraph 79.
[26] Govt's Cross-Motion, 14.
[27] Govt's Cross-Motion, 14-15.
[28] See *supra* n. 18.

1887)[29] holds that when a deed references a railroad as a property boundary whether by metes and bounds or by reference to plat and lot, the presumption is that the land conveyed includes the land extending to the centerline of the abutting right or way. Under this principle (on the facts as agreed to by the government), all Plaintiffs have established that they hold title to the land underlying, as well as abutting, the former Seaboard right of way.

The government requested,[30] and this Court granted, six months of additional time for the government to conduct an independent title examination to refute the Plaintiffs' claim to ownership of the property abutting as well as underlying the former Seaboard right of way. The government has found no deed or other instrument by which it claims to defeat any of the Plaintiffs' ownership of the land abutting and underlying the right of way. Accordingly, the Plaintiffs have carried the burden of establishing that they are the owners of the land abutting as well as underlying the former Seaboard right of way.

2. **While the government and the Plaintiffs agree that the right of way abutting all the Plaintiffs' (except for Bird Bay) land was established by the instrument from Adrian Honore in 1910, the parties disagree whether Adrian Honore conveyed a "fee simple determinable" estate in the land subject to a possibility of reverter when it is no longer used for a railroad or an easement to use the land for a railroad right of way. The parties further disagree whether the easement was terminated (or the possibility of reverter triggered) when the Seminole Gulf Railway abandoned the right of way.**

There is no dispute that for all Plaintiffs, except Bird Bay, the right of way abutting their land was established by the instrument from Adrian Honore to the Seaboard Air Line Railway in

---

[29] See *FLORIDA SOUTHERN RY. CO. V. BROWN*, 23 Fla. 104, 1 So. 512 (Fla. 1887); *SEABOARD V. SOUTHERN INVESTMENT*, 53 Fla. 832, 44 So. 351 (Fla. 1907); *SMITH V. HORN*, 70 Fla. 484, 70 So. 435 (Fla. 1915); *SERVANDO BUILDING CO. V. ZIMMERMAN*, 91 So.2d 289 (Fla. 1956) (*en banc*) , *UNITED STATES V. 16.33 ACRES OF LAND*, 342 So.2d 476 (Fla. 1977).

[30] Docket No. 35, 8.

1910.[31] The government contends that "the Honore Deed conveyed a fee simple determinable interest to Seaboard, Plaintiffs, as successors-in-interest to the original landowners, had, at most, an inchoate future interest (a possibility of reverter). Under the unambiguous language of the Honore Deed, Plaintiff's possibility of reverter is triggered only if the railroad 'shall abandon said land for railroad purposes.'"[32]

The Plaintiffs note that this is an academic issue since under either characterization of the Honore deed (whether an easement or fee simple determinable), the railroad use of the property has been abandoned and (if an easement) the fee estate is no longer burdened by the easement or (if a fee simple determinable) possession under the possibility of reverter has been triggered and the fee estate in the land has reverted to the Plaintiffs as assignees of Adrian Honore. The Plaintiffs show that when Florida courts (and the Federal Circuit) have considered similar deeds they have always held that an easement was created and no court has ever held that an instrument such as the Honore deed conveyed any type of fee estate in the land. The Plaintiffs further show that the use of the land for "railroad purposes" as contemplated by Adrian Honore, was absolutely and without question abandoned as a matter of fact and law.

**3. The parties disagree whether Seaboard acquired a fee estate or an easement in the land upon which the right of way abutting the Bird Bay property is located.**

The government contends that the "Venice Deed unambiguously conveyed a fee simple absolute interest to Seaboard."[33] And, "Since the railroad had a fee simple absolute in (sic)

---

[31] "With one exception, each of the named Plaintiffs abuts a portion of the subject corridor that was granted to Seaboard by Adrian C. Honore pursuant to a written deed executed on November 5, 1910." Govt's Cross-Motion, 11.

[32] *Id.* at 27.

[33] *Id.* at 33. The referenced 1941 Venice-Nokomis deed is attached as Exhibit L to the Government's Cross-Motion. The government also attaches a 1927 deed from B.L.E. Realty describing "identical parcels of property." *Id*. at 11 and Exhibit J.