portion of the railroad corridor adjacent to Plaintiff Bird Bay's property, Plaintiff Bird Bay lacks a compensable property interest in the subject property."[34]

The Plaintiffs show, by reference to conveyances in Bird Bay's chain of title, the following: (1) The Seaboard right of way was not established by either the BLE deed or the Venice Deed but was already in existence when those instruments were executed. As such, the instruments do not grant a fee simple estate in the land, but instead, are only an acknowledgement of the location of the already existing Seaboard railroad easement. (2) Under principles of law common to Florida, the Federal Circuit has interpreted similar instruments as conveying only an easement and not a fee estate in the land.[35]

**4. The Parties disagree whether the Seaboard's right to use the land for operation of a railroad (whether an easement or a fee simple determinable interest) allowed a non-railroad to use the land as a public-access recreational trail and indefinitely "railbank" this land under the federal Trails Act.**

The government claims "Plaintiffs fail to show that the railroad took any action in furtherance of an intent to abandon the subject corridor."[36] The government acknowledges that, among other things: (a) the STB granted the railroad's request to abandon railroad service over the right of way, (b) the tracks and ties have been removed, (c) no trains have operated over the land in more than six years, (d) the last railroad to use the right of way determined that "there is little likelihood of there ever being a future demand for local rail service over the Subject Line…. there are no shippers remaining on the Subject Line, and no prospects of future

---

[34] *Id.* at 34.
[35] See, discussion of Manwell Deed in *PRESEAULT V. UNITED STATES*, 100 F.3d 1525, 1535 (Fed. Cir.1996) *(PRESEAULT II)* (*en banc*); the conveyance in *TOEWS V. UNITED STATES*, 376 F.3d 1371 (Fed. Cir. 2004); and Judge Bruggink's interpretation of deed at issue which was approved by Federal Circuit on appeal in *TOEWS V. UNITED STATES*, 53 Fed. Cl. 58, 61-62 (2002).
[36] Govt's Cross-Motion, 31.

shippers", (e) the railroad transferred whatever interest it had in the right of way to a non-railroad; and, (f) the land is now being used by Sarasota County for a public recreational hiking and biking trail. The government contends that, despite these facts, "[u]nder Florida law such actions do not establish the railroad's 'clear affirmative intent' to abandon the corridor."[37] Further, the government contends the provision in the Honore deed which states "if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned, his heirs, administrators and assigns" has not been triggered because "interim trail use furthers and serves the original purpose of the railroad's interest by allowing the railroad to preserve the corridor for future rail service" under the Trails Act, and "interim trail use is within the scope of the railroad's interest because interim trail use is a permissible public use of the corridor under Florida law."[38]

The Plaintiffs respond with two points. First, the Federal Circuit has said that the Trails Act takes a landowner's "reversionary" interest in their land even though the railroad has not yet otherwise abandoned the line. And, under the agreed upon facts, the railroad has without question abandoned the railroad right of way as a matter of fact and as a matter of Florida law. Second, the government's argument that "public recreational trail use and 'railbanking' are a railroad purpose" is an argument that the government repeatedly makes and which has been repeatedly rejected by every court to ever consider the argument. It also makes absolutely no sense as a matter of linguistics, logic, or law to claim that a hiking and biking trail operated by a county park department is a "railroad." Finally, the Plaintiffs show that "railbanking" the

---

[37] *Id.* at 31.
[38] *Id.* at 25-26.

corridor is flatly contrary to the express language of the Honore Deed which specified that the grant was for the operation of an active railroad only.

## IV. PART ONE - POINT ONE: The Plaintiffs That Own The Land *Abutting* The Former Seaboard Air Line Railway Right Of Way Also Own The Land *Underlying* The Right Of Way.

### 1. The government agrees that all but one of the Plaintiffs hold title to the land abutting the right of way, but argues that the Plaintiffs have not established title to the land under the right of way because the deed by which they acquired title references the edge of the right of way as the property boundary.

All agree that the Plaintiffs have established ownership of the land abutting the former Seaboard right of way.[39]

The government does not dispute that all but one of the Plaintiffs hold a fee simple title to an estate in the land abutting the former Seaboard right of way.[40] Each named Plaintiff has provided a deed recorded with the Sarasota County Recorder of Deeds Office showing that they obtained title to their land prior to April 2, 2004. The government does not dispute that the Plaintiffs' title documents establish their ownership.[41] Indeed, the government expressly admits that the Plaintiffs own fee title to the land abutting the former right of way.[42]

The government contends, however, that the legal description in the deeds by which the Plaintiffs acquired title to their land only describes the land as a lot or plat abutting the right of way or by a metes and bounds description with the right of way as the edge of the property

---

[39] See *supra* n. 18.

[40] *See id.* The one Plaintiff for whom the government disputes ownership of the abutting property is Mission Estates Homeowners Association and we have shown by reference to the Plat and Indenture that the Association did hold title to the land abutting the right of way.

[41] *See id.*

[42] *Supra* n. 23.

boundary.[43] As such, the government contends, "none of the descriptions contained in the instruments by which the ** Plaintiffs' acquired their property embrace the subject corridor."[44]

**2. It is a well-established principle of real estate law that a conveyance describing land, whether described by metes and bounds or by Plat and Book, as abutting a railroad is presumed to carry fee title to the center of the adjoining railroad.**

Title to land described as bordering upon a road, railroad right-of-way, river, or similar physical boundary extends to the centerline of the referenced boundary. It would be difficult to find a more firmly established and widely recognized principle of real estate law than this. Thus, (as applied to this case) those landowners who acquired their title to land by a deed which describes the land conveyed as, for example, "to a point on the easterly right of way of Seaboard Air Line Railroad" or "to [the] intersection with the westerly line of the Seminole Gulf Railway"[45] are presumed to have acquired fee title to the land extending to the centerline of the referenced Seaboard railroad right of way.

Before he became President and Chief Justice, William Howard Taft served on the Court of Appeals for the Sixth Circuit. Judge Taft had before him a case presenting this issue and noted the "common law rule of construction" that a "where the land conveyed was described as bounding upon a road, the deed carried the fee in the road to the center line, although the calls by

---

[43] Govt's Cross-Motion, 15. For the *ROGERS* and other Mission Estates Plaintiffs that hold title to land described as a Lot by reference to a specific Plat the government contends the deed does not mention the right of way. The Plat is in the record at Tab 3 to P's PFUF in Response to the Govt's Cross-Motion. This Plat is recorded in the Sarasota County Recorder's office pursuant to the Florida Recording Act and clearly shows the railroad right of way abutting each of the referenced Lots. For other Plaintiffs the government contends their deed references the edge of the right of way as the property boundary. *Id.* at 16.

[44] *Id.* at 16.

[45] *Id.* at 16, quoting from the deed to Palmer Ranch Holdings, Ltd. and Mission Valley Golf and Country Club as an illustration of the government's argument.

distance carried the lot only to the road side." Judge Taft went on to note the reason for this "familiar principle of law"

> The existence of 'strips or gores' of land along the margin of nonnavigable lakes, to which the title may be held in abeyance for indefinite periods of time, is as great an evil as are 'strips and gores' of land along highways or running streams. The litigation that may arise therefrom after long years, or the happening of some unexpected event, is equally probable, and alike vexatious in each of the cases, and that public policy which would seek to prevent this by a construction that would carry the title to the center of a highway, running stream, or nonnavigable lake that may be made a boundary of the lands conveyed applies indifferently, and with equal force, to all of them. It would seem, also, that whatever inference might arise from the presumed intention of the parties against the reservation of the land underlying the water would be as strong in one case as in either of the others.' ***
>
> The evils resulting from the retention in remote dedicators of the fee in gores and strips, which for many years are valueless because of the public easement in them, and which then become valuable by reason of an abandonment of the public use, have led courts to strained constructions to include the fee of such gores and strips in deeds of the abutting lots. And modern decisions are even more radical in this regard than the older cases. [46]

3. **Florida has expressly adopted the presumption that a deed describing land with a railroad right of way as a boundary carries title to the centerline of the adjoining railroad right of way.**

The "familiar principle of law" noted by Judge Taft has been embraced by the Florida Supreme Court and expressly applied to railroad rights of way since 1887 and noted repeatedly by Florida courts in the years since. *FLORIDA SOUTHERN RY. CO. V. BROWN*, 23 Fla. 104, 1 So. 512 (Fla. 1887), and *SEABOARD AIR LINE RY. V. SOUTHERN INV. CO.*, 53 Fla. 843, 44 So. 351 (1907), are the two leading cases. In *FLORIDA SOUTHERN* the court, speaking in the context of a railroad right of way and eminent domain, held,

> It seems to be established that where a street or highway is the boundary of a lot or piece of land, that the owner of such land owns the soil to the center of such street or highway *** It seems also to be established that when no street or highway is specifically mentioned in the conveyance, but the land described by words or figures, and abuts on a street, that the same rule prevails." *FLORIDA SOUTHERN*, 1 So. at 513.

---

[46] *PAINE, ET AL. V. CONSUMERS' FORWARDING & STORAGE CO, ET AL.*, 71 F. 626, 630-31, 632 (6th Cir. 1895), citing *BANKS V. OGDEN*, 69 U.S. 57 (1864).

In *SEABOARD* the Florida Supreme Court applied this principle to railroad rights of way,

> '[s]o far as the title is concerned, it is presumed from the allegations of abutting proprietorship that the fee to one-half of the street is in the owner of the lot adjoining and bounded by the street.'"[47] 'The proprietor of lots abutting on a public street is presumed, in the absence of evidence to the contrary, to own the soil to the center of the street.' *** 'The abutting proprietor is prima facie owner of the soil to the middle of the highway, subject to the easement in favor of the public.' 'it is decided that the right of the owner of a town lot abutting upon a street to use the street is as much property as the lot itself; that it is appurtenant to the lot, and is protected by the Constitution. It cannot be taken away without compensation. The lot, and the street adjoining, then, as to the owner of the former, would seem to constitute but one piece of property, and an injury to the latter would seem to be an injury to the former-to the whole property.' *** 'The weight of judicial authority undoubtedly is that, where the public have only an easement in the street, and the fee of the soil of the street is retained in the abutting owner, under the constitutional guaranty of private property, a steam railroad cannot be lawfully constructed and operated thereon, against his will, and without compensation.' * * * And the court cites, in support thereof, And that court goes on to say: 'If the rights of the abutting owner may be taken from him without his consent and without compensation, 'a system has been inaugurated,' says the Court of Appeals of New York, 'which resembles more nearly legalized robbery than any other form of acquiring property.'"[48]

---

[47] For further Florida cases recognizing this well-established presumption of law, see also *RAWLS V. TALLAHASSEE HOTEL CO.*, 43 Fla. 288, 31 So. 237 ("The proprietor of lots abutting on a public street is presumed, in the absence of evidence to the contrary, to own the soil to the center of the street."); and *JACKSONVILLE, T. & K. W. RY. CO. V. LOCKWOOD*, 33 Fla. 573, 15 So. 327 ("The abutting proprietor is prima facie owner of the soil to the middle of the highway, subject to the easement in favor of the public").

[48] This principle has been recognized as settled Florida law by the U.S. Court of Appeals in *SMITH V. SEABOARD AIR LINE RAILROAD COMPANY*, 215 F.2d 365, 367 (1954), in which the court held,

> *Prima facie* the appellant, who is the abutting owner, has the fee to the middle of the street, subject to the easement in favor of the public; her right to use the street is as much property as the soil itself; and, under the constitutional guaranty, where the public has only an easement in the street, a steam railroad cannot lawfully be constructed and operated thereon against her will without compensation.

See also *BROOKS V. WEST MIAMI*, 41 So.2d 556, 557 (Fla. 1949); *EMERALD EQUITIES, INC. V. HUTTON*, 357 So.2d 1071 (Fla. App. 1978); *SERVANDO BUILDING CO. V. ZIMMERMAN* 91 So.2d 289, 291 (Fla., 1956) (*en banc*); and, *UNITED STATES V. 16.33 ACRES OF LAND*, 342 S.2d 476, 480 (Fla. 1977).

4. **The government itself has acknowledged the presumption that title extends to the centerline in other Trails Act taking cases.**

The government is aware of this fundamental principle that title describing land abutting a railroad right of way actually carries fee title to the center line. In a similar Trails Act taking case, the government initially made the same argument - that the land owners' title to the land abutting an abandoned railroad right of way did not include title to the property underlying the right of way. See, *ILLIG V. UNITED STATES*, 58 Fed. Cl. 619 (2003). The government sought summary judgment on this basis. However, even before the Court had opportunity to consider this point, the government *sua sponte* withdrew its motion on this point and noted that its argument was contrary to this settled presumption and principle of real estate law.[49] The government should have done likewise in this case.

5. **All the Plaintiffs have satisfied the presumption that they hold title to the land abutting AND underlying the right of way and the government has not rebutted this presumption.**

In their initial complaints filed over a year ago, the Plaintiffs claimed to own fee title to the land abutting as well as underlying the former Seaboard Air Line Railway right of way. After Plaintiffs filed their motions for partial summary judgment, the government responded with a motion under Rule 56(f) seeking an additional six months in which "to conduct full historical title searches of the properties owned by the named Plaintiffs and a full historical title search of the chain of title from the Seaboard Air Line Railroad…Defendant also sought the historical documents that would be associated with such title transactions in order to assemble a complete picture of the circumstances surrounding the title issues in this case…Defendant

[49] See, Exhibit B, copy of Government's motion withdrawing boundary line argument.

needed time to conduct discovery in the form of title searches on the properties of each named Plaintiff from the date of the alleged taking back to original 1910 granting deeds."[50]

This Court granted the government this enlargement of time during which they could conduct the extensive full historical title research they deemed necessary to respond to the Plaintiffs' claims that they owned the land underlying the former Seaboard right of way. The government retained Cindi A.R. Straup who, in an affidavit attached to the government's Cross-Motion, states that she is an experienced claims administrator with more than a decade of experience for the U.S. Justice Department in more than "forty lawsuits involving landowners who own land adjoining active and abandoned railroad corridors"[51] and has researched the Plaintiffs' claims in this case using Valuation Schedules and Maps filed with the Interstate Commerce Commission and documents from the Sarasota County Recorder of Deed's Office.

Neither the U.S. Department of Justice, nor their expert, Ms. Straup, have provided any document, instrument, or other basis upon which they dispute the Plaintiffs' claim to own fee title to the land abutting and underlying the former Seaboard right of way or by which they claim some other person owns the land.

---

[50] Govt's Motion for Relief pursuant to Rule 56(f), Docket No. 35, 5-7.
[51] Govt's Cross-Motion, Exhibit 2.

## V. PART ONE – POINT TWO: The Seaboard Air Line Railway Obtained Only An Easement To Use The Land Upon Which The Railroad Was Located And Did Not Obtain A Fee Estate In The Land Itself.

The government contends that the Seaboard acquired a fee simple determinable estate from Adrian C. Honore in the land upon which the majority of the railroad between Sarasota and Venice was constructed. The government acknowledges that the railroad's interest was subject to the "unambiguous" provision that its interest reverted for the property no longer being used for a railroad.[52] The government contends that for the portion of the right of way abutting the Bird Bay land, the Seaboard obtained a "fee simple absolute" interest in the land. The government claims that Seaboard obtained this fee simple interest by virtue of the "Venice-Nokomis" deed of 1941.[53]

We consider each of these arguments and each instrument separately. But first, we note a general point of Florida law (common to virtually every other state as well) that bears upon the construction of conveyances of right of way to a railroad.

### 1. As a general matter of Florida law, a conveyance to a railroad for a "right of way" grants the railroad only an easement to use the land and does not convey a fee estate in the land itself.

As Justice Brennan observed in *PRESEAULT v. UNITED STATES*, 494 U.S. 1 (1990), ("*PRESEAULT I*"), "[M]any railroads do not own their rights-of-way outright but rather hold them under easements or similar property interests…[and] frequently the easements provide that the property reverts to the abutting landowner upon abandonment of rail operations."[54]

---

[52] Govt's Cross-Motion, 27.
[53] *Id.* at 33.
[54] *PRESEAULT II*, 494 U.S. at 9. Note also Justice Brennan's reference to "the property reverting to the abutting landowner." A recognition of the point noted in our earlier discsssion.

Judge Posner noted the fundamental presumption (recognized in Florida as well as most other states)[55] that a railroad's interest in land used for a right of way is only an easement. Judge Posner also noted the public policy underlying this presumption in *PENN. CENT. CORP. v. U.S.R.R. VEST CORP*, 955 F. 2d 1158, 1160 (7th Cir. 1992.).[56]

> The presumption is that a deed to a railroad or other right of way company (pipeline company, telephone company, etc.) conveys a right of way, that is, an easement, terminable when the acquirer's use terminates, rather than a fee simple. Transaction costs are minimized by undivided ownership of a parcel of land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased. If the railroad holds title in fee simple to a multitude of skinny strips of land now usable only by the owner of the surrounding or adjacent land, then before the strips can be put to their best use there must be expensive and time-consuming negotiation between the railroad and its neighbor-that or the gradual extinction of the railroad's interest through the operation of adverse possession. It is cleaner if the railroad's interest simply terminates upon the abandonment of railroad service. A further consideration is that railroads and other right of way companies have eminent domain powers, and they should not be encouraged to use those powers to take more than they need of another person's property-more, that is, than a right of way.[57]

In *DAVIS v. MCI*, 606 So. 2d 734, 738 (1992), the Court noted that, "Except to site a station house or similar land use here and there, the railroads had no need or desire for any

---

[55] This presumption that a conveyance to a railroad for a "right-of-way" conveys only an easement (being the right to use the land and not a grant of fee title in the land itself) is widely and commonly held in other states as well as Florida. Instruments virtually identical in relevant respect to those before the court in this case have been construed as conveying only an easement to the railroad by the Supreme Courts and lower courts of Kansas Missouri, California, Michigan, Idaho, Kentucky, Indiana, Tennessee and a number of other states. We have assembled a short list of similar decisions by courts in other states – mostly other state supreme courts – which is attached at Appendix A.

[56] This presumption flows from very similar policy considerations to those noted by Judge Taft in *PAINE*, *supra*, n. 46.

[57] Citing *BROWN v. PENN CENTRAL CORP.*, 510 N.E.2d 641, 644 (Ind. 1987); *ROSS, INC. v. LEGLER*, 245 Ind. 655, 199 N.E.2d 346 (1964); *HIGHLAND REALTY CO. v. CITY OF SAN RAFAEL*, 46 Cal.2d 669, 678, 298 P.2d 15, 20 (1956); *SHERMAN v. PETROLEUM EXPLORATION*, 280 Ky. 105, 132 S.W.2d 768 (1939); *JOHNSON v. OCEAN SHORE R.R.*, 16 Cal.App.3d 429, 94 Cal.Rptr. 68 (1971); *HENRY v. COLUMBUS DEPOT CO.*, 135 Ohio St. 311, 20 N.E.2d 921 (1939). Judge Posner allowed that there is nothing preventing a farmer from conveying fee simple title to a railroad for the construction of a rail line, but observed that this is not commonly the manner in which a railroad will take title to land used for a right of way.

interest except 'right-of-way.'" Likewise, in *DEAN V. MOD PROPERTIES, LTD*, 528 So.2d 432, 434 (Fla. App. 1988), the court noted, "[O]nly an easement is needed to lawfully construct and maintain a road right-of-way on and over land."

The government argues that, "Inclusion of the term 'right of way' in the deed is of little consequence."[58] The government overlooks the widely held principle to the contrary that, "[t]he conveyance of a right-of-way is generally held to create only an easement."[59] As was done by the court in *DAVIS*, the term "right of way" is commonly used as a synonym for "easement."[60] Indeed, the term "right of way" is exactly that, a statement that the interest conveyed is a "right of way" to cross the land – which is an easement, not an interest in the land itself.

As the government itself notes "a deed should be construed according to the legal background in place at the time of its execution."[61] In light of that consideration, the Florida Supreme Court's decision in *VAN NESS V. ROYAL PHOSPHATE CO.* 60 Fla. 284, 53 So. 381 (Fla. 1910) ("*VAN NESS II*"), rendered contemporaneous with the drafting of the Honore deed, is of particular relevance. In *VAN NESS II*, the court had before it a deed to the [railroad] conveying a right of way over a strip of land 100 feet wide on which the railroad constructed, built and operated its railroad."[62] The court held that this conveyed only an easement to the railroad.

---

58 Govt's Cross-Motion, 22.

59 Jon W. Bruce and James W. Ely, Jr., *THE LAW OF EASEMENTS AND LICENSES IN LAND* §1.06[1] (rev. ed. 1995).

60 In *JOY V. ST. LOUIS*, 138 U.S. 1 (1891), the U.S. Supreme Court noted that "[t]he term 'right of way' has a twofold signification. It sometimes is used to describe a right belonging to a party, a right of passage over any tract; and it is also used to describe that strip of land which railroad companies take upon which to construct their road-bed."

61 Govt's Cross-Motion, 22.

62 *VAN NESS II*, 53 So. at 381. The Van Ness deed "granted, bargained, sold and conveyed and by these presents do grant, bargain, sell and convey unto the [Railroad] a strip or parallelogram of land for its railroad right of way, and their necessary railroad purposes, one hundred feet in width as and near whatever points or points the [Railroad] may see proper to locate the same of, in, upon, over, through and across the following described land. *** To have and to hold

"'[A] right of way' for a railroad is only an easement though it be conveyed by a deed.'"[63] The court held that the technical right to the minerals underneath the railroad was still held by the grantor. "Should the railroad track be removed or abandoned" the grantor's right to the land under the right of way would be unrestricted.[64]

The Federal Circuit has similarly construed instruments conveying a right of way to a railroad as only passing an easement, even when the instrument purported to convey a fee simple estate in the land and did not use the term "right of way." See *PRESEAULT*, where the Federal Circuit considered the Manwell deed which by form purported to be a fee simple conveyance of an estate in the land. The court noted, "The deed appears to be the standard form used to convey a fee simple title from grantor to grantee. But did it? *** Despite the apparent terms of the deed indicating a transfer in fee, the legal effect was to convey only an easement."[65]

The Federal Circuit noted that the description of the property by reference to a survey of an existing railroad line is an additional consideration which supports the interpretation of a conveyance to a railroad as granting only an easement, no matter the form of the instrument. The Court wrote:

> Thus it is that a railroad that proceeds to acquire a right-of-way for its road acquires only that estate, typically an easement, necessary for its limited purposes, and that the act of survey and location is the operative determinant, and not the particular form of transfer, if any. Here, the evidence is that the Railroad obtained a survey and location of its right-of-way, after which the Manwell deed was executed confirming and memorializing the

---

the above granted premises and privileges unto [Railroad], its successors and assigns against all and every person or persons lawfully claiming or to claim the same, by, through or under the [Van Ness's]." *SILVER SPRINGS, O & G.R. CO. v. VAN NESS (VAN NESS I)*, 45 Fla. 559, 34 So. 884, 886-89 (Fla. 1903).

[63] *VAN NESS II*, 53 So. at 382-83, quoting from *BROWN v. YOUNG*, 69 Iowa, 625, 29 N.W. 941 (1886).

[64] *VAN NESS II*, 53 So. at 384.

[65] *PRESEAULT II*, 100 F.3d at 1535-36.

> Railroad's action…the Railroad acquired only that which it needed, an easement for its roadway."[66]

2. **Any voluntary conveyance to Seaboard must be read in the context of Seaboard's ability to acquire the right of way by eminent domain.**

Seaboard's activities as a corporation are (and were) defined by Florida statute. The legal authority of Seaboard was defined by Section 4354, Revised General Statutes of Florida, 1920, being part of Section 10 of Chapter 1987, Acts of 1874, Laws of Florida, "An Act to provide a general law for the incorporation of Railroads and Canals." Paragraph 2 of Section 4354, defining the authority of a railroad to acquire land, provides that railroad and canal corporations are authorized "[t]o take and hold such voluntary grants of real estate and other property as shall be made to it to aid in the construction, maintenance and accommodation of its road or canal, *but the real estate received by voluntary grant shall be held and used for purposes of such grants only*." (Emphasis supplied).

The Seaboard Air Line Railway, as a railroad corporation, was authorized to acquire and own real estate, <u>but only for railroad purposes</u>. The Seaboard Air Line Railway was not authorized to develop or speculate in real estate. Its ability to legally acquire and hold real estate was limited to doing so in furtherance of constructing and operating a railroad. For a strip of land upon which a rail line is constructed (as opposed to land for the construction of a station house) an easement conveys sufficient interest for the railroad to accomplish its authorized purpose. As noted by the court in *DAVIS*, *supra*, "the railroads had no need or desire for any interest except 'right-of-way.'"[67]

---

[66] *Id.* at 1537.

[67] See also *DEAN*, 528 So. 2d at 434 ("This construction is consistent with common practice and common sense in that, while certainly a government agency can acquire title to and construct a road on the land to which it has title, only an easement is needed to lawfully construct and maintain a road right-of-way on and over land").

In Florida as in other states, railroads are vested with the extraordinary ability to exercise eminent domain. The ability to obtain land by force of law from an owner otherwise unwilling to sell his land colors any "voluntary conveyance" to a railroad. This is why courts presume that a voluntary conveyance to a railroad conveyed only that interest in the land which the railroad requires for its lawful purpose of operating a railroad. For a right of way upon which rails and ties are located (as the Florida Court noted in *DAVIS* and *DEAN*) the railroad needs only an easement to accomplish its lawful purpose. The Kansas Supreme Court gave voice to this commonly held assumption in *HARVEST QUEEN MILL & ELEVATOR V. SANDERS*, 189 Kan. 536, 370 P.2d 419 (Kan. 1962), "This court has uniformly held that railroads do not own fee titles to narrow strips taken as right-of-way, regardless of whether they are taken by condemnation or right-of-way deed. The rule is in conformity with this state's long-standing public policy and gives full effect to the intent of the parties who execute right-of-way deeds rather than go through lengthy and expensive [condemnation] proceedings."[68]

The Federal Circuit has noted that voluntary conveyances to a railroad vested with the ability to exercise eminent domain are a "proceeding that retained its eminent domain flavor."[69] And, as such, the interest conveyed by the conveyance is read in light of that context as granting the railroad only the minimum interest in the land necessary for the railroad to undertake its lawful purpose.

---

[68] *HARVEST QUEEN*, 370 P.2d at 423.

[69] *PRESEAULT II*, 100 F. 3d at 1537 (citing Vermont law and specifically, *HILL V. WESTERN VERMONT RAILROAD*, 32 Vt. 68 (1859)).

3. **The interest a railroad acquires in a "strip of land" used for tracks and ties is not held to be a fee estate and this situation is distinguished from cases involving parcels of land acquired by a railroad for construction of permanent structures such as a depot or station.**

The government also overlooks an important distinction between land used for a right of way upon which tracks were located and land upon which a railroad built permanent structures such as a station or depot. While courts will occasionally find that a railroad acquired fee estate in land upon which a railroad builds a permanent structure such as a depot, courts almost never find that a railroad acquired fee estate in a strip of land upon which rails track was laid.[70]

The government cites *ROBB V. ATLANTIC COAST LINE RAIL CO.* 117 So.2d 534 (Fla. App. 1960) for the proposition that use of the term "right of way" does not mean that an "easement" was conveyed. *ROBB* involved land conveyed to a railroad by general warranty deed. The deed provided that the railroad acquired the land for "permanent[ly] maintaining [] a Passenger and Freight Depot within the limits of the right-of-way conveyed" and the court noted, "it is agreed that the passenger and freight depot is being maintained by [the railroad]."[71]

*ROBB* is consistent with the line of cases that recognize a railroad may acquire a fee estate in land used for permanent structures like depots or grain elevators.[72] It does not, however, support the proposition that a railroad acquires a fee estate in a "strip of land" upon which the

---

[70] See generally, *VAN NESS I AND II*, *supra* n. 62, and *HARVEST QUEEN*, *supra*, n. 68.
[71] *ROBB*, 117 So. at 535, 537.
[72] Indeed, even these cases note that in cases involving land used for a station or depot, it is still common that the railroad acquired only an easement to use the land for railroad purposes. See, *e.g.*, *HARVEY V. MISSOURI PAC. R. CO.*, 111 Kan. 371, 207 P. 761 (Kan., 1922); *ATICHSON, TOPEKA & SANTA FE RY. CO. V. HUMBERG*, 9 Kan. App. 2d 205, 675 P.2d 375 (Kan., 1984); *MILLER V. ST. LOUIS, SOUTHWESTERN RAILWAY COMPANY*, 239 Kan. 198, 718 P.2d 610 (Kan. 1986).

railroad laid tracks and which land was never used for (or intended to be used for) a permanent structure such as a station or depot.[73]

**4. The terms and circumstances of the conveyance instruments demonstrate the grantor's clear intent to convey only an easement.**

An "estate" in land is very different from an "easement." "Present estates in land carry with them, as their single most salient characteristic, the present right to exclusive possession of a particular parcel of land." [74] An owner of an estate "may hold it subject to 'servitudes' – easements and covenants – created on a consensual basis which limit the owner's exclusive right to possession and the usual privileges of use and enjoyment incident to a present estate in land."[75]

"[Easements] do not give the holder a right of possession but a right to use or to take something from land, the possessory estates in which are owned by others."[76] "Viewed from this other person's angle, an easement…is a burden – an encumbrance – upon that person's estate.

[73] There is also a further difference between the ROBB case and the present case. In ROBB, the wording of the conveyance was of the land itself, "for right of way purposes." In the present case, the Honore deed was a deed of "the right of way." In other words, the ROBB deed was a deed of land, which is presumed to be a fee simple estate, and the court merely held that a phrase in the deed describing the purposes for which the land was conveyed did not turn it into an easement (or a defeasible fee either, for that matter).

[74] WILLIAM B. STOEBUCK AND DALE A. WHITMAN, THE LAW OF PROPERTY (THIRD EDITION) (West Group, 2000).

[75] *Id.* at 26.

[76] *Id.* at 435. (emphasis supplied). "An easement is an incorporeal, nonpossessory interest in land which concerns the use of the land of another. *An easement is not an estate in land* and does nto convey title to land or dispossess the owner of the land subject to the easement. Instead, an easement only grants the right to use the property for some particular purpose." *SEARS, ROEBUCK & CO. V. FRANCHISE FINANCE CORP.*, 711 So.2d 1189 (Fla. App. 1998). (emphasis supplied), citing, *EASTON V. EASTON*, 548 So.2d 691 (Fl. 1989).

Some of the sticks have been taken from the bundle that comprise the estate and have been transferred to the holder of the easement."[77]

We turn now to the specific conveyance documents by which the Seaboard Air Line Railway was originally established. The task is to determine if the grantor intended to convey to the railroad a right to use the land or to grant them ownership of an estate in the land itself.

As we show below, the Seaboard's interest acquired in the right of way was an easement only and not a conveyance of an estate in the land itself.

We begin with basic hornbook law. When construing an instrument that conveys an interest in land, courts seek to give effect to the intent of the parties to the transaction.[78] The intent of the parties is determined by construing the conveyance instrument as a whole,[79] and in

---

[77] *Id.* at 435. (emphasis supplied). The *DEAN* court went on to contrast an easement with a conditional or qualified fee. "When an estate in land is conveyed subject to a condition subsequent (conditional fee) or subject to an estate in the land returning to the grantor upon the termination of some existing condition, event, or use (a determinable or qualified fee) it is, of course, necessary to expressly reserve that right to the grantor; otherwise the unqualified, unconditional conveyance will be of the whole estate (fee simple absolute). However, this is not true as to the creation or granting by the fee owner of an easement to another because if the easement or right of use is limited by time or the occurrence of some event (such as abandonment) or is otherwise terminated for any reason, no title or interest in the land is returned to the title holder from the prior easement holder. The mere termination of the outstanding easement results in the owner's title becoming free of, and no longer encumbered or burdened by, the easement. This is the reason easements are merely terminated or abandoned somewhat in the manner other encumbrances, such as liens, on or against the legal title to land are not reconveyed to the title holder but merely cancelled or satisfied." *DEAN V. MOD PROPERTIES, LTD*, 528 So. 2d 432, 433-34 (Fl. App. 1988). See also, *LOVELAND V. CSX TRANSP., INC.* 622 So.2d 1120 (Fla. App. 1993), and *HOLLAND V. HATTAWAY*, 438 So. 2d 456 (1983).

[78] "It is well established that an easement may be created by grant, a broad term which includes creation by reservation in a deed, and, as in deeds generally, *the intent of the parties in a grant of an easement is determined by a fair interpretation of the language*. The language employed should be construed to effectuate the intention of the parties. See, 20 Fla. Jur 2d *Easements* §§ 6, 13, 14, 18 (1980)." *WALTERS V. MCCALL* 450 So.2d 1139 (1984) (emphasis in original).

[79] "In determining the rights of parties to a written agreement [a parking easement], a court should consider the document as a whole and , where possible, give meaning and effect to

light of the circumstances at the time the conveyance was granted.[80] Interpretation of an unambiguous conveyance instrument is a question of law[81] to be settled by its plain language.[82]

These fundamental rules of construction are not only well-settled Florida law, they are well-settled principles of law acknowledged by the U.S. Supreme Court and various state supreme courts.[83]

---

every provision." *AMERICAN REAL ESTATE HOLDINGS LIMITED PARTNERSHIP V. TWIN CITIES INVESTORS, INC.* 740 So.2d 562 (Fla. App. 1999), citing *LAMBERT V. BERKLEY SOUTH CONDOMINIUM ASS'N*, 680 So.2d 588 (Fla. App. 1996); and *U.S.B. ACQUISITION CO. V. STAMM*, 660 So. 2d 1075 (Fla. App. 1995).

[80] "To determine the scope of an easement, the court must attempt to ascertain the intent of the parties in light of the surrounding circumstances *at the time the easement was created*." *HILLSBOROUGH COUNTY V. KORTUM* 585 So.2d 1029 (Fla. App. 1991), citing, *Walters v. McCall*, 450 So.2d 1139 (Fla. App. 1984) and *HAYNES V. CITY OF LAKELAND*, 451 So.2d 505 (Fla. App. 1984) (emphasis supplied).

[81] "The construction or interpretation of an easement is not evidentiary; it is a matter of law." *HILLSBOROUGH COUNTY*, *supra*, n. 80, citing, *SHADOW WEST APARTMENTS, INC. V. STATE DEP'T OF TRANSP.* 498 So. 2d 589 (Fla. App. 1986) and *KOTICK V. DURRANT*, 143 Fla. 386, 196 So. 802 (1940).

[82] "The controlling document is not ambiguous. It provides that the easement is to expire when the Property ceases to be used as a railway right of way for the specified time period. * * * Where language of a deed is clear and the grantor's intention is reflected by that language, judicial interpretation of the words employed is inappropriate." *COHEN V. PAN AMERICAN ALUMINUM CORP.* 363 So. 2d 59 (Fla. App. 1978), citing, *SALTZMAN V. AHERN*, 306 So.2d 537 (Fla. App. 1975). "In construing unambiguous contractual provisions, it is fundamental under Florida law that the best evidence of the intention of the parties is reflected by the actual contract terms used and, thus, the plain meaning of those terms is controlling." *AKERS V. CANAS*, 601 So.2d 305 (Fla. App. 1992) (applying this principle to the interpretation of an easement).

[83] See, *e.g.*, *VAN NESS V. CITY OF WASHINGTON*, 29 U.S. 232, 282 (1830) ("Here we have a solemn instrument embodying the final intentions and agreements of the parties, without any allegation of mistake; and we are to construe that instrument according to the legal import of its terms."); *U.S. V. ARREDONDO*, 31 U.S. 691, 740 (1832) ("The words of a grant are always construed according to the intention of the parties, as manifested in the grant by its terms or by the reasonable and necessary implication, to be deduced from the situation of the parties and of the thing granted, its nature and use."); *NEIDER V. SHAW* 138 Idaho 503, 65 P.3d 525 (Idaho 2003); *BROWN V. PENN CENTRAL CORP*, 510 N.E. 2d 641 at 643 (Ind. 1987); *SHERMAN V. PETROLEUM EXPLORATION*, 280 Ky. 105, 132 S.W.2d 768, 770 (1930) ("In the problem of construction of any deed, the test is that of intention, which is to be gathered from the context of the instrument, read in those lights which are properly employed in construing writings.

**a) Adrian C. Honore's Conveyance:**[84]

The conveyance from Adrian C. Honore to the Seaboard Air Line Railway Corporation was signed by on November 5, 1910, "filed for the record" on November 14, 1910, and recorded on December 26, 1910, at book 23, Page 127. The relevant terms of this conveyance are:

> ADRIAN C. HONORE ** does hereby remise, release and forever quit claim unto the SEABOARD AIR LINE RAILWAY CORPORATION *** **a right of way for rail road purposes over and across** the following described land *** [the property is described as **"strip[s] of land** one hundred (100) feet wide, being fifty (50) feet on **each side of the center line of the Seaboard Air Line RAilway** [sic] as **located across lands owned by the grantor herein**"] *** To Have and to hold the said premises unto the said Seaboard Air Line Railway, its successors and assign and to its or their own proper use, benefit and behalf forever **for railroad purposes.** *** This conveyance is **made upon the express condition, however that if the Seaboard Air Line Railway shall not construct upon said land and commence the operation thereon with one year of the date hereof of a line of railroad, or, if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the above described pieces and parcels of land shall ipso facto revert to and again become the property of the undersigned, his heirs, administrators and assigns.**" (emphasis supplied).

---

We think it may be well said that an indefinite or ambiguous conveyance of land specifically for a railroad right of way is in its interpretation subject to the influence of a general knowledge that much railroad right of way is expressly or by operation of law limited to an easement, which has been usually found sufficient for the purpose desired."). See also *MICHIGAN DNR V. CARMODY-LAHTI REAL ESTATE*, 472 Mich. 359, 699 N.W. 2d 272 (Mich. 2005).

[84] Again, we note the initial point that it is something of an academic point whether Adrian Honore conveyed "fee simple determinable" title to the Seaboard Air Line Railway or an easement to the Seaboard. As we show in Part Two of our discussion, the use of the land for railroad purpose has been absolutely and without question abandoned and the reversionary right of the fee estate owner to regain possession has been triggered (if Honore conveyed fee simple determinable) or (if Honore granted only an easement) the easement has been extinguished. In either event, under Florida law (apart from operation of the Trails Act), the land would be owned in fee simple absolute by the respective named Plaintiff and there would be no right of anyone (by easement or otherwise) to use their land for a railroad or for a public-access recreational trail. However, because we believe it important to correctly construe the Honore Deed we note that under Florida law, it is, in fact, a grant of an easement and not the conveyance of fee simple determinable.

The language in Honore's deed to Seaboard expressly conveyed only an easement as a "right of way for rail road purposes over and across" "strips" "located across lands owned by" Adrian Honore. The conveyance absolutely and expressly directs the granting of a "right" to use the land, not title to the land itself. The conveyance described the interest conveyed as "*a right of way for rail road purposes* __*over and across*__ *the following described land.*" The land is described as *"fifty feet on each side of the Seaboard Air Line Railway as located* __*across*__ *land owned by the"* grantor. When confronted with similar instruments that describe the interest conveyed as being "over" or "across" land, courts hold such to be an easement only not a fee conveyance. "[T]he grant of land as a right of way recognizes nothing but an easement…the grant [by the land owner] to the railroad of a right of way 'upon, over, and along a strip of land' conveyed only an easement, and not the underlying land."[85]

Adrian Honore clearly, repeatedly, and unambiguously limited the right conveyed as one to use of the land for "railroad purposes" and the operation of an active rail line. Importantly, he also describes the location of the easement conveyed as being "across lands __owned by the grantor__." This demonstrates Honore's unequivocal intent to retain ownership of the land itself.

**5. The government's reliance on "Magic Words" to interpret Adrian Honore's grant of an easement as a conveyance of a fee simple determinable estate is an approach expressly rejected by Florida courts.**

The government argues that "the Honore Deed never uses the word "easement" and "does not say it will 'expire and become null and void' which is language associated with an easement."[86] The government further argues that Adrian Honore conveyed fee simple

---

[85] *HIGHLAND REALTY CO. V. CITY OF SAN RAFAEL*, 46 Cal.2d 669, 298 P.2d 15 (1956); see also *VAN NESS I* and VAN *NESS II* , n. 62 *supra*.

[86] Govt's Cross-Motion, 23-24.