**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| STEPHEN J. ROGERS, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Hon. Mary Ellen Coster Williams<br><br>No. 07-273 L |
| BIRD BAY EXECUTIVE GOLF COURSE, INC., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | Hon. Mary Ellen Coster Williams<br><br>No. 07-426 L |

**PLAINTIFFS' RESPONSES TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

COME NOW Plaintiffs pursuant to RCFC 56(h) and for their responses to Defendant's Proposed Findings of Uncontroverted Fact in Support of its Cross-Motion for Summary Judgment hereby state as follows:

**Plaintiffs' General Statements**

Plaintiffs note that Defendant's Responses to Plaintiffs' Proposed Findings of Uncontroverted Fact are not in compliance with RCFC 56(h)(1). According to this Rule, "[t]he opposing party shall file, together with its opposition, a response to the requested findings by indicating, immediately below each finding, whether it agrees or disagrees

with the finding as stated. If the opposing party does not agree with the proposed finding, it shall note the basis for its objection and may draft a proposed revision of the finding directly below the challenged finding."

In Defendant's Responses, however, the Defendant "disputed" numerous proposed findings because they were "not relevant or material." Defendant failed to note whether it "agreed" or "disagreed" with the finding and the basis for any such disagreement. "Disputing" a proposed finding because it is allegedly "not relevant or material" is not a valid response under RCFC 56(h).

## I. History of the Subject Corridor

1. The subject corridor extends 12.43 miles, from milepost SW 892 to SW 904.2 in Sarasota County, Florida. Def.'s Ex. 4.

**<u>Plaintiffs' Response</u>: Agree.**

2. Seaboard Air Line Railway ("Seaboard") acquired the subject corridor in a number of conveyances between 1910 and 1941. See Def.'s Ex. 1; Def.'s Ex. 2; Def.'s Ex. 3.

**<u>Plaintiffs' Response</u>: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes Seaboard's "acquisition" of the subject right of way.**

**<u>Plaintiffs' Proposed Revision</u>: Plaintiffs acquired an easement in the subject right of way by a number of instruments executed between 1910 and 1941. Some of these instruments did not create the right of way but acknowledged the then existing right of way. *See* Def.'s Ex. 1; Def.'s Ex. 2; Def.'s Ex. 3.**

3. Seaboard acquired a portion of the subject corridor by deed from Adrian C. Honore on November 5, 1910. <u>See</u> Def.'s Ex. 7.

**<u>Plaintiffs' Response</u>: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes Seaboard's "acquisition" of the subject right of way.**

**<u>Plaintiffs' Proposed Revision</u>: Seaboard acquired an easement in the subject right of way by an instrument executed by Adrian C. Honore on November 5, 1910. The easement contained express terms defining the Seaboard and successor railroad's right to use the land and providing that when railroad operations ceased, the land was no longer subject to this easement.**

4. The Honore Deed "remise[d], release[d] and forever quit claim[ed] unto the SEABOARD AIR LINE RAILWAY . . . a right of way for railroad purposes." Def.'s Ex. 7.

**<u>Plaintiffs' Response</u>: Disagree. While these words appear in the document, the document must be read in its entirety.**

**<u>Plaintiffs' Proposed Revision</u>: The terms of the instrument executed by Adrian Honore are specified in that instrument in its entirety. Def.'s Ex. 7.**

5. The conveyance in the Honore Deed was made on "the express condition . . . [that] if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the . . . [conveyed] pieces and parcels of land shall <u>ipso facto</u> revert to and again become the property of [Adrian C. Honore] his heirs, administrators and assigns." Def.'s Ex. 7 (emphasis in original).

**<u>Plaintiffs' Response</u>: Disagree. While these words appear in the document, the document must be read in its entirety.**

**<u>Plaintiffs' Proposed Revision</u>: The terms of the instrument executed by Adrian Honore are specified in that instrument in its entirety. Def.'s Ex. 7.**

6. Seaboard also acquired a portion of the subject corridor by deed from Venice-Nokomis Holding Corporation on November 10, 1941. Def.'s Ex. 9.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it mischaracterizes Seaboard's "acquisition" of the subject right of way. Plaintiffs also note that the proposed finding excludes any reference to the conveyance by B.L.E. Realty. For clarification, Plaintiffs propose the revision below.**

**Plaintiffs' Proposed Revision: An instrument executed by the Venice-Nokomis Holding Corporation dated November 10, 1941 acknowledged the already existing railroad right of way. Def.'s Ex. 9.**

7. The Venice Deed states that Venice-Nokomis "granted, bargained, sold and conveyed . . . real estate situated in Sarasota County, Florida, described as follows: to wit . . . a strip of land 100 feet wide . . . ." Def.'s Ex. 9.

**Plaintiffs' Response: The Plaintiffs agree that the quoted language appears in the Venice-Nokomis instrument. However, the Plaintiffs object to the attempt to mischaracterize this instrument by taking language out of context and taking the instrument out of the context of the circumstances in which it was executed, to wit, that the railroad right of way was already established and in existence prior to the "Venice Deed".**

**Plaintiffs' Proposed Revision: An instrument executed by the Venice-Nokomis Holding Corporation dated November 10, 1941 acknowledged the already existing Seaboard railroad right of way. Def.'s Ex. 9. The legal effect of this instrument was to merely acknowledge an already existing railroad easement.**

8. The Venice Deed's habendum clause states that Seaboard would own the property "together with the rights, members and appurtenances thereunto belonging or appertaining, unto the [railroad], its successors and assigns in fee simple, forever." Def.'s Ex. 9.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with this proposed finding in that it appears that the government has inaccurately transcribed the quoted language.**

**Plaintiffs' Proposed Revision: An instrument executed by the Venice-Nokomis Holding Corporation dated November 10, 1941 referenced the already existing railroad right of way. This instrument is to be read in its entirety and in light of the circumstances in which it was executed. Def.'s Ex. 9. The legal effect of this instrument was to merely acknowledge an already existing railroad easement.**

9. By April 2004, CSX Transportation ("CSX") had succeeded to Seaboard's ownership interest in the real property underlying the subject corridor. See Def.'s Ex. 4.

**Plaintiffs' Response: Disagree. Plaintiffs disagree with the proposed finding in that it mischaracterizes Seaboard's interest in the right of way and the subsequent interests of CSX and Seminole Gulf Railway.**

**Plaintiffs' Proposed Revision: Prior to April 2004, CSX Transportation ("CSX") and Seminole Gulf Railway ("SGR"), as successors to Seaboard, held an easement to use the subject right of way for the operation of a railroad.**

10. In April 2004, CSX was leasing the subject corridor to Seminole Gulf Railway, L.P. ("SGLR"), and SGLR was the owner of the physical assets on the subject corridor. See Def.'s Ex. 4.

**Plaintiffs' Response: Agree.**

## II. Proceedings Before the STB and the Transfer of the Subject Corridor

11. On December 15, 2003, SGLR filed a Petition for Exemption of Abandonment with the Surface Transportation Board ("STB") seeking "an exemption" to allow it to "abandon 12.43 miles of railroad located in Sarasota County, Florida." Def.'s Ex. 5.

**<u>Plaintiffs' Response</u>: Agree.**

12. SGLR, rather than CSX, filed the request for exemption because, as the lessee of the trackage on the corridor, it held a common carrier obligation to maintain service on the line. <u>See</u> Def.'s Ex. 4.

**<u>Plaintiffs' Response</u>: Agree.**

13. On January 20, 2004, Sarasota County filed a request for a NITU permitting interim trail use/rail banking under the Trails Act. Def.'s Ex. 4.

**<u>Plaintiffs' Response</u>: Agree.**

14. Sarasota County worked with the Trust for Public Land ("TPL") during the course of the STB process. <u>See</u> Def.'s Ex. 6.

**<u>Plaintiffs' Response</u>: Disagree. Plaintiffs disagree with this proposed finding because it mischaracterizes the relationship between Sarasota County and The Trust for Public Land.**

**<u>Plaintiffs' Proposed Revision</u>: The Trust for Public Land obtained what, if any, interest it could claim in the subject railroad corridor pursuant to a quit claim deed from CSX that was executed pursuant to the federal Trails Act. The Trust for Public Land entered into an agreement with Sarasota County by which The Trust for Public Land agreed to convey to Sarasota County whatever interest it acquired in the former CSX right of way, which agreement contained the express provision**

**that, "Purchaser acknowledges that certain portions of the Property may be subject to reversionary interests of adjacent property owners and that such interests shall not be treated as title objections under this Agreement."** ***See*** **Def.'s Ex 6.**

15. On April 2, 2004, the STB issued the NITU at the request of Sarasota County, which allowed the County and SGLR to negotiate an agreement for railbanking and interim trail use pursuant to the Trails Act. See Def.'s Ex. 4.

**Plaintiffs' Response: Agree. But, Plaintiffs note that the NITU also authorized The Trust for Public Land to negotiate an agreement for interim trail use.**

16. On September 28, 2004, TPL and Sarasota County reached a Purchase and Sale Agreement that bound TPL to seek a purchase of the subject corridor and then sell the corridor to Sarasota County. Def.'s Ex. 6.

**Plaintiffs' Response: Plaintiffs agree that an agreement was reached between TPL and Sarasota. However, the terms of the agreement and the parties' legal obligations according to this agreement are defined by the terms of that agreement which is attached as Def's Ex. 6. The agreement included the provision that "Purchaser [Sarasota County] acknowledges that certain portions of the Property may be subject to reversionary interests of adjacent property owners and that such interests shall not be treated as title objections under this Agreement." Def's Ex. 6, p. 5.**

**Plaintiff's Proposed Revision: On September 28, 2004, TPL and Sarasota County reached a Purchase and Sale Agreement pursuant to the federal Trails Act, which included the provision that the "Purchaser [Sarasota County] acknowledges that certain portions of the Property may be subject to reversionary interests of adjacent**

**property owners and that such interests shall not be treated as title objections under this Agreement." Def's Ex. 6.**

17. The Purchase and Sale Agreement became the "interim trail use agreement" and provided that the corridor "remain[ed] subject to the jurisdiction of the STB for purposes of reactivating rail service." Def.'s Ex. 6.

**Plaintiffs' Response: Plaintiffs agree that the Purchase and Sale Agreement includes the quoted language.**

18. On December 20, 2004, CSX and the Trust for Public Land ("TPL") reached an agreement. See Def.'s Ex. 3.

**Plaintiffs' Response: Disagree. Defendant's Exhibit 3 is a Quit Claim Deed not an "agreement".**

**Plaintiffs' Proposed Revision: On December 20, 2004 CSX executed a Quit Claim Deed . Def.'s Ex. 3**

19. Under the agreement, CSX quitclaimed its interest in the subject corridor to TPL. See Def.'s Ex. 3.

**Plaintiffs' Response: Disagree.**

**Plaintiffs' Proposed Revision: CSX quit claimed to the Trust for Public Land whatever interest it may have had to the right of way.**

20. The agreement between CSX and TPL expressly acknowledged that despite the transfer, the subject corridor remained "subject to the jurisdiction of the STB for purposes of reactivating rail service." See Def.'s Ex. 3.

**Plaintiffs' Response: Plaintiffs agree that the quoted language appears in the quit claim deed, which also noted that the STB's continuing jurisdiction was expressly**

**provided for by reason of the federal Trails Act and not a provision of Florida law or agreement of the parties.**

21. Pursuant to the Purchase and Sale Agreement between Sarasota County and TPL, the subject corridor was later conveyed to Sarasota County. Def.'s Ex. 6.

**<u>Plaintiffs' Response</u>: Plaintiffs agree but clarify that use of the term "conveyed" is not understood to be an acknowledgement that under Florida law the TPL had any interest in the land that it was able to convey to Sarasota County. Subject to this clarification, the Plaintiffs agree that whatever interest TPL may have acquired from CSX was subsequently conveyed by TPL to Sarasota County but, as also provided in the agreement between Sarasota County and TPL, TPL's conveyance to Sarasota County included the provision that "Purchaser [Sarasota County] acknowledges that certain portions of the Property may be subject to reversionary interests of adjacent property owners and that such interests shall not be treated as title objections under this Agreement." Def's Ex. 6, p. 5.**

22. After acquiring the subject corridor, Sarasota County constructed an interim public recreational trail on the property.

**<u>Plaintiffs' Response</u>: Disagree.**

**<u>Plaintiffs' Proposed Revision</u>: After the date of the quit claim deed from The Trust for Public Land to Sarasota County, Sarasota County constructed a public-access recreational trail.**

23. Sarasota County is legally responsible for the corridor until such time as rail service is reintroduced. Def.'s Ex. 6.

**<u>Plaintiffs' Response</u>: Disagree.**

**Plaintiffs' Proposed Revision: Pursuant to the Trails Act, the CSX and Seminole Gulf Railroads are no longer legally responsible for the right of way and Sarasota County is legally responsible for the former railroad right of way until (if ever) the STB authorizes a railroad to establish a new railroad line over the land or until the STB authorizes another trailuser to assume management of the trail or authorizes Sarasota County abandoning recreational trail use without a subsequent trailuser assuming management of the trail. Def's Ex. 6.**

**III. The Named Plaintiffs' Property**

24. The portion of the subject corridor abutting the property owned by Plaintiffs Stephen and Linda Rogers was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Rogers and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: The Rogers own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Stephen and Linda Rogers for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

25. The portion of the subject corridor abutting the property owned by Plaintiffs Dwight and Carolyn Austin was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**<u>Plaintiffs' Response</u>: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Austin's and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**<u>Plaintiffs' Proposed Revision</u>: The Austin's own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Dwight and Carolyn Austin for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

26. The portion of the subject corridor abutting the property owned by Plaintiff Kathy Becker was acquired by Seaboard in the Honore Deed. <u>See</u> Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**<u>Plaintiffs' Response</u>: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. Kathy Becker and her predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**<u>Plaintiffs' Proposed Revision</u>: Plaintiff Kathy Becker owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiff Kathy Becker for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

27. The portion of the subject corridor abutting the property owned by Plaintiffs Donald and Judith Duran was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Duran's and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: The Duran's own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Donald and Judith Duran for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

28. The portion of the subject corridor abutting the property owned by Plaintiff Anne Edwards was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. Plaintiff Anne Edwards and her predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: Plaintiff Anne Edwards owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway**

**acquired the right to use land owned on April 2, 2002 by Plaintiff Anne Edwards for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

29. The portion of the subject corridor abutting the property owned by Plaintiffs Edward and Janice Fatica was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Fatica's and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: The Fatica's own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Edward and Janice Fatica for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

30. The portion of the subject corridor abutting the property owned by Plaintiffs Owen and Laura Harney was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Harney's and their**

**predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**<u>Plaintiffs' Proposed Revision</u>: The Harney's own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Owen and Laura Harney for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

31. The portion of the subject corridor abutting the property owned by Plaintiffs Jan and Karin Heitmann was acquired by Seaboard in the Honore Deed. <u>See</u> Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**<u>Plaintiffs' Response</u>: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Heitmann's and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**<u>Plaintiffs' Proposed Revision</u>: The Heitmann's own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Jan and Karin Heitmann for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

32. The portion of the subject corridor abutting the property owned by Plaintiffs Kenneth and LaOra Miles was acquired by Seaboard in the Honore Deed. <u>See</u> Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Miles's and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: The Miles's own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Kenneth and LaOra Miles for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

33. The portion of the subject corridor abutting the property owned by Plaintiff Denise Rizzo was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Plaintiff Denise Rizzo and her predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: Plaintiff Denise Rizzo owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiff Denise Rizzo for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

34. The portion of the subject corridor abutting the property owned by Plaintiff Sue Wetzell Stitt was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. Plaintiff Sue Wetzell Stitt and her predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: Plaintiff Sue Wetzel Stitt owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiff Sue Wetzel Stitt for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

35. The portion of the subject corridor abutting the property owned by Plaintiffs Egbert and Barbara Von Papen was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Von Papen's and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: The Von Papen's own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway**

**acquired the right to use land owned on April 2, 2002 by Plaintiffs Egbert and Barbara Von Papen for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

36. The portion of the subject corridor abutting the property owned by Plaintiffs Nathan and Deborah Childers was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 ¶ 10(c); Def.'s Ex. 2 at Tab D.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Childers's and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: The Childers's own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Nathan and Deborah Childers for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

37. The portion of the subject corridor abutting the property owned by Plaintiff A. Merle Clark Glueck Trust was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 ¶ 10(c); Def.'s Ex. 2 at Tab D.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Glueck Trust and its**

**predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: The Glueck Trust owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiff Glueck Trust for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

38. The portion of the subject corridor abutting the property owned by Plaintiff Mission Valley Golf and Country Club was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶ 10(e); Def.'s Ex. 2 at Tab F.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. Mission Valley and its predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: Mission Valley owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiff Mission Valley for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

39. The portion of the subject corridor abutting the property owned by Plaintiff Marlin Trusts was acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 ¶ 10(c); Def.'s Ex. 2 at Tab D.

**<u>Plaintiffs' Response</u>: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. The Marlin Trusts and their predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**<u>Plaintiffs' Proposed Revision</u>: The Marlin Trusts own the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiffs Dennis T. and Mary Ann Revocable Trusts for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

40. The portions of the subject corridor abutting the properties owned by Plaintiff Palmer Ranch Holdings, Ltd. were acquired by Seaboard in the Honore Deed. <u>See</u> Def.'s Ex. 2 ¶¶ 10(a), 10(b); Def.'s Ex. 2 at Tab B, Tab C.

**<u>Plaintiffs' Response</u>: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. Palmer Ranch Holdings, Ltd. and its predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**<u>Plaintiffs' Proposed Revision</u>: Palmer Ranch Holdings, Ltd. owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiff Palmer Ranch Holdings, Ltd. for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

41. The portions of the subject corridor abutting the properties owned by Plaintiff McCann Holdings, Ltd. were acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 at ¶¶ 10(c), 10(d); Def.'s Ex. 2 at Tab D, Tab E.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. McCann Holdings, Ltd. and its predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: McCann Holdings, Ltd. owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiff McCann Holdings, Ltd. for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

42. The portions of the subject corridor abutting the properties owned by Plaintiff JMC - Real Estate Holdings, LLC were acquired by Seaboard in the Honore Deed. See Def.'s Ex. 2 ¶¶ 10(d), 10(e), 10(f); Def.'s Ex. 2 at Tab E, Tab F, Tab G.

**Plaintiffs' Response: Disagree. The government misrepresents the interest in the right of way that the Seaboard "acquired". The Seaboard acquired only an easement to use the land for the operation of a railroad. JMC – Real Estate Holdings, LLC and its predecessors in title retained the fee estate ownership of the land upon which this right of way was constructed.**

**Plaintiffs' Proposed Revision: JMC – Real Estate Holdings, LLC owns the land abutting and underlying the former Seaboard Air Line Railway. The Seaboard Air**

**Line Railway acquired the right to use land owned on April 2, 2002 by Plaintiff JMC – Real Estate Holdings, LLC for operation of a railroad. This easement was acquired by the Seaboard pursuant to a grant from Adrian Honore in 1910.**

43. The portion of the subject corridor abutting the property owned by Plaintiff Bird Bay Executive Golf Course, Inc. was granted to Seaboard in the Venice Deed. See Def.'s Ex. 2 at ¶ 11, Tab I.

**Plaintiffs' Response: Disagree.**

**Plaintiffs' Proposed Revision: An instrument executed by the B.L.E. Corporation referenced the already existing railroad right of way. Def.'s Ex. 8. The legal effect of this instrument was to merely acknowledge an already existing railroad easement it did not convey or grant any ownership in the land itself.**

| | |
|---|---|
| Date: August 6, 2008 | LATHROP & GAGE L.C.<br><br>By /s/ Mark F. (Thor) Hearne, II<br>MARK F. (THOR) HEARNE, II<br>LINDSAY S.C. BRINTON<br>MEGHAN S. LARGENT<br>10 South Broadway, Suite 1300<br>St. Louis, MO 63102-1708<br>(314) 613-2500<br>(314) 613-2550 (fax)<br>Thornet@ix.netcom.com<br><br>ATTORNEYS FOR PLAINTIFFS |