**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et al., | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| Plaintiffs, | ) | No. 07-273 L |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| BIRD BAY EXECUTIVE GOLF COURSE, INC., et al., | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| Plaintiffs, | ) | No. 07-426 L |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**UNITED STATES' REPLY MEMORANDUM IN SUPPORT OF ITS CROSS-MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS


I. Introduction . . . . . 1

II. The BLE Deed Conveyed a Fee Simple Absolute Interest and the Honore Deed Conveyed a Fee Simple Determinable Interest . . . . . 2

A. Under Florida Law, a Railroad Generally Acquires Fee Title in a Railroad Corridor . . . . . 3

B. The Court Should Reject Plaintiff Bird Bay's Claim Because the BLE Deed Conveyed a Fee Simple Absolute Interest . . . . . 7

C. The Railroad Acquired Fee Simple Determinable Interest Pursuant to the Honore Deed . . . . . 11

III. Railbanking and Interim Trail Use are Within the Scope of the Railroad's Interest . . . . 13

A. Railbanking is Within the Scope of the Honore Deed . . . . . 13

B. Interim Trail Use is Within the Scope of the Honore Deed . . . . . 16

IV. The Railroad Did Not Abandon its Interest in the Subject Corridor . . . . . 17

V. Conclusion . . . . . 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

Neb. Trails Council v. Surface Transportation Board,
120 F.3d 901 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Preseault v. ICC,
494 U.S. 1 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 15

Preseault v. United States,
100 F.3d 1525 (Fed. Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 9, 13

Rieger v. Penn Central Corp.,
Case No. 85-CA-11, 1985 WL 7919 (Ohio App. 2 Dist. May 21, 1985) . . . . . . . . . . . . 17

Toews v. United States,
376 F.3d 1371 (Fed. Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATE CASES

Atlantic Coast Line Rail Co. v. Duval County,
154 So. 331 (Fla. 1934) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4, 7, 9

Brown v. Young,
69 Iowa 625 (1886) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Dade County v. City of North Miami Beach,
69 So.2d 780 (Fla. 1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 18, 19

Davis v. MCI,
606 So.2d 734 (Fla. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Dean v. MOD Properties,
528 So.2d 432 (Fla. App. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Florida Power Corp. v. M.S. McNeely,
125 So.2d 311 (Fla. 1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

FPC v. Lynn,
594 So.2d 789 (Fla. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 19

Lawson v. Washington,
730 P.2d 1308 (Wash. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Liebowitz v. City of Miami Beach,
592 So.2d 1213 (Fla. App. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 20

Loveland v. CSX Transp., Inc.,
620 So.2d 1120 (Fla. App. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 16, 19

Richardson v. Holman,
33 So.2d 641 (Fla. 1948) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 11

Robb v. Atlantic Coast Line Rail Co.,
117 So.2d 534 (Fla. App. 1960) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

Silver Springs, O. & G.R. Co. v. Van Ness,
34 So. 884 (Fla. 1903) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Van Ness v. Royal Phosphate Co.,
53 So. 381 (Fla. 1910) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 6

Woodlawn Park Cemetery Co. v. City of Miami,
104 So.2d 851, 853 (Fla. App. 1958) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

**FEDERAL STATUTES**

16 U.S.C. § 1247(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14, 15

**STATE STATUTES**

Florida Statute § 362.02 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Revised General Statues of Florida § 4354 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7

Revised Code of Washington § 64.04.180 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**FEDERAL REGULATIONS**

49 C.F.R. § 1152.29(e)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**FEDERAL LEGISLATIVE MATERIALS**

H.R. Rep. 28, 98th Cong., 1st Sess.,
1983 WL 25294 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATE SECONDARY MATERIALS**

Fla. Jur. 2d Railroads § 32 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

## TABLE OF EXHIBITS

| Exhibit Number | Exhibit Description | Bates Range |
|---|---|---|
| Exhibit 10 | Venice Railroad and Depot, available at http://www.hmdb.org/marker.asp?marker=4876 (last visited September 15, 2008). | 0092-0095 |
| Exhibit 11 | Color Copy of Tab I to the Declaration of Cindi A.R. Straup, dated June 2, 2008. | 0096 |

## REPLY MEMORANDUM

### I. Introduction

Defendant, the United States of America, hereby submits this Reply in support of its Cross-Motion for Partial Summary Judgment, dated June 6, 2008 (Docket No. 56) ("United States' Motion"). Plaintiffs filed a Motion for Partial Summary Judgment on November 2, 2007 (Docket No. 23) ("Plaintiffs' Motion"). The parties' cross-motions address liability issues related to 21 named class members ("the Named Representatives").[1] The Named Representatives, like the other class members, own property adjacent to a railroad corridor located in Sarasota County, Florida. The railroad acquired its interest in the portions of the railroad corridor adjacent to the Named Representatives' properties pursuant to two written deeds: (1) a 1927 grant from B.L.E. Realty Corporation to Seaboard Air Line Railway ("Seaboard") (Def.'s Ex. 8) (the "BLE Deed"); and (2) a November 5, 1910 grant from Adrian C. Honore to Seaboard (Def.'s Ex. 7) (the "Honore Deed"). Def.'s Ex. 2 at ¶¶ 10-11 (0009) (Declaration of Cindi A.R. Straup (hereinafter "Straup Decl.").

The Named Representatives allege that the BLE and Honore Deeds conveyed only an easement to Seaboard. The Named Representatives further allege that Seaboard abandoned those easements, pursuant to Florida state law, and that the decision of the Surface Transportation Board ("STB") permitting the "railbanking" of the railroad corridor for future rail use and interim trail use pursuant to the National Trails System Act, 16 U.S.C. § 1247(d) ("Trails Act"), effected a taking of their property interests. The Court should reject these individuals'

[1] Plaintiffs have submitted 334 Entries of Appearance. These individuals' claims are not at issue in these pending cross motions.

claims for the following reasons.

First, the BLE Deed conveyed to Seaboard a fee simple absolute interest in the railroad corridor. Accordingly, the named representative whose property abuts that section of the railroad corridor, Bird Bay Executive Golf Course, Inc. ("Bird Bay"), has no interest in the railroad corridor. On this basis alone, the Court should reject Bird Bay's claims. The claims of the other Named Representatives correspond to the Honore Deed. That deed conveyed to Seaboard a fee simple determinable interest, not an easement as Plaintiffs contend.

Second, pursuant to Florida law, a fee simple determinable interest encompasses the current uses of the railroad corridor (railbanking and interim trail use). Hence, the current uses are within the scope of the railroad's property interest and Plaintiffs' claims must fail.

Third, the railroad has not abandoned the subject corridor. The uncontroverted evidence shows that the railroad declined to abandon its interest in the corridor and decided instead to preserve the corridor for future rail service. Hence, Plaintiffs' property interest – at most an inchoate possibility of reverter – was unaffected by the application of the Trails Act, and a taking did not occur.

## II. The BLE Deed Conveyed a Fee Simple Absolute Interest and the Honore Deed Conveyed a Fee Simple Determinable Interest

The liability issues raised in these pending motions require an interpretation of the two deeds by which the railroad acquired an interest in these sections of the subject railroad corridor. As the Federal Circuit explained, "[i]t is well-established that if the railroad obtained fee simple title to the land over which it was to operate . . . the [abutting landowners] today would have no right or interest in those parcels and could have no claim related to those parcels for a taking."

Preseault v. United States, 100 F.3d 1525, 1533 (Fed. Cir. 1996) (internal quotations omitted). See also Def.'s Mot. at 33.

In its Opening Memorandum, the United States explained that a railroad in Florida generally acquires a fee simple title in a railroad corridor. See Def.'s Mot. at 19-21. In response, Plaintiffs argue that a railroad can never acquire a fee interest. As discussed below, the Court should reject Plaintiffs' argument.

The United States' Opening Memorandum also explained that the Venice Deed and BLE Deed, which are functionally equivalent because they share the same granting language, conveyed a fee simple absolute interest to the railroad, and the Honore Deed conveyed a fee simple determinable interest to the railroad. See id. at 33-34 (discussing Venice and BLE Deeds); id. at 21-24 (discussing Honore Deed). This argument is based on an examination of relevant state law as applied to the particular language of the two deeds. As discussed below, Plaintiffs' argument to the contrary misapprehends these principles.

### A. Under Florida Law, a Railroad Generally Acquires Fee Title in a Railroad Corridor

The Florida Supreme Court has long held that "[a] railroad right of way in [Florida] is not a mere easement or user for railroad purposes. Like other property it is acquired by purchase or condemnation and vests a fee in the company acquiring it which cannot be divested except as the law provides." Atlantic Coast Line Rail Co. v. Duval County, 154 So. 331, 332 (Fla. 1934); Florida Power Corp. v. M.S. McNeely, 125 So.2d 311, 316 (Fla. 1961) ("Ordinarily, a railroad right of way in Florida is not a mere easement or user for railroad purposes but is a fee vested in the railroad."). Accordingly, in the absence of language suggesting a contrary intention, the

grant of a right-of-way to a railroad company vests that company with fee simple ownership. See Atlantic Coast Line, 154 So. at 332; Florida Power Corp., 125 So.2d at 316; see also Def.'s Mot. at 20. If a conveyance document includes a reversionary clause, a railroad may obtain a fee simple determinable interest. See Richardson v. Holman, 33 So.2d 641 (Fla. 1948) (concluding that a railroad grant conveyed a fee simple determinable interest); see also Def.'s Mot. at 21-24.

Plaintiffs argue Florida courts recognize a "fundamental presumption . . . that a railroad's interest in land used for a right of way is only an easement." Plaintiffs' Opposition Memorandum at 19 (hereinafter "Pls.' Opp'n"). Florida recognizes no such principle. After citing an irrelevant Seventh Circuit decision, which does not discuss Florida law,[2] Plaintiffs cite Davis v. MCI, 606 So.2d 734 (Fla. App. 1992), for the proposition that "'railroads ha[ve] no need or desire for any interest except 'right-of-way.''" Pls.' Opp'n at 19-20. Plaintiffs rely on this language to argue that a railroad can never acquire any interest other than an easement. Id. Davis, does not support Plaintiffs' position. Davis involved interpretation of the state telegraph act (Florida Statute § 362.02), not interpretation of a railroad deed. See id. at 738. Indeed, the Davis court explicitly noted that the nature of the railroad's interest "is not dispositve of the controlling legal issue in this case." Id. at 738-39. In addition, the Davis court implicitly recognized that railroads could obtain fee interests, not just easements, when it stated that the "telegraph act would have been entirely futile if it depended on the assumption that all Florida railroads had obtained their rights-of-way years before in fee simple title." Id. at 738 (emphasis

---

[2] Plaintiffs' reliance on court decisions in states other than Florida is misplaced. How other states might interpret other deeds is irrelevant to how the Florida Supreme Court would interpret the two deeds at issue in this briefing. Accordingly, the Court should reject Plaintiffs' entreaties to look outside the law of Florida in construing the conveyances at issue in this case.

added). This language makes clear that the Davis court was aware that some, but not necessarily all, of Florida's railroads did obtain fee simple title to their rights-of-way. For each of these reasons, this Court should reject Plaintiffs' arguments rooted in Davis.

Plaintiffs' next rely on Dean v. MOD Properties, 528 So.2d 432 (Fla. App. 1988) to argue that railroads in Florida only obtain easements in their rights-of-way. See Pls.' Opp'n at 20. Plaintiffs' argument is erroneous. First, Dean did not involve a railroad deed, meaning the case is of limited authority in the instant matter. Moreover, in contrast to the Honroe Deed, the deed at issue in Dean was titled "Road Right-of-Way Easement," a fact the court found significant in assessing the nature of the railroad's interest. See id. at 432 ("The document is titled an easement and expressly provides that the described land was conveyed 'for the full purpose of road right-of-way. . .'"). Furthermore, in subsequent conveyances the interest was explicitly termed an "easement," a word that does not appear in the Honroe Deed. See id. at 432-33 (emphasizing that two later deeds referred to the interest as an "easement"). In fact, Dean supports the United States' argument that Florida's courts only find that an easement has been conveyed when the conveying deed identifies the interest being conveyed as such. See Def.'s Mot. at 23-24. Plaintiffs' reliance on Dean, therefore, is not compelling.

Plaintiffs next rely on Van Ness v. Royal Phosphate Co., 53 So. 381 (Fla. 1910), a case Plaintiffs argue is "of particular relevance." Pls.' Opp'n at 20-21. Plaintiffs' reliance on this case is misplaced, as Van Ness involved a legal issue that is irrelevant in the instant matter. The Van Ness court did not interpret a written railroad deed; indeed, the parties to that case

apparently agreed that the railroad instrument conveyed an easement. See 53 So. at 384.[3] Rather than addressing the nature of the railroad's interest, the Van Ness court considered whether a party violated a warranty clause, where the deed conveying the property did not specifically identify an existing railroad easement that traversed the property. See id. at 381. In addressing the question, the court looked to several cases holding that "the existence of a public road on the land known to the purchase is not such an incumbrance as would constitute a breach of the covenant of warranty." Id. at 382. One of the cases the Florida Supreme Court cited was Brown v. Young, 69 Iowa 625 (1886), an Iowa case holding that the existence of an undisclosed railroad easement "is not a breach of the covenant as to title in a warranty deed subsequently made conveying the land." Van Ness, 53 So. at 382-83; see also Pls.' Opp'n at 21 (Plaintiffs highlighting the Brown citation in support of their position). The Van Ness decision (and the Brown citation) is irrelevant to the issues involved in this case, as the United States is not accused of violating any warranty clause. Plaintiffs' reliance on Van Ness, therefore, is misplaced.

Plaintiffs next argue that Seaboard could only obtain an easement because Florida law required that it hold its real estate holdings "for purposes of such grants only." Pls.' Opp'n at 22

[3] The deed at issue in Van Ness was different from the Honroe Deed. For example, the instrument in Van Ness, unlike the Honroe Deed, included detailed procedures to be followed if the landowner discovered "valuable phosphate beds or deposits along the aforesaid located line." Silver Springs, O. & G.R. Co. v. Van Ness, 34 So. 884, 887 (Fla. 1903). Inclusion of such language suggests that the deed in Van Ness was an easement grant, not a fee grant. Moreover, unlike the Honroe Deed, the Van Ness deed did not include any language of reversion. Compare Silver Springs, O. & G.R. Co., 34 So. at 887 (providing that the grant would be "void and of no effect" if railroad is not built) with Def.'s Ex. 7 at 0084 (providing that "the above described pieces and parcels of land shall *ipso facto* revert to and again become the property of the undersigned"). As discussed above, language of reversion is generally associated with fee simple determinable interests, not easements.

(citing Section 4354, Revised General Statues of Florida ("Section 4354")). Plaintiffs' novel argument finds no support in the caselaw – Plaintiffs do not cite any cases relying on Section 4354 as an interpretive device. In addition, Plaintiffs' argument is unpersuasive – even if Section 4354 was applicable here, the Court would still have to examine the particular grant at issue and determine what the "purpose of such grants" actually was. If the "purpose of such grants" was to convey a fee simple interest, the Court should so hold. Id. Plaintiffs' circular attempt to turn Section 4354 into a limit on the types of interests Florida's railroads can obtain is wholly unpersuasive.

Plaintiffs also contend that because railroads "are vested with the extraordinary ability to exercise eminent domain," the Court should presume that all railroad instruments are easements. Pls.' Opp'n at 23. Again, Plaintiffs' novel argument is offered without any relevant case law in support. In addition, Plaintiffs' argument ignores the fact that the Florida Supreme Court held, in Atlantic Coast Line, that a Florida railroad could obtain fee title to rights-of-way acquired by condemnation. See 154 So. at 332 ("[a] railroad right of way in [Florida] is not a mere easement or user for railroad purposes. Like other property it is acquired by purchase or condemnation and vests a fee in the company acquiring it . . ."). Accordingly, Plaintiffs' argument that "[a]ny voluntary conveyance to Seaboard must be read in context of Seaboard's ability to acquire the right-of-way by eminent domain," Pls.' Opp'n at 23, misses the mark and the Court should reject it.

### B. The Court Should Reject Plaintiff Bird Bay's Claim Because the BLE Deed Conveyed a Fee Simple Absolute Interest

It is undisputed that Plaintiff Bird Bay owns property adjacent to a portion of the rail

corridor that Seaboard obtained pursuant to the BLE Deed. See Straup Decl. at ¶ 11 (0009) (noting that the portion of the corridor abutting Bird Bay's property was granted by BLE); Pls.' Resp. PFOF, Ex. 12 (showing BLE as the grantor of the section of corridor abutting Bird Bay's property). Since the BLE Deed conveyed a fee simple absolute interest to the railroad, Bird Bay has no interest in the railroad corridor. Accordingly, the Court should grant summary judgment in favor of the United States with respect to Plaintiff Bird Bay's claims.

The pertinent facts cannot be disputed. In 1925 the Brotherhood of Locomotive Engineers ("BLE"), acquired land in Sarasota County, and began constructing the new city of Venice, Florida. See Def.'s Ex. 10 at D0093. As part of the new construction, the Venice city planner moved the Seaboard tracks eastward to an industrial section of Venice. Id. This move is reflected on the map attached to the Straup Declaration at Tab I at 0019 (a color copy of this map is attached as Exhibit 11). As noted on this map, and on the Valuation Schedules attached to the United States' Motion as Exhibit 1, Seaboard acquired the land on which the earlier corridor was located "by possession." Def.'s Ex. 2, Tab I at 0019; Def.'s Ex. 1 at 0004-0005. These documents demonstrate that Seaboard acquired its interest in the corridor that was previously the end of the line by adverse possession and explain the lack of a pre-1921 conveyance document that so troubles Plaintiffs. Pls.' Opp'n at 33.

As noted above, in 1925 the Venice city planner decided to relocate Seaboard's line to the east. Def.'s Ex. 10 at 0093. In order to facilitate this track relocation, BLE "granted, bargained, sold, aliened, remised and released . . . unto the said Seaboard Air Line Railway Company, its successors and assigns forever, all of its right, title and interest in and to" the land on which the relocated corridor would sit. Def.'s Ex. 8 at 0087. See also Straup Decl. at ¶ 11;

Pltfs' Resp. PFOF, Exhibit 9 (noting that the Venice Train Depot was "constructed in 1927 . . ."). That this conveyance was intended for the construction of a new set of tracks is confirmed by comparing the language of the BLE Deed which described a "proposed Wye track"with the language of the 1941 Venice Deed, which confirmed this land to Seaboard's receivership, and mentioned a "Wye track," dropping the word "proposed." Compare Def.'s Ex. 8 at 0088 with Def.'s Ex. 9 at 0090.

It is clear that BLE granted to Seaboard a fee simple absolute interest in the corridor that abuts Plaintiff Bird Bay's property and the stretch of the corridor that extends south to the location of the present day wye. See Atlantic Coast Line, 154 So. at 332 ("[a] railroad right of way in [Florida] is not a mere easement or user for railroad purposes. Like other property it is acquired by purchase or condemnation and vests a fee in the company acquiring it which cannot be divested except as the law provides."); Straup Decl. at ¶ 11, Tab I (noting that B.L.E. Corporation granted land to Seaboard in 1927 and showing the relocation of Seaboard's tracks); Pltfs' Resp. PFOF, Exhibit 9 (noting that the Venice Train Depot was "constructed in 1927 . . ."). The deed contains no words of limitation and no words of reversion, and instead unambiguously states that the interest conveyed is the "fee simple, forever." Def.'s Ex. 8 at 0088. The BLE Deed unambiguously conveyed title to the land itself, not a use of the land as one might expect in an easement grant. The BLE Deed acknowledged significant consideration of five dollars and other good and valuable consideration as well. Def.'s Ex. 8 at 0087. Accordingly, because Seaboard "obtained fee simple title to the land over which it was to operate . . . the [abutting landowners] today . . . have no right or interest in those parcels and could have no claim related to those parcels for a taking." Preseault, 100 F.3d at 1533.

Plaintiffs attempt to rebut the plain meaning of the BLE Deed and Venice Deed by arguing that the deeds are irrelevant because, in their view, the deeds merely reaffirm an easement for the southernmost part of the corridor, which Plaintiffs theorize was granted to Seaboard by Honore or one of his successors in interest. See Pls.' Opp'n at 33. Plaintiffs' theory is based on two false premises and should be rejected. Plaintiffs first incorrectly assert that the BLE Deed and Venice Deed were merely reaffirmations of an earlier grant to Seaboard made by Honore. Pls.' Opp'n at 34-35. This is plainly incorrect because, as explained above, Seaboard took possession of the original southernmost portion of its line by adverse possession, not pursuant to any grant by Honore. See Def.'s Ex. 1 at 0004-0005; Def.'s Ex. 11 at 0096. Further rebutting Plaintiffs' claim on this point is the fact that the BLE Deed granted Seaboard a fee simple interest in a new corridor, in a different location, pursuant to the Venice city planner's desire to move Seaboard's tracks eastward. See Def.'s Ex. 10 at 0093.

Plaintiffs' second error is assuming that the southernmost portion of the subject corridor sits today where it sat in 1911. However, as Defendant's Exhibits 10 and 11 make clear, the southernmost portion of Seaboard's tracks is in a different location today than it had been. See Def.'s Ex. 10 at 0092-0093; Def.'s Ex. 11 at 0096. The property described in the BLE Deed granted Seaboard a fee simple interest in a new and different corridor over which to run its line. See id. Even if Plaintiffs were correct in asserting that the southern tip of the corridor was granted to Seaboard by Honore, which they are not, the track is no longer in that location and the theoretical Honore grant is no longer instructive of the interests of property owners adjacent to the relocated portion of the corridor. Accordingly, the unsupported series of events relayed by Plaintiffs – the alleged ownership of the land underlying the current location of the corridor by

Honore, his transfer to the Sarasota-Venice Company and the Sarasota-Venice Company's transfer to Honore Palmer and Potter Palmer – is irrelevant to the current action.

**C. The Railroad Acquired Fee Simple Determinable Interest Pursuant to the Honore Deed**

The claims of the other Named Representatives abut portions of the railroad corridor that correspond with the Honore Deed. Straup Decl. at ¶ 10 (0009). The Honore Deed is substantively identical to the deed at issue in Richardson v. Holman, which the Florida Supreme Court determined conveyed a fee simple determinable interest. Richardson, 33 So.2d at 641-42; see also Def.'s Mot. at 21-22. The deed in Richardson, for example, included the following language of reversion: "should the [grantee] cease to use the foregoing land for railroad purposes, then and in that event the title to said property shall revert and vest in the [grantor] and his heirs and assigns." Richardson, 33 So.2d at 641-42. Similarly, the Honore Deed includes the following reversionary language: "This conveyance is made upon the express condition . . . [that] if at any time thereafter the said Seaboard Air Line Railway shall abandon said land for railroad purposes then the . . . [conveyed] pieces and parcels of land shall ipso facto revert to and again become the property of [Adrian C. Honore] his heirs, administrators and assigns." Def.'s Ex. 7 at 0086 (emphasis in original). The similarity in the two instruments demonstrates that the Florida Supreme Court would determine that the Honore Deed, like the deed construed in Richardson, conveyed a fee simple determinable to Seaboard and not an easement. Accordingly, the Court should conclude that the Honore Deed granted Seaboard a fee simple determinable, not a mere easement.

In their opposition memorandum, Plaintiffs first argue that, despite the similarity in the

language of the deeds, Richardson is inapplicable. See Pls.' Opp'n at 31-32. According to Plaintiffs, since the Richardson court did not engage in a semantic discussion of the differences between different forms of defeasible fees, it did not hold that the conveyance in that case was a fee simple determinable. See Pls.' Opp'n at 31-32. Plaintiffs misread Richardson. In fact the Richardson court squarely held that language similar to the language of the Honore deed created a fee simple determinable. The court stated:

> [T]he final test to determine whether the language in a deed creates an estate upon condition subsequent, or an estate in fee simple determinable, is whether the language used provides for an automatic reverter when the determining event takes place, or whether under the terms used, the grantor and his heirs were clothed with the right to immediately step in and declare a reverter. The language employed in the reservation in the deed to the traction company is consistent with, and we think sufficient to accomplish an automatic reverter.

Richardson, 33 So.2d at 643. In other words, the Richardson court found that the language in the granting deed at issue there – "should the [grantee] cease to use the foregoing land for railroad purposes, then and in that event the title to said property shall revert and vest in the [grantor] and his heirs and assigns" – created an "automatic reverter" and, according to the court, gave rise to a fee simple determinable. Id.

After erroneously accusing the United States of relying on "Magic Words" in its interpretation of the Honore Deed, Plaintiffs next argue that the inclusion of the term "right of way" in the Honore Deed converts the conveyance into an easement, based on Robb v. Atlantic Coast Line Rail Co., 117 So.2d 534 (Fla. App. 1960). See Pls.' Opp'n 24-25. Plaintiffs misinterpret Robb. The Robb court stated clearly that use of the language for "right of way purposes" in a deed is "merely declaratory of the use contemplated of the land," and does not limit the estate conveyed. 117 So.2d at 537. Accordingly, the United States correctly stated in

its opening memorandum, and this Court should hold, that under Florida law the inclusion of the words "right-of-way" in a deed is of little significance.

## III. Railbanking and Interim Trail Use are Within the Scope of the Railroad's Interest

On the portions of the corridor in which Seaboard acquired a fee simple determinable, the question of liability turns first on whether the uses of those portions of the corridor authorized by the Trails Act – railbanking and interim trail use – are permissible uses under Florida state law. See Preseault v. ICC, 494 U.S. 1, 8 (1990) ("State law generally governs the disposition of reversionary interests . . . "). As the Federal Circuit explained in Preseault v. United States, ""if the terms of the [railroad interest] when first granted are broad enough under then-existing state law to encompass trail use, the servient estate holder would not be in a position to complain about [that use]." 100 F.3d 1525, 1552 (Fed. Cir. 1996). As discussed below, railbanking and interim trail use are within the scope of the uses permitted under the Honore Deed.[4]

### A. Railbanking is Within the Scope of the Honore Deed

Florida courts have never passed judgment on the issue of whether railbanking is a railroad purpose.[5] However, in Loveland v. CSX Transp., Inc., the Florida Court of Appeals stated that, under Florida law, a "'railroad purpose' is one which is primarily for the benefit of the public, and not a private individual." 620 So.2d 1120, 1122 (Fla. App. 1993) (emphasis

---

[4] Plaintiffs' response to the United States' argument conflates railbanking and interim trial use. Although the two uses are connected, as discussed below, Plaintiffs' failure to distinguish between the two uses renders their argument fundamentally flawed.

[5] Although Plaintiffs complain that the United States' argument lacks adequate discussion of Florida law, Plaintiffs support their argument in this regard with citations to works of fiction. See Pls.' Opp'n at 47-48. One certainly hopes that the words of Humpty Dumpty are not considered binding authority by Florida courts.

added); see also Fla. Jur. 2d Railroads § 32 ("a railroad right of way is private property dedicated to a public use."). Railbanking is hardly some foreign concept, as Plaintiffs contend. See Pls.' Opp'n at 44-48. Instead, the term "railbanking" refers to the "preservation of railroad corridor for future rail use." Neb. Trails Council, 120 F.3d at 903 n.1. Railbanking serves a public, railroad purpose because the railbanking mechanism furthers "the national policy to preserve established railroad rights-of-way for future reactivation of rail service" and protects rail transportation corridors. 16 U.S.C. § 1247(d) (emphasis added). During the term of the NITU, the railroad corridor remains available for future reintroduction of rail service, and is preserved for that purpose.

Plaintiffs respond that railbanking is not within the scope of the Honroe Deed because the instrument only permits active railroad activities. See Pls.' Opp'n at 47. According to Plaintiffs, it is "absurd to contend that 'railbanking' is a use intended by Adrian Honore" because the Honore Deed "expressly mandated that the railroad must be constructed and operation begun within one year or lose the right to use his land." Id. The one-year requirement supports the United States' position, not Plaintiffs. As Plaintiffs note, the Honroe Deed required Seaboard to begin construction and operation of its railroad within one year of executing that agreement. Def.'s Ex. 7 at 0086. However, the Honore Deed, which contains a specific "start-by date" and specific reversionary interest, should not be read to include an unexpressed requirement that one year of inactivity on the line activates the clearly expressed reversionary clause. Rather, under Florida law which construes deed restrictions strictly against the grantor, the Court should eschew Plaintiffs' attempts to add a veneer on this otherwise clear deed. See FPC v. Lynn, 594 So.2d 789, 792-93 (Fla. App. 1992) (citing Dade County v. City of North Miami Beach, 69

So.2d 780 (Fla. 1953) (holding that reversion clauses providing for the termination of an interest in land are disfavored and should be construed strictly against the grantor).

Plaintiffs next point to the legislative history of the Trails Act provision at issue and contend that 16 U.S.C. § 1247(d) was enacted "because Congress understood that 'railbanking' and recreational trail use were not a 'railroad purpose' under state law." Pls.' Opp'n at 48-52. There is no support for Plaintiffs' novel theory. Plaintiffs imply that this legislation was drafted because railbanking and interim trail use were not recognized under any state law, and then make an unsupported leap in logic by concluding that the enactment of this section is proof that not a single railroad deed is broad enough to encompass railbanking or recreational trail use. Id. at 49-51. Plaintiffs' circular argument is inconsistent with the Supreme Court review of the legislative history of this statute, which concluded that railbanking and interim trail use would not always result in a taking. See Preseault v. ICC, 494 U.S. at 16 ("under any view of takings law, only some rail-to-trail conversions will amount to takings [because some rights-of-way] are held as easements that do not even as a matter of state law revert upon interim use as nature trails"); id. at 16 n.9 (noting that some state courts have held that trail use of railroad easements "does not constitute abandonment of a right-of-way for public travel so as to trigger reversionary rights"). Moreover, railroads have always had the right to retain and hold their rights-of-way for future active rail use under both state and federal regulatory law. Under federal law, even before the enactment of Section 1247(d), railroads could apply for a discontinuance, which would allow it "to cease operating for an indefinite period while preserving the rail corridor for possible reactivation of service in the future." Preseault v. ICC, 494 U.S. at 6 n.3. Likewise, under Florida law, the holder of an easement does not lose its easements during a period of non-use.

See, e.g., FPC v. Lynn, 594 So.2d 789 (Fla. App. 1992)(holding that non-use of power lines did not cause abandonment of easement); Dade County, 69 So.2d at 783 (holding that failure to develop granted land into a park for seventeen years was not sufficient to find an abandonment).

The Court should hold that railbanking is within the purpose of the Honore Deed.

**B. Interim Trail Use is Within the Scope of the Honroe Deed**

Interim trail use under the Trails Act furthers and serves the original purpose of the railroad's interest by allowing the railroad to preserve the corridor for future rail service. The Trails Act authorizes interim trial use so that the trail sponsor can assume management responsibility, tax and cost obligations, and legal liability for the corridor during the duration of the railbanking period. Relieving the railroads of such responsibilities and costs during the railbanking period encourages railroad companies to preserve their railroad corridors so that those corridors are available for future rail use. See H.R. Rep. 28, 98th Cong., 1st Sess., 1983 WL 25294 (1983) (stating that the Trails Act "will protect railroad interests by providing that the right-of-way can be maintained for future railroad use even though service is discontinued and tracks removed, and by protecting railroad interests from liability or responsibility in the interim period."). Accordingly, interim trail use pursuant to the Trails Act has a nexus to, and furthers, a public, railroad purpose.

In their opposition, Plaintiffs rely on the Loveland court's citation to Lawson v. Washington, 730 P.2d 1308 (Wash. 1986), as evidence that interim trail use is outside the scope of the Honroe Deed. See Pls.' Opp'n at 39. Plaintiffs' argument is not persuasive. Loveland involved trail use accomplished under a Washington state trail conversion statute, not the federal Trails Act. The trail use at issue in Lawson was not railbanked, there was no possibility of future

rail use, and the authorized trail use was not connected to any possible future rail activities. See RCWA 64.04.180 (West 2005). Thus, unlike the trail use evaluated by the Loveland court, which was not so intertwined with a railroad purpose, the trail use in this case serves a railroad purpose and is within the scope of the grant in the Honore deed.

Plaintiffs next contrast dictionary definitions of "railroad" and "trail use" to suggest that interim trail use is not a railroad purpose. See Pls.' Opp'n at 44-47. Plaintiffs' argument misses the mark. The correct inquiry is whether, under Florida state law, interim trail use exceeds the scope of the interests acquired by Seaboard pursuant to the Honroe Deed. This can be determined, not by looking at dictionary terms, but only through an analysis of the specific conveyance instruments under applicable Florida state law.[6]

The Court should reject Plaintiffs' arguments and hold that trail use is within the scope of the Honore Deed.

## IV. The Railroad Did Not Abandon its Interest in the Subject Corridor

Since the Honore Deed conveyed a fee simple determinable interest to Seaboard,

---

[6] Plaintiffs concede that Florida state law controls, but continue to rely heavily on decisions that involved the interpretation of specific deeds under the law of different states. See Pls.' Opp'n at 40-44. Those decisions do not control the outcome here. Plaintiffs' assertion that "every court" has "consistently and repeatedly rejected" the argument that railbanking and/or interim trail use are permissible uses of railroad easements is misleading and incorrect. Pls.' Opp'n at 40-41. As noted above, the court decisions that Plaintiffs rely on involve the interpretation of specific deeds under the laws of other states. In addition, the court decisions have been mixed on this issue precisely because the laws of each state, as they apply to the specific conveyance instrument in question, differ. Compare Toews v. United States, 376 F.3d 1371, 1380 (Fed. Cir. 2004) (holding that railroad easements under California law were not broad enough to encompass railbanking and trail use) with Rieger v. Penn Central Corp., Case No. 85-CA-11, 1985 WL 7919, * at 5 (Ohio App. 2 Dist. May 21, 1985) ("Following a thorough review of the rationale underlying these cases and based upon Ohio statutory authority, we hold that conveyance of a railroad right-of-way to the State of Ohio for use as a recreation trail does not constitute an abandonment of the right-of-way for public travel.") (emphasis added).

Plaintiffs, as successor-in-interest to the original landowners, had, at most, an inchoate future interest (a possibility of reverter). Under the unambiguous language of the Honore Deed, Plaintiffs' possibility of reverter is triggered only if the railroad "shall abandon said land for railroad purposes. . . ." Def.'s Ex. 7 at 0086. The railroad has never abandoned its land for railroad purposes. In fact, the railroad expressly decided not to abandon its property interest, and decided instead to preserve the property for future rail service by railbanking the corridor pursuant to the Trails Act. See Def.'s Mot. at 29-33. Therefore, Plaintiffs' inchoate future interests were never triggered, and the STB's issuance of the NITU did not effect a taking of Plaintiffs' properties.

In Florida, "abandonment is a question of intent and he who asserts it, has the burden of proving it." Dade County v. City of North Miami Beach, 69 So.2d 780, 783 (Fla. 1954). Moreover, the party asserting abandonment must "demonstrate that there was a 'clear affirmative intent to abandon'" the easement. Liebowitz v. City of Miami Beach, 592 So.2d 1213, 1214 (Fla. App. 1992) (citing Woodlawn Park Cemetery Co. v. City of Miami, 104 So.2d 851, 853 (Fla. App. 1958)). Mere non-use of an easement is not sufficient to demonstrate an intent to abandon, but it can be evidence of such intent. Dade County, 69 So.2d at 783. Further, the removal of structures from an easement is not sufficient, standing alone, to demonstrate an intent to abandon where the easement is still used for its contemplated purpose. Liebowitz, 592 So.2d at 1214 (holding that removing the concrete from a sidewalk was insufficient to demonstrate abandonment of an easement for "street and sidewalk purposes."). In sum, in order to demonstrate that the corridor has been abandoned under Florida law, Plaintiffs must show a clear intent by the railroad to abandon and actions evidencing such intent. Plaintiffs failed to make

such a showing.

First, Plaintiffs claim that the filing by Seaboard's successor in interest, Seminole Gulf Railway, L.P. 's ("SGLR"), of an application with the STB seeking authority to abandon and the STB's granting of the requests are actions indicative of the railroads' intent to abandon. Pls.' Opp'n at 54. As explained in the United States' Motion, the fact that the railroad participated in regulatory abandonment proceedings before the STB only demonstrates that it requested authorization to cease active rail service on the lines. Def.'s Mot. at 29-30. Such action is a necessary step before the railroad can enter into a trail use agreement to preserve the right-of-way for future rail use. Id. at 29-31. If the railroad truly intended to abandon the rights-of-way, it would have taken the extra step of consummating the abandonment by filing a "notice of consummation," which is required to abandon these rail lines permanently. See 49 C.F.R. § 1152.29(e)(2). The railroad did not do so here.

Second, the Plaintiffs claim that because the rights-of-way have not had active rail service for a number of years, the railroad has abandoned the rights-of-way. Pls.' Opp'n at 55. The Court should reject this argument because it is without question under Florida law that mere non-use without more does not constitute abandonment. See, e.g., FPC v. Lynn, 594 So.2d 789 (Fla. App. 1992) (holding that non-use of power lines did not cause abandonment of easement); Dade County, 69 So.2d at 783 (holding that mere non-use of an easement is insufficient to demonstrate an intent to abandon). See also Def.'s Mot. at 32-33.

Third, Plaintiffs appear to argue that because there has been a physical alteration to the rail line, such as removing the rails and ties, the railroad intended to permanently abandon the corridor. Pls.' Opp'n at 54. However, under Florida law, removal of rails and ties alone, while the corridor remains subject to the railroad purpose of railbanking is not enough to demonstrate a

clear intent to abandon. See, e.g., Liebowitz, 592 So.2d at 1214 (holding that removal of a sidewalk was insufficient to demonstrate a clear intent to abandon when the easement at issue was still used by the public for walking). See also Def.'s Mot. at 32-33.

The remainder of Plaintiffs' argument about the abandonment issue focuses on Loveland. Pls.' Opp'n at 55-59. For the reasons discussed above in Section III.A, Plaintiffs' arguments rooted in Loveland miss the mark because that case did not involve or discuss a railbanked corridor. Moreover, it is notable that Plaintiffs do not discuss or even attempt to rebut any of the Florida case law on abandonment put forward by the United States in its opening memorandum. See Def.'s Mot. at 28-33. As we made clear in that memorandum, Florida law puts on Plaintiffs the burden of demonstrating that there was a "clear affirmative intent to abandon" the corridor. Liebowitz, 592 So.2d at 1214 (internal quotations omitted). Plaintiffs' reliance on the SGLR's participation in the Surface Transportation Board's regulatory process, which allowed for the continuing use of the corridor for a railroad purpose rather than abandonment, is insufficient to demonstrate such an intent. See Def.'s Mot. at 32 ("Here, SGLR and CSX chose not to exercise their abandonment authority. Instead, the railroads agreed to the issuance of a NITU and subsequently entered into railbanking and interim trail use agreements with qualified trail sponsors. See Def.'s Ex. 4 at 0044-0045. As a result, the railroads do not have a "clear affirmative intent" to abandon, but rather have acted to preserve the right-of-way.

In sum, as made clear in the United States' Motion, Def.'s Mot. at 29-33, Plaintiffs have failed to demonstrate that the rail corridor has been abandoned. Thus, the Court should grant the United States' Motion on this issue.

## V. Conclusion

For the reasons discussed above, the Court should hold that the BLE Deed granted a fee

simple absolute interest to Seaboard, that railbanking and interim trail use are within the scope of the Honore deed and that the subject corridor has not been abandoned. Furthermore, the United States respectfully requests that the Court grant the United States' Motion and deny Plaintiffs' Motion.

Respectfully submitted this 15th day of September, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

s/ Mark T. Romley
Mark T. Romley
William Shapiro
Trial Attorneys
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0458
Fax: (202) 305-0506

Counsel for the United States

Of Counsel:
Evelyn Kitay
Surface Transportation Board
Washington, DC