**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| STEPHEN J. ROGERS, et al., | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| Plaintiffs, | ) | |
| | ) | No. 07-273 L |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

| | | |
|---|---|---|
| BIRD BAY EXECUTIVE GOLF COURSE, INC., et al., | ) | |
| | ) | Hon. Mary Ellen Coster Williams |
| Plaintiffs, | ) | |
| | ) | No. 07-426 L |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**UNITED STATES' RESPONSE TO PLAINTIFFS' PROPOSED FINDINGS OF UNCONTROVERTED FACTS IN RESPONSE TO GOVERNMENT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56(h)(1) of the Rules of the Court of Federal Claims, Defendant hereby responds to Plaintiffs' Proposed Findings of Uncontroverted Fact (Doc. No 67).

**A. The conveyance from Adrian C. Honore on November 5, 1910 to the Seaboard Air Line Railway pertains to all named Plaintiffs in *Rogers* and *Bird Bay*, with the exception of Bird Bay Executive Golf Course.**

RESPONSE: Agreed.

1. The parties agree that in 1910, Adrian C. Honore granted a railroad right of way to the Seaboard Air Line Railway. (A copy of this conveyance is attached as Tab 1). *Bird Bay*, Govt's Responses to Plaintiffs' Proposed Findings of Uncontroverted Fact ("PFUF"), p. 2-3; *Rogers*, Govt's Responses to P's PFUF, p. 2-3.

RESPONSE: Agreed.

2. The parties disagree whether this right of way conveyed by Honore "crosses over" or "abuts" the land now owned by the named Plaintiffs. *Bird Bay*, Govt's Responses to Plaintiffs' Proposed Findings of Uncontroverted Fact ("PFUF"), p. 8-30; *Rogers*, Govt's Responses to P's PFUF, p. 7-32.

RESPONSE: Defendant does not dispute that the parties disagree on this point.

3. For all named Plaintiffs in *Bird Bay* (with the exception of Bird Bay Executive Golf Course), the parties agree that the conveyance from Honore is the applicable conveyance that created the section of the right of way "crossing over" or "abutting" the Plaintiffs' land. *Bird Bay*, Govt's Responses to P's PFUF, p. 8.

RESPONSE: Defendant agrees that the Honore Deed is applicable to all Bird Bay Plaintiffs except Bird Bay. Defendant disagrees that the parties agree that the Bird Bay Plaintiffs' property "cross[es] over" the subject corridor, but does not dispute that the Bird Bay Plaintiffs own

property abutting the subject corridor.

4. For all named Plaintiffs in *Rogers* (with the exception of Mission Estates Homeowners' Association, Inc.), the parties agree that the instrument from Honore is the instrument that created the section of the right of way "crossing over" or "abutting" the Plaintiffs' land. *Rogers*, Govt's Responses to P's PFUF, p. 7.

RESPONSE: Defendant agrees that the Honore Deed is applicable to all Rogers Plaintiffs. Defendant disagrees that the parties agree that the Rogers Plaintiffs' property "cross[es] over" the subject corridor, but does not dispute that the Rogers Plaintiffs, other than Mission Estates, own property abutting the subject corridor.

5. *Rogers* Plaintiff, Mission Estates Homeowners Association, Inc. ("Mission Estates"), acquired title to its property on March 17, 2000 by the Indenture recorded in the Sarasota County Recorder of Deeds' Office by Instrument Number 2000035024 and the Plat recorded in the Sarasota County Recorder of Deeds' Office as Plat Book 39 Page 6. (A copy of the Indenture by which Mission Estates acquired its property is attached as Tab 2 and a copy of the Plat is attached as Tab 3.)

RESPONSE: Defendant does not dispute that the document attached at Tab 2 evidences a transfer of property from Mission Estates, Inc. to Mission Estates Homeowners Association, Inc. on May 178, 2000. Defendant does not dispute that the document attached at Tab 3 is a plat for Mission Estates Unit One.

6. The Honore instrument was the instrument that created the right of way now abutting the land owned by Mission Estates Homeowners Association and the Indenture and Plat by which Mission Estates acquired its property. (See Tabs 2 and 3).

RESPONSE: Defendant agrees only that the Honore Deed is the relevant conveyance for the portion of the subject corridor depicted in Tab 3.

B. The Bird Bay chain of title shows that the railroad right of way was established and in existence more than a decade before the 1927acknowledgment of the right of way by B.L.E. Realty and the 1941acknowledgement of the right of way by Venice-Nokomis Holding Corp.

RESPONSE: This assertion is unsupported and Defendant disputes it.

7. On May 31, 1910, J.H. Lord and his wife, Frane W. Lord, conveyed a fee simple estate to A. Honore. (A copy of this Indenture recorded in the Manatee County Recorder of Deeds' Office in Book 20, Page 572 is attached as Tab 4.) This conveyance did not mention any railroad right of way or other interest of the Seaboard Air Line Railway.

RESPONSE: Defendant agrees only that the document at Tab 4 is a copy of a conveyance from the Lords to A. Honore.

8. On October 2, 1911, Adrian C. Honore conveyed a fee simple estate to the Sarasota-Venice Company. Adrian C. Honore was president of the Sarasota-Venice Company. (A copy of the Indenture recorded in the Manatee County Recorder of Deeds' Office in Book 29, Page 82 is attached as Tab 5.) This indenture did not mention any railroad right of way or other interest of the Seaboard Air Line Railway.

RESPONSE: Defendant agrees only that the document at Tab 5 is a copy of a conveyance from the Adrian C. Honore to Sarasota-Venice Company.

9. On June 20, 1921, the Sarasota-Venice Company conveyed a fee simple estate to Honore Palmer and Potter Palmer. (A copy of the instrument is recorded in Sarasota County Deed Book 10, Page 40 is attached as Tab 6.)

RESPONSE: Defendant agrees only that the document at Tab 6 is a copy of a conveyance from Sarasota-Venice Company to Honore Palmer and Potter Palmer.

10. The 1921 deed from Adrian Honore, as president of the Sarasota-Venice Company, to the Palmers conveyed a portion of the larger tract of property owned by Sarasota-Venice Company and included the statement that the land conveyed was subject to the existing Seaboard right of way and the deed references the right of way in its legal description as already being in existence. To wit: "West of the R R right of way and North of Venice Bay." (See Tab 6).

RESPONSE: Defendant agrees only that the document at Tab 6 mentions the Seaboard right-of-way and references property west of a railroad right of way.

11. There is no instrument prior to the June 20, 1921 conveyance from Sarasota-Venice Company to the Palmers that references the Seaboard Air Line Railway right of way. (The Plaintiffs have not located any such instrument in the chain of title and the government has not presented any such instrument.)

RESPONSE: Agreed.

12. The railroad line between Venice and Sarasota was in operation in 1911. According to the Sarasota County Government History Center, on October 27, 1911 “An early train wreck - the Seaboard train from Venice strikes several cows as it enters the corporate limits of town, suffering derailment.” (http://www.scgov.net/CommunityServices/HistoryCenter/Historic_Sarasota/timeline2.asp (last accessed, August 6, 2008)).

RESPONSE: Defendant agrees only that Plaintiffs accurately quote the listed website.

C. The original Seaboard Air Line Railway right of way has since been abandoned and is currently being used by Sarasota County as a paved hiking and biking trail.

RESPONSE: The legal conclusion that an abandonment of the subject corridor has occurred is not appropriately presented as a proposed finding of fact.

13. "Pursuant to Sarasota County Ordinance No. 07-102, The Legacy Trail is a public greenway Trail and is considered park land." See Tab 7, Resolution of the Board of County Commissioners of Sarasota County, Florida, Resolution No. 2008.

RESPONSE: Defendant agrees only that Plaintiffs accurately quote the document located at Tab 7.

14. "In December 2006, Gibbs & Register Inc. of Winter Haven was awarded the contract to design and build the rails-to-trails project along the former railroad corridor connecting Sarasota to Venice.” See Tab 8, "The Legacy Trail, Sarasota County Rails-to-Trails Project," September

2007. "Design was completed in May 2007." See id.

RESPONSE: Defendant agrees only that Plaintiffs accurately quote the document located at Tab 8.

15. "Seven trail head connections are included in the construction of the 10.6 miles of trail. Access at the intersecting streets and crossing signals and/or flashing beacons are also included." See id.

RESPONSE: Defendant agrees only that Plaintiffs accurately quote the document located at Tab 8.

16. "Conduit for communication lines, force main and reuse water main are included for portions of the trail." See id.

RESPONSE: Defendant agrees only that Plaintiffs accurately quote the document located at Tab 8.

17. There are several other utilities planned for the trail. ("Telecommunication conduits are planned for the entire length of the trail. A force main is planned from Bay Street to the Central County Water Reclamation Facility off McIntosh Road. A reuse water main is planned for Central Sarasota Parkway to the water reclamation facility.") See id.

RESPONSE: Defendant agrees only that Plaintiffs accurately quote the document located at Tab 8.

18. Sarasota County is planning to add a concession stand to the southern trailhead of The Legacy Trail.1 See Tab 9, "County Seeking Concessionaire for Venice Train Depot," scgovNEWS, April 8, 2008.

RESPONSE: Defendant agrees only that Plaintiffs accurately quote the document located at Tab 9.

19. Sarasota County intends to convert Venice Train Depot into a concession stand. See id.

RESPONSE: Defendant disputes that the Venice Train Depot will be converted to a concession stand. The document located at Tab 9 clearly states that Sarasota County is looking for a "mobile refreshment cart and bicycle rental business." Pls.' Resp. PFOF, Tab 9.

20. As part of the construction of The Legacy Trail, "six of the eight trestles along the trail also are being replaced or repaired as part of the $14.7 million construction project." *See* Tab 10, "Paving of The Legacy Trail Begins Next Week," scgovNEWS, Jan. 11, 2008.

RESPONSE: Defendant agrees only that Plaintiffs accurately quote the document located at Tab 10.

**D. Neither Seminole Gulf Railroad, CSX, nor any other railroad has paid property taxes on the right of way since the right of way was conveyed to Sarasota County for use as a public-access recreational trail.**

RESPONSE: Defendant disputes this unsupported proposed finding of uncontroverted fact.

21. The 12.43 mile long abandoned right of way which is now "The Legacy Trail" is comprised

of fourteen parcel identification numbers (0134-01-0003, 0162-07-0005, 0405-03-0021, 0427-05-0012, 0429-01-0027, 0140-01-0003, 0382-13-0006, 0164-01-0010, 0153-03-0002, 0151-00-2020, 0407-02-0005, 0138-01-0002, 0383-04-0008, 0121-01-0002).

RESPONSE: Defendant disputes this unsupported proposed finding of uncontroverted fact.

22. Sarasota County shows itself as the party responsible for any tax obligation for each of these fourteen parcel identification numbers which comprises The Legacy Trail. (As a government entity Sarasota County is exempt from the obligation to pay itself real estate taxes.)(*see* Tab 11, the property tax receipts for each of the fourteen parcel identification numbers showing Sarasota County as the legal entity responsible for the property taxes for each parcel).

RESPONSE: Defendant agrees only that the documents attached at Tab 11 reflects the ownership of fourteen parcels of property by Sarasota County.

23. No railroad, including Seminole Gulf and CSX, has paid property taxes on any part of the abandoned railroad right of way since the property was conveyed to The Trust for Public Land, and subsequently, Sarasota County. See id.

RESPONSE: Defendant disputes this unsupported proposed finding of uncontroverted fact.

**E. The location of each Plaintiff's property relative to the right of way and the instrument by which the relevant segment of the right of way was created.**

RESPONSE: No response necessary.

24. Wilson Miller, a Sarasota Florida land surveying and mapping firm, has prepared maps accurately showing the location of each Plaintiff's land relative to the portion of the former Seaboard right of way and referencing the instrument by which the respective segment of the right of way was established or acknowledged in the chain of title. These maps are attached as Tab 12.

RESPONSE: No response necessary.

Respectfully submitted this 15th day of September, 2008,

RONALD J. TENPAS
Assistant Attorney General
Environment and Natural Resources Division

s/ Mark T. Romley
Mark T. Romley
Trial Attorney
Natural Resources Section
Environment & Natural Resources Division
United States Department of Justice
P. O. Box 663
Washington, D.C. 20044-0663
Telephone: (202) 305-0458
Fax: (202) 305-0506

Counsel for the United States