# In the United States Court of Federal Claims

No. 07-273L
No. 07-426L
No. 08-198L
No. 10-187L
No. 10-200L

(Filed: February 24, 2011)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **STEPHEN J. ROGERS, et al.,** \* | |
| \* | **Fifth Amendment Taking; Motion to** |
| **Plaintiffs,** \* | **Strike Expert Testimony; RCFC 26;** |
| \* | **RCFC 37; Adequate Disclosure of** |
| **v.** \* | **Damages in Expert Report and at** |
| \* | **Deposition.** |
| **THE UNITED STATES,** \* | |
| \* | |
| **Defendant.** \* | |
| \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Mark (Thor) Hearne, II, Lindsay Brinton, and Meghan Largent, Arent Fox LLP, 112 S. Hanley Drive, Suite 200, Clayton, MO 63105, for Plaintiffs.

Carol Draper and William Shapiro, United States Department of Justice, 601 D. Street, N.W., Room 3114, Washington, D.C. 20530, for Defendant.

---

### MEMORANDUM OPINION AND ORDER DENYING MOTION TO STRIKE EXPERT TESTIMONY

---

**WILLIAMS**, Judge.

This Fifth Amendment takings case comes before the Court on Defendant's motion to strike portions of the testimony of Plaintiffs' real estate appraisal expert, Chad Durrance, proffered at the valuation trial of the McCann North property.[1]  The Government moves to strike "all testimony incorporating the costs of constructing berms and access roads in calculating the value of the subject property."  Def.'s Mot. to Strike at 1.  Defendant contends that Plaintiffs

---

[1] By agreement of the parties, the September 9-10, 2010 valuation trial was confined to one property although the parties exchanged appraisal reports for eight properties in May of 2010.

1

failed to disclose Mr. Durrance's methodology and supporting data for including these costs as damages before trial.

Upon review of the motion papers, Mr. Durrance's appraisal report, and his deposition and trial testimony, the Court finds that Plaintiffs adequately disclosed information regarding Mr. Durrance's methodology in calculating the access and buffering costs. As such, Defendant's motion to strike is denied.

## Background

On November 23, 2009, the Court found the Government liable for the taking of eight properties and granted in part Plaintiffs' motions for partial summary judgment in Rogers v. United States, No. 07-273L, and Bird Bay v. United States, No. 07-426L. Rogers v. United States, 90 Fed. Cl. 418, 434 (2009).

On May 28, 2010, the parties exchanged appraisal reports for the McCann North property and seven other properties. Plaintiffs' expert appraiser, Chad Durrance, defines the McCann North property as "306.256 acres of vacant pasture land located at the southern terminus of Honore Avenue, adjacent to the Palmer Ranch DRI, Sarasota County, Florida." Durrance Rep. at 2; see also Durrance Dep. Tr. 8-9. In calculating the difference in value of the property before and after imposition of the Trails Act easement, Mr. Durrance relied on the sales comparison approach and paired sales analysis. See, e.g., Durrance Rep. at 15, 19, 24-25; Addenda at 3-17; Tr. 88, 115-28.[2]

At trial, the Government moved to strike the entirety of Mr. Durrance's testimony about the costs of constructing a berm and extending a road on the ground that Plaintiffs failed to disclose, before trial, the methodology and underlying information regarding such costs. Tr. 157-58. The Court granted the Government's motion to strike portions of Mr. Durrance's testimony relating to the cost of the land underlying the proposed berm because Mr. Durrance conceded that he had not taken that cost into account when preparing his appraisal report. Tr. 158 ("[T]he witness has admitted that the land under the berm is not in the report."); see also id. at 159, 161, 166-67. The Court reserved ruling on the admissibility of Mr. Durrance's testimony relating to the other access and buffering costs until the Court could fully review his report and deposition. Tr. 166-67, 312-13.

Mr. Durrance testified that, omitting consideration of the value of the land under the berm, the difference in value of the property after imposition of the Trails Act easement is $3,229,600 -- $1,280,000 for the "part taken," and severance damages of $1,949,600 comprised of access costs totaling $1,155,000, and buffering costs totaling $794,600. Tr. 175.[3] Mr.

---

[2] "Tr." refers to the transcript of the September 9-10, 2010 valuation trial.

[3] In his appraisal report and at his deposition, Mr. Durrance had valued the McCann North property at $61,251,000 in the "before" condition and $58,188,500 after imposition of the corridor -- a difference in value of $3,062,500 comprised of $1,251,000 "for the part taken" and $1,811,500 for severance damages. Durrance Rep. Cover Letter at 2; Durrance Rep. at 19, 32; see also Durrance Dep. Tr. 26, 32-33. At the valuation trial, Mr. Durrance increased his just

Durrance defined the term "severance damage" as "any diminution in value to the remainder interest as a result of the taking." Durrance Dep. Tr. 28. Mr. Durrance further opined that the severance damages "relate to . . . location and access, and also the buffering of this boundary against the new corridor." Durrance Dep. Tr. 35.

## Discussion

### Disclosure Obligations under Rule 26

Rule 26(a)(1)(A)(iii) of the Rules of the United States Court of Federal Claims ("RCFC") requires each party to provide "a computation of each category of damages . . . [and to] make available for inspection and copying . . . the documents or other evidentiary material . . . on which each computation is based . . . ."[4] A party that intends to proffer expert opinion testimony must, unless otherwise stipulated or ordered by the Court, disclose a written report containing, inter alia: (i) "a complete statement of all opinions the [expert] witness will express and the basis and reasons for them; (ii) the data or other information considered by the witness in forming [his or her opinions]; [and] (iii) any exhibits that will be used to summarize or support [his or her] opinions." RCFC 26(a)(2)(B). Rule 26(e)(2) requires each party to supplement expert disclosures with any subsequent material changes or additional information.[5] This duty to supplement "extends both to information included in the report and to information given during the expert's deposition." RCFC 26(e)(2).

### Sanctions for Nondisclosure under Rule 37

Rule 37 provides in pertinent part:

> If a party fails to provide information or identify a witness as required by RCFC 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard: (A) may order payment of the reasonable expenses, including attorney's fees, caused by the failure . . . and (C) may impose other appropriate sanctions, including any of the orders listed in RCFC 37(b)(2)(A)(i)-(vi).

---

compensation estimate to $4,081,600 due to a discrepancy in the length of the Trails Act easement and to inclusion of the value of the land underlying a proposed berm. Tr. 87-88 (explaining that although Mr. Durrance had used 5,450 lineal feet in his preliminary appraisal, the parties stipulated that the easement is 5,576 feet long), 146, 152-57. The discrepancy and the value of the land underlying the proposed berm are not the basis for the motion to strike. See Def.'s Mot. to Strike at 2 n.2.

[4] Rule 26(a)(1)(A) provides an exception where the party is "exempted by RCFC 26(a)(1)(B) or as otherwise stipulated or ordered by the court . . . ."

[5] Rule 26(e)(2) requires "[a]ny additions or changes to this information . . . [to] be disclosed by the time the party's pretrial disclosures under RCFC 26(a)(3) are due."

RCFC 37(c)(1); see Scott Timber, Inc. v. United States, 93 Fed. Cl. 221, 226 (2010); Banks v. United States, 93 Fed. Cl. 41, 47 (2010).

Striking evidence is a drastic sanction.  See Scott Timber, 93 Fed. Cl. at 226 (describing exclusion as an "'onerous' sanction") (citation omitted); Summers v. Missouri Pac. R.R. Sys., 132 F.3d 599, 604 (10th Cir. 1997); DeMarines v. KLM Royal Dutch Airlines, 580 F.2d 1193, 1201-02 (3d Cir. 1978) (recognizing that "exclusion of evidence is a drastic sanction").

### Mr. Durrance Adequately Disclosed Access Costs As A Component Of Severance Damages

At his deposition, Mr. Durrance testified that the $3,062,500 difference in the before and after market value of the McCann North property resulted from two components: $1,251,000 constituting the value of "the part taken" and $1,811,500 in severance damages consisting of access and buffering costs.  Durrance Dep. Tr. 26, 32-33, 35.  At trial, Mr. Durrance opined that the new easement "effectively severs" access to the McCann North property via Bay Street and Preymore Street -- access that was available in the "before" condition.  Tr. 136-42.  He testified that a knowledgeable buyer could cure this access issue by extending Honore Avenue 1,320 feet, which "is the required distance for access separation," at a cost of $875 per lineal foot, resulting in costs totaling $1,155,000.  Tr. 141-45; see also Durrance Dep. Tr. 35, 167-68.  Mr. Durrance based the $875 per lineal foot figure "on actual costs for the same road for Honore [Avenue] just north of there relating to an extension of it, 2,500 lineal feet, or roughly half-a-mile."  Tr. 144-45.

The Government moves to strike this testimony in part because Mr. Durrance's report does not explicitly refer to the 1,320 foot extension of Honore Avenue at a cost of $875 per lineal foot.  Def.'s Mot. to Strike at 6; see also Tr. 143.  The Government further claims that Mr. Durrance failed to "describe any efforts he made to calculate or derive a cost figure associated with the loss of access to Bay Street and Preymore Street and provided no supporting data related to how he estimated the cost of replicating two points of access on a county road."  Def.'s Mot. to Strike at 8-9.

Plaintiffs' access costs were not new or additional damages introduced for the first time at trial.  In his report, Mr. Durrance took into account the damage to the remainder based on loss of access to Bay Street and Preymore Street.  Tr. 150.  The report states that "the new easements impose increased limitations on the remainder relative to potential access and exposure from Preymore Street and Bay Street.  Durrance Rep. at 30.  As such, the remainder is estimated to be inferior compared to the 'Before' condition for the above stated reasons."  Id. (emphasis added).  In the section on "Factual Data – Before Acquisition," the report states:

> Road/Access:  Honore Avenue terminates into the northeast corner of the subject and provides access to the property.  Honore Avenue is proposed for extension over the easterly boundary of the subject.  Preymore Street right-of-way terminates at the northwestern corner of the subject and Bay Street right-of-way terminates at the  southwestern corner of the subject.

4

Durrance Rep. at 11 (emphasis added); see also id. at 14, 17-18.  The report also lists "Access" as a factor utilized in Mr. Durrance's analysis of the difference in value of the property. Durrance Rep. at 26; Addenda at 4, 5, 7, 10, 14, 16.  In analyzing one set of sales, the report states, "[t]he differences between the two sales relate to shape, access/exposure and easement/corridor influence."  Durrance Rep. at 26 (emphasis added).  The Government concedes that, in his report, Mr. Durrance discusses general access issues with respect to the McCann North property and mentions "access" as a consideration in conducting his comparable sales analysis.  Def.'s Mot. to Strike at 6-7; see also Tr. 107.

At his deposition, Mr. Durrance also raised the access issue, stating, "we've got the access issue and the buffer issue."  Durrance Dep. Tr. 168.  After estimating buffering costs totaling $776,700, Mr. Durrance, at his deposition, attributed the balance of the severance damages to the impact of access costs arising from the Trails Act easement's separation of the McCann North property from Bay Street and Preymore Street -- access to the property that was available before the trail was built. Id. at 34-35.  Mr. Durrance testified:

> The rest of it is a little bit more than a million dollars . . . And that relates to this new 100-foot easement, this corridor basically separating the property from Bay Street and Preymore Street, which prior, in the before condition or prior to this taking, terminated at the westerly boundary of the property.  So, you know, the total is [$]1,811,500 for damages.  The reasons why relate to . . . location and access, and also the buffering of this boundary against the new corridor.

Id. at 35.

Defendant had ample opportunity at deposition to probe each element of severance damages.[6]  See Durrance Dep. Tr. 33-37, 105-06, 148, 167-69.  Plaintiffs' expert disclosed in his report that Plaintiffs were seeking access costs and that Honore Avenue had been "proposed for extension."  See, e.g., Durrance Rep. at 11, 14, 17-18, 30. At deposition, Mr. Durrance testified that Plaintiffs were seeking just over "a million dollars" in access costs as part of their claimed severance damages.  See Durrance Dep. Tr. 35. Defendant had the opportunity to further probe the quantification of these access costs -- in particular the cost of providing the access to the property by extending Honore Avenue -- at deposition but failed to do so.  Although Plaintiffs' expert perhaps should have clarified his computation of the access costs in his expert report, his failure to do so does not warrant the drastic sanction of striking his testimony pertaining to this element of damages, especially since the predicate for these costs -- the impediment to access --

---

[6] Mr. Durrance's deposition appears to have lasted almost seven hours.  Mr. Durrance brought three boxes of work files to his deposition that he had relied on in preparing his report. See Durrance Dep. Tr. 5, 117, 124-25, 163-65.  Mr. Durrance testified that not every calculation appeared in his report because "my report would be about 3 feet tall if I put everything in there." Durrance Dep. Tr. 162-63.  The parties agreed that if the Government had additional questions, it could depose Mr. Durrance again by telephone.  Durrance Dep. Tr. 125, 163-65; see also Aug. 9, 2010 Pre-trial Scheduling Order (Dkt. No. 232).  The Government declined to do so.  Tr. 170-71; see also Durrance Dep. Tr. 163-65, 236.

was disclosed in his report and the amount of access costs -- a little over $1 million -- was disclosed at his deposition.

### Mr. Durrance Adequately Disclosed Buffering Costs As A Component of Severance Damages

The Government also moves to strike Mr. Durrance's testimony relating to the cost of constructing a berm. However, Mr. Durrance discussed buffering costs extensively in his report and at his deposition. See, e.g., Durrance Rep. at 26-28, 30; Addenda at 37-47; Durrance Dep. Tr. 34-35, 37-45, 155-62, 174, 181. The Government concedes that Mr. Durrance's report identifies "the potential need for buffering as one factor that may influence" the value of the McCann North property as compared to similar properties and that, at his deposition, Mr. Durrance "testified that he calculated the cost of the berm." Def.'s Mot. to Strike at 8; Def.'s Reply at 5.

The report states that "in most instances residential subdivisions adjacent to public corridors similar to the subject will attempt to accommodate the corridor through various planning strategies relating to increased buffering . . ." Durrance Rep. at 26. The report lists examples of such strategies, which include "increased landscaping/berm/wall/fence adjacent to the corridor" and notes that such buffering techniques are "seen throughout Palmer Ranch," citing the Palmer Ranch Development Code ("Development Code") which requires a "minimum 50-foot wide landscape buffer for all development adjacent to the subject corridor." Id. at 26-28.[7] The report points out that the Development Code "specifically calls for increased buffers along transit corridors . . . " Id. at 30. The Addenda contain excerpts of the Development Code that discuss buffering. Addenda at 37-47.[8]

At his deposition, Mr. Durrance explained how he had calculated buffering costs totaling $776,700 as follows:

> [M]y calculations are that there are 5,450 lineal feet of frontage along that new corridor. And along that lineal frontage, about 5 percent of it has some environmental -- you know wetland environmental-type areas. So what I've done for the first component, if you will, of the severance damages is a buffer along this frontage to buffer the remaining unencumbered property from this new easement. So I have applied a price or a cost per lineal foot for a buffer along there, and I have applied that number to 5,178 lineal feet. And the way I got there is, again my calculations, is the total frontage is 5,450 less 5 percent, because you're not going to put a buffer through the wetland environmental area, and that

---

[7] Palmer Ranch "refers to a geographic area," and the Palmer Ranch Development Code is a set of guidelines relating to development within Palmer Ranch. Durrance Dep. Tr. 67-68. Mr. Durrance testified that the Development Code is "meant to be followed." Id. at 69.

[8] Plaintiffs point out that the words "buffering," "berming," and "access," or their derivations occur at least 25 times throughout the report. Pls.' Opp. to Mot. to Strike at 9.

> gives you 5,178 lineal feet . . . I multiplied that times 150 a lineal foot. . . . That comes out to $776,700. . . . And that is for a buffer along this frontage.

Durrance Dep. Tr. 34-35; see also id. at 86-88, 91.

Mr. Durrance also explained how he derived the $150 per lineal foot figure. He testified: "[G]enerally[,] the net difference attributable to this increased buffering is 125 to 175. I've used 150 . . . And that's the difference relative to the buffering between the before and the after." Durrance Dep. Tr. 35, 39-40. Mr. Durrance further explained that Wilson Miller -- an engineering/planning firm -- had provided cost estimates related to the buffer requirements adjacent to similar corridors; costs generally ranged from $125 to $175 per lineal foot. Id. at 40. Given Mr. Durrance's identification of buffering costs as an element of severance damages in his report and his explanation of his calculation of buffering costs at deposition, there is no basis to strike his trial testimony on this element of damages.

## **Mr. Durrance Did Not Abandon the Sales Comparison Approach and Shift to an Undisclosed "Cost Approach"**

The Government contends that prior to trial, Mr. Durrance utilized the sales comparison approach to determine the value of the property after imposition of the Trails Act easement, but at trial, he abandoned the sales comparison approach and shifted to a previously undisclosed "cost approach" based on undisclosed calculations and cost figures. Def.'s Mot. to Strike at 10-13. Upon review of Mr. Durrance's report and deposition testimony, the Court rejects this argument.

In his report, Mr. Durrance articulated that his analysis of quantitative and qualitative factors led him to conclude that imposition of the Trails Act easement reduced the value of the McCann North property from $200,000 per acre in the "before" condition to $190,000 per acre in the "after" condition. Durrance Rep. 17, 19, 31; see generally Durrance Dep. Tr. 70-82, 95-109, 173-74, 188-89. He explained that determining the impact of the easement involved an "inspection and identification of the subject property and comparables" and "consideration and research of the impact the taking has on the remaining property." Durrance Rep. at 9; see also id. at 10, 31. According to the report, Mr. Durrance utilized a paired sales analysis to "measure the difference in value, if any, of lots directly on a corridor versus lots off the corridor." Durrance Rep. at 23-26 (concluding that "residential subdivisions directly adjacent to a rarely used rail corridor exhibit reduced lot values . . . ranging from $130 to $170 per linear foot").

At his deposition, Mr. Durrance testified that the $3,062,500 difference in value of the property after imposition of the Trails Act easement resulted from two separate components: $1,251,000 constituting the value of the "the part taken" and $1,811,500 in access and buffering costs. See Durrance Dep. Tr. 33, 95-109, 125-26. As Mr. Durrance's testimony reflects, rather than entirely abandoning the sales comparison approach, he appears to have utilized that approach to determine the value of the part taken. See, e.g., id. at 29-36, 60-62, 147-49, 166-67, 169, 189-93. As Mr. Durrance explained:

> Q.   And we were discussing a moment ago that your damage calculation . . . consisted of two separate components . . . the value of the 50-foot strip of land . . . subject

> to the easement. Then the second component is what we're calling the severance damage component.
>
> A. Yes.
>
> Q. So.
>
> A. Yeah, basically, as I stated, part taken and damages.
>
> Q. And so the chart on page 29 is the assessment of the damages to the remainder?
>
> A. It's an assessment of the value of the remainder interest.
>
> Q. Okay. How did you determine the value of the 50-foot easement?
>
> A. Well, the value of the 50-foot easement . . . [t]he value before is 200,000 an acre times the take size . . .
>
> Q. Okay. So that valuation . . . relies on the same data as after valuation of the remainder?
>
> A. The same set of sales, yes . . .

Durrance Dep. Tr. 105-06; see, e.g., id. at 95-104, 107-09, 166-67, 169, 189-93; Tr. 289, 306-20. At trial, Mr. Durrance confirmed that he had used the sales comparison approach and paired sales analysis to appraise the property in the "after" condition and reiterated the same methodology for calculating buffering costs described at his deposition. See, e.g., Tr. 69-70, 115-25, 127-130, 306-20.

## Conclusion

Defendant's motion to strike portions of the testimony of Chad Durrance is **DENIED**.

                                          s/Mary Ellen Coster Williams
                                          **MARY ELLEN COSTER WILLIAMS**
                                          **Judge**