# In the United States Court of Federal Claims

**No. 07-273L**
**No. 07-426L**
**No. 08-198L**
**No. 10-187L**
**No. 10-200L**
**(Filed: February 9, 2012)**
**(Not for publication)**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | |
|---|---|
| **STEPHEN J.  ROGERS, et al.,** | \* |
| | \* |
| **Plaintiffs,** | \* |
| | \* |
| **v.** | \* |
| | \* |
| **THE UNITED STATES,** | \* |
| | \* |
| **Defendant.** | \* |
| | \* |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

---

### MEMORANDUM OPINION AND PRETRIAL SCHEDULING ORDER

---

This matter comes before the Court on Defendant's motion to continue trial, Plaintiffs' motion to maintain the original trial setting, and the parties' respective proposed pretrial scheduling orders.  For the reasons described below, the Court has rescheduled trial in this matter for March 28, 2012,[1] and establishes the pretrial schedule as set forth below.

#### Background

In these consolidated "rails to trails" actions, Plaintiffs claim that the Government effected a taking of their property when it converted an inactive railroad right-of-way to a recreational trail pursuant to the National Trails System Act Amendments of 1983.  On November 23, 2009, the Court resolved the issue of liability for a subset of claims in favor of Plaintiffs.  See Rogers v. United States, 90 Fed. Cl. 418 (2009).  The Court initially scheduled a valuation trial for August, 2010, to determine the quantum of compensation owed those Plaintiffs, but later rescheduled that trial for September, 2010, at Defendant's request.  In anticipation of the 2010 trial, the parties exchanged appraisal reports for the properties at issue.

Prior to the beginning of trial, the parties disputed the proper standard for determining the just compensation owed to Plaintiffs, and on November 9, 2010, the Court stayed proceedings

---

[1] This opinion confirms and explains a ruling issued on February 2, 2012.

while the parties briefed, and the Court resolved, that legal issue.  The Court issued an opinion and order clarifying the measure of just compensation on October 31, 2011, and later scheduled a valuation trial to begin on March 26, 2012.  In connection with that trial, the Court requested that the parties jointly propose a pretrial schedule.  On December 12, 2011, the Court adopted the parties' jointly proposed schedule, which included a January 9, 2012 deadline for the exchange of "any supplemental expert reports."  The Court also established a February 1, 2012 deadline for the exchange of rebuttal expert reports.  <u>See also</u> Joint Status Conference Tr. 22, Nov. 14, 2011 (counsel for Defendant representing that Defendant could complete discovery by February 15, 2012).

On January 11, 2012, Defendant produced no "supplemental" reports.  Plaintiffs, however, produced 13 revised drafts of their appraisal reports and two new expert reports.  The first expert report, five pages in length, is authored by four land design experts from the consulting firm Wilson Miller, and details how the Government's taking altered the value of Plaintiffs' properties in conjunction with relevant land use regulations and land use principles.  The second report, four-and-one-half pages in length, is authored by a second appraiser, Dr. John Kilpatrick, and affirms the methodology used by Chad Durrance, Plaintiffs' original appraiser, for one component of the compensation due for a single property.

On January 20, 2012, Defendant filed a Motion to Consolidate Claims for Trial and Motion to Continue March 2012 Trial Date.  In the motion, Defendant argued that it required additional time to analyze and respond to Plaintiffs' January 11 expert reports for two reasons.  First, Defendant argued that the Wilson Miller report is vague under Rule 26 of the Rules of the United States Court of Federal Claims ("RCFC").  Additionally, Defendant claimed that Plaintiffs' appraisal reports differed significantly from versions of those reports exchanged in 2010.  Plaintiffs opposed Defendant's motion, claiming that the expert reports were not vague and were based upon information that Defendant should have been prepared to address or rebut prior to January 11, 2012.

On January 30, 2012, the Court held a status conference during which the Court granted Defendant an extra week to prepare for trial.  On January 31, 2012, however, Plaintiffs filed a motion informing the Court that their expert witnesses would be unavailable for the new trial dates and requesting that the Court maintain its original trial schedule.  After reviewing Plaintiffs' expert reports, the Court rescheduled the March valuation trial to begin on March 28, 2012, delaying trial by two working days instead of five.

Following the rescheduling of trial, the parties were unable to agree on several aspects of the pretrial schedule.  In particular, the parties differ as to the location of certain depositions and the deadlines for Defendant's expert reports, the parties' motions in limine, and the parties' pretrial memoranda.  In addition, Plaintiffs request leave for two new exchanges of expert reports -- another round of "supplemental reports" and a round of rebuttal reports -- while Defendant proposes that the exchange of expert reports conclude with the production of Defendant's expert reports.

## Discussion

Underlying the parties' dispute are Plaintiffs' interpretation of the term "supplemental reports" in the initial pretrial scheduling order and Defendant's request that the March trial be continued so that Defendant may prepare responsive expert reports. Although they are brief and not complex, it is true that Plaintiffs' "supplemental" reports introduce new experts and minimally different opinions into the valuation trial. Nonetheless, because Defendant has been on notice of the subject matter of these "supplemental" reports since at least September, 2010, and could well have filed its own "supplemental reports," the Court maintains the March, 2012 start date for the forthcoming trial.

"The matter of continuance is traditionally within the discretion of the trial judge . . . ." Ungar v. Sarafite, 376 U.S. 575, 589-90 (1964) (citing Avery v. Alabama, 308 U.S. 444 (1940)); see also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 91 (1st Cir. 1996) ("It is well settled that the trial judge has broad discretion in ruling on pre-trial management matters . . . ."); Fontenot v. Upjohn Co., 780 F.2d 1190, 1193 (5th Cir. 1986) ("When the question for the trial court is a scheduling decision, such as whether a continuance should be granted, the judgment range is exceedingly wide . . . ."). Because scheduling demands vary by case, there are few, if any, bright-line rules to determine when denying a motion to continue constitutes an abuse of discretion. See Ungar, 376 U.S. at 589-90 ("The answer must be found in the circumstances present in every case, particularly in the reasons presented to the trial judge at the time the request is denied."); Fontenot, 780 F.2d at 1193 ("in handling its calendar and determining when matters should be considered, the district court must consider not only the facts of the particular case but also all of the demands on counsel's time and the court's").

When a party seeks a continuance to secure additional testimony of expert witnesses, the trial court does not abuse its discretion by denying the motion where the movant will have sufficient time to obtain expert witnesses under the original schedule. See Anderson v. Raymond Corp., 340 F.3d 520, 525 (8th Cir. 2003); Mraovic v. Elgin, Joliet & Eastern Ry. Co., 897 F.2d 268, 271 (7th Cir. 1990). The same is true if the movant was on notice that it should have retained experts but failed to do so. See Springs Window Fashions v. Novo Indus., 323 F.3d 989, 997 (Fed. Cir. 2003) (applying 7th Circuit law). Here, the Court has extended the time for Defendant to file expert reports and for the parties to conduct expert depositions, as set forth below.

In resolving the parties' scheduling disputes, the Court has endeavored to eliminate prejudice to either party while maintaining a trial schedule previously extended at the request of Defendant and then rescheduled at a time jointly agreed upon by the parties. The quibbling over the pretrial schedule appears to have several sources. First, Defendant has a legitimate need to rebut Plaintiffs' "supplemental" expert reports -- 13 revised appraisals and two new expert reports, one of which is authored by four separate individual experts, all of whom must be deposed.

On the other hand, Defendant itself has never produced revised reports from its appraisal expert. Nor has Defendant produced any "supplemental" expert reports, even though it either had retained or was prepared to retain other experts -- Richard Bass, Joseph Semnik, and Whit

Blanton -- on land use issues such as berming and access which it certainly knew of from the earlier McCann North trial, held in September, 2010. Nor did Defendant request an enlargement of time within which to submit "supplemental" expert reports. Instead, Defendant sought to submit two categories of additional expert reports -- rebuttal reports to rebut the new expert reports of Wilson Miller and Dr. Kilpatrick, and "supplemental" appraisal reports designed to incorporate information from Defendant's rebuttal experts and address the revised valuations in Plaintiffs' final supplemental reports.

Plaintiffs vigorously complain that it would be unfair for Defendant to have the benefit of Plaintiffs' so called "supplemental" reports in filing its own supplemental appraisals at a later time, when the assumption underlying the schedule was that all supplemental expert reports would be filed simultaneously. Thus, Plaintiffs urge the Court to prohibit Defendant from revising its appraiser's reports and incorporating the opinions of its other experts into its final appraisal reports, just as Plaintiffs have done.

There are two paramount concerns informing the Court's adjustment of the hotly contested pretrial schedule: 1) avoiding trial by ambush and permitting both sides to have expert opinions developed and aired before trial, and 2) ensuring that neither party gains an unfair tactical advantage by its interpretation of the deadlines for "supplemental reports" or by its efforts to delay and prolong an already extensive litigation period.

There appears to have been some confusion about what "supplemental" expert reports could entail, although the parties themselves injected such a filing into the schedule. The parties suggested, and the Court adopted, no such filings in the McCann North valuation trial. There also is an unquestionable difference in approach to this case on the part of the parties. Plaintiffs lament how long the valuation aspect of this trial has taken and Defendant has sought to postpone the proceedings on several occasions.

Given the limited nature and extent of any new expert information and Defendant's longstanding notice of the issues regarding expert testimony and its opportunity to secure such testimony previously, weighed against Plaintiff's submission of expert reports that may not technically qualify as "supplemental" on January 11, the Court modifies the schedule to give Defendant an opportunity to file rebuttal expert reports and to file a revised final expert report to put the parties on equal footing at the time of trial. The fact that Defendant may be in a bit of a crunch in the weeks prior to trial is largely a situation of its own making. Both Plaintiffs' unorthodox interpretation of "supplemental reports" and Defendant's failure to file any such reports or seek an extension of time compound the problem and require Plaintiffs to also engage in last minute expert discovery to maintain the trial date and avoid further delay in a situation where liability has been established.

With these considerations in mind, the Court sets the following schedule:

| | |
|---|---|
| **February 13 - 17, 2012** | Additional fact witness depositions shall be completed.  The depositions of the designated corporate representatives for TPCPrestancia and Pulte shall take place at their principal place of business or via phone or videoconference.  The Court hereby authorizes telephone or video depositions. |
| **February 14, 2012** | The United States shall produce the expert witness report prepared by Richard Bass. |
| **February 17, 2012** | The United States shall produce the expert witness reports prepared by Joseph Semnik and Whit Blanton. |
| **February 20, 2012** | The United States shall produce supplemental appraisal reports by John Underwood. |
| **February 23, 2012** | Plaintiffs shall produce their rebuttal expert reports by **12:00 p.m. EST**. |
| **February 27 - March 2, 2012** | Depositions of all experts with the exception of the appraisers shall be completed.  The deposition of Dr. Kilpatrick shall take place in Seattle, WA or via phone or videoconference. |
| **March 5 -7, 2012** | Depositions of appraisers shall be completed and may be conducted via phone or videoconference. |
| **March 12, 2012** | The parties shall file pretrial memoranda, proposed findings, exhibit lists, exhibits, and witness list. |
| **March 15, 2012** | The parties shall file motions in limine. |

| | |
|---|---|
| **March 20, 2012** | The parties shall file responses to motions in limine, joint exhibit list, and joint stipulations. |
| **March 21, 2012** | A telephonic pretrial conference will be held at **3:00 p.m. EST**. |
| **March 27, 2012** | The Court and the parties will conduct a site visit in Sarasota, FL. |
| **March 28 - April 4, 2012** | The valuation trial on the *Bird Bay* and *Bay Plaza* properties will be held in Sarasota, FL. |
| **April 24, 2012** | Defendant shall file its post-trial brief on the McCann North property |
| **May 4, 2012** | Plaintiffs shall file their reply brief on the McCann North property. |

Under the revised schedule, Defendant will have sufficient time for its experts to prepare reports before the March trial.  Defendant claims that it could not meet the original deadline for the exchange of "rebuttal" reports because Plaintiffs' expert reports, timely exchanged in January, 2012, used different methodology to value the worth of Plaintiffs' property.  In addition, Defendant argues that it requires extra time to secure experts able to respond to the two non-appraisal reports.  Under the above revised pretrial schedule, Defendant need not submit its own non-appraisal expert reports until February 12 and February 14, and need not submit appraisal reports until February 20.  These new deadlines represent an extension of several weeks beyond not only the original deadline for "supplemental" expert reports, but also the original deadline for rebuttal reports.  These extensions -- totaling between four and six weeks -- constitute sufficient time to retain experts who can respond to Plaintiffs' 13 appraisal reports and two supplemental reports.  See Mraovic, 897 F.2d at 271 (affirming denial of continuance where movant had more than two-and-a-half months to arrange testimony from his experts after the district court set a firm trial date, and almost three weeks to arrange expert testimony after the court denied his motion for a continuance); Anderson, 340 F.3d at 525 (finding that trial court did not abuse its discretion by denying motion for continuance where movant had been granted one month to obtain expert witness).

Further, Defendant has ample time to secure expert reports and prepare for trial because the reports Plaintiffs produced on January 11, 2012, do not introduce any information significantly different from what Defendant has known for over two years.  The parties initially exchanged appraisal reports beginning in May of 2010, and the bulk of the reports exchanged in January, 2012, are identical to those exchanged almost two years earlier.  While Chad Durrance, Plaintiffs' appraiser, has applied new techniques to value the 13 properties at issue, the new techniques rely almost entirely on the type of data already present in the 2010 appraisal reports, including the relative sale prices of comparable properties, the size of Plaintiffs' parcels, and the

cost incurred by Plaintiffs in order to conform with certain land use restrictions. The 2010 reports, moreover, clearly indicated that they were draft reports and subject to change prior to trial. To the extent that similar categories of data have led to disparate methods of valuation in the two sets of reports, Defendant has not explained why those differences are so significant that its own appraiser -- retained since at least 2010 -- could not sufficiently address the 2012 appraisals within the three weeks initially agreed to by the parties for rebuttal reports.

Nor do Plaintiffs' two non-appraisal reports warrant a continuance of trial. The Wilson Miller Report touches upon issues of land use and development which were not only part of the 2010 appraisal reports, but which were discussed by the Court during a status conference on August 10, 2010. See Joint Status Conference Tr. 9-11, Aug. 10, 2010 (including Court's question as to why "Defendant didn't sooner see fit to retain [its] own land use expert"). Although the report of Dr. Kilpatrick does focus upon a type of valuation methodology present only in the January, 2012 appraisal reports, Defendant has sufficient time -- over one month -- to secure an expert who can respond to this five-page report. In short, the Court refuses to delay trial further when the parties have had almost 27 months -- the time since the liability opinion -- to frame, hone, and execute their discovery strategies.

Finally, the Court denies Defendant's objection that the Wilson Miller report is vague and concludes that the report complies with RCFC 26(a)(2). The report provides notice of the four brief Wilson Miller expert opinions and affords Defendant sufficient opportunity to examine those experts in depositions. See Sparton Corp. v. United States, 77 Fed. Cl. 1, 5 (2007) (allowing expert's report under RCFC 26 even though the report "[did] not provide much depth to his analysis . . . [or] his interpretation of the contract clauses . . . and [did] not offer any supporting documents").

## Conclusion

The Court establishes the pretrial schedule as set forth above and adopts the following trial procedure:

1.     Trial will begin every day at 9:30 a.m. and conclude at approximately 5:00 p.m., unless counsel requests that the Court sit late to accommodate a witness.

2.     Each side will have a maximum of 30 minutes for opening statements.

3.     When filing their exhibits with the Court, the parties shall provide the Court with two sets of binders containing copies of the attached chart (entitled "List of Trial Exhibits"). The parties shall also provide the chart in electronic form. The chart shall be filled in with the exhibit numbers and a description of the corresponding documents, and should include all corresponding exhibits.

4.     The original "stickered" version of each exhibit shall be provided to the court reporter at the conclusion of trial on the day each exhibit is admitted. At the time a party seeks to admit an exhibit, that party shall submit to the court two copies of such exhibit.

5.      The parties shall serve by hand delivery copies of each demonstrative exhibit they intend to use no less than 48 hours prior to using the exhibit.  This paragraph applies to demonstratives used in opening and closing statements, cross-examinations, and redirect examinations.

6.      The parties shall notify each other of the names of witnesses and the order in which they will testify no less than 48 hours prior to that witness's testimony, using the scheduling template attached hereto.

7.      Counsel shall not engage in substantive discussions with a witness while any portion of that witness's examination is pending.

8.      (a)      Voir dire of any witness offered as an expert shall be conducted, and such witness must be qualified and accepted by the court as an expert, prior to any substantive testimony by such witness.

(b)      Expert reports may be admitted into evidence after a suitable foundation has been provided for such admission.

9.      Counsel should stand when raising objections or seeking to be heard during testimony.

10.     Defendant may elicit witness testimony out of turn without foreclosing its ability to file a RCFC 52(c) motion.

11.     Witnesses shall be excluded pursuant to Fed. R. Evid. 615, except that each party may have a designated representative present at the trial.

12.     Each party shall file and serve initial post-trial briefs 30 days after the trial transcript is received, and shall file and serve responsive briefs 30 days after service of initial briefs.  The parties' initial briefs shall include proposed findings of fact supported by citations to the record.


                                        s/Mary Ellen Coster Williams
                                        **MARY ELLEN COSTER WILLIAMS**
                                        **Judge**