# In the United States Court of Federal Claims

**No. 07-273L**
**No. 07-426L**
**No. 08-198L**
**No. 10-187L**
**No. 10-200L**
**(Filed: February 19, 2013)**

* * * * * * * * * * * * * * * * * * * * * * * * * *

|  |  |  |
|---|---|---|
| **STEPHEN J. ROGERS, et. al.,** | * | **Fifth Amendment Taking; Motion to Dismiss; Rule 12(b)(1); Standing; Jurisdiction; Declaration of Protective Covenants; Beneficial Title; Equitable Conversion; Sufficiency of Property Description; Ability of Members of Homeowners' Association to Maintain Takings Suit.** |
| **Plaintiffs,** | * | |
| **v.** | * | |
| **THE UNITED STATES,** | * | |
| **Defendant.** | * | |

* * * * * * * * * * * * * * * * * * * * * * * * * *

Mark F. (Thor) Hearne, II, Arent Fox LLP, 112 S. Hanley Road, Suite 200, Clayton, MO 63105; Lindsay S.C. Brinton, and Meghan S. Largent, Arent Fox LLP, 1050 Connecticut Avenue, NW, Washington, DC 20036; Debra J. Albin-Riley and Joseph L. Cavinato, III, Arent Fox LLP, 555 West Fifth Street, 48th Floor, Los Angeles, CA 90013, for Plaintiffs.

Ignacia S. Moreno, United States Department of Justice, Environment & Natural Resources Division, 601 D Street, N.W., Washington, DC 20044 and Kristine S. Tardiff, United States Department of Justice, Environment & Natural Resources Division, 53 Pleasant Street, 4th Floor, Concord, NH 03301, for Defendant. Charlotte M. Youngblood, United States Department of Justice, Environment & Natural Resources Division, Natural Resources Section, 601 D Street, N.W., PHB Room 3131, Washington, DC 20044, Of Counsel.

_____

### MEMORANDUM OPINION AND ORDER OF PARTIAL DISMISSAL
_____

**WILLIAMS**, Judge.

This Fifth Amendment taking action comes before the Court on Defendant's motion to dismiss the claim of Plaintiffs Peter and Bernadette Calamaras for lack of standing.[1]   The Calamaras, as members of the Silver Oak Neighborhood Association ("SONA"), claim standing based on SONA's interest in the property at issue.  Because the Calamaras and SONA did not own the property at the time of the taking, Plaintiffs' claim is dismissed for lack of subject-matter jurisdiction.

## Background[2]

The property at issue consists of 3.87 acres of land designated as common areas within the Silver Oak residential development that are adjacent to an abandoned railroad corridor that was converted into a recreational trail pursuant to the Trails Act and the Surface Transportation Board's April 2, 2004 order.  Rogers v. United States, 90 Fed. Cl. 418, 433 (2009); see Def.'s Mot. to Dismiss ("Def. Mot."), Ex. 2; Pls.' Resp., Ex. D (ROG-PLTF-010243).  In 2009, this Court held the Government liable for a taking and ruled that landowners who owned property on April 2, 2004, that abuts the railroad right-of-way established by the Honore deed were entitled to just compensation under the Fifth Amendment.  Rogers, 90 Fed. Cl. at 433.  As members of SONA, Plaintiffs claim to own a 1/108th pro rata interest in the Silver Oak neighborhood's common areas.

On April 16, 1999, the Calamaras acquired property in Sarasota County, Florida, via deed.  Def.'s Reply, Ex. 4; 2d Am. Compl. ¶ 151.  The Calamaras' property is located within a gated residential development, known as Silver Oak on Palmer Ranch.  SONA owns the common areas within the development, and the Calamaras are members of SONA.  At the time of the taking, April 2, 2004, the Calamaras did not own property abutting or underlying the rail-trail corridor; nor do they currently own such property.  Instead, the Calamaras purport to bring their takings claims solely as members of SONA alleging a private ownership interest in Silver Oak's common areas, which abut the corridor.  Def.'s Mot., Ex. 1.  SONA opted not to file a takings suit.

Silver Oak Development of Sarasota, L.C. ("Silver Oak Development") was created in 1998, to facilitate the development of the Silver Oak subdivision.  Pls.' Resp., Ex. A.  SONA's Articles of Incorporation, filed in 1998, described SONA's purpose as follows:

> The purposes for which this corporation is organized are to take title to (when conveyed by Declarant as provided in the Neighborhood Declaration), operate, administer, manage, lease and maintain the Neighborhood Common Area of such portions thereof or of Silver Oak as are dedicated to or made the responsibility of the Neighborhood Association in the Neighborhood Declaration or in any other Silver Oak Documents, in accordance with the terms of and purposes set forth

---

[1] There are 100 Plaintiffs in these consolidated cases.  Because this opinion concerns the claims related to one property, that of Peter and Bernadette Calamaras, "Plaintiffs" in this opinion refers to Mr. and Mrs. Calamaras.

[2] This background is derived from exhibits to the Second Amended Complaint and the parties' motion papers.

therein; and to conduct any lawful business permitted under the laws of the State of Florida for corporations not-for-profit in order to carry out the covenants and enforce the provisions of any Silver Oak Documents. The Neighborhood Association is not a condominium association under Chapter 718, Florida Statutes.

Pls.' Resp., Ex. C.

On December 7, 1998, Silver Oak Development and SONA executed the Declaration of Protective Covenants, Conditions and Restrictions for Silver Oak ("Covenants"), and the Covenants were filed with Sarasota County on January 28, 1999. Covenants at 32.[3] The Covenants defined neighborhood common areas as:

> those portions of the COMMITTED LANDS including any improvements and fixtures thereon, owned by, leased to, or the use of which has been granted to or dedicated by PLAT to the NEIGHBORHOOD ASSOCIATION for the common use and enjoyment of the NEIGHBORHOOD OWNERS as set forth in this NEIGHBORHOOD DECLARATION.

Covenants ¶ 1.23. The Covenants described the common areas with reference to other documents as follows:

> 3.2   NEIGHBORHOOD COMMON AREAS.
>
> (a)   Described:   NEIGHBORHOOD COMMON AREAS shall be identified by designation as NEIGHBORHOOD COMMON AREA on the PROPERTY PLAN, a revised PROPERTY PLAN, the [MASTER DEVELOPMENT ORDER], the [INCREMENTAL DEVELOPMENT ORDER], a PLAT, this NEIGHBORHOOD DECLARATION, and AMENDMENT, or otherwise by DECLARANT; and all easements conveyed or dedicated to the NEIGHBORHOOD ASSOCIATION and all use rights appurtenant thereto. NEIGHBORHOOD COMMON AREA may include, but not be limited to, open spaces, preservation areas, surface water management systems and related drainage appurtenances, roadways, and entryways.

Covenants ¶ 3.2(a).

The Covenants further provided that Silver Oak Development would convey fee simple title to the neighborhood common areas to SONA by a defined Transfer Date -- no later than 120 days after 95% of the dwelling units had been conveyed to homeowners. Covenants ¶¶ 1.38, 3.2(d). The Covenants also allowed Silver Oak Development to convey title to the common areas before the Transfer Date, stating: "notwithstanding, DECLARANT shall have the right, but not the obligation, to convey all or portions of the NEIGHBORHOOD COMMON AREAS to the NEIGHBORHOOD ASSOCIATION at such time prior to the TRANSFER DATE as DECLARANT may determine." Covenants ¶ 3.2(d). Like the Articles of Incorporation, the Covenants distinguished SONA from a condominium association, stating: "[t]he

---

[3] Pursuant to a Court order, the parties filed the Covenants on January 28, 2013.

NEIGHBORHOOD ASSOCIATION is not a condominium association and, therefore, shall not be affected by the provisions of Chapter 718, Florida Statutes." Covenants ¶ 2.3.

The Covenants reserved rights over the common areas to Silver Oak Development, stating, in relevant part:

(b)     Other DECLARANT'S RIGHTS: DECLARANT shall have the right, in its sole discretion, to alter the boundaries of the NEIGHBORHOOD COMMON AREAS and construct, develop, enlarge, or modify the NEIGHBORHOOD COMMON AREAS and any improvements, easements and use rights thereon or appurtenant thereto in a manner determined appropriate by DECLARANT for the best interest of the TOTAL LANDS without the joinder or consent of any PERSON, including, without limitation, the NEIGHBORHOOD ASSOCIATION, the neighborhood associations, or the OWNERS for so long as DECLARANT shall own any portion of the TOTAL LANDS. DECLARANT shall have the right, at any time that it owns any portion of the TOTAL LANDS, to designate additional NEIGHBORHOOD COMMON AREAS, or RESIDENTIAL PROPERTY from areas which were previously designated as RESIDENTIAL PROPERTY or NEIGHBORHOOD COMMON AREAS, as the case may be, or other types of areas, or by causing portion(s) of UNCOMMITTED LANDS to become COMMITTED LANDS by executing an AMENDMENT without the joinder or consent of any PERSON.

Covenants ¶ 2.5(b).

Finally, the Covenants set forth a provision related to litigation, requiring a vote of three-fourths of SONA's members before SONA could initiate an action such as a takings case:

7.10    Approval    of    NEIGHBORHOOD    ASSOCIATION    Lawsuits    by MEMBERS.

The NEIGHBORHOOD ASSOCIATION shall be required to obtain the approval of three-fourths (3/4) of the vote of all MEMBERS (at a duly called meeting of the MEMBERS at which a quorum is present) prior to the payment of legal or other fees to persons or entities engaged by the NEIGHBORHOOD ASSOCIATION for the purpose of suing, or making, preparing or investigating any lawsuit, or commencing any lawsuit other than for: (a) the collection of ASSESSMENTS; (b) the collection of other charges which MEMBERS are obligated to pay pursuant to the SILVER OAK DOCUMENTS; (c) the enforcement of the use and occupancy restrictions contained in the SILVER OAK DOCUMENTS; or (d) in an emergency where waiting to obtain the approval of the OWNERS creates a substantial risk of irreparable injury to all or a portion of the TOTAL LANDS.

Covenants ¶ 7.10.

On October 26, 2006, Silver Oak Development transferred the common areas by quitclaim deed to SONA. Def.'s Mot., Ex. 2. Thus, at the time of the taking on April 2004, Silver Oak Development had legal title to all common areas.

## Discussion

## Subject-Matter Jurisdiction

Defendant claims that because Plaintiffs do not have standing, the Court must dismiss this action for lack of subject-matter jurisdiction.  See Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1369 (Fed. Cir. 2002) (standing is a "threshold jurisdictional issue").  Plaintiffs bear the burden of establishing subject-matter jurisdiction by a preponderance of the evidence before the Court proceeds to the merits of the action.  Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1998); BearingPoint, Inc. v. United States, 77 Fed. Cl. 189, 193 (2007).  When deciding a motion to dismiss for lack of subject-matter jurisdiction, the Court assumes all factual allegations to be true and construes "all reasonable inferences in plaintiff's favor."  Hall v. United States, 74 Fed. Cl. 391, 393 (2006) (quoting Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995)).  "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."  RCFC 12(h)(3); see also Tindle v. United States, 56 Fed. Cl. 337, 341 (2003).

In order to establish standing, a plaintiff must show: (i) an injury-in-fact, i.e., an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical; (ii) a causal connection between the injury and the conduct complained of that is fairly traceable to the defendant's challenged action and not a consequence of the independent action of a third party; and (iii) a likelihood that the injury will be "redressed by a favorable decision."  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).  As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing these elements "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation."  Lujan, 504 U.S. at 561; see also Rogers v. United States, 95 Fed. Cl. 513, 515-16 (2010).

## SONA Did Not Have a Property Interest In the Common Areas at the Time of the Taking

In order to establish standing under the first prong of the Lujan test, Plaintiffs must establish a cognizable "property interest" at the time of the taking.  See Maritrans Inc. v. United States, 342 F.3d 1344, 1351 (Fed. Cir. 2003); M & J Coal Co. v. United States, 47 F.3d 1148, 1153-54 (Fed. Cir. 1995).  Because Silver Oak Development did not transfer title to the common areas to SONA until 2006, some two years after the date of the taking, SONA did not have legal title at the time of the taking.  However, Plaintiffs argue that the Covenants transferred beneficial title to the common areas to SONA in December 1998, when the Covenants were executed, invoking the doctrine of equitable conversion.  Under this doctrine, beneficial title is deemed to be transferred when an agreement to convey real property is executed.  Plaintiffs argue that SONA received beneficial title in 1998, and had title as of the time of the taking, reasoning:

> In April 2004, the STB issued its NITU taking the landowners' right to unencumbered title and possession of their land.  The fact that legal title had not yet passed is immaterial to the question of whether the Neighborhood Association has suffered a compensable injury to its property interest.  Under Florida's doctrine of beneficial title, the Association was seized of beneficial ownership at the time the Declaration was executed in 1998, some six years before the STB issued its order. The Neighborhood Association – not Silver Oak Development –

5

> thus bore the risk of loss through eminent domain.  When the STB issued the NITU, the risk became a reality.  Because the Neighborhood Association bore the loss, the Neighborhood Association – and not (the now-dissolved) Silver Oak Development – is entitled to compensation for this taking.

Pls.' Resp. 11.

Under the doctrine of equitable conversion, "upon entry of an agreement to convey title to realty, the buyer obtains equitable title and the seller retains naked legal title in trust for the buyer."  Veigle v. United States, 888 F.Supp. 1134, 1141 (M.D. Fla. 1995).  Pursuant to this doctrine, ownership of property is not determined by who holds legal title.  See Bowman v. Saltsman, 736 So. 2d 144, 145 n.1 (Fla. Dist. Ct. App. 1999) (citing White v. Brousseau, 566 So. 2d 832 (Fla. Dist. Ct. App. 1990)).  Rather, once a contract for the conveyance of land is executed, the buyer holds a vested interest in the property.  Hull v. Md. Cas. Co., 79 So. 2d 517, 518 (Fla. 1954), modified on reh'g, 79 So. 2d 518.  The doctrine is based on principles of equity and is intended to allocate the risk of loss if a property is damaged before the conveyance is completed.  See Veigle, 888 F.Supp. at 1141 ("The doctrine of equitable conversion 'regards as done what ought to be done,' in order to protect a party's interest in real property."); see also Hauben v. Harmon, 605 F.2d 920, 925 (5th Cir. 1979) (applying Florida law) ("The vendor carries the burden of loss before execution of the contract, and the vendee carries the burden of loss after execution of the contract.").

Plaintiffs contend that the Covenants should be construed as an agreement to convey title.  Specifically, Plaintiffs claim that because the Covenants provided that Silver Oak Development would convey legal title to the common areas to SONA on the Transfer Date, i.e., no more than 120 days after Silver Oak Development sold 95% of the dwelling units, the Covenants were an agreement tantamount to a contract for the conveyance of land from Silver Oak Development to SONA.

Under Florida law, agreements such as property settlement agreements in a divorce have been found to be tantamount to a contract of purchase and sale.  See McNeill v. McNeill, 135 So. 2d 785, 788 (Fla. Dist. Ct. App. 1961) (citing Fowler v. Fowler, 112 So. 2d 411, 414 (Fla. Dist. Ct. App. 1959)).  For an agreement to be recognized as being tantamount to a land sale contract, the agreement must satisfy all conditions necessary for an enforceable contract for the purchase and sale of real property.  Under Florida law, an enforceable contract for the conveyance of real property must be embodied in one or more written documents, the party against whom enforcement is sought must have signed the document(s), the document(s) must contain "all of the essential terms of the purchase and sale, and those terms may not be provided by resort to parol evidence."  de Vaux v. Westwood Baptist Church, 953 So. 2d 677, 681 (Fla. Dist. Ct. App. 2007) (citing Socarras v. Claughton Hotels, Inc., 374 So. 2d 1057, 1059 (Fla. Dist. Ct. App. 1979)); see Muniz v. Crystal Lake Project, LLC, 947 So. 2d 464, 469 (Fla. Dist. Ct. App. 2006) (listing essential terms as definiteness, certainty, parties, description of the property, the contract price, and financing terms).

One essential term required for an enforceable contract for the purchase of real property is a sufficient description of the land.  Reed v. Howell, 118 So. 208, 208 (Fla. 1928); see Burns v. Campbell, 180 So. 46, 47 (Fla. 1938).  As the Florida District Court of Appeals explained:

> To effect a valid conveyance of real property, a deed or other instrument must describe the property such that it is evident that a particular parcel, and not a different or unspecified one, is to be conveyed.  Florida follows a liberal policy in this regard.  The rule is that a description is sufficient if, by relying on the description *read in light of all facts and circumstances referred to in the instrument*, a surveyor could locate the land.

Mendelson v. Great Western Bank F.S.B., 712 So. 2d 1194, 1196 (Fla. Dist. Ct. App. 1998) (citations omitted).

The Covenants do not identify or describe the common areas with sufficient particularity to establish what parcel is being conveyed.  Mendelson, 712 So. 2d at 1196.  The Covenants define the common areas as the lands "dedicated by PLAT to the NEIGHBORHOOD ASSOCIATION for the common use and enjoyment of the NEIGHBORHOOD OWNERS as set forth in this NEIGHBORHOOD DECLARATION," and provide that the common areas would be identified on the property plan, master development order, incremental development order, or in an amendment to the Covenants.  Covenants ¶¶ 1.23, 3.2(a).[4]  Although the property plan filed with Sarasota County as Exhibit C to the Covenants identifies three phases of the development, and designates an area as "Villas" and an area as apartments, it does not identify any areas as common areas.  In addition, the only land surveys in the Covenants pertain to "Silver Oak Phase 1 Take-Down" and the "Committed Lands," attached as Exhibits A and B to the Covenants.  Neither survey identifies areas to be set aside as common areas.  The description of the common areas in the Covenants and documents referenced therein does not indicate the location or size of the common areas at the time the Covenants were executed in 1998.  Finally, prior to the Transfer Date, under Paragraph 2.5(b) of the Covenants, Silver Oak Development reserved the right to alter the boundaries of the common areas.  Thus, in 1998, the common areas were subject to change, making it impossible to identify what areas would ultimately be designated as common areas on the Transfer Date.

The indeterminate description of the common areas in the Covenants does not establish what parcel was being conveyed as would, for example, a description using a survey or an address.  See, e.g., Baker v. Baker, 271 So. 2d 796, 797 (Fla. Dist. Ct. App. 1973) (upholding a conveyance that identified the property by street address).  "The modern view . . . is that the description is sufficient if the reference to the property in the deed is such that the court, by pursuing an inquiry based upon the words of reference, is able to identify the particular property to the exclusion of all other property."  Bajrangi v. Magnethel Enterprises, Inc., 589 So. 2d 416, 419 (Fla. Dist. Ct. App. 1991).

A full description of the common areas -- with plat and tract numbers -- was not provided until October 26, 2006, as an exhibit to the quitclaim deed from Silver Oak Development to SONA conveying the common areas.  See Def.'s Mot., Ex. 2.  This description was not documented as part of the agreement between the parties until the 2006 transfer date -- two years after the taking and eight years after Plaintiffs claim to have obtained their interest from the execution of the Covenants.  See Def.'s Mot., Ex. 2.  A description of land provided after an agreement is executed does not cure the original agreement's insufficient description of the

---

[4] The referenced plat is not in the record.

property.  A description will be found ambiguous if it is provided after the signing of the conveyance.  See Davis v. Hinson, 67 So. 3d 1107, 1111 (Fla. Dist. Ct. App. 2011) (finding a property description provided one year after the signing of a conveyance to be insufficient to effect a valid deed).  Thus, although Silver Oak Development agreed in 1998, to transfer title to the common areas to SONA at the Transfer Date when the conditions in the Covenants occurred, beneficial title did not pass to SONA when the Covenants were executed in 1998, because these areas were not sufficiently described at that time.  Consequently, SONA did not have a cognizable property interest in the common areas at the time of the taking.

## Plaintiffs Did Not Acquire an Ownership Interest in the Common Areas By Virtue of Their Membership in SONA

Even if SONA had owned the common areas when the taking occurred, Plaintiffs would lack standing for a separate and independent reason in that they failed to establish they had an ownership interest in the common areas of Silver Oak by virtue of their membership in SONA. Plaintiffs allege that they, along with every other homeowner in the subdivision, "own an undivided interest in the neighborhood's common areas through membership in the Association." Pls.' Resp. 3.  Plaintiffs claim to own a 1/108th pro rata interest in the common areas.  Plaintiffs rely on law pertaining to condominium associations and erroneously conflate ownership principles applicable to common areas of condominiums with principles applicable to common areas of homeowners' associations.

Each owner within a condominium holds "an undivided share in common elements." Fla. Stat. Ann. § 718.103(11) (West 2010); see also Michael J. Gelfand, Condominium and Homeowners' Associations Liens, FLORIDA CONDOMINIUM AND COMMUNITY ASSOCIATION LAW § 16.2 (Fla. Bar Ass'n  3d ed. 2011) ("Condominiums: . . . All members jointly and severally own proportional interests in the 'common elements.'").  Conversely, only the homeowners' association itself -- not association members -- owns common property.  See § 720.301 (West 2011); Strathmore Gate-East at Lake St. George Homeowners' Ass'n v. Levitt Homes, Inc., 537 So. 2d 657, 658 (Fla. Dist. Ct. App. 1989); GELFAND, § 16.4 ("Common Property: The homeowners' association itself, and not individual members, owns the land used for recreational facilities, common roadways, common parking areas, and other common facilities." (emphasis added)).  Under Florida law, common areas within a homeowners' association are "owned or leased by an association or dedicated for use or maintenance by the association or its members . . . ."  Fla. Stat. Ann. § 720.301(2) (emphasis added).

Both SONA's Articles of Incorporation and the Covenants expressly provide that SONA is a homeowners' association and not a condominium association.  Covenants ¶ 2.3 ("The NEIGHBORHOOD ASSOCIATION is not a condominium association and, therefore, shall not be affected by the provisions of Chapter 718, Florida Statutes.").  As such, Plaintiffs as members of a homeowners association do not own the common areas and lack the requisite property interest to bring this action.[5]

---

[5] Plaintiffs, relying on In re Amendments to Florida Rules of Civil Procedure, further argue that they have standing because Florida's legislature and the Florida Supreme Court "explicitly reserved the right of an individual home or unit owner to bring any action available to it at common law or by statute."  Pls.' Resp. 12 (citing In re Amendments to Florida Rules of

**Plaintiffs Cannot Bring a Takings Suit as Members of SONA**

Finally, the Covenants required a vote of three-fourths of SONA's members before SONA could initiate an action such as a takings case.   Covenants ¶ 7.10; see also Rogers, 95 Fed. Cl. 513, 516 (2010) (construing the same provision as requiring a three-fourth membership approval to sue on behalf of SONA and dismissing the plaintiffs' claim).   Nothing in the record indicates that such a vote authorizing the Calamaras' action was obtained.

### Conclusion

Defendant's motion to dismiss the Calamaras' claim is **GRANTED**.   The action of Peter and Bernadette Calamaras in No. 07-273 is **DISMISSED WITHOUT PREJUDICE** for lack of standing.


s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

---

Civil Procedure, 966 So. 2d 943, 946 (Fla. 2007) (per curiam).   The problem with Plaintiffs' argument is that an action for a taking of the common areas was not "otherwise available" to them because individual homeowners have no right to bring an action for a taking of property they do not own.